ACCEPTED
01-15-00396-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/8/2015 7:07:05 AM
CHRISTOPHER PRINE
CLERK

# CASE NO. 01-15-00396-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/8/2015 7:07:05 AM
CHRISTOPHER A. PRINE
Clerk

## IN THE FIRST COURT OF APPEALS
## HOUSTON, TEXAS

### John W. Hankins

### v.

### Sarah T. Harris

**On Appeal from the 333rd Judicial District Court
of Harris County, Texas
Trial Court Case No. 2014–01360**

**APPELLANT'S BRIEF
\*\*ORAL ARGUMENT REQUESTED\*\***

**LEYH, PAYNE & MALLIA, PLLC**
Sean M. Reagan,
(Lead Counsel)
sreagan@lpmfirm.com
Texas Bar No. 24046689
9545 Katy Freeway,
Suite 200
Houston, Texas 77024
(713) 785–0881
(713) 784–0338 (Fax)

**HUGHES ELLZEY, LLP**
Jarrett L. Ellzey
jarrett@hughesellzey.com
Texas Bar No. 24040864
W. Craft Hughes
craft@hughesellzey.com
Texas Bar No. 24046123
Galleria Tower I
2700 Post Oak Blvd.,
Suite 1120
Houston, Texas 77056
(713) 554–2377
(888) 995–3335 (Fax)

**WILSON, CRIBBS & GOREN, P.C.**
Brian B. Kilpatrick
Texas Bar No. 24074533
bkilpatrick@wcglaw.net
H. Fred Cook
Texas Bar No. 02742500
hfcook@wcglaw.net
2500 Fannin Street
Houston, Texas 77002
(713) 222–9000
(713) 229–8824 (Fax)

***Counsel for Appellant, John W. Hankins***

## Identify of Parties and Counsel

| <u>Appellant</u> | <u>Counsel</u> |
|---|---|
| John W. Hankins | **LEYH, PAYNE & MALLIA, PLLC** |
| | Sean M. Reagan |
| | sreagan@lpmfirm.com |
| | Texas Bar No. 24046689 |
| | 9545 Katy Freeway, Suite 200 |
| | Houston, Texas 77024 |
| | (713) 785–0881 |
| | (713) 784–0338 (Fax) |
| | |
| | *Lead appellate counsel* |
| | |
| | **HUGHES ELLZEY, LLP** |
| | Jarrett L. Ellzey |
| | jarrett@hughesellzey.com |
| | Texas Bar No. 24040864 |
| | W. Craft Hughes |
| | craft@hughesellzey.com |
| | Texas Bar No. 24046123 |
| | Galleria Tower I |
| | 2700 Post Oak Blvd., Suite 1120 |
| | Houston, Texas 77056 |
| | (713) 554–2377 |
| | (888) 995–3335 (Fax) |
| | |
| | *Trial and appellate counsel* |

**WILSON, CRIBBS & GOREN, P.C.**
Brian B. Kilpatrick
Texas Bar No. 24074533
bkilpatrick@wcglaw.net
H. Fred Cook
Texas Bar No. 02742500
hfcook@wcglaw.net
2500 Fannin Street
Houston, Texas 77002
(713) 222–9000
(713) 229–8824 (Fax)

*Trial and appellate counsel*

**FIBICH, LEEBRON, COPELAND,
BRIGGS & JOSEPHSON**
Kenneth T. Fibich
Texas Bar No. 06952600
tfibich@fibichlaw.com
1150 Bissonnet
Houston, Texas 77005
(713) 751–0025
(713) 751-0030 (Fax)

*Trial counsel*

| **Appellee** | **Counsel** |
|---|---|
| Sarah T. Harris<br>Texas Bar No. 09092750<br>United States Patent<br>and Trademark Office | **HAYNES AND BOONE, LLP**<br>William A. Feldman<br>Texas Bar No. 24081715<br>Michael J. Mazzone<br>Texas Bar No.13313000<br>Michael T. Powell<br>Texas Bar No. 16204300<br>Robert A. Carlton<br>Texas Bar No.24078313<br>1221 McKinney Street, Suite 2100<br>Houston, Texas 77010<br>(713) 547–2115<br>(713) 547–2600<br><br>*Trial and appellate counsel*<br><br>**HAMPTON & KING**<br>Hartley Hampton<br>Texas Bar No. 08874400<br>3 Riverway, Suite 910<br>Houston, Texas 77056<br>(713) 574–8660<br>(713) 650–6458 (Fax)<br><br>*Trial counsel* |

**Other Interested Parties**

| | |
|---|---|
| Roy Harris, M.D. (Deceased) | *Appellee's father and prior owner of the property in dispute* |
| Norma Harris a/k/a Norma Fallis, M.D. (Deceased) | *Appellee's mother, judgment debtor, and prior owner of the property in dispute* |

Matthew Hoffman
Texas Bar No. 09779500
2777 Allen Parkway, Suite 1000
Houston, Texas 77019

*Former counsel for Roy and Norma Harris and a fact witness (formerly with the firm of Hirsch Westheimer)*

HIRSCH WESTHEIMER, P.C.
700 Louisiana, Suite 2550
Houston, Texas 77002

*Former counsel for Roy and Norma Harris*

AKIN GUMP STRAUSS HAUER
& FELD, LLP
Thomas McCaffrey
Texas Bar No. 13336775
1111 Louisiana, 44th Floor
Houston, Texas 77002

*Prior counsel for appellee and a fact witness*

DUKE & CONNER, P.C.
Charles L. Duke
Texas Bar No. 06184900
9225 Katy Freeway, Suite 200
Houston, Texas 77024
(713) 975–6699

*Prior counsel for appellant (formerly with the firm of Duke & Conner)*

Robert J. Conner
No contact information
is available

*Prior counsel for appellant (formerly with the firm of Duke & Conner)*

LAW OFFICE OF JEREL J. HILL
Jerel Hill
Texas Bar No. 09638750
1420–B Stonehollow Drive
Kingwood, Texas 77339

*Prior counsel for appellant*

MICHAEL P. FLEMING
& ASSOCIATES, P.C.
Jack R. Morman
Texas Bar No. 24039073
440 Louisiana, Suite 1920
Houston, Texas 77002
(713) 221–6800

*Prior counsel for appellant*

Thomas Hayes
No contact information
is available

*Prior counsel for appellant*

STARK & FRAM, P.C.
1853 Lexington
Houston, Texas 77098
Barbara DeGeorgio
Texas Bar No. 05719400
3355 W. Alabama St., Suite 950
Houston, Texas 77098

*Prior counsel for Roy and Norma Harris*

KRONZER, ABRAHAM & WATKINS,
NICHOLS, BALLARD & FRIEND
800 Commerce Street
Houston, Texas 77002
Robert E. Ballard
Texas Bar No. 0165100
5773 Woodway Dr.
Houston, Texas 77057
(713) 781–8400

*Counsel for appellant in original lawsuit*

NATHAN, NATHAN & NEWMAN
Lawrence T. Newman
No contact information
is available

*Counsel for Norma Harris in original lawsuit*

# Table of Contents

Identify of Parties and Counsel ................................................................... ii

Table of Contents ................................................................................ vii

Appendix .......................................................................................... xii

Index of Authorities ........................................................................... xiv

Statement of the Case........................................................................... xx

Issues Presented................................................................................ xxi

### Issue Presented Number One:

The trial court erred in granting Sarah's motion for summary judgment and declaring that John Hankins owns no interest in the Property.

### Issue Presented Number Two:

The trial court erred in granting Sarah's motion for summary judgment and declaring that Sarah owns the entire fee simple interest in the Property.

### Issue Presented Number Three:

The trial court erred in granting Sarah's motion for summary judgment and finding that she adversely possessed Hankins' interest in the Property.

### Issue Presented Number Four:

The trial court erred in granting Sarah's motion for summary judgment on Hankins' counterclaims for conversion, partition, and trespass to try title.

**Issue Presented Number Five:**

If the underlying execution sale is void, which Hankins disputes, the trial court erred by declining to put the parties back to the status quo.

Statement Regarding Oral Argument.......................................................... xxii

Introduction ...................................................................................................1

Statement of Facts........................................................................................ 2

    A.    The Property .................................................................... 2

    B.    Hankins sues Norma for slander and obtains a judgment against her in 1978. .................................................. 3

    C.    Norma moves out of the Property with the intention of not returning, and Roy files for divorce..................................... 4

    D.    After Norma abandons her undivided one–half interest in the Property, Hankins obtains a writ of execution, which eventually leads to Norma's interest in the Property being levied.................................................................. 6

    E.    Norma and Roy devise a scheme to put Norma's undivided one–half interest out of the reach of her judgment creditor, Hankins. .................................................... 7

    F.    Throughout the years, the parties exchange multiple letters and engage in discussions regarding the Property and Hankins' desire to liquidate the same. ................. 9

    G.    Harris files this lawsuit to declare Hankins' undivided one–half interest in the Property void........................................12

    H.    Sarah moves for summary judgment on her affirmative claims and Hankins' counterclaims..........................................12

Summary of the Argument ........................................................................14

Argument & Authorities ..........................................................................16

    A.    This Court reviews the grant of a summary judgment de novo. ...........................................................................16

    B.    Sarah failed to establish as a matter of law that Hankins owns no interest in the Property. At a minimum, Hankins' judgment and execution liens attached to the Property and are still valid. ...............................17

        1.    Even if the Divorce Decree and Marriage Settlement Agreement constitute a valid conveyance (they do not), any interest Roy acquired during the divorce proceeding was subject to Hankins' judgment lien. .................................18

        2.    The Divorce Decree and Marriage Settlement Agreement didn't convey Norma's interest in the Property to Roy because the parties indicated a future or prospective intent to convey, rather than a present intent, which was confirmed by their later actions. .............................................................

        3.    Sarah's claim that the Marriage Settlement Agreement is an executory contract that vested Roy with equitable title on the date the Divorce Decree is flat wrong. ........................................24

    C.    Sarah failed to establish as a matter of law that the automatic bankruptcy stay applied to the execution sale. Even if it did, Court should return the parties to the status quo. ...........................................26

        1.    Even if Norma conveyed her interest in the Property to Roy, that conveyance was void and thus, not part of the bankruptcy estate. ..........................27

2.   Norma's interest didn't pass to Roy, and thus, her interest in the Property was not a part of his bankruptcy estate or subject to the automatic stay. ................................................................ 29

3.   Even if Norma's interest in the Property were subject to the automatic stay, the Court should restore the parties to the status quo, revive Hankins' judgment, and revive his judgment and execution liens............................................... 33

D.   Sarah failed to establish as a matter of law that Hankins executed on homestead property. Rather, the evidence shows that Hankins executed on Norma's undivided, one–half interest in the Property, which she had abandoned. ...................................................... 36

1.   Limits on homestead protections do exist: The homestead protection doesn't protect property interests that are not the debtor's actual homestead. ................................................. 36

2.   Norma possessed a vested homestead interest in the Property that was separate and independent from Roy's interest. But she abandoned that interest when she moved out of the home with no intention of returning, with her abandonment becoming effective on the date of her divorce. .............. 37

3.   Roy's homestead interest in the Property could not prevent the forced sale of Norma's interest in the Property............................................................. 41

4.   Any claim by Sarah that Roy owned 100% of the Property on the execution date and thus, this interest protected the Property from the execution sale would lack merit. .................................... 46

x

E.    Sarah failed to establish any of adverse possession claims as a matter of law. ....................................... 47

    1.    Overview of adverse possession in Texas. ....................... 47

    2.    A claimant seeking to adversely possess a co-tenant's interest in land has a more onerous burden—the claimant must also prove clear, unequivocal, and unmistakable repudiation of the common title. ........................................................ 49

    3.    At best, the earliest Sarah could have repudiated Hankins' interest in the Property would have been March 8, 2005. ........................................................ 50

    4.    Sarah's alternative bases for establishing repudiation are also insufficient to establish repudiation as a matter of law. ........................................ 52

    5.    Sarah cannot establish adverse possession under either the 10–year or 25–year limitation period because the applicable time periods have not yet elapsed. ........................................................................ 54

    6.    Sarah did not establish her claim for adverse possession under the 3–year limitation period as a matter of law. .............................................................. 55

    7.    Sarah did not establish her claim for adverse possession under the 5–year and 10–year limitation periods as a matter of law. ............................. 56

F.    Sarah failed to establish as a matter of law that Hankins' counterclaims for conversion, partition, and trespass to try title are barred as a matter of law. .................... 62

Conclusion and Prayer ......................................................................... 64

Certificate of Service ............................................................................. 65

Certificate of Compliance ..................................................................... 66

# Appendix

December 5, 2014 Summary Judgment Order......................................Tab 1

March 26, 2015 Summary Judgment Order ......................................... Tab 2

Final Judgment ................................................................ Tab 3

Hankins v. Harris Judgment...................................................... Tab 4

Harris Divorce Decree .......................................................... Tab 5

Marriage Settlement Agreement ................................................. Tab 6

Deed Under Execution .......................................................... Tab 7

Notice of Constable's Sale ...................................................... Tab 8

Temporary Restraining Order................................................... Tab 9

Special Warranty Deed......................................................... Tab 10

Deed of Trust................................................................. Tab 11

Roy Harris Bankruptcy Schedule ...............................................Tab 12

Bankruptcy Order Recognizing Automatic Stay..................................Tab 13

Roy Harris Discharge Order.................................................... Tab 14

Warranty Deed................................................................Tab 15

Hoffman July 1984 Letter ..................................................... Tab 16

Hoffman September 1990 Letter................................................Tab 17

McCaffrey March 2005 Letter.................................................. Tab 18

Order Overruling Hankins Evidentiary Objections............................. Tab 19

Texas Business & Commerce Code § 24.02 & § 24.03 (1968).............. Tab 20

Bankruptcy Code (1978)................................................................... Tab 21

Article 5449 ................................................................................... Tab 22

# Index of Authorities

**Cases**

*Allodial Ltd. P'ship v. North Tex. Tollway Auth.,*
176 S.W.3d 680 (Tex. App.—Dallas 2005, pet. denied).....................23

*Baird v. Trice,*
51 Tex. 555 (Tex. 1879)......................................................................47

*Borden v. McRae,*
46 Tex. 396 (Tex. 1877)......................................................................34

*Buck v. Palmer,*
381 S.W.3d 525 (Tex. 2012) ..............................................................16

*Bywaters v. Gannon,*
686 S.W.2d 593 (Tex. 1985)...............................................................61

*Chambers County v. TSP Development, Ltd.,*
63 S.W.3d 835
(Tex. App.—Houston [14th Dist.] 2001, pet. denied) ......................23

*City of Dallas v. Etheridge,*
253 S.W.2d 640 (Tex. 1952)...............................................................61

*Comm. Structures and Interiors, Inc. v. Liberty Educ. Ministries, Inc.,*
192 S.W.3d 827 (Tex. App.—Fort Worth 2006, no pet.)...................23

*Dominguez v. Castaneda,*
163 S.W.3d 318 (Tex. App.—El Paso 2005, pet. denied)...................37

*Dunn v. Taylor,*
102 Tex. 80 (1908)..............................................................................58

*Dyer v. Cotton,*
333 S.W.3d 703
(Tex. App.—Houston [1st Dist.] 2010, no pet.)................48, 50, 54, 60

*Eckert v. Wendel,*
        40 S.W.2d 796 (Tex. 1931) ......................................................... 28, 29

*Elam v. Donald,*
        58 Tex. 316 (Tex. 1883) ................................................................... 35

*Fairfield Fin. Group, Inc. v. Synnott,*
        300 S.W.3d 316 (Tex. App.—Austin 2009, no pet.) ..................... 43–46

*Flag–Redfern Oil Co. v. Humble Exploration Co.,*
        744 S.W.2d 6 (Tex. 1987) .................................................................. 26

*Florey v. Estate of McConnell,*
        212 S.W.3d 439 (Tex. App.—Austin 2006, pet. denied) ................... 38

*Fort Worth Osteopathic Hosp., Inc. v. Reese,*
        148 S.W.3d 94 (Tex. 2004) ................................................................17

*Goodyear Tire & Rubber Co. v. Mayes,*
        236 S.W.3d 754 (Tex. 2007) ..............................................................17

*Gordon v. West Houston Trees, Ltd.,*
        352 S.W.3d 32 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ....18–20

*Grayson v. Dunn,*
        581 S.W.2d 785 (Tex. Civ. App.—Waco 1979, writ ref'd) .................. 57

*Heggen v. Pemelton,*
        836 S.W.2d 145 (Tex. 1992) ..............................................................41

*House v. Robertson,*
        36 S.W. 251 (1896) ........................................................................... 35

*In Marriage of Merrikh,*
        No. 14–14–00024–CV,
        2015 WL 2438770
        (Tex. App.—Houston [14th Dist.] May 19, 2015, pet. filed) ........ 20, 21

*In re Berry,*
        295 B.R. 385 (D. N.M. 2003) .............................................................31

*In re Johnson*,
112 B.R. 15 (E.D. Tex. 1990)...............................................................40

*In re Rogers*,
461 U.S. 677 (1983) ................................................................ 38, 41

*In re Summers*,
332 F.3d 1240 (9th Cir. 2003) .........................................................31

*Ingle v. Lea*,
8 S.W. 325 (Tex. 1888) ...............................................................46

*Johnson v. Wood*,
157 S.W.2d 146 (Tex. 1941) .......................................................... 26

*Jones v. Ford*,
583 S.W.2d 821
(Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.) ......................... 57, 60

*Keda Dev. Corp. v. Stanglin*,
721 S.W.2d 897 (Tex. App.—Dallas 1986, no writ) ......................... 34

*King Ranch, Inc. v. Chapman*,
118 S.W.3d 742 (Tex. 2003) ..........................................................49

*King v. Harter*,
8 S.W. 308 (Tex. 1888) .............................................................. 39

*Kirby Lumber Corp. v. Lindsey*,
455 S.W.2d 733 (Tex. 1970) ...........................................................61

*Laster v. First Huntsville Props. Co.*,
826 S.W.2d 125 (Tex. 1991).......................................................... 37

*McDonald v. Weinacht*,
465 S.W.2d 136 (Tex. 1971)...........................................................61

*McLaren v. Beard*,
811 S.W.2d 564 (Tex. 1991) ..........................................................50

*Merriman v. XTO Energy, Inc.,*
    407 S.W.3d 244 (Tex. 2013) ......................................................16

*Moore v. Knight,*
    94 S.W.2d 1137 (Tex. 1936)....................................................... 53

*Morton v. Nguyen,*
    412 S.W.3d 506 (Tex. 2013).......................................................25

*Natural Gas Pipeline Co. of Am. v. Pool,*
    124 S.W.3d 188 (Tex. 2003)....................................................... 53

*Noell v. Crow–Billingsley Air Park Ltd. P'ship,*
    233 S.W.3d 408 (Tex. App.–Dallas 2007, pet. denied) ......................21

*Norris v. Thomas,*
    215 S.W.3d 851 (Tex. 2007) ...................................................... 37

*Patterson v. First Nat'l Bank of Lake Jackson,*
    921 S.W.2d 240
    (Tex. App.—Houston [14th Dist.] 1996, no writ) ...............................41

*Pierce v. Washington Mut. Bank,*
    226 S.W.3d 711 (Tex. App.—Tyler 2007, pet. denied) ................ 39–40

*Sayers v. Pyland,*
    161 S.W.2d 769 (Tex. 1942).....................................................38, 42

*Sebesta v. Daniels,*
    812 S.W.2d 641
    (Tex. App.—Houston [14th Dist.] 1991, writ denied)........................ 49

*Session v. Woods,*
    206 S.W.3d 772 (Tex. App.—Texarkana 2006, pet. denied)..............48

*Smith v. Davis,*
    462 S.W.3d 604 (Tex. App.—Tyler 2015, pet. denied)......................25

*Stephens County Museum, Inc. v. Swenson,*
    517 S.W.2d 257 (Tex. 1974) ......................................................21

*Taylor v. Mosty Bros. Nursery, Inc.*,
    777 S.W.2d 568 (Tex. App.—San Antonio 1989, no writ) ............39, 40

*Texas Employer's Ins. Ass'n v. Engelke*,
    790 S.W.2d 93 (Tex. App.—Houston [1st Dist.] 1990, no writ) .........34

*Texas Sand Co. v. Shield*,
    381 S.W.2d 48 (Tex. 1964)........................................................28, 29

*Tex–Wis Co. v. Johnson*,
    534 S.W.2d 895 (Tex. 1976).................................................49, 50, 58

*Thomas v. Southwestern Settlement & Dev. Co.*,
    131 S.W.3d 31
    (Tex. Civ. App.—Beaumont 1939, writ dism'd, judgment correct) ....49

*Todd v. Bruner*,
    365 S.W.2d 155 (Tex. 1963) .......................................49, 50, 51, 59, 60

*Townsend v. Smith*,
    20 Tex. 465 (Tex. 1857).................................................................. 35

*Vaughan v. Anderson*,
    495 S.W.2d 327
    (Tex. Civ. App.—Texarkana 1973, writ ref'd n.r.e.) ........................... 57

*Wells v. Johnson*,
    443 S.W.3d 479 (Tex. App.—Amarillo, pet. denied) .........................48

*Wilcox v. Marriott*,
    103 S.W.3d 469
    (Tex. App.—San Antonio 2003, pet. denied) ............................... 38, 41

*Womack Humphreys Architects, Inc. v. Barrasso*,
    83 S.W.3d 211 (Tex. App.—Eastland 2002, no pet.) ..............37, 42–43

*Won v. Fernandez*,
    324 S.W.3d 833
    (Tex. App.—Houston [14th Dist.] 2010, no pet.) ..........................18, 19

## Statutes and Rules

11 U.S.C. § 362 ............................................................................ 26, 27

11 U.S.C. § 363 ................................................................................ 31

11 U.S.C. § 541 ............................................................................... 30

TEX. BUS. COM. CODE § 24.02 (Vernon 1968) ....................................... 27, 28

TEX. BUS. COM. CODE § 24.03 (Vernon 1968) ........................................... 27

TEX. CIV. PRAC. & REM. CODE § 16.021 ............................................ 47, 55, 56

TEX. CIV. PRAC. & REM. CODE § 16.023 ................................................... 51

TEX. CIV. PRAC. & REM. CODE § 16.024 .................................................. 55

TEX. CIV. PRAC. & REM. CODE § 16.030 .................................................. 48

TEX. CIV. PRAC. & REM. CODE § 16.037 ............................................... 47–48

TEX. CIV. PRAC. & REM. CODE § 16.025 .................................................. 56

TEX. CIV. PRAC. & REM. CODE §16.026 ................................................... 56

TEX. PROP CODE § 5.021 .................................................................... 20

TEX. PROP. CODE § 52.001 ................................................................. 18

TEX. PROP. CODE § 41.004 ................................................................. 39

TEX. REV. CIV. STAT. art. 5449(a) §§ (1, 4)
Act of June 19, 1975, 64th Leg., R.S., ch. 396,
1975 Tex. Gen. Laws 1030 ................................................................. 33

## Secondary Sources

Robin Russell and James W. Paulsen,
1 TEX. PRAC. GUIDE CREDITORS RIGHTS § 10:174 (2015) ............................. 35

# Statement of the Case

## *Nature of the Case:*

This is a dispute over ownership of real property. Defendant/Appellant, John Hankins claims an undivided one–half interest in real property located in Harris County, Texas that he asserts he acquired at a 1980 execution sale. Plaintiff/Appellee, Sarah Harris is the daughter of the judgment debtor. She claims that the execution sale is void on multiple grounds. Harris also claims title to the entire fee simple through adverse possession.

Harris's live pleading is located in the record at 1 Supp. CR at 5–39. Hankins' live counterclaim for affirmative relief is located in the record at 1 Supp. CR at 43–93.

## *Trial Court:*

Honorable Joseph J. "Tad" Halbach, Jr.
333rd Judicial District Court of Harris County, Texas

## *Proceedings Below:*

Harris moved for summary judgment on her affirmative claims for relief and on Hankins' counterclaims. The trial court granted both motions. (2 Supp. CR at 1237–39, Appx. 1) (first MJS order); (CR at 215–16, Appx. 2) (second MSJ order). The trial court later rendered a final judgment. (CR at 224–26, Appx. 3). In the final judgment, the trial court granted the following declaratory relief: (1) Harris owns the entire fee simple interest in the Property, (2) Hankins has no interest in the Property, (3) the purported Constable's Sale of the Property is void, and (4) the Deed under Execution of September 29, 1980 is void.

# Issues Presented

## Issue Presented Number One:

The trial court erred in granting Sarah's motion for summary judgment and declaring that John Hankins owns no interest in the Property.

## Issue Presented Number Two:

The trial court erred in granting Sarah's motion for summary judgment and declaring that Sarah owns the entire fee simple interest in the Property.

## Issue Presented Number Three:

The trial court erred in granting Sarah's motion for summary judgment and finding that she adversely possessed Hankins' interest in the Property.

## Issue Presented Number Four:

The trial court erred in granting Sarah's motion for summary judgment on Hankins' counterclaims for conversion, partition, and trespass to try title.

## Issue Presented Number Five:

If the underlying execution sale is void, which Hankins disputes, the trial court erred by declining to put the parties back to the status quo.

## Statement Regarding Oral Argument

Hankins requests oral argument. This appeal involves important questions regarding creditors' rights, the breadth of the Texas homestead protection, the applicability of the automatic bankruptcy stay, and the use of adverse possession to strip a judgment creditor of his interest in the only property remaining that could be used to satisfy a 1978 judgment. Thus, Hankins believes that oral argument would assist the Court in resolving this case.

## Introduction

It is axiomatic that justice delayed is justice denied. John Hankins obtained a $600,000 judgment against Norma Harris after she attempted to ruin his career with slanderous accusations nearly 40 years ago. Today, Hankins is still looking to collect on his judgment.

Hankins did execute on Norma's non–exempt undivided one–half interest in real property located in 1980. But Norma and her ex–husband, Roy, played the legal system in a desperate attempt to put Norma's most significant asset out of the reach of her judgment creditor, Hankins. Norma and Roy tried and failed to secure a valid restraining order preventing Hankins from executing on the Norma's interest in the Property. Norma then executed a fraudulent conveyance—Norma transferred her undivided one–half interest in the Property to Roy the day before he filed for bankruptcy protection in an effort to cloak a non–exempt asset with the protection of the bankruptcy court. Now, Sarah—Norma and Roy's daughter—is attempting to continue the family tradition and use the courts to deprive Hankins of the justice he has waited nearly 40 years to receive. If this long–running dispute is to be finally decided once and for all, justice demands that it should be decided by a trial on the merits, and not by the

summary disposition entered by the trial court. Summary judgment was improper because Sarah failed to carry her burden to establish her right to the same as a matter of law. Thus, a reversal is necessary and warranted.

## Statement of Facts

### A.    The Property

While there may be claims asserted by both parties for ancillary relief, the heart of this matter is whether John Hankins owns an undivided one–half interest in certain real property with Sarah Harris, or whether Sarah[1] owns the property free and clear of Hankins' claim. The Property is currently a vacant lot located at 2922 Bellaire Boulevard in Houston, Texas, legally described as:

> Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas.

(*See* 1 Supp. CR at 7) (the "Property").

---

[1] Hankins will address Sarah, Norma, and Roy Harris by the first names for clarity.

**B.** **Hankins sues Norma for slander and obtains a judgment against her in 1978.**

The genesis of this lawsuit is Hankins' efforts to stop the inappropriate conduct of Dr. Roy Harris more than 45 years ago. (1 Supp. CR at 484). In 1969, Hankins was an administrator at a hospital in Houston. (*Id.*, ¶ 12). Roy was an anesthesiologist who held privileges at the same hospital. (*Id.*). Hankins received numerous complaints from hospital staff and patients involving Roy improperly touching patients under anesthesia. (*Id.*). For example, Roy was caught fondling a female patient's breasts during surgery and was also found lying in bed with female patients under anesthesia. (*Id.*). Hankins asked Roy to voluntary relinquish his privileges, which Roy agreed to do. (*Id.*).

Roy was married to Norma Harris, who was also a doctor. (1 Supp. CR at 484, ¶ 13). After word spread throughout the medical community that Roy had engaged in inappropriate behavior, Norma became enraged and waged a personal vendetta against Hankins. (*Id.*). Specifically, in 1971, Hankins accepted employment with a different hospital in Houston. (*Id.*). What Hankins didn't know was that Norma was an investor and doctor at this hospital. (*Id.*). Seizing upon an opportunity for revenge, Norma, along with Roy and other co–conspirators, devised a scheme to slander Hankins. (*Id.*). Norma and her co–conspirators accused Hankins of stealing $10,000

3

from the hospital and had him arrested for theft. (*Id.*). There was no evidence to support the charges, and they were later dropped and expunged. (*Id.*).

Hankins later filed a lawsuit for slander against Norma, among others. (1 Supp. CR at 484–85, ¶ 15). The case was tried to a jury, which unanimously found that Norma had falsely and maliciously accused Hankins of stealing from the hospital. (*Id.* at 485, ¶ 15). In February 1978, a judgment for $600,000 was rendered against Norma and in favor of Hankins.[2] (*Id.*; *see also*, (1 Supp. CR at 291–93 (Appx. 4)). Roy was not a party to the judgment. (*Id.*). It is undisputed that Hankins abstracted his judgment against Norma in 1978. (1 Supp. CR at 485, ¶ 16; 2 Supp. CR at 1213). Norma's efforts to overturn the judgment on appeal were unsuccessful. (1 Supp. CR at 485, ¶¶ 17–18).

## C. Norma moves out of the Property with the intention of not returning, and Roy files for divorce.

While Norma's appeals of the judgment against her were pending, her marriage to Roy was ending. Roy and Norma stopped living together as husband and wife on or about March 7, 1980, with Roy filing for divorce 10 days later. (2 Supp. CR at 1148, 1213).

---

[2] Adjusted for inflation, a $600,000 judgment in February 1978 would today be equivalent to $2.193 million. *See* Bureau of Labor Statistics, CPI Inflation Calculator, available at *http://www.bls.gov/data/inflation_calculator.htm*, last visited October 6, 2015.

4

At the time the divorce was filed, Norma had vacated the Property and moved to Brownsville. (*Id.* at 1127–29). And Norma, at least between the time she separated from Roy in March 1980 and her September 2, 1980 post–judgment deposition, did not intend to return to the Property. (2 Supp. CR at 1113–15). Specifically, Norma testified in her deposition with regard to her living situation as follows:

> Q.   Let me ask it this way: Is it not now your intention and hasn't it been your intention since the time you separated from Dr. Roy to move back into the 2922 Bellaire Boulevard house as soon as possible?
>
> A.   You mean after I was divorced?
>
> Q.   Yes.
>
> A.   No.
>
> Q.   And even before?
>
> A.   No.
>
> ***
> Q.   Now, in spite of all that, do you still maintain and contend that it's not your intention to move back into that house as your home?
>
> A.   No, I have no intention of that.
>
> Q.   You have no intention of moving back?
>
> A.   I can't.

(2 Supp. CR at 1113–15).

Roy and Norma were divorced on June 20, 1980. (1 Supp. CR at 378–82 (Appx. 5)). As part of the divorce, Roy and Norma entered into a Marriage Settlement Agreement, which allegedly addressed the disposition of the Property. (1 Supp. CR at 383–402 (Appx. 6)). The Marriage Settlement Agreement stated that Roy "shall have and own [the Property] as his separate property." (*Id.* at 385). The Marriage Settlement Agreement also provided the following that "[t]itle to the house shall be transferred to and vested solely in Husband as his separate property[,]" and in return, "Husband agrees to pay Wife the sum of Fifty Thousand Dollars," which would be evidenced by a promissory note. (*Id.* at 387–88). There is no evidence that Roy ever paid Norma for the Property. (*See* 2 Supp. CR at 1131).

**D.** **After Norma abandons her undivided one–half interest in the Property, Hankins obtains a writ of execution, which eventually leads to Norma's interest in the Property being levied.**

Shortly after Norma divorced Roy and abandoned her undivided one–half interest in the Property, Hankins requested a writ of execution and requested that the constable levy upon this interest, which the constable did on August 6, 1980. (2 Supp. CR at 1145 (Appx. 7); *id.* at 426 (Appx. 8)). Later, on September 2, 1980, the constable sold all of Norma's

6

"estate, right, title, and interest" in the property. (*Id.*). Hankins was the winning bidder at the execution sale, which was completed at 10:30 a.m. (2 Supp. CR at 1154; *id.* at 489, ¶ 32). Hankins later received an execution deed, which conveyed to him "all of the estate, right, title, and interest" that Norma had in the Property. (*Id.*).

### E. Norma and Roy devise a scheme to put Norma's undivided one–half interest out of the reach of her judgment creditor, Hankins.

After receiving notice of the constable's sale, and without Hankins' knowledge, Norma and Roy sprang into action to prevent the execution sale.

Norma and Roy first applied for an *ex parte* restraining order to prevent Hankins and the constable from executing on Norma's undivided one–half interest in the Property. (1 Supp. CR at 185, ¶ 14). The application was filed on Roy and Norma's behalf by Matthew Hoffman's firm, which represented Norma in the divorce proceeding earlier that year. (*Id.* at 375–77, 474 (Appx. 9)). The court granted the temporary restraining order on August 29, 1980. (*Id.* at 474–76). But the order did not, *inter alia*, state the hour of issuance, define the injury, state why any harm or injury would be irreparable, or state why the order was granted without notice. (*Compare id. with* Tex. R. Civ. P. 680.) The court did set a bond in the amount of

7

$50,000. (*Id.* at 476). But Norma and Roy never paid the bond, and thus, the clerk never issued a writ. (2 Supp. CR at 876).

After failing in their attempt to get a valid and enforceable injunction, Roy and Norma then attempted to put Norma's undivided interest in the Property out of the reach of Hankins' levy by having Norma convey her interest to Roy. (1 Supp. CR at 478–80 (Appx. 10)). Specifically, Norma executed a Special Warranty Deed on September 1, 1980, in which she conveyed to Roy "the entirety of [her] right, title, and interest in and to" the Property, which would have been her undivided one–half interest. (*Id.* at 478). The Deed was executed on September 1, 1980 and filed the next day at 9 a.m. (*Id.* at 476–78). Roy also gave Norma a Deed of Trust to secure a promissory note in the amount of $50,000, which represented the purchase price. (1 Supp. CR at 146–50 (Appx. 11); *see id.* at 387–88) (divorce decree stated that Roy was to pay Norma $50,000 for her undivided interest in the property, to be evidenced by a promissory note).

Roy filed for bankruptcy on September 2, 1980 at 8:06 a.m. (1 Supp. CR at 186, ¶ 16). Roy listed Norma as a creditor on his bankruptcy schedule, and he listed the $50,000 he allegedly owed Norma for the Property, as evidenced by a vendor's lien and deed of trust that had been executed the day before. (1 Supp. CR at 425 (Appx. 12); *id.* at 146–50). Roy received a

final discharge from the bankruptcy court on May 19, 1981. (1 Supp. CR at 436 (Appx. 14)). Later that spring, Norma moved back into the Property and reconciled with Roy. (*See* 2 Supp. CR at 957–58).

**F. Throughout the years, the parties exchange multiple letters and engage in discussions regarding the Property and Hankins' desire to liquidate the same.**

Following the execution sale and bankruptcy proceeding, things between Hankins and the Harris family apparently cooled off. The next specific activity that anyone took with regard to the Property, at least what is in the record, was Roy conveying whatever interest he owned in the Property to Sarah in March 1984. (1 Supp. CR at 187, ¶ 20); *id.* at 287–88 (Appx. 15)). But Roy and Norma remained in possession of the Property, as Sarah stated in her interrogatory answers that she "had an informal arrangement to rent the Property to [her] mom and dad, off and on, from 1984 to 2005." (2 Supp. CR at 1143, Interrogatory No. 10).

After Roy conveyed his interest in the Property to Sarah, he apparently received a letter from an attorney representing Hankins. Roy again retained Hoffman to send a response. (*See* 1 Supp. CR at 407–14 (Appx. 16)). Hoffman allegedly wrote a letter to Hankins' attorney in July 1984. (*Id.*). In his letter, Hoffman referred to Roy as "our client." (*Id.*at

407). The letter was also sent to Roy and Norma. (*Id.* at 416). Sarah was not copied on the letter, nor was she mentioned in the letter. (*Id.*).

As to the substance of Hoffman's letter, he stated that it was his clients' position that Hankins' execution deed was void because of the temporary restraining order and the automatic bankruptcy stay. (1 Supp. CR at 407–14). Specifically, Hoffman represented that "Mr. Hankins has no legitimate interest" in the Property. (*Id.* at 408). But neither Norma nor Roy owned any interest in the Property when this letter was allegedly sent in July 1984. (1 Supp. CR at 187, ¶ 20; *see also*, *id.* at 150–51). Hankins asserts that he never received Hoffman's July 1984 letter. (2 Supp. CR at 1159, ¶ 4). Nor does Hankins know if his attorneys received Hoffman's July 1984 letter. (*Id.* at 941).

In 1990, Hankins found another attorney to help him in his effort to liquidate his interest in the Property. On September 7, 1990, Hoffman wrote Hankins' counsel again. (1 Supp. CR at 416–38 (Appx. 17). Hoffman wrote this letter in response to a conference call he had with Hankins' new attorney, during which Hoffman ascertained that "Hankins has come to you [Hankins' new counsel] with the thought that he may now have some action against our client, Dr. Norma Harris … ." (*Id.* at 416). Hoffman then represented that certain documents attached to the letter would show that

10

Hankins didn't have any "viable further cause of action." (*Id.*). Hoffman represented that Roy's bankruptcy discharge prevented Hankins from "taking any action to recover a debt, if any, incurred by the debtor prior to the initiation of the bankruptcy case." (*Id.* at 417). Specifically, Hoffman claimed that the discharge order "forbids any judicial action on any claims Mr. Hankins may have had against Dr. Roy Harris, the Chapter 7 Debtor." (*Id.*). Hoffman's letter concludes with him stating "[w]e have discussed this matter with Dr. Norma Harris, who is outraged by your client's attempt … to reopen [this matter.]" (*Id.* at 418). Neither Norma nor Roy owned the property when the 1990 letter was allegedly sent to Hankins. (2 Supp. CR at 983; *see also*, 1 Supp. CR at 150–51).

On October 6, 1992, Sarah purportedly conveyed the interest in the Property she received from her father in March 1984 back to him. (1 Supp. CR at 160–62). In 1996, Roy again conveyed whatever interest he had in the property back to Sarah. (*Id.* at 163–64).

In 2005, as at least a partial owner of the Property, Sarah retained Thomas McCaffrey to respond to another letter issued by Hankins' attorney. (1 Supp. CR at 439; 441–72). On March 8, 2005, McCaffrey merely resent Hoffman's letters, the attachments to the 1990 letter, and a letter from Hankins' attorney in 1984. (*Id.* at 441–72 (Appx. 18)).

McCaffrey didn't claim that Sarah was repudiating Hankins' interest in the property, nor does he state why he sent the letter. (*Id.* at 439–72).

### G. Harris files this lawsuit to declare Hankins' undivided one–half interest in the Property void.

Sarah sued Hankins and sought a declaratory judgment that: (1) she owns a fee simple interest in the Property, (2) Hankins owns no interest in the Property, and (3) Hankins' execution sale is void. (1 Supp. CR at 13, ¶27). Sarah also asserted a claim to quiet title and a claim for adverse possession. (*Id.* at 13–14, ¶¶ 28–36).

Hankins filed a counterclaim, asserting, *inter alia*, a trespass to try title claim and a request that the property be partitioned. (1 Supp. CR at 43–93).

### H. Sarah moves for summary judgment on her affirmative claims and Hankins' counterclaims.

Sarah filed two motions for summary judgment. (1 Supp. CR at 180–508; 2 Supp. CR at 1240–55). Sarah' first motion for summary judgment addressed her affirmative claims, while her second motion addressed Hankins' counterclaims. (*Id.*).

In her first motion for summary judgment, Sarah asserted the following four grounds: (1) Hankins' execution deed is void because the constable executed on homestead property, (2) Hankins' execution deed is

also void because the execution sale violated the automatic stay created by Roy's bankruptcy filing, (3) Hankins owns no interest in the Property because Norma didn't own an interest at the time of the time of the levy and execution sale, and (4) even if Hankins had an interest in the Property, Sarah adversely possessed that interest under the 3, 5, 10, and 25–year limitations periods. (*Id.* at 190–99).

The trial court granted Sarah's motion for summary judgment on her claims for declaratory judgment, action to quiet title, and adverse possession. (2 Supp. CR at 1237–39 (Appx. 1)). The trial court didn't specify why it granted Sarah's motion for summary judgment nor did it specify the grounds on which the motion was granted. (*Id.*).

In her second motion for summary judgment, Sarah claimed, *inter alia*,[3] that Hankins' claim for conversion failed as a matter of law. (2 Supp. CR at 1240–55). Specifically, Sarah claimed that Hankins' conversion claim failed because he allegedly never obtained any interest in the Property and thus, he was never a co–tenant. (*Id.* at 1244). Sarah didn't move for summary judgment on Hankins' claims for trespass to try title or partition in this second motion for summary judgment. (*Id.* at 1240–55).

---

[3] Hankins is not appealing the trial court's grant of Sarah's motion for summary judgment on his claims for unjust enrichment and promissory estoppel, or his request for declaratory relief.

The trial court signed a second summary judgment order on March 26, 2015, in which the court granted both of Sarah's motions for summary judgment and granted the same relief. (CR at 215–16 (Appx. 2)). Again, the trial court didn't specify its reasons for granting Sarah's motions for summary judgment. (*Id.*). The trial overruled Hankins' objections and special exceptions to both of Sarah's motions for summary judgment. (CR at 227 (Appx. 19)).

A final judgment was rendered on April 27, 2015. (CR at 226–27 (Appx. 13)). The final judgment declared the following: (1) Sarah owns the entire fee simple interest in the Property, (2) Hankins owns no interest in the Property, (3) the execution sale is void, and (4) Hankins' execution deed is void. (*Id.*).

## Summary of the Argument

The trial court erred in granting Sarah's motion for summary judgment and declaring that John Hankins owns no interest in the Property, and the trial court erred in declaring that Sarah owns the entire fee simple interest in the Property. Hankins asserts that he properly executed on Norma's undivided one–half interest in the Property, which she had abandoned as her homestead. Norma's interest in the Property wasn't subject to the automatic stay triggered by Roy's bankruptcy filing, as

any purported conveyance to Roy would be void. Regardless, at a minimum, Hankins still has perfected judgment and execution liens on the Property that could not been affected by the bankruptcy proceeding. Thus, Sarah failed to establish as a matter of law that Hankins owns no interest in the Property, and she failed to establish as a matter of law that she owns the fee simple interest in the Property free and clear of his interest or liens.

The trial court erred in granting Sarah's motion for summary judgment and finding that she adversely possessed Hankins' interest in the Property. Sarah failed to establish any of her adverse possession claims as a matter of law. Sarah's 3–year claim fails because she failed to establish a chain of title from the sovereign. Sarah's 10–year and 25–year claims have not yet ripen because the earliest possible date she could have repudiated Hankins' co–tenancy interest would have been March 8, 2005. And with regard to her 5–year and 10–year claims, Sarah failed to establish as a matter of law the required elements of actual, visible, continuous, and uninterrupted use, and failed to establish as a matter of law the requisite cultivation, use, and enjoyment of the Property that is necessary to adversely possess against a co–tenant.

For many of the same reasons, the trial court erred in granting Sarah's motion for summary judgment on Hankins' counterclaims for conversion, partition, and trespass to try title.

And finally, if the Court is to determine that the execution sale is void, the Court should reinstate the status quo and allow Hankins to either revive his judgment and execution liens or recognize their continued validity.

## Argument & Authorities

### A.    This Court reviews the grant of a summary judgment de novo.

Appellate courts review a trial court's grant of summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Traditional motions for summary judgments under Texas Rule of Civil Procedure 166a are reviewed in accordance with the following standards:

- the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law;

- in deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non–movant will be taken as true; and

- every reasonable inference must be indulged in favor of the non–movant and any doubts resolved in his or her favor.

*See Buck v. Palmer,* 381 S.W.3d 525, 527 (Tex. 2012).

The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of a material fact as to one or more of the essential elements of the plaintiff's cause of action. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 765 (Tex. 2007).

**B.      Sarah failed to establish as a matter of law that Hankins owns no interest in the Property. At a minimum, Hankins' judgment and execution liens attached to the Property and are still valid.**

Sarah claims that she is entitled to summary judgment as a matter of law because Norma owned no interest in the Property as of June 17, 1980. (1 Supp. CR at 194–95). Thus, Sarah claims that when Hankins attempted to execute on Norma's interest on September 2, 1980, there was no interest for him to execute upon. (1 Supp. CR at 194–95). Sarah bases this claim on the Divorce Decree and Marriage Settlement Agreement entered into by Roy and Norma. Sarah claims that these documents conveyed whatever interest Norma had in the Property to Roy as of June 17, 1980. (1 Supp. CR at 194). Sarah is wrong for several reasons.

**1. Even if the Divorce Decree and Marriage Settlement Agreement constitute a valid conveyance (they do not), any interest Roy acquired during the divorce proceeding was subject to Hankins' judgment lien.**

Any interest Roy obtained from Norma—either at the time the Divorce Decree was rendered in June 1980 or when Norma gave him the Special Warranty Deed in September 1980—was subject to Hankins' judgment lien, which Hankins perfected in 1978.

Filing and recording an abstract of judgment creates a judgment lien as to a judgment debtor's real property. TEX. PROP. CODE § 52.001; *Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Won v. Fernandez*, 324 S.W.3d 833, 834–35 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The purpose of an abstract of judgment is to: (1) create a judgment lien in the first place, and (2) provide notice to subsequent purchasers of that lien's existence. *Gordon*, 352 S.W.3d at 38. Thus, when an abstract of judgment is properly recorded and indexed, it creates a judgment lien that is superior to the rights of subsequent purchasers and lien holders. *Id.* at 39. Thus, it is axiomatic that if a judgment lien properly attaches to real property, a subsequent purchaser of that property purchases it subject to the judgment lien. *Id.*

18

Also, a valid levy creates an execution lien on the debtor's property in favor of the judgment creditor. *Gordon*, 352 S.W.3d at 39; *Won*, 324 S.W.3d at 835. A judgment lien and an execution lien work together so that "[i]f a judgment creditor obtains a judgment lien and then executes on the judgment, the date of the execution lien relates back to the date of the judgment lien, thereby giving the judgment creditor priority over other creditors with claims arising after the date of the judgment lien." *Gordon*, 352 S.W.3d at 39 (quoting *Won*, 324 S.W.3d at 835, n. 3).

Here, it is undisputed that Hankins filed and recorded his abstract of judgment in 1978. (1 Supp. CR at 485, ¶ 16; 2 Supp. CR at 1213). Shortly after Norma divorced Roy and abandoned her undivided one–half interest in the Property,[4] Hankins requested a writ of execution and requested that the constable levy on Norma's interest in the Property, which the constable did on August 6, 1980. (1 Supp. CR at 403; *id.* at 426). Thus, Hankins' judgment lien was perfected in 1978 by the filing and recording of his abstract of judgment, and his execution lien was perfected on August 6, 1980 when the levied was issued. Hankins' liens on Norma's property were superior to the rights of any subsequent purchasers, including Roy.

---

[4] Norma moved out of the home before the divorce was filed, and after the divorce was final, she had no intention of returning to the Property. Thus, Norma abandoned her homestead interest in the Property. As a result of her abandonment, Hankins' judgment lien attached to her undivided one–half interest in the Property. This will be discussed in more detail in § D–2.

*Gordon*, 352 S.W.3d at 39. Thus, any interest Roy may have acquired from Norma in 1980 was subject to Hankins' judgment lien. *Id.* So, even if Norma conveyed her interest to Roy in 1980, Hankins' lien was still valid and superior—Norma could not escape the effect of Hankins' judgment lien by merely conveying her interest in the Property. *Id.*

> **2. The Divorce Decree and Marriage Settlement Agreement didn't convey Norma's interest in the Property to Roy because the parties indicated a future or prospective intent to convey, rather than a present intent, which was confirmed by their later actions.**

Sarah claims that Roy acquired all of Norma's interest in the Property through the Divorce Decree and Marriage Settlement Agreement. Sarah is wrong because the Marriage Settlement Agreement, incorporated into the Divorce Decree, reflected Norma's and Roy's intent to effect a future transfer of Norma's interest in the Property, as opposed to an immediate transfer. This intent is evidenced by the language of the Marriage Settlement Agreement and Norma and Roy's actions in the months that followed, which culminated with Norma's execution of a Special Warranty Deed. Therefore, Roy didn't acquire Norma's interest in the Property through the divorce proceeding.

Conveyance by deed requires delivery of the deed. TEX. PROP CODE §5.021; *In Marriage of Merrikh*, No. 14–14–00024–CV, 2015 WL 2438770

20

at *6 (Tex. App.—Houston [14th Dist.] May 19, 2015, pet. filed) (citing *Noell v. Crow–Billingsley Air Park Ltd. P'ship*, 233 S.W.3d 408, 415 (Tex. App.–Dallas 2007, pet. denied). Delivery of a deed has two elements: (1) the grantor must place the deed within the control of the grantee (2) with the intention that the instrument becomes operative as a conveyance. *In Marriage of Merrikh*, 2015 WL 2438770 at *6; *Noell*, 233 S.W.3d at 415. The question of delivery of the deed is controlled by the intent of the grantor, and it is determined by examining all the facts and circumstances before, during, and after the execution of the instrument. *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 262 (Tex. 1974). Generally, title to transferred property vests upon execution and delivery of the deed. *Id.* at 261. Proof that a deed has been recorded gives rise to a presumption that the grantor delivered the deed with the intent to convey the property according to the terms of the deed. *Id.* at 261–62.

As an initial matter, there is no evidence that either the Divorce Decree or Marriage Settlement Agreement was recorded with the Harris County real property records, much less before Norma's interest was levied on August 6, 1980. (1 Supp. CR at 378–82; *id.* at 383–402). In fact, neither the Divorce Decree nor the Marriage Settlement Agreement could have been filed as a deed because neither document was attested to under the

21

hand and seal of the clerk for the court that rendered the judgment. (*Id.*); *see* TEX. PROP. CODE § 12.013 (2) ("A judgment of a court may be recorded if the judgment is attested under the signature and seal of the clerk of the court that rendered the judgment.") (effective January 1, 1984).[5]

Regardless of whether the Divorce Decree and Marriage Settlement Agreement were recorded or recordable, neither constituted a conveyance, as evidenced by the parties' intent and actions before and after their execution of the Marriage Settlement Agreement. Specifically, Norma's and Roy's actions indicate that they did not intend for either the Divorce Decree or the Marriage Settlement Agreement to operate as a conveyance of Norma's interest.

First, the Marriage Settlement Agreement specifically stated that "[t]itle to the house shall be transferred to and vested solely in [Roy] as his separate property." (1 Supp. CR at 387–88). Likewise, in return for Norma conveying her title to the house, Roy "agree[d] to pay [Norma] the sum of $50,000" that was to be evidenced by a promissory note in the same amount. *Id.* These phrases—"shall be," and "agrees to pay"—indicate a future, or prospective, intent to convey and assign rather than a present

---

[5] The predecessor statute in effect in 1980, Article 6635 Vernon's Texas Civil Statutes, was substantially similar: "County clerks shall record all judgments and abstracts of judgments rendered by any court of this State presented to him for record when attested under the hand and seal of the clerk of the court where such judgment was obtained."

intention. *See, e.g., Commercial Structures and Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 833 (Tex. App.—Fort Worth 2006, no pet.) (The use in the assignment of phrases such as "agree to convey" and "agrees to assign" by themselves indicate a future, or prospective, intent to convey and assign rather than a present intention.); *Chambers County v. TSP Development, Ltd.*, 63 S.W.3d 835, 839 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (real estate contract language that stated "Seller agrees to sell and Buyer agrees to buy" was prospective, suggesting that the actual sale may take place in the future but is not being effectuated by the present contract itself.); *Allodial Ltd. P'ship v. North Tex. Tollway Auth.*, 176 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied) (that provision indicating that party "shall assign over to Allodial all rights" due from causes of action did not effect a present assignment of those rights). Thus, the Marriage Settlement Agreement failed to evidence a present intent to become immediately operative as a conveyance. (*See* 2 Supp. CR at 1132) (Roy gave his deposition a month after the divorce was final and testified that the deed of Norma's interest to him was "in the process").

Second, Norma and Roy later executed a deed of trust, promissory note, and special warranty deed. (1 Supp. CR at 478–80; (1 Supp. CR at

23

146–50). If Norma and Roy believed that the Divorce Decree and Marriage Settlement Agreement constituted a conveyance of Norma's interest, there would not have been any need for them to later execute a deed of trust or a special warranty deed.

Third, Norma and Roy's attorney, Matthew Hoffman, later represented that Norma "transferred her undivided fifty percent (50%) interest in the Homestead Property to Roy Harris by Special Warranty Deed, pursuant to the above–mentioned June 20, 1980 Divorce Decree." (*Id.* at 410). So, some four years after the rendition of the Divorce Decree, Norma's and Roy's attorney admitted that the Special Warranty Deed was executed pursuant to the divorce decree. (*Id.*). So, Roy didn't acquire Norma's undivided one–half interest in the Property through the Divorce Decree and Marriage Settlement Agreement.

### 3. Sarah's claim that the Marriage Settlement Agreement is an executory contract that vested Roy with equitable title on the date the Divorce Decree is flat wrong.

Sarah also sheepishly claimed in a footnote that, under the divorce decree, Roy obtained equitable title to Norma's share of the Property because the decree purportedly operated as executory contract. (1 Supp. CR at 195, n. 8). Sarah is wrong again.

24

An executory contract for the sale of real estate contemplates that the purchaser will complete performance in the future, that is, finishing making payments *before* title to the property passes. *See Morton v. Nguyen*, 412 S.W.3d 506, 509–10 (Tex. 2013) (emphasis added) ("A contract for deed, unlike a typical secured transaction involving a deed of trust, is a financing arrangement that allows the seller to maintain title to the property until the buyer has paid for the property in full.)"; *see also, Smith v. Davis*, 462 S.W.3d 604, 609 (Tex. App.—Tyler 2015, pet. denied) (unlike a traditional mortgage, an executory contract allows the seller to retain title to the property until the purchaser had paid for the property in full).

This is not the case here. Under the Marriage Settlement Agreement, the transfer of Norma's title was not contingent on Roy paying the entire purchase price. (1 Supp. CR at 387–88). Instead, Norma and Roy agreed that "title to the house shall be transferred" to Roy, and more important, they agreed that "[i]n return for the disposition of this asset to [Roy], [Roy] agrees to pay [Norma] the sum of ... $50,000 ... ." (*Id.*; *see* 2 Supp. CR at 1132) (Roy gave his deposition a month after the divorce was final and testified that the deed of Norma's interest to him was "in the process"). Thus, the Marriage Settlement Agreement was not an executory contract because Norma and Roy didn't contemplate a *future* transfer of title upon

the payment of the full purchase price. (*Id.*). Thus, unlike a typical executory contract, where title is transferred in the future upon the full payment of the purchase price, Roy could obtain Norma's legal title under the Marriage Settlement Agreement *before* paying the purchase price.

Also, Sarah's claim that the Divorce Decree and Marriage Settlement Agreement constitute an executory contract is puzzling in light of the deed of trust executed by Roy. In an executory contract, a purchaser who goes into possession has equitable title, with the seller holding legal title. *See Johnson v. Wood*, 157 S.W.2d 146, 148 (Tex. 1941); *see also, Morton*, 412 S.W.3d at 509–10. Conversely, in a deed of trust, the seller, *i.e.*, Norma, retains equitable title, while the buyer, Roy, acquires legal title. *Flag–Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987). So, Norma didn't convey equitable title to Roy, as would be the case with an executory contract, but rather she actually conveyed *legal title* to Roy, subject, of course, to Hankins' judgment lien.

### C. Sarah failed to establish as a matter of law that the automatic bankruptcy stay applied to the execution sale. Even if it did, Court should return the parties to the status quo.

Sarah next claims that the execution sale, and any interest Hankins acquired at the sale, is void because of the automatic bankruptcy stay triggered by Roy's bankruptcy filing. (1 Supp. CR at 193 (citing 11 U.S.C. §

26

362(a)). Specifically, Sarah claims that Roy's bankruptcy petition triggered an automatic stay that prevented the execution sale from going forward—even though the execution sale only involved Norma's "estate, right, title, and interest" in the Property. In other words, because Roy owned at least an undivided one–half interest in the Property, this ownership interest and the bankruptcy stay prevented any execution sale from going forward against Norma's "estate, right, title, and interest" in the Property, despite the fact that Norma wasn't a bankruptcy debtor or a debtor's spouse. Sarah is wrong because the purported transfer from Norma to Roy is void and of no effect under then existing Texas law. But even if Sarah were correct, Hankins' judgment and execution liens are still valid, which presents the Court with an opportunity to restore the status quo.

> **1.** **Even if Norma conveyed her interest in the Property to Roy, that conveyance was void and thus, not part of the bankruptcy estate.**

At the time of Norma's attempted conveyance to Roy, the conveyance was void under Texas law and passed no title. Sections 24.02 and 24.03 of the Business and Commerce Code in effect in 1980 dictated that all fraudulent conveyances were void. TEX. BUS. COM. CODE §§ 24.02, 24.03 (Vernon 1968) (Acts 1967, 60th Leg., vol. 2, p. 2619, ch. 785, § 4, eff. Sept. 1, 1967) (attached as Appx. 20). Specifically, § 24.02(a) provided that a

transfer of real property "is void with respect to a creditor" if the transfer "was intended to (1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become, entitled, or (2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled." *Id.* at § 24.02 (a) (1–2); *see also, Texas Sand Co. v. Shield,* 381 S.W.2d 48, 54 (Tex. 1964).

The Supreme Court of Texas construed substantially similar language and held that fraudulent conveyances are void as to the fraudulent grantor's creditors. *Eckert v. Wendel*, 40 S.W.2d 796, 797 (Tex. 1931). Thus, any fraudulent conveyance as to creditors is void as to such creditors. *Texas Sand Co. v. Shield*, 381 S.W.2d 48, 54 (Tex. 1964). As a result, the Supreme Court stated:

> It necessarily follows that the legal as well as the equitable title remains in the debtor for the purpose of satisfying debts. Thus, when the creditor obtains a judgment against the debtor, and properly records and indexes an abstract of judgment, the creditor acquires a lien upon the land just as though no transfer had been made.

*Id.*

Here, Sarah was required to show that Norma's interest passed to Roy through a valid conveyance as a matter of law. She failed to do so and cannot do so. Norma's conveyance to Roy, her ex–husband at the time, was

in fraud of her creditor, Hankins. The facts in the record show that Norma and Roy attempted to obtain a restraining order to stop the sale, but failed to obtain a valid restraining order, much less pay the bond established by the court. When the restraining order route didn't work, Norma next tried to convey her interest in the Property to Roy the *day before* he filed for bankruptcy (and listed the promissory note he owed to Norma as a debt on his schedules. There is no evidence he ever paid the purchase price or the note). Thus, there was a clear intent to shelter Norma's interest in the Property from her judgment creditor. These acts reek of fraud. This fraudulent conveyance, under Sections 24.02 and 24.03 of the Business & Commerce Code then in effect in 1980, rendered Norma's conveyance to Roy void. *Eckert*, 40 S.W.2d at 797; *Texas Sand Co.*, 381 S.W.2d at 54. Therefore, Sarah failed to establish as a matter of law that Norma's conveyance to Roy was legally valid. And if Norma's conveyance was void, then her purported conveyance to Roy passed no title that could become part of his bankruptcy estate.

**2. Norma's interest didn't pass to Roy, and thus, her interest in the Property was not a part of his bankruptcy estate or subject to the automatic stay.**

As discussed above, Sarah failed to establish as a matter of law that Norma's conveyance to Roy was valid. Therefore, Sarah cannot establish as

29

a matter of law that Norma's interest in the Property was subject to the automatic stay because if Norma's interest didn't pass to Roy, her separate interest in the Property did not become part of his bankruptcy estate.

Generally, the filing of a bankruptcy petition creates a bankruptcy estate under § 541 of the Bankruptcy Code. 11 U.S.C. § 541.[6] And all property of the bankruptcy estate is subject to the automatic stay provision of § 362 of the Bankruptcy Code.

But the automatic stay doesn't apply to a non–debtor's interest in property jointly owned with a debtor, unless the property is community property. For example, § 541(a)(1) states that "all legal or equitable interests of the debtor in property as of the commencement of the case" is property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). This section doesn't apply to any legal or equitable interests of non–debtors. *Id*. In other words, Norma's separate, undivided one–half interest in the Property was not a part of Roy's bankruptcy estate. *Id*. This is confirmed by other sections of the Bankruptcy Code.

Under § 363 of the Code,[7] if certain conditions exist, "the trustee may sell both the estate's interest ... and the interest of any co–owner in

---

[6] Section 541 of the Bankruptcy Code in effect on September 1, 1980 is substantially similar to Section 541 in effect today. A copy of the 1978 Code is attached as Appx. 21.

[7] *Id*.

property in which the debtor had, immediately before the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety." 11 U.S.C. § 363(h). So, § 363(h) of the Code recognizes the separate interests of the bankruptcy estate and non–debtor co–owners in jointly owned property. *Id.* This claim is further solidified by § 363(j) of the Code, which states that, "[a]fter a sale of property to which [§ 363(h)] applies, the trustee shall distribute to the debtor's spouse or the co–owners of such property, as the case may be, and to the estate, the proceeds of such sale, … according to the interests of such spouse or co–owners, and of the estate." *Id.* § 363 (j). Thus, a non–debtor's interest in property that he jointly owns with a bankruptcy debtor is not a part of the debtor's bankruptcy estate. *Id.*

Hankins' position is supported by the caselaw, as courts have held that real property held as joint tenants by spouses is not community property that would be included in one spouse's separate bankruptcy estate. *See In re Berry*, 295 B.R. 385, 393–94 (D. N.M. 2003); *see also, In re Summers*, 332 F.3d 1240, 1242–44 (9th Cir. 2003).

And Hankins' position is supported by the bankruptcy judge's ruling on Roy's motion for recognition of the automatic stay. On the day he filed for bankruptcy, Roy filed a motion for recognition of the automatic stay

31

with the bankruptcy court. That afternoon, the bankruptcy court granted Roy's motion for recognition of the automatic stay. (1 Supp. CR at 433). But the bankruptcy judge modified Roy's proposed order, and ordered the following:

> It is therefore, ORDEDERED, ADJUDGED, AND DECREED that the scheduled Constable Sale of the real property located at 2922 Bellaire Boulevard, Houston, Texas, or any interest therein *owner the Debtor* is prohibited by the automatic stay …, and that any further attempt to execute on the *Debtor's* property outside of the Bankruptcy Court … is stayed pursuant to the provisions of Section 362 during the pendency of this case.

(1 Supp. CR at 433) (additions by bankruptcy court emphasized).

As the Court can see, the bankruptcy court's decision—that Norma's interest in the Property was not subject to the automatic stay—is in line with Hankins' assertion: Norma's interest in the Property was not part of the bankruptcy estate nor was it subject to the automatic stay because she owned a separate interest in joint property and was not the debtor or the debtor's spouse. Therefore, Hankins' execution on Norma's interest in the Property was proper.

**3.** **Even if Norma's interest in the Property were subject to the automatic stay, the Court should restore the parties to the status quo, revive Hankins' judgment, and revive his judgment and execution liens.**

Even if the bankruptcy stay were in effect and reached to Norma's undivided one–half interest in the Property, there is no evidence that the bankruptcy discharge invalidated Hankins' judgment lien or his execution lien on Norma's undivided one–half interest in the Property. Nor is there any evidence that Roy's bankruptcy discharge invalidated his levy on Norma's interest in the Property. Therefore, even if the automatic stay applied and voided the execution sale, which Hankins disputes, Hankins' judgment and execution liens are still valid and enforceable.

In 1975, the Texas Legislature amended Title 90 of the Revised Civil Statutes of Texas by adding Article 5449(a), titled "Discharge of judgments and judgment liens against bankrupts." Under Article 5449(a), §§ 1 and 4, Roy's bankruptcy discharge would have invalidated Hankins' judgment and execution liens only if underlying judgment at issue was against Roy. TEX. REV. CIV. STAT. art. 5449(a) §§ (1, 4) Act of June 19, 1975, 64th Leg., R.S., ch. 396, §§ 1, 4, 1975 Tex. Gen. Laws 1030, (Attached as Appx. 22) (emphases added) repealed by Act of 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3729, 3730. But Roy wasn't the judgment debtor;

Norma was the judgment debtor. (1 Supp. CR at 291–93). And it is undisputed that Norma never filed for bankruptcy protection. Because Roy wasn't the judgment debtor, his discharge could not wipe out Hankins' liens under then–existing Texas law. TEX. REV. CIV. STAT. art. 4459(a)(1, 4). So, Hankins' judgment and executions liens, and the levy, are still in effect and enforceable.

Additionally, under settled Texas law, an execution lien is effective from the time of the levy and continues in effect until it is lost or abandoned, or in some way ceases to have vitality and effect. *Texas Employer's Ins. Ass'n v. Engelke*, 790 S.W.2d 93, 95 (Tex. App.—Houston [1st Dist.] 1990, no writ) (citing *Borden v. McRae*, 46 Tex. 396, 400 (Tex. 1877)). In *Borden*, the Texas Supreme Court said: "By the levy, the land is subject to the process of the court, and liable to sale for the satisfaction of the plaintiff's demand, and it thereby becomes subject to a lien or specific charge for this purpose from the date of the levy, until it is lost or abandoned, or in some way ceases to have vitality or effect." *Id*. Thus, even if the execution sale is set aside, Hankins' execution lien, as evidenced by the levy, would still be effective. *Id*.

Furthermore, it is widely held that upon setting aside an execution sale, all parties should be returned to status quo as far as possible. *Keda*

*Dev. Corp. v. Stanglin*, 721 S.W.2d 897, 902 (Tex. App.—Dallas 1986, no writ) (citing *House v. Robertson*, 36 S.W. 251, 253 (1896)); *see also, Townsend v. Smith*, 20 Tex. 465, 470 (Tex. 1857) (if execution sale is void, the judgment is revived and remains unsatisfied). For example, when an execution sale is set aside, the purchaser is entitled to a return of the purchase money paid. *Id.* at 903 (citing *Elam v. Donald*, 58 Tex. 316 (Tex. 1883)). If a purchaser at an execution sale were subject to losing not only the property that he won at the sale, but also the money he paid for the property, this would have a chilling effect on bidding at execution sales and would result in lower prices that would be against the interests of judgment debtors and the public. *Id.* at 903. Thus, Hankins' judgment should be revived to the extent it was satisfied from the proceeds of the sale; and the judgment creditor should be entitled to interest on the revived judgment as if the sale had not been held. Robin Russell and James W. Paulsen, 1 TEX. PRAC. GUIDE CREDITORS RIGHTS § 10:174 (2015). Also, any set–aside should revive any liens on the property that were extinguished by the sale and the liens reattach to the property, with the same priority and effect as if there had not been a sale. *Id.*

Therefore, even if the automatic stay applied, Roy's discharge had no effect on Hankins' judgment and execution liens. Thus, the trial court erred

in granting Sarah's motion for summary judgment and determining that Hankins has "no interest" in the Property. And if even the automatic stay applied to void the execution sale, the parties should be returned to the status quo, with Hankins' liens revived.[8]

**D. Sarah failed to establish as a matter of law that Hankins executed on homestead property. Rather, the evidence shows that Hankins executed on Norma's undivided, one–half interest in the Property, which she had abandoned.**

Sarah also claims that the execution sale and thus, Hankins' title under that sale, is void because Roy's homestead protection as to his undivided one–half interest in the Property protected the entirety of the Property from the execution sale. Sarah is wrong.

**1. Limits on homestead protections do exist: The homestead protection doesn't protect property interests that are not the debtor's actual homestead.**

While Texas homestead rights are expansive, they are not unlimited. While the courts have always given a liberal construction to the constitution

---

[8] It is anticipated that Sarah will argue that Hankins' liens cannot be revived because he released any claims he may have had against Norma and Roy. (1 Supp. CR at 234–35). But Sarah expressly didn't move for summary judgment on the release. (*Id.* at 189, fn.6). But it is undisputed that the general release was executed on March 3, 1981, more than two months *before* Roy's received his discharge from the bankruptcy court. (*Id.* at 234–35; 412). There is no evidence in the record that indicates whether the money paid to Hankins was not property of Roy's bankruptcy estate. Nor is there any evidence the bankruptcy trustee approved the settlement. Under Sarah's logic, such a transaction is void because it allegedly violated the automatic bankruptcy stay. Thus, if the Court were inclined to void the execution sale and restore the status quo, it should set aside the general release as well, revive Hankins' liens, and place the parties back at square one.

and statutes to protect the homestead rights, it is clear the courts cannot protect that which is not homestead. *Dominguez v. Castaneda*, 163 S.W.3d 318, 330 (Tex. App.—El Paso 2005, pet. denied). Thus, while the courts construe homestead laws generously, they cannot unduly stretch the homestead laws beyond their constitutional and statutory limits and protect an interest that is not a homestead. *Norris v. Thomas*, 215 S.W.3d 851, 854 (Tex. 2007). So, if Norma's undivided one–half interest in the Property was not her homestead at the time of the levy, her interest was thus subject to being levied and executed upon. *See Womack Humphreys Architects, Inc. v. Barrasso*, 83 S.W.3d 211, 213 (Tex. App.—Eastland 2002, no pet.) (permitting a forced sale on spouse's non–homestead interest in the property, subject to the wife's existing homestead right).

> **2.** **Norma possessed a vested homestead interest in the Property that was separate and independent from Roy's interest. But she abandoned that interest when she moved out of the home with no intention of returning, with her abandonment becoming effective on the date of her divorce.**

Norma's abandonment of the Property and later divorce allowed Hankins' liens to attach, and thus, her interest in the Property was subject to execution.

When more than one person owns an interest in homestead property, there is a co–tenancy. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d

125, 131 (Tex. 1991) (holding that former wife's interest in her homestead was held in co–tenancy with a mortgagee who succeeded her former husband's 26.17% fee simple interest); *Sayers v. Pyland*, 161 S.W.2d 769, 773 (Tex. 1942) (holding that it is "well–settled that, while one tenant in common may acquire homestead rights in the common property, the rights so acquired are not superior to the rights and remedies of the other joint owners.). Also, homestead rights "vest independently in each spouse regardless of whether one spouse, or both, actually owns the fee simple interest in the homestead." *In re Rogers*, 461 U.S. 677, 685 (1983). Here, it is undisputed that Norma had a homestead interest in her undivided one–half interest in the Property before March 1980. But once she abandoned the homestead and got divorced, she lost that homestead interest.

Generally, a judgment lien that has been properly abstracted cannot attach to a homestead as long as the property remains homestead. *Wilcox v. Marriott*, 103 S.W.3d 469, 473 (Tex. App.—San Antonio 2003, pet. denied). Property that has been designated as a homestead will only lose that character through abandonment, death, or alienation. *See Florey v. Estate of McConnell*, 212 S.W.3d 439, 443–44 (Tex. App.—Austin 2006, pet. denied). Thus, if the judgment debtor abandons the homestead property, the judgment lien attaches to the property. *Wilcox*, 103 S.W.3d at 473.

"To be an abandonment that would subject such property to seizure and sale, there must be a voluntary leaving or quitting of the residence with a then present intent to occupy it no more as a home … ." *Pierce v. Washington Mut. Bank*, 226 S.W.3d 711, 715 (Tex. App.—Tyler 2007, pet. denied) (quoting *King v. Harter*, 8 S.W. 308, 309 (Tex. 1888)). To show abandonment of one's homestead interest, the party claiming abandonment must show that the homestead claimant moved with the intention of not returning to the property. *See Taylor v. Mosty Bros. Nursery, Inc.*, 777 S.W.2d 568, 569 (Tex. App.—San Antonio 1989, no writ). But one spouse's abandonment of the homestead does not expose the property to a forced sale because a homestead cannot be abandoned without the consent of the claimant's spouse—if the homestead claimant is married. TEX. PROP. CODE §41.004.

Here, Norma abandoned the Property. Roy and Norma stopped living together as husband and wife in March 1980. (2 Supp. CR at 1148). Likewise, Roy filed for divorce in March 1980. (*Id.* at 1148, 1213). At the time the divorce was filed, Norma had vacated the Property and moved to Brownsville. (*Id.* at 1127–29). And Norma, at least between the time she separated from Roy and her September 2, 1980 post–judgment deposition, had moved to Brownsville with no intention of returning to the Property to

39

live. (2 Supp. CR at 1113–15); *Taylor*, 777 S.W.2d at 569. Thus, as of the date of the execution sale, Norma voluntarily left or quit the homestead, moved to Brownsville, and did not intend to return to the Property to live. *See Pierce*, 226 S.W.3d at 715. This constitutes an abandonment of Norma's homestead interest in the Property.

And Norma's abandonment was effective on the date of divorce, June 20, 1980. A similar abandonment issue involving a divorce was present in *In re Johnson*. In *Johnson*, the court was "faced squarely with the issue of whether two ex–spouses, both with fifty (50%) percent property interest in a home, can each assert homestead rights even though both do not live in the home. *In re Johnson*, 112 B.R. 15, 17 (E.D. Tex. 1990). Specifically, a debtor was awarded a one–half interest in her marital home in her divorce proceeding, and the other one–half interest was awarded to her ex–husband. *Id.* at 16. The debtor claimed that her one–half interest in the property was subject to the homestead protection even though she no longer occupied the home. *Id.* The court disagreed. *Id.* The court held that the ex–wife's homestead interest in the marital home was lost as of the date she (1) became divorced, and (2) ceased to occupy the home. *Id.* at 17.

The same result should apply here: Norma's homestead interest in the Property was lost as of date she (1) became divorced, and (2) abandoned

the Property. Therefore, as of June 20, 1980, the date of Norma's divorce, she no longer had a homestead interest in the Property, which dictates that Hankins' judgment lien attached to her undivided one–half interest and subjected it to execution. *Id.*; *see Wilcox*, 103 S.W.3d at 473

### 3. Roy's homestead interest in the Property could not prevent the forced sale of Norma's interest in the Property.

Sarah essentially claims that Roy's undivided one–half interest in the Property protected the entire Property from the execution sale. Sarah is wrong.

Again, homestead rights "vest independently in each spouse regardless of whether one spouse, or both, actually owns the fee simple interest in the homestead." *In re Rogers*, 461 U.S. 677, 685 (1983). And a claimant's homestead interest can extend only to the interest in the property that she owns. *See Patterson v. First Nat'l Bank of Lake Jackson*, 921 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1996, no writ) (stating that an ex–wife's family homestead extends only to her proportional interest in the residence); *Heggen v. Pemelton*, 836 S.W.2d 145, 150 (Tex. 1992) (stating "the homestead right extends only to the proportional interest of a former spouse with a present right of possession). Thus, one's homestead right in property can never rise any higher than the

41

right, title, or interest that the claimant owns in the property. *See Sayers v. Pyland*, 161 S.W.2d 769, 773 (Tex. 1942). This means that Roy's homestead rights in his undivided one–half interest of the Property cannot operate to protect the entire Property from an execution sale when the sale is limited to his ex–wife's separate, abandoned, undivided one–half interest in the Property.

The Eastland Court of Appeals agreed with Hankins' position in *Barrasso*. There, the court of appeals held that a judgment creditor like Hankins could foreclose on one spouse's non–homestead interest in property, such as Norma's, that was subject to the homestead protection of another spouse, like Roy. *Womack–Humphreys Architects, Inc. v. Barrasso*, 83 S.W.3d 211, 213 (Tex. App.—Eastland 2002, no pet.). Specifically, the husband purchased a house in Plano before he married his wife. *Id.* at 211–12. After the marriage, the wife moved into the house, but the husband continued to reside overseas. *Id.* at 212. At some point, a judgment was taken against the husband. *Id.* The judgment creditor then sought to execute on its judgment, just as Hankins did in this case. *Id.* The wife obtained an injunction against the execution on the Plano property, claiming that the property was her homestead, as Roy did in this case. *Id.* The judgment creditor, as Hankins did in this case, responded by asserting

that it was merely executing against the husband's interest in the property. *Id.*; (*see also,* 1 Supp. CR at 403) (levy and execution lien was against all of Norma's "estate, right, title, and interest" in the Property). The trial court issued an injunction stopping the sale. *Id.*

The court of appeals reversed. *Barrasso*, 83 S.W.3d at 213. While it was unclear whether the husband had a homestead interest in the Plano house, the record established that the wife, as did Roy in this case, did have a homestead interest. *Id.* at 212. But the court of appeals was not persuaded by this fact because the judgment creditor was not attempting to execute on the wife's homestead interest, but rather, the judgment creditor, like Hankins here, was trying to execute on the husband's non–homestead interest. *Id.*; (*see also,* 1 Supp. CR at 403) (levy and execution lien was against all of Norma's "estate, right, title, and interest" in the Property). Thus, the court of appeals held that the judgment creditor was entitled to execute on its judgment against the husband's interest in the Plano house, subject to the wife's homestead interest in the property. *Id.* at 213. Like *Barrasso*, Hankins was authorized to execute on Norma's separate, undivided one–half interest in the Property.

Sarah disagrees with this conclusion, relying on the Austin Court of Appeals' decision in *Fairfield Financial Group v. Synnott*. In *Synnott*, the

couple purchased their homestead in 1984. *Fairfield Fin. Group, Inc. v. Synnott*, 300 S.W.3d 316, 319 (Tex. App.—Austin 2009, no pet.). A judgment was taken against the husband and abstracted 1992. *Id.* The husband moved out of the homestead in 1997 and filed for divorce. *Id.* In January 1998, the husband executed an agreement incident to the divorce, the court signed the parties' divorce decree, and the husband conveyed his undivided one–half interest in the homestead to his ex–wife. *Id.*

The husband's creditor asserted that he had abandoned the homestead and thus, the judgment lien attached to the property. *Id.* at 321. The Austin Court of Appeals disagreed. *Id.* The court determined that the timing and effect of the husband's actions "were irrelevant because the property remained at all relevant times protected by [ex–wife's] undivided homestead interest in the property." *Id.* Thus, despite recognizing the fact that a lien attaches to property when it loses its homestead character, the court held that homestead property is wholly exempt from the attachment of judgment lien (other than those specifically listed in the Property Code) so long as the remaining spouse retains her homestead interest. *Id.* This cannot be the law for two reasons.

First, if one spouse wants to make the conscious choice to voluntarily leave and abandon their separately vested homestead rights, as opposed to

44

death, incarceration, or other involuntary disposition, that abandonment should have consequences, including the attachment of liens that wouldn't otherwise attach. One spouse's abandonment doesn't reduce the other spouse's separately vested homestead rights. *See Sayers*, 161 S.W.2d at 773 (one's homestead right in property can never rise any higher than the right, title, or interest that the claimant owns in the property). Conversely, by allowing the spouse in possession to enjoy not only her homestead rights, but also the separately vested homestead rights of her spouse who abandoned the homestead, means that one spouse *can* acquire a homestead interest greater than the proportional right, title, or interest she owns. This is not the law.

Second, the *Synnott* holding (and Sarah's position in this case), taken to its logical extreme, means that as long as one person maintains an interest in homestead property, no matter how fractional (*e.g.*, 1%), that fractional interest is sufficient to protect the entire property. This is problematic because it is ripe for abuse. No family or single adult is allowed to have two homesteads at the same time under Texas law. *Silvers v. Welch*, 91 S.W.2d 686, 687 (Tex. 1936). But under *Synnott*, a debtor could easily put assets out of the reach of creditors by granting family members fractional shares in rental homes and then have those family members (or

45

friends, or trusted tenants, or confidants) claim the homestead protection for each property. In other words, even though the debtor's rental properties are not his homestead, they would be still be protected from execution if *anyone* could claim *any* homestead interest in a piece of property. This is an extreme example, but it is exemplar of the absurdity that could arise. Again, if an individual makes a conscious decision to abandon his homestead, then that interest should be available to creditors.

### 4. Any claim by Sarah that Roy owned 100% of the Property on the execution date and thus, this interest protected the Property from the execution sale would lack merit.

It is anticipated that Sarah will claim that Norma's purported conveyance to Roy on September merged their separate homestead interests into Roy, and thus, the Property was protected from being executed upon.

If there is a dispute between the purchaser of property at an execution sale and one who contends the property was not subject to sale by virtue of homestead rights, the issue is to be determined with reference to the status of the property at the time the execution was levied. *Ingle v. Lea*, 8 S.W. 325, 326 (Tex. 1888). Property is not subject to a forced sale if it was actually impressed with the homestead character at the time of the levy. *Id.* If the claimant attempts to impress the homestead character on the

property after the levy, the rights of the purchaser at the execution sale are superior. *Baird v. Trice*, 51 Tex. 555, 560 (Tex. 1879).

Here, on the date of the levy, August 6, 1980, Norma's undivided one–half interest in the Property was not her homestead. As discussed above, Norma abandoned the homestead by moving to Brownsville with the intent of not returning, and this abandonment was effective on June 20, 1980, the date her divorce was finalized. And as of the date of the levy, Norma had not yet conveyed or tried to convey her interest in the Property. So, as of the date of the levy, Norma's separate undivided one–half interest in the Property was not homestead and thus, it was subject to execution. Any attempt after the date of the levy to attach the homestead protection to Norma's separate, undivided one–half interest in the Property is ineffective. *Ingle*, 8 S.W. at 326.

### E. Sarah failed to establish any of adverse possession claims as a matter of law.

Harris also claims that even if Hankins had an interest in the Property, she adversely possessed that interest. Again, Sarah is wrong—she failed to establish her claim of adverse possession as a matter of law.

### 1. Overview of adverse possession in Texas.

The doctrine of adverse possession is based on statutes of limitation for the recovery of real property. TEX. CIV. PRAC. & REM. CODE §§ 16.021–

037. Thus, if there is a dispute concerning the possession of real property, the rightful owner of the property must file suit within a specified period of time (3, 5, 10, or 25 years, depending on various statutory factors and conditions) or be barred from recovering the property. *Id.* Not only are suits for recovery of possession by the rightful owner barred, adverse possession provisions operate to vest the adverse claimant with title to the property. *Id.* at § 16.030(a). Thus, "[t]he concept of adverse possession allows a person to *claim* title to real property presently titled in another." *Session v. Woods*, 206 S.W.3d 772, 777 (Tex. App.—Texarkana 2006, pet. denied) (emphasis in original).

To prove a claim for adverse possession, a claimant must establish six elements: (1) actual possession of the disputed property, (2) that is open and notorious, (3) that is peaceable, (4) under a claim of right, (5) that is adverse or hostile to the claim of the owner, and (6) consistent and continuous for the duration of the statutory period. *Dyer v. Cotton*, 333 S.W.3d 703, 710 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Due to the harsh nature of disenfranchising someone of title otherwise rightfully held, establishing title by adverse possession is not well–regarded in the law, and the statutory prerequisites must be strictly complied with. *Wells v. Johnson*, 443 S.W.3d 479, 488 (Tex. App.—

Amarillo, pet. denied) (citing *Thomas v. Southwestern Settlement & Dev. Co.*, 131 S.W.3d 31, 34 (Tex. Civ. App.—Beaumont 1939, writ dism'd, judgment correct)).

**2. A claimant seeking to adversely possess a co–tenant's interest in land has a more onerous burden—the claimant must also prove clear, unequivocal, and unmistakable repudiation of the common title.**

Generally, a co–tenant may not adversely possess against another co–tenant unless it clearly appears that he has repudiated the title of his co–tenant and is holding adversely to him. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003) (citing *Todd v. Bruner*, 365 S.W.2d 155, 156 (Tex. 1963)). Thus, where a co–tenancy is involved, an adverse possession claimant has a more onerous burden of proof. *Sebesta v. Daniels*, 812 S.W.2d 641, 645 (Tex. App.—Houston [14th Dist.] 1991, writ denied). This is because possession by a co–tenant is presumed to be in right of common title. *Id.* (citing *Todd*, 365 S.W.2d at 160. A co–tenant may claim adversely to another co–tenant only if he has repudiated the co–tenancy and notice of such repudiation has been brought home to the other co–tenant. *Id.* (citing *Todd*, 365 S.W.2d at 160). Notice of repudiation must be clear, unequivocal, and unmistakable. *Todd*, 365 S.W.2d at 160. Notice of repudiation is required before the statutory period begins to run. *Tex–Wis Co. v. Johnson*,

49

534 S.W.2d 895, 900 (Tex. 1976); *McLaren v. Beard*, 811 S.W.2d 564, 568 (Tex. 1991).

### 3. At best, the earliest Sarah could have repudiated Hankins' interest in the Property would have been March 8, 2005.

As discussed above, if Hankins acquired an interest in the Property, he acquired Norma's one–half undivided interest in the Property. Thus, Hankins was a co–tenant or joint owner of the Property. So, in order for Sarah to adversely possess Hankins' interest, Sarah was required to prove— as a matter of law—that she or her predecessor clearly, unequivocally, and unmistakably repudiated Hankins' interest in the common title to the Property. *Todd*, 365 S.W.3d at 160; *Dyer*, 333 S.W.3d at 713. The statutory period does not begin to run on Sarah's adverse possession claims until she shows she clearly, unequivocally, and unmistakably repudiated Hankins' interest. *Tex–Wis*, 534 S.W.2d at 900.

At best, the earliest Sarah could have repudiated Hankins' interest would have been March 8, 2005, as discussed below. Yet, Sarah points to two letters written by her parents' attorneys as evidence of repudiation of Hankins' title. Neither of these letters establishes that Sarah repudiated Hankins' interest as a matter of law on the dates they were sent. Neither the July 1984 letter nor the September 1990 letter can constitute—as a matter

of law—a clear, unequivocal, and unmistakable repudiation by Sarah of Hankins' interest in the Property. *See Todd*, 365 S.W.2d at 160. Sarah is not mentioned in either the July 1984 letter or the September 1990 letter. (1 Supp. CR at 407–14; *id.* at 416–38). Nor is there any evidence that Matthew Hoffman ever represented Sarah. Thus, Sarah cannot claim she repudiated Hankins' title as a matter of law through either letter.

Nor can Sarah claim that she can tack on her parents' period of alleged adverse possession to her alleged period of possession. For tacking to be effective, Roy and Norma must have met all the requirements of adverse possession at the time they allegedly repudiated Hankins' interest in the Property. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 69 (Tex. 2011); TEX. CIV. PRAC. & REM. CODE § 16.023. They failed to do so because they were not co–tenants with Hankins at the time the July 1984 and September 1990 letters were sent; Sarah was Hankins' co–tenant. Sarah could only tack on Norma and Roy's alleged adverse possession to her claimed period of possession if Roy or Norma owned the Property at the time the letters were sent and then conveyed their interest to Sarah. But it is undisputed that neither Roy nor Norma owned any interest in the Property when these two letters were sent, and thus, they cannot constitute a repudiation of Hankins' title by Sarah as a matter of law.

At best, Sarah can claim she repudiated Hankins' title in March 2005, when she retained Thomas McCaffrey to send a letter to Hankins. (1 Supp. CR at 439; 441–72). McCaffrey merely resent Hoffman's letters, the attachments to the 1990 letter, and a letter from Hankins' attorney in 1984. (*Id.* at 441–72). McCaffrey didn't claim that Sarah Harris was repudiating Hankins' interest in the property, nor does he state why he sent the letter. (*Id.* at 439–72). Thus, the March 2005 letter doesn't establish a clear, unequivocal, and unmistakable repudiation as a matter of law.

**4.    Sarah's alternative bases for establishing repudiation are also insufficient to establish repudiation as a matter of law.**

Sarah also claims two alternative bases for establishing repudiation of Hankins' interest in the Property. Neither basis establishes the requisite clear, unequivocal, and unmistakable repudiation of common title as a matter of law.

Sarah claims repudiation because her family's possession had been "so long continued, open, notorious, exclusive, and inconsistent with the existence of title" in Hankins that there is an inference of notice. (1 Supp. CR at 198). Harris cited no evidence in support of this claim. (*Id.*). Regardless, this alternative basis doesn't apply in this case.

In *Tex–Wis*, the Texas Supreme Court held that a "jury [may] infer notice of a repudiation without any change in the use of the land," if there has been "long–continued use." *Tex–Wis Co. v. Johnson*, 534 S.W.2d 895, 899 (Tex. 1976); *see also, Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 194 (Tex. 2003). Thus, it is not necessary that actual notice of the adverse claim be given; it is sufficient if constructive notice is given, and constructive notice will be presumed where the facts show that the adverse occupancy and claim of title to the land involved has been long continued, open, notorious, exclusive, and inconsistent with the existence of title in the defendant. *Pool*, 124 S.W.3d at 194. Thus, "[l]ong–continued possession and assertion of claim by one tenant with nonclaim on the part of one out of possession has always been regarded as a strong circumstance tending to authorize an inference of notice of the adverse possession." *Id.* at 195 (quoting *Moore v. Knight*, 94 S.W.2d 1137, 1139–40 (Tex. 1936)).

In this case, Harris cites no evidence in support of her claim that her family's possession had been "so long continued, open, notorious, exclusive, and inconsistent with the existence of title" in Hankins that there is an inference of notice. (1 Supp. CR at 198). Regardless, it is undisputed that Hankins consistently asserted claims to the Property—that is why the Harris family continually hired attorneys to refute his claims. (*See* 1 Supp.

CR at 407–14; *id.* at 416–38; *id.* at 439; 441–72). Thus, Sarah failed to establish this alternative basis for repudiation as a matter of law.

Sarah also claimed that repudiation was established by her accepting a deed purporting to convey to her the fee simple interest in the Property. (1 Supp. CR at 198). This Court recently rejected a similar claim. *Dyer v. Cotton*, 333 S.W.3d 703, 711 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (the party claiming adverse possession, who owned a 1/7 undivided interest in the property, could not rely on an erroneous deed conveying the entire fee simple estate to him as evidence of repudiation as to the other co–tenants). Thus, any purported fee simple conveyance to Sarah after Hankins acquired his title cannot establish repudiation as a matter of law.

**5. Sarah cannot establish adverse possession under either the 10–year or 25–year limitation period because the applicable time periods have not yet elapsed.**

If the March 8, 2005 letter was a repudiation of Hankins' title and thus, constitutes the accrual date for Sarah's adverse possession claims, her claims under the 10–year and 25–year limitation periods must fail because those periods of possession haven't lapsed.

Again, at best, the earliest Sarah could claim she repudiated Hankins' title would be March 8, 2005, when McCaffrey sent his letter to Hankins' attorney. (1 Supp. CR at 238). Thus, her claim for adverse possession under

the 10–year and 25–year limitation periods would not ripen until March 8, 2015, and March 8, 2030, respectively. But once possession of real property is interrupted by an adverse suit to recover the property, the requisite peaceable possession no longer exists. TEX. CIV. PRAC. & REM. CODE §16.021(3). In this case, Sarah filed suit on January 13, 2014—before the 10–year and 25–year limitation periods had expired. (CR at 4–15). And Hankins filed his counterclaim on February 4, 2014—also before the 10–year and 25–year limitation periods had expired. (*Id.* at 16–40). Thus, peaceable possession was interrupted, and as such, Sarah did not (and could not) establish her claim for adverse possession as a matter of law under either the 10–year or 25–year limitation periods.

> **6.   Sarah did not establish her claim for adverse possession under the 3–year limitation period as a matter of law.**

The 3–year statute of limitation states the suit "to recover real property held by another in peaceable and adverse possession under title or color of title" must be brought "not later than three years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.024. "Title" is defined as a regular chain of transfers of real property from or under the sovereignty of the soil. *Id.* at § 16.024. The chain is said to be under "color of title" when the chain is complete, but necessarily perfect, but not

"wanting of intrinsic fairness or honesty." *Id.* at § 16.021. Therefore, to prevail under the 3–year limitation period, Sarah was required to prove—as a matter of law—title from the sovereignty. *Id.* Sarah wholly failed to do so. (1 Supp. CR at 179–508). Therefore, Sarah failed to establish her claim for adverse possession under the 3–year limitation period regardless of when she allegedly repudiated Hankins' interest in the Property.

**7. Sarah did not establish her claim for adverse possession under the 5–year and 10–year limitation periods as a matter of law.**

The 5–year limitation period requires the owner to bring suit within five years to recover property held by another in peaceable and adverse possession who cultivates, uses, or enjoys the property, pays taxes, and claims under a duly registered deed. TEX. CIV. PRAC. & REM. CODE §16.025(a). The 10–year statute of limitation requires suit "to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." *Id.* at §16.026(a). Thus, both limitation periods require that the adverse possession claimant cultivate, use, or enjoy the land. Sarah failed to establish this element as a matter of law.

Here, Sarah failed to establish as a matter of law that she cultivated, used, or enjoyed the land in a manner that was (1) actual and visible, (2)

commended and continued under a claim of right that is inconsistent and hostile to the claim of another person, and (3) continuous and not interrupted. Sarah failed to establish these elements as a matter of law.

As an initial matter, the evidence is disputed with regard to whether Sarah's possession was actual, visible, continuous, and uninterrupted. Possession of the claimed property must also be consistent and continuous, uninterrupted by temporary vacancy, unless duration of vacancy is reasonable under existing circumstances that reasonably show the adverse claimant did not thereby intend to abandon the premises. *Wells*, 443 S.W.3d at 490 (citing *Grayson v. Dunn*, 581 S.W.2d 785, 788 (Tex. Civ. App.—Waco 1979, writ ref'd)). Sporadic, irregular, and occasional use of land does not satisfy the requirements of adverse possession. *See Jones v. Ford*, 583 S.W.2d 821 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.) (quoting *Vaughan v. Anderson*, 495 S.W.2d 327, 332 (Tex. Civ. App.—Texarkana 1973, writ ref'd n.r.e.)). Even regular and consistent use every year for the statutory period is insufficient if there are substantial periods of time when the land is not in actual use. *Id.* (quoting *Vaughan*, 495 S.W.2d at 332). If the evidence shows breaks in possession, the court cannot assume those breaks to have been of such short duration as not to defeat the requisite continuity of possession. *Vaughan*, 495 S.W.2d at 333. If there

is a break in the continuity of possession, it is the adverse possession claimant's burden to show that the breaks only existed for a reasonable period. *Dunn v. Taylor*, 102 Tex. 80, 85 (1908).

Sarah has lived in Washington D.C. since 2005, and thus, it is reasonable to assume that she has spent most of the last 10 years in Washington, D.C., and not in Texas. (2 Supp. CR at 1144, Interrogatory No. 15). Also, Roy passed away in 1999, and Norma passed away in 2005. (1 Supp. CR at 260–61). Thus, neither Roy nor Norma has been in actual, visible, continuous, and uninterrupted possession of the Property since March 8, 2005. And Hankins testified that, despite visiting the Property "hundreds of times," he has never seen Roy, Norma, or Sarah at the Property nor did ever see any signs that someone was occupying the Property. (2 Supp. CR at 1158, ¶ 3; (2 Supp. CR at 937–38). Therefore, Sarah failed to establish as a matter of law that her possession was actual, visible, open, continuous, and uninterrupted.

Nor does Sarah's evidence of cultivation, use, and enjoyment of the Property establish her adverse possession claim as a matter of law. Again, the earliest Sarah could claim she repudiated Hankins' title would have been March 8, 2005. Thus, her period of alleged adverse possession could not begin until March 8, 2005. *Tex–Wis*, 534 S.W.2d at 900; *McLaren*, 811

58

S.W.2d at 568. So, her alleged evidence regarding Roy's alleged occupancy of the Property through his death in 1999 and Norma's alleged occupancy of the Property through her death in 2005 is insufficient to establish adverse possession under either the five–year or ten–year limitation period. Simply, neither Roy nor Norma were alive and thus, able to use the Property for the statutorily required period after Sarah's alleged repudiation. And anything they did or may have done before Sarah allegedly repudiated Hankins' interest in March 2005 is legally irrelevant and insufficient.

Nor does Sarah's alleged evidence of maintaining utilities, maintaining insurance, having discussions to sell the Property, making improvements on the Property, or landscaping and maintaining the Property constitute cultivation, use, and enjoyment of the Property that would give a co–tenant such Hankins' notice of her adverse possession claim for several reasons.

First, the maintaining of utilities, keeping the property insured, making improvements on the property, and performing general maintenance is, without more, legally insufficient to establish an adverse possession claim against a co–tenant. In *Todd*, the Texas Supreme Court held that "if the acts of the respondents and their predecessors in title are

59

susceptible of explanation consistent with the existence of the common title then such acts cannot ... give constructive notice to the co–tenants out of possession." *Todd*, 365 S.W.2d at 160. Instead, adverse claimant must prove actual or constructive notice of the ouster, and the clear, unequivocal, and unmistakable repudiation of the common title. *Todd*, 365 S.W.2d at 160; *Dyer*, 333 S.W.3d at 713. Sarah's usage of the Property is nothing more than merely undertaking and performing tasks consistent with a co–tenancy, which is insufficient to establish adverse possession as a matter of law.

Second, merely paying the taxes on property and attempting to find buyers for the property have been deemed insufficient to establish an adverse possession claim. *See Jones v. Ford*, 583 S.W.2d 821, 824 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.). Even if one co–tenant pays taxes on the entire property, possession coupled with payment of taxes is not notice to a co–tenant of repudiation of common title. *Sebesta*, 812 S.W.2d at 645 (citing *Todd*, 365 S.W.2d at 160).

Third, Sarah's alleged landscaping and maintenance of the Property is likewise insufficient to establish an adverse possession claim as a matter of law. The Supreme Court of Texas has held that the mere cutting of weeds is insufficient to constitute use of property to meet the requirements for

adverse possession. *City of Dallas v. Etheridge*, 253 S.W.2d 640, 643 (Tex. 1952). Nor does the occasional cutting of timber. *Kirby Lumber Corp. v. Lindsey*, 455 S.W.2d 733, 741 (Tex. 1970). Nor does the cutting of burs and poisonous weeds because the cutting and gathering of a natural crop doesn't constitute adverse possession. *McDonald v. Weinacht*, 465 S.W.2d 136, 143–44 (Tex. 1971); *see also, Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985) (if mowing the grass and planting flowers does not constitute evidence of a hostile character of possession sufficient to give notice to an exclusive adverse possession, neither does maintaining a hedge).

Fourth, Sarah's evidence of cultivation, use, and enjoyment is weak and fails to establish her adverse possession claim as a matter of law. As an initial matter, Hankins objected to the invoices and bills attached as Exhibit Numbers 2, 8, and 9 to Sarah's affidavit because these documents were not authenticated and because they were hearsay. (2 Supp. CR at 867, 870). The court overruled the objections. (CR at 227). This was error, as Sarah failed to authenticate these documents or lay any foundation for their admissibility. Thus, they are inadmissible hearsay that must be excluded. Even if the Court were to consider these documents, they fall short of

establishing actual, visible, open, and continuous possession of the Property for the statutory limitation periods.

Here, the insurance statements attached by Sarah to her motion for summary judgment were for the policy period of March 31, 2006 through March 31, 2007. (1 Supp. CR at 241–45). Sarah attached no other insurance statements, certificates, or policies for any other year of her claimed adverse possession. (*Id.*). Likewise, the "utility bills" Sarah attached to her motion for summary judgment were for a single year, 2006. (*Id.* at 262–76). Furthermore, the landscaping invoices Sarah attached to her motion for summary judgment included one invoice in 2009, two invoices in 2010, and one invoice in 2012. (1 Supp. CR at 277–86). This evidence, even if admissible, is insufficient to establish adverse possession as a matter of law.

### F. Sarah failed to establish as a matter of law that Hankins' counterclaims for conversion, partition, and trespass to try title are barred as a matter of law.

Sarah filed a second motion for summary judgment, in which she challenged Hankins' counterclaims. (2 Supp. CR at 1240–55). In this second motion for summary judgment, Sarah claimed, *inter alia*,[9] that Hankins' claim for conversion failed as a matter of law. (*Id.*). Specifically, Sarah claimed that Hankins' conversion claim failed because he allegedly

---

[9] Hankins is not challenging the trial court's grant of summary judgment on his claims for declaratory relief, promissory estoppel, and unjust enrichment.

never obtained any interest in the property and thus, he was never a co–tenant. (*Id.* at 1244). Sarah's challenge to Hankins' counterclaim for conversion was a rehash of her first summary judgment argument: Hankins purportedly has no claim because he never acquired any interest in the Property. Sarah is wrong. Hankins reurges, but will not rehash the arguments he asserts in Sections B, C, and D of this brief, which detail how he acquired an interest in the Property and how the trial court erred in determining that he had no interest in the Property. The trial court's summary judgment disposing of Hankins' conversion claim must be reversed.

It also must be noted that Sarah's second motion for summary judgment didn't specifically challenge Hankins' claims for trespass to try title and partition. To the extent these claims were disposed of because the trial court's earlier summary judgment ruling, this disposition must be reversed. For the reasons set forth in Section E above, Sarah failed to establish her adverse possession claim as a matter of law. Hankins reurges, but will not rehash the arguments he asserts in Section E of this brief, which detail how Sarah failed to carry her burden of proof to establish her right to summary judgment as a matter of law. If the trial court's summary judgment on Sarah's adverse possession claim is reversed, then her second

motion for summary judgment. Likewise, if the trial court's finding that Hankins owns no interest in the Property is reversed, Hankins requests that his claims for trespass to try title and partition be reinstated and remanded.

## Conclusion and Prayer

The trial court erred in granting Sarah's motions for summary judgment. At a minimum, Hankins' judgment and execution liens are still effective and thus, he has an interest in the Property. And even if the Court were inclined to affirm the voiding of the execution sale, equity warrants reviving Hankins' judgment and his liens. Hankins therefore requests that the Court reverse the trial court's grant of summary judgments in favor of Sarah Harris, reverse the final judgment, and remand this matter back to the trial court.

Respectfully submitted,

LEYH, PAYNE & MALLIA, PLLC

By: */s/ Sean M. Reagan*
　　Sean Michael Reagan
　　sreagan@lpmfirm.com
　　Texas Bar No. 24046689
　　9545 Katy Freeway, Suite 200
　　Houston, Texas 77024
　　Telephone: 713-785-0881
　　Facsimile: 713-784-0884

**ATTORNEY FOR APPELLANT**

## Certificate of Service

I certify that a true and correct copy of this document has been served to all interested parties of record on October 8, 2015, as follows:

| | |
|---|---|
| William Feldman | *Via Email* |
| Michael J. Mazzone | *Via Email* |
| Michael T. Powell | *Via Email* |
| Robert Carlton | *Via Email* |
| Haynes & Boone, LLP | |
| 1221 McKinney Street, Suite 2100 | |
| Houston, Texas 77010-2007 | |
| | |
| Brian B. Kilpatrick | *Via Email* |
| H. Fred Cook | *Via Email* |
| Wilson, Cribbs & Goren, P.C. | |
| 2500 Fannin Street | |
| Houston, Texas 77002 | |
| | |
| Jarrett L. Ellzey | *Via Email* |
| W. Craft Hughes | *Via Email* |
| Hughes Ellzey, L.L.P. | |
| 2700 Post Oak Blvd., Suite 1120 | |
| Galleria Tower I | |
| Houston, Texas 77056 | |
| | |
| Hartley Hampton | *Via Email* |
| Hampton & King | |
| 3 Riverway, Suite 910 | |
| Houston, Texas 77056 | |
| | |
| Kenneth T. Fibich | *Via Email* |
| Texas Bar No. 06952600 | |
| 1150 Bissonnet | |
| Houston, Texas 77005 | |

/s/ *Sean M. Reagan*
Sean M. Reagan

## Certificate of Compliance

Under Rule 9.4 of the TEXAS RULES OF APPELLATE PROCEDURE, I certify that the foregoing document is a computer-generated document containing 14,882 words. The undersigned relied upon the word count feature on his word processor in determining the word count.

/s/ *Sean M. Reagan*
Sean M. Reagan

# APPENDIX TAB 1

CAUSE NO. 2014-01360

| | | |
|---|---|---|
| SARAH T. HARRIS<br>*Plaintiff,* | § | IN THE DISTRICT COURT OF |
| | § | |
| VS | § | HARRIS COUNTY, T E X A S |
| | § | |
| JOHN W HANKINS<br>*Defendant.* | § | 333rd JUDICIAL DISTRICT |

## ORDER GRANTING
## MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF, SARAH T. HARRIS

On this day this Court considered the Motion for Summary Judgment of Plaintiff, Sarah T. Harris (the "Motion"). After considering the motions, any responses thereto, the arguments of counsel, and all other factors and evidence, this Court is of the opinion that the Motion for Summary Judgment of Plaintiff, Sarah T. Harris, should be GRANTED

It is therefore, ORDERED, ADJUDGED and DECREED that Motion for Summary Judgment of Plaintiff, Sarah T. Harris, is hereby GRANTED.

It is further ORDERED that Plaintiff, Sarah T. Harris, prevails on her claims for Declaratory Judgment, Action to Quiet Title, and Adverse Possession as a matter of law.

It is further ORDERED that·

(1) Sarah owns the entire fee simple interest in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas, and

(2) Mr. Hankins has no interest in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging





1237

Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas

(3)    The purported Constable's Sale of the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas to Mr. John W. Hankins dated September 2, 1980 is null and void and of no force or effect.

(4)    That the Deed under Execution of September 29, 1980, wherein John W. Hankins attempted to purchase the estate, right, title and interest of Norma Harris, M.D , in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas, which was filed in the Harris County Real Property Records on January 12, 1981, recorded in 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 of the Harris County Real Property Records, is null and void and of no force or effect.

It is further ORDERED that Defendant John W. Hankins' claims of Trespass to Try Title, Declaratory Judgment, and Partition fail as a matter of law.

It is further ORDERED that this Court will assess against John W. Hankins attorneys' fees or other relief as appropriate at a later date.

SIGNED on this, the 5th day of December 2014.

_____
Judge Presiding

1239

# APPENDIX TAB 2

3/23/2015 9:26:32 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 4593605
By: GENTRY, EUNIECY M
Filed: 3/23/2015 9:26:32 AM

CAUSE NO. 2014-01360

| | | |
|---|---|---|
| SARAH T. HARRIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff.* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| JOHN W. HANKINS | § | |
| *Defendant.* | § | 333rd JUDICIAL DISTRICT |

### ORDER ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Sarah T. Harris, has filed two separate motions for summary judgment   The Court having considered both Motions, the Responses filed by Defendant John W. Hankins, the exhibits filed by both parties, and the arguments of counsel, finds that there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law on both Motions. This Court's prior order, regarding Plaintiff's first motion, signed on December 5, 2014, is withdrawn and this order is substituted to address both motions.

Both of Plaintiff's Motions For Summary Judgment are GRANTED.

IT IS THEREFORE ORDERED that:

1  Plaintiff, Sarah T Harris, owns the entire fee simple interest in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas; and

2. Defendant, John W. Hankins, has no interest in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas

3  The purported Constable's Sale of the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

215

the Deed Records of Harris County, Texas to Mr John W. Hankins dated September 2, 1980 is null and void and of no force or effect

4  That the Deed under Execution of September 29, 1980, wherein John W. Hankins attempted to purchase the estate, right, title and interest of Norma Harris, M D , in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas, which was filed in the Harris County Real Property Records on January 12, 1981, recorded in 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 of the Harris County Real Property Records, is null and void and of no force or effect.

Defendant, John W Hankins, counterclaims are all DENIED and Defendant shall TAKE NOTHING by such counterclaims.

SIGNED this **26** day of **March**, 2015.

JUDGE PRESIDING

216

# APPENDIX TAB 3

4/17/2015 10:17:37 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 4928926
By: LYNCH, BERNADETTE T
Filed: 4/17/2015 10:17:37 AM

CAUSE NO 2014-01360

| | | |
|---|---|---|
| SARAH T HARRIS | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| VS | § | HARRIS COUNTY, TEXAS |
| | § | |
| JOHN W HANKINS | § | |
| *Defendant* | § | 333rd JUDICIAL DISTRICT |

## FINAL JUDGMENT

On this day came on for consideration Plaintiff's Motion for Entry of Final Judgment (the "Motion") Having reviewed the Motion and all things properly before the Court, the Court is of the opinion that the Motion should be GRANTED

Plaintiff, Sarah T Harris, filed two separate motions for summary judgment The Court granted both of Plaintiff's motions for summary judgment Thereafter, Plaintiff, Sarah T Harris, withdrew her claim for attorney's fees without prejudice

It is therefore ORDERED that Plaintiff's Motion for Entry of Final Judgment is GRANTED, and that the claim for attorney's fees of Plaintiff, Sarah T Harris is dismissed without prejudice Because all claims raised by Plaintiff, Sarah T Harris, and Defendant, John W Hankins, have been disposed of by the Court, the Court now RENDERS Final Judgment for Plaintiff, Sarah T. Harris, and against Defendant, John W Hankins

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that.

1  Plaintiff, Sarah T Harris, owns the entire fee simple interest in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 4144, Page 560 of the Deed Records of Harris

1

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

224

County, Texas, and

Defendant, John W Hankins, has no interest in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas

The purported Constable's Sale of the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas to Mr John W Hankins dated September 2, 1980 is null and void and of no force or effect

That the Deed under Execution of September 29, 1980, wherein John W Hankins attempted to purchase the estate, right, title and interest of Norma Harris, M D , in the Property located at 2922 Bellaire Boulevard, Harris County, Texas, and more fully described as Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas, which was filed in the Harris County Real Property Records on January 12, 1981, recorded in 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 of the Harris County Real Property Records, is null and void and of no force or effect

225

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant, John W Hankins, take nothing by his counterclaims

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff, Sarah T Harris, shall have and recover from Defendant, John W Hankins, her costs of court

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all writs and processes for the enforcement and collection of this Final Judgment or the costs of court may issue as necessary

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all relief requested by any party and not expressly awarded herein is denied and that this Final Judgment disposes of all claims and all parties

SIGNED this 27th day of April, 2015

APR 2 7 2015

PRESIDING JUDGE

3

226

# APPENDIX TAB 4

NO. 1,002,511

| | | |
|---|---|---|
| JOHN W. HANKINS | § | IN THE DISTRICT COURT OF |
| VS. | § | HARRIS COUNTY, T E X A S |
| NORMA HARRIS, M.D., ET AL. | § | 189TH JUDICIAL DISTRICT |

<u>JUDGMENT NUNC PRO TUNC</u>

BE IT REMEMBERED that on the 26th day of January, 1978, at a regular term of this Court, there came on to be heard in due order the above entitled and numbered cause; thereupon came the Plaintiff, JOHN W. HANKINS, in person and by and through his attorneys of record, and came also the Defendants, NORMA HARRIS, M.D., ERWIN C. WINKEL II, M.D., and JACQUELYN WINKEL, in person and by and through their respective attorneys of record. Thereupon, Plaintiff moved the Court to dismiss and Non-Suit his case against JACQUELYN WINKEL, and there being no objection, the Court did, before commencement of Voir Dire selection of the Jury, and before commencement of the trial, grant Plaintiff's Motion to Dismiss and Non-Suit JACQUELYN WINKEL from the lawsuit. All parties then announced ready for trial, and Jury selection began until twelve (12) good and lawful citizens, Arthur Kelly, Foreman, and eleven others, were duly tested, selected, impaneled, sworn, and the trial of this cause proceeded with the reading of the pleadings and the introduction of testimony until the 3rd day of February, 1978, at which time the evidence on behalf of all parties having been concluded, the Court submitted the case to the Jury upon Special Issues and Special Instructions. The Jury thereafter retired, deliberated, and returned into open Court on February 6, 1978, the verdict, which was duly received by the Court and filed among the papers of this cause.

EXHIBIT
CARLTON
1

And the Plaintiff having duly moved for Judgment on the verdict of the Jury, and it appearing to the Court from the pleadings, stipulations, evidence and the verdict of the Jury that Plaintiff is entitled to Judgment against the Defendants, it is accordingly,

ORDERED, ADJUDGED and DECREED by the Court that Plaintiff, JOHN W. HANKINS, do have and recover of and from NORMA HARRIS, M.D., and ERWIN C. WINKEL II, M.D., jointly and severally, the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS compensatory damages. And, it is further

ORDERED, ADJUDGED and DECREED that Plaintiff, JOHN W. HANKINS, in addition to the above recited sum, do have and recover of and from NORMA HARRIS, M.D., individually, the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS as exemplary damages. And, it is further

ORDERED, ADJUDGED and DECREED that Plaintiff, JOHN W. HANKINS, in addition to the above recited compensatory damages, do have and recover of and from ERWIN C. WINKEL II, M.D., individually, the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS as exemplary damages.

It is further the Order of this Court that the amount due under this Judgment shall bear interest from February 6, 1978, until paid, at the rate of 9% per annum. And, it is further

ORDERED, ADJUDGED and DECREED by the Court that the Plaintiff, JOHN W. HANKINS, do have and recover of and from NORMA HARRIS, M.D., and ERWIN WINKEL II, M.D., all cost of Court incurred in this cause.

The Plaintiff, JOHN W. HANKINS, the Officers of the Court, and the attorneys may have execution in the manner provided by law to enforce payment of any sum herein decreed.

-2-

Unofficial Copy Office of Chris Daniel District Clerk

To which Judgment of the Court NORMA HARRIS, M.D., and ERWIN C. WINKEL II; M.D., in open Court objected, excepted, and gave notice of appeal to the First or Fourteenth Court of Civil Appeals.

JUDGMENT RENDERED and ENTERED this _20th_ day of February, 1978.

JUDGMENT NUNC PRO TUNC SIGNED and ENTERED this _20_ day of February, 1978.

_Ernest Coker_
Ernest Coker, Judge Presiding

APPROVED AS TO FORM AND CONTENT:

KRONZER, ABRAHAM & WATKINS

By _Robert E. Balland_
ROBERT E. BALLAND
Attorney for Plaintiff,
John W. Hankins

APPROVED AS TO FORM ONLY:

LOWRY, PRUETT & McCARTY

By_____
CHARLES LOWRY
Attorney for Defendant,
Erwin C. Winkel II, M.D.

APPROVED AS TO FORM ONLY:

NATHAN, NATHAN & NEWMAN

By_____
LARRENCE Y. NEWMAN
Attorney for Defendant,
Norma Harris, M.D.

-3-

Unofficial Copy Office of Chris Daniel District Clerk

# APPENDIX TAB 5

| IN THE MATTER OF | § | IN THE FAMILY DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROY H. D. HARRIS AND | § | OF HARRIS COUNTY, T E X A S |
| NORMA E. HARRIS | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| SARAH TRACY HARRIS, a Child | § | 309TH JUDICIAL DISTRICT |

FINAL DIVORCE DECREE

BE IT REMEMBERED that on this 17th day of June, 1980, the Petitioner, Roy H. D. Harris, appeared in person and by attorney and announced ready for trial. The Respondent, Norma E. Harris, was served through its attorneys of record and withdrew contest of this action as evidenced by her attorneys' signature on this Decree. The parties waived a jury and waived the making of a record of testimony in this cause, with the consent of the Court. The attorney for Petitioner announced to the Court that the Petitioner and Respondent had agreed between themselves as to the division of their property, the dissolution of their marriage, and the care and custody of their minor child, also subject to the consent and approval of the Court.

The Court, having examined the pleadings and heard the evidence and argument of counsel, is of the opinion and finds that all necessary residence qualifications and prerequisites of law have been legally and fully satisfied, that this Court has jurisdiction of all parties and subject matter of this cause, that venue is proper in this Court, and that the material allegations contained in Petitioner's Petition for Divorce are true and correct and supported by full and satisfactory evidence. The Court further finds that the marriage of Petitioner and Respondent has become insupportable because of discord and conflict of personalities which destroyed the legitimate ends of the marriage relationship and which prevents any reasonable expectation of reconciliation. The Court being of the opinion that such marriage should accordingly be dissolved it is, therefore

ORDERED, ADJUDGED and DECREED that Roy H. D. Harris, Petitioner, and Norma E. Harris, Respondent, be and they are hereby

divorced, and that the bonds of matrimony heretofore existing between Petitioner and Respondent be and are hereby dissolved. The Court finds that the parties are not now expecting another child of the marriage and that Petitioner and Respondent are the parents of the following child who was eighteen years of age at the time of the filing of this action:

NAME: Sarah Tracy Harris
SEX: Female
BIRTHPLACE: Jackson, Mississippi
BIRTHDATE: February 23, 1962

The Court finds that Petitioner and Respondent have entered into a written agreement containing provisions for a conservatorship and support of the child. The Court finds that the agreement is in the child's best interest, and it is accordingly,

ORDERED, ADJUDGED and DECREED that Norma E. Harris be and is hereby appointed Managing Conservator of the child, and that she shall have all of the rights, privileges, duties and powers of a parent, to the exclusion of the other parent, subject to the rights, privileges, duties, and powers granted to any Possessory Conservator named in this Decree. It is further

ORDERED, ADJUDGED and DECREED that Roy H. D. Harris be and is hereby appointed Possessory Conservator of the child, with rights of possession of and access to the child at reasonable times as agreed upon by the parties. It is further

ORDERED, ADJUDGED and DECREED that Roy H. D. Harris pay to Norma E. Harris child support in an amount equal to the child's expenses for books, fees, tuition, room and board, and other reasonable and necessary expenses for her transportation to and from her respective schools and for her clothing for the period in which she is a full-time student at an accredited university or college or as a full-time student at a licensed vocational or trade school, with the first payment being due and payable immediately as specified in the Marriage Settlement Agreement between the parties attached hereto and incorporated herein.

-2-

The Court further finds that the Petitioner and Respondent have entered into an agreement for the division of their estate and the agreement is just and right, and it is accordingly

ORDERED, ADJUDGED and DECREED by this Court that the Marriage Settlement Agreement between Petitioner and Respondent, which is attached hereto as Exhibit "A" is in all things approved and confirmed and is incorporated into this final judgment as though restated verbatim herein, and that the parties henceforth are ordered to carry out the terms thereof to the extent permitted by law. It is further and finally

ORDERED that all costs incurred herein shall be taxed against the party incurring same.

SIGNED and ENTERED this 20th day of JUNE, 1980 at Houston, Harris County, Texas.

_____
JUDGE PRESIDING

APPROVED AND AGREED TO:

SULLINS & JOHNSTON

By ___Gail Magers___
Gail Magers   TB#12816400
3701 Kirby Drive, Suite 1230
Houston, Texas 77098

ATTORNEYS FOR PETITIONER


HIRSCH, WESTHEIMER, BLOCK AND WILK

By ___Matthew Hoffman___
Matthew Hoffman
20th Floor Niels Esperson Bldg.
Houston, Texas 77002

ATTORNEYS FOR RESPONDENT.

-3-

JUN 20 1980

SDPW

SEP 2 1980

APR 7 1983

C/C OFFICE

JUN 24 1980



F I L E D
RAY HARDY
District Clerk
JUN 17 1980
Harris County, Texas
By

FILMED
POSTED
DOCKET SHEET
FEE DOCKET

Certified Document Number

309 F
SDPW
BVS



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   March 6, 2014

Certified Document Number:        25900045 Total Pages: 4

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# APPENDIX TAB 6

NO. 80,10657

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE FAMILY DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROY H. D. HARRIS and | § | |
| NORMA E. HARRIS | § | OF HARRIS COUNTY, T E X A S |
| | § | |
| AND IN THE INTEREST OF | § | |
| SARAH TRACY HARRIS, a Child | § | 309TH JUDICIAL DISTRICT |

## MARRIAGE SETTLEMENT AGREEMENT

WHEREAS there is pending in the 309th Family District Court of Harris County, Texas, under Cause No. 80,10657, a divorce action styled "In the Matter of the Marriage of Roy H. D. Harris and Norma E. Harris, and In the Interest of Sarah Tracy Harris, a Child;" and

WHEREAS Roy H. D. Harris, Petitioner, hereinafter referred to as "Husband", and Respondent Norma E. Harris, hereinafter referred to as "Wife", both of whom are sometimes hereinafter jointly referred to as "the parties" to this Agreement, are desirous of effecting an equitable settlement of all property rights incident to their divorce, and resolving all matters concerning support and conservatorship of Sarah Tracy Harris, their minor daughter, hereinafter sometimes referred to as "the child;"

NOW, THEREFORE, Husband and Wife enter into and execute this Marriage Settlement Agreement subject to the approval of the 309th Family District Court and the entry of a Final Divorce Decree herein, as follows:

### Article I
### Statements of Intent

1.01.    Agreement Concerning Conservatorship.  It is the purpose and intent of the parties to settle amicably the matters of conservatorship, support, access and education of the parties' remaining minor child, Sarah Tracy Harris.  It is anticipated that this Agreement concerning conservatorship will be submitted to the Court for its approval on the terms set forth in the Final Decree of Divorce.

383

1.02.    Settlement of Property.  It is the purpose of the parties equitably to settle forever and completely the interests and obligations of the parties in all matrimonial property as between themselves, their heirs and assigns.  The parties have attempted to divide the matrimonial property in this Agreement in the manner which conforms to the just and right standard contained in the Texas Family Code, with due regard to the rights of each party and the children of the marriage.

### Article II
### Conservatorship and Support

2.01.    Managing Conservatorship.  The parties have given serious consideration to the future welfare of their child and agree, subject to further order of any court of continuing jurisdiction, that the best interest of their minor child, Sarah Tracy Harris, would be served by having Wife appointed Managing Conservator of Sarah Tracy Harris.  The parties further agree that Wife shall have all of the rights, privileges, duties and powers of a parent, to the exclusion of the other parent, including without limitation those rights, privileges, duties and powers of a Managing Conservator as specified in Section 14.02, Texas Family Code.

2.02.    Possessory Conservatorship.  The parties have given serious consideration to the future welfare of their child and agree, subject to further order of any court of continuing jurisdiction, that the best interests of Sarah Tracy Harris would be served by having the Husband appointed Possessory Conservator of Sarah Tracy Harris. The parties further agree that Husband shall have all of the rights, duties, privileges and powers during any period of possession of the child as set forth in Section 14.04, Texas Family Code.

2.03.    Visitation and Access.  Husband and Wife agree that Husband shall have open visitation of and access to Sarah Tracy Harris, subject to reasonable advance notification given Wife by Husband. Both Husband and Wife in good faith pledge their best efforts to arrange for reasonable visitation by Husband with the best interests of the child in mind.

-2-

Certified Document Number: 25900047 - Page 2 of 19

181 384

that such property is subject to no mortgage, lien, pledge, charge, security interest, encumbrance or restriction, except those previously disclosed or disclosed herein. Husband and Wife represent and warrant that the properties listed under this Article constitute their entire matrimonial estate and that neither owns or claims to own any property interest other than what is contained herein. The disclosures are part of the consideration made by each to the other for entering into this Agreement.

3.02.     Husband's Property.  Husband and Wife agree that Husband shall have and own as his separate property, subject to his sole management, control and disposition, free and clear of all claims by Wife, all of the following described property:

(1)  Household furnishings and personal effects in the possession of Husband at the time of entry of the Final Divorce Decree.

(2)  All separate property owned by Husband and all property acquired by Husband from and after the date of execution of this Agreement.

(3)  Any Social Security account now held in the name of Roy H. D. Harris.

(4) All accounts receivable in connection with the medical practice of Roy H. D. Harris.

(5)  Any and all bank and savings and loan accounts standing in the name of Roy H. D. Harris or upon which he has the right to withdraw funds or which are subject to his control.

(6) Any and all interest in the retirement benefit account held in the name of Roy H. D. Harris by Harris Medical Associates, subject to the outcome of litigation concerning such retirement account in Hankins v. Harris, Cause No. 1,002,511 in the 189th District Court of Harris County, Texas.

(7)  The real property and improvements located thereon at 2922 Bellaire Boulevard, Houston, Texas, and legally described as follows to-wit:

-4-

2.04    Child Support.  Husband shall pay to Wife for the support, maintenance and education of Sarah Tracy Harris a sum equal to an amount sufficient to reimburse Wife for child's expenses for books, fees, tuition, room and board, and other reasonable and necessary expenses for her transportation to and from her respective schools and for her clothing for the period in which she is a full-time student at an accredited university or college or as a student at a licensed vocational or trade school.  These child support payments shall commence immediately following the rendition of the Final Decree of Divorce herein and shall be payable not later than the fifteenth day of the month next following the month Husband is furnished copies of invoices or receipts which Wife has paid for expenses incurred for items set forth in this Paragraph 2.04.  Husband's obligations to make the child support payments shall terminate when Sarah Tracy Harris terminates her university or vocational or trade school education.

2.05    Medical Expenses.  As additional child support, Husband agrees to pay and be solely responsible for all medical and dental bills and expenses, doctor's or dentist's fees, pharmaceutical expenses or hospital bills for Sarah Tracy Harris, in the event any of the same are not covered by a policy of insurance.  Husband shall make all payments under this Section directly to the physician, health facility or other person or entity that has rendered health care to the child.  Husband's obligation to pay medical expenses shall terminate when the child terminates her university or vocational or trade school education.

2.06    Dependency Exemption.  Commencing in calendar year 1980, and for each year thereafter in which Husband complies with the support obligations in this Article, Husband and Wife agree that Husband shall be entitled to any applicable dependency exemptions for Sarah Tracy Harris on Husband's federal income tax return.

### Article III
### Division of Marital Property

3.01    Disclosure.  Husband and Wife each represent and warrant to the other that he or she had made a full and fair disclosure of all of his or her property interests of any nature whatsoever, and

-3-

Certified Document Number: 25900047 - Page 4 of 19

183

> Lot Three (3) in Block Two (2) of West
> University Place and Addition to the
> City of West University Place in Harris
> County, Texas, according to the map
> thereof recorded in Volume 444, Page 560
> of the Deed Records of Harris County,
> Texas.

3.03.    <u>Wife's Property</u>. Husband and Wife agree that Wife shall have and own as her separate property, subject to her sole management, control and disposition, free and clear from all claims by Husband all of the following described property:

(1)  All household furniture and personal effects in the possession of Wife at the time of entry of the Final Divorce Decree.

(2)  All separate property owned by Wife, and all property acquired by Wife from and after the date of execution of this Agreement.

(3)  Any Social Security account now held in the name of Norma E. Harris.

(4)  The 1978 Volkswagen Campmobile, Motor Vehicle No. 2382091499.

(5)  Any and all interest in any retirement benefit account held in the name of Norma E. Harris by Harris Medical Associates, subject to the outcome of litigation concerning such retirement account in <u>Hankins v. Harris</u>, Cause No. 1,002,511 in the 189th District Court of Harris County, Texas.

3.04.    <u>House</u>. With respect to the house, Husband and Wife further especially agree to the following:

(1)  Title to the house shall be transferred to and vested solely in Husband as his separate property.

(2)  In return for the disposition of this asset to Husband, Husband agrees to pay Wife the sum of Fifty Thousand Dollars ($50,000.00) on the following terms and conditions:  Fifty Thousand Dollars ($50,000.00) shall be paid in cash by Husband to Wife within six (6) months after the date of execution of this Agreement.  As evidence of this obligation, Husband agrees to execute to Wife a

-5-

Certified Document Number: 25900047 - Page 5 of 19

184 387

promissory note in the principal sum of Fifty Thousand Dollars ($50,000.00), payable in full as outlined above and bearing no interest. The parties further stipulate and agree that payment of these sums to Wife represents an equitable division and distribution of the community property estate of the parties, shall not be regarded as contractual alimony under Section 71 of the Internal Revenue Code (the "Code") and thus shall not constitute either gross income to the Wife or an alimony deduction to the Husband under Section 215 of the Code.

3.05.     Equitable Division of Property.   By this Agreement, the parties have intended to effect an equitable division of their community property, conforming to the "just and right" standard contained in Section 3.63 of the Texas Family Code, with due regard to the rights of each party and any children of the marriage.   The division of existing marital property is not intended by the parties to constitute in any way a sale or exchange of assets, and the division is being effected without the introduction of outside funds or other property not constituting a part of the marital estate.   The consideration set forth above represents the best efforts of the parties to compensate Wife fairly for her community share in the assets of the community estate, and conformity with the "just and right" standard in Section 3.63 of the Texas Family Code.

Article V
General Provisions

5.01.     Contractual Alimony.   As contractual alimony, Husband agrees to pay and be solely responsible for all medical and dental bills and expenses, doctor's or dentist's fees, pharmaceutical expenses or hospital bills for Wife, in the event any of the same are not covered by a policy of insurance.   Husband shall make all payments under this Section directly to the physician, health facility or other person or entity that has rendered health care to the Wife.   Husband's obligation to pay medical expenses shall terminate in the event Wife remarries.   These payments due as

-6-

contractual alimony shall commence immediately following the rendition of the Final Decree of Divorce herein and shall be payable not later than the fifteenth day of the month next following the month Husband is furnished copies of statements or bills for expenses incurred for items set forth in this Paragraph 5.01.

5.02    Attorneys Fee and Costs.  Each party agrees to bear his or her own attorneys' fees for representation in this matter. Husband agrees to pay all taxable court costs incurred in this matter after receipt of the court costs' bill.

5.03    Execution of Other Documents.  Husband and Wife each agree on demand to execute and deliver to the other any deeds, quitclaim deeds, releases, bills of sale, notes, assignments, security agreements, consents to change beneficiary or insurance policies, tax returns and all other documents, and to do or cause to be done any other acts or things as may be necessary or desirable to effectuate the provisions and purposes of this Agreement.

5.04    Agreement Voluntary.  Each party to this Agreement acknowledges and declares that he or she respectively: (1) is fully and completely informed as to the facts relating to the subject matter of this Agreement and as to the rights and liabilities of both parties; (2) enters into this Agreement voluntarily after receiving the advice of independent counsel; (3) has given careful and mature thought to the making of this Agreement; (4) has carefully read each and every provision of this Agreement; and (5) fully and completely understands that each and every provision of this Agreement and knowingly and voluntarily consents thereto as the free and independent act of each of them.

5.05    Effectiveness and Court Approval.  This Agreement shall be submitted for approval to a Texas court of appropriate jurisdiction in the action for the divorce of the parties.  This Agreement contains the entire agreement of the parties, and supercedes any and all agreements, either oral or in writing, between the parties relating to the rights and liabilities arising out of their marriage. This Agreement may be amended or modified only by written instrument signed by both parties.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, and all rights,

Certified Document Number: 25900047 - Page 7 of 19

-7-

186 389

duties, and obligations under this Agreement are payable, performable and enforceable in Houston, Harris County, Texas.

EXECUTED in multiple originals, each of which shall be of equal force and effect this ___17___ day of ___June___, 1980.

_Norma E Harris_
NORMA E. HARRIS

_Roy H.D Harris_
ROY H. D. HARRIS

THE STATE OF TEXAS )
                   )
COUNTY  OF  HARRIS )

BEFORE ME, the undersigned authority, on this day personally appeared NORMA E. HARRIS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _15TH_ day of _June_, 1980.

_Jackie Clarke_
NOTARY PUBLIC in and for
Harris County, Texas
JACKIE CLARKE
Notary Public in Harris County, Texas
My Commission Expires January 10, 1981
Bonded by Alexander Lovett, Lawyers Surety Corp.
(Printed Name of Notary Public)

My commission expires_____


THE STATE OF TEXAS )
                   )
COUNTY  OF  HARRIS )

BEFORE ME, the undersigned authority, on this day personally appeared ROY H. D. HARRIS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _15TH_ day of _June_, 1980.

_Jackie Clarke_
NOTARY PUBLIC in and for
Harris County, Texas
JACKIE CLARKE
Notary Public in Harris County, Texas
My Commission Expires January 10, 1981
Bonded by Alexander Lovett, Lawyers Surety Corp.
(Printed Name of Notary Public)

My commission expires_____

-8-

187

Certified Document Number: 25900047 - Page 8 of 19

391

C/C OFFICE SEP 2 1980

C/C OFFICE APR 7 1983

C/C OFFICE

C/C OFFICE JUN 12 1984

Certified Document Number: 25900047 - Page 9 of 19

**F I L E D**
RAY HARDY
District Clerk

JUN 17 1980

Harris County, Texas

By_____
Deputy

CAUSE NO. ___80-10657___

Receipt No. _043210-10_ cbp

ENTERED

ACCTG ENTERED _RBerry_ 998

**Plaintiff**      ROY H. D. HARRIS

In the ___309TH___
Judicial District Court of
Harris County, Texas

**Vs. Defendant**      NORMA E. HARRIS

## CITATION

THE STATE OF TEXAS
County of Harris

To Any Sheriff or Constable of Texas    552/G

TO:

NORMA E. HARRIS    2922 Bellaire
Houston, Texas

You are hereby commanded to appear in the Courtroom of the ___309TH___ Judicial District Court in the Civil Courts Building in the City of Houston, Harris County, Texas, by filing a Written Answer in the Court and under the number and style shown in the caption above, to the accompanying Plaintiff's petition attached hereto at or before 10 o'clock AM of the Monday next after the expiration of 20 days after the date you were served with this Citation. This suit was filed on the ___10TH___ day of ___March___, 198_0_, the nature of which is set out in the attached copy of the

plaintiff's original petition

This Citation is issued the ___27TH___ day of ___March___, 198_0_, under my hand and the Seal of said Court. If this Citation is not served within 90 days from this date of issuance, it shall be returned to this Court unserved.

Seal

RAY HARDY, Clerk of the District Courts of
Harris County, Texas

By _Barbara A. Ford_
Deputy District Clerk

5/15 657 P NA
5/24 3²²pm NA
6/5/80 6.25 pm SERVED

Issued at request of ___SULLINS & JOHNSTON___
TB#04780200
Address _3701 KIRBY DRIVE, SUITE 1230, HOUSTON, TEXAS 7709_

### OFFICER'S RETURN

Came to hand at _9 42_ o'clock _A_ M, on the _7_ day of _APRIL_, 198_0_. Executed at (address) _2922 BELLAIRE_ in _HARRIS_ County at _6.25_ o'clock _P_ M, on the _5_ day of _JUNE_, 198_0_, by delivering to _Norma E. HARRIS_ _____, defendant Plaintiffs Original Petition of this Citation together with the accompanying copy of the _____ petition attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _5_ day of _JUNE_ 198_0_.

FEES: $ _10.00_

WALTER H. RANKIN, Constable
Precinct #1, Harris County, Texas
of _____ County, Texas

By _B. Steinberg_
Deputy

APR 7 9 42 AH 1980

Serv 26
12-20-79

**189** ³⁹²²

Certified Document Number: 25900047 - Page 10 of 19



FILED
RAY HARDY DIST. CLERK
HARRIS COUNTY, TEXAS
JUN 12 12 05 PM 1980
BY _____
DEPUTY

Certified Document Number: 25900047 - Page 11 of 19

COUNTY AUDITOR'S FORM/1123
HARRIS COUNTY, TEXAS 5-69
STATE OF TEXAS
COUNTY OF HARRIS -

# RAY HARDY, DISTRICT CLERK

⑥ No. **088652**

### FEE OFFICER'S OFFICIAL RECEIPT

| | |
|---|---|
| TYPE ACTION **Cross-Action** | COURT **309** CASE NO. **80-10657** |
| RECEIVED OF **Hirsch, Westheimer, Block and Wilk** | DATE **6-3-80** |
| **Fifteen & no/100--------** DOLLARS **X**CHECK | CASH $ **15.00** |

STYLE: **Roy H. D. Harris** VS. **Norman B. Harris**

FILING .............. $ _101_

**REFUNDS AND PAYMENTS**

| | |
|---|---|
| | $ |
| CITATION/PRECEPT | C 9042 15.00 101 |
| C/C JUDGMENT | 80 10657 0001 16.00 SBTL |
| CERTIFICATE-SDPW | 9048 A 06/03/80 15.00 EXTD |
| CERTIFICATE-SBVS | .00 CACG |
| CLERK'S FEE | |
| LAW LIBRARY | |
| CHILD SUPPORT | |
| SHERIFF'S FEE | |
| DEPOSIT | |
| STENO FEE | |
| COUNTY TREAS. | **RAY HARDY, DISTRICT CLERK** |
| COUNTY ATTY | |
| JURY FEE | |
| TRUST FUND | BY: _D. Pelcher_ |
| TOTAL $ | $ DEPUTY |

THIS IS A RECEIPT ONLY IF VALIDATED IN THIS SPACE BY DISTRICT CLERK'S REGISTER

**FILE COPY**

Certified Document Number: 29090007 Page 2 of 2

394

DO NOT ISSUE

COST PAID
PTR
DFT 15.00

NO. 80,10657

IN THE MATTER OF             §        IN THE FAMILY DISTRICT COURT
THE MARRIAGE OF              §
                            §
ROY H. D. HARRIS and        §        OF HARRIS COUNTY, T E X A S
NORMA E. HARRIS             §
                            §
AND IN THE INTEREST OF       §
SARAH TRACY HARRIS, a Child  §        309TH JUDICIAL DISTRICT

RESPONDENT'S ORIGINAL ANSWER
AND CROSS ACTION

Respondent files this Original Answer.

I.

Respondent enters a general denial.

II.

It was necessary to secure the services of MATTHEW HOFFMAN of the law firm of Hirsch, Westheimer, Block and Wilk, licensed attorneys, to defend this suit. Petitioner should be ordered to pay a reasonable attorney's fee, and judgment should be rendered against Petitioner in favor of this attorney.

PRAYER

Respondent prays that all relief prayed for by Petitioner be denied.

Respondent prays that Respondent's attorney be awarded a judgment against Petitioner for a reasonable attorney's fee.

HIRSCH, WESTHEIMER, BLOCK AND WILK

BY: _____
Matthew Hoffman
Texas State Bar No. 09779500
20th Floor Niels Esperson Bldg.
Houston, Texas  77002
(713) 223-5181

ATTORNEYS FOR RESPONDENT,
NORMA E. HARRIS

## CROSS-ACTION

This suit is brought by NORMA E. HARRIS hereinafter referred to as Cross-Petitioner, who is fifty-five years of age and who resides at 2922 Bellaire Blvd., Houston, Harris County, Texas. ROY H. D. HARRIS, hereinafter referred to as Cross-Respondent, is fifty-four years of age and resides at 2922 Bellaire Blvd., Houston, Harris County, Texas.

### I.

Cross-Petitioner has been a domiciliary of this state for the preceding six months and a resident of this county for the preceding ninety days.

### II.

Service may be perfected upon Cross-Respondent by sending a true and correct copy of this Original Answer and Cross-Action to his attorney of record, Ms. Kathleen Cooper of the law firm Sullins and Johnson, at the office address of 3701 Kirby Drive, Houston, Texas 77098.

### III.

The parties were married on or about January 1, 1954. The marriage has become insupportable due to discord or conflict of personalities between Cross-Petitioner and Cross-Respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

### IV.

Cross-Petitioner and Cross-Respondent are the parents of the following child who is not under the continuing jurisdiction of any other court:

SARAH TRACY HARRIS, a female, born on
February 23, 1962 in Jackson, Mississippi.

There are no court-ordered conservatorships, court-ordered guardianships or other court-ordered relationships affecting this child.

No property is owned or possessed by this child.

Certified Document Number: 25900047 - Page 14 of 19

V.

Cross-Petitioner believes that Cross-Petitioner and Cross-Respondent will enter into a written agreement containing provisions for conservatorship and support of the child. If such agreement is not attained, Cross-Petitioner requests the Court to make orders for the conservatorship and support of the child.

VI.

Cross-Petitioner believes that Cross-Petitioner and Cross-Respondent will enter into an agreement for the division of their estate. If such agreement is not made, Cross-Petitioner requests the court to order a division of their estate in a manner that the Court deems just and right, as provided by law.

VII.

It was necessary to secure the services of MATTHEW HOFFMAN of the law firm Hirsch, Westheimer, Block and Wilk, licensed attorneys, to prepare and prosecute this suit. Cross-Respondent should be ordered to pay reasonable attorney's fees, and judgment should be entered in favor of this attorney and against Cross-Respondent.

PRAYER

Cross-Petitioner prays that citation and notice issue as required by law, and that the Court grant a divorce and decree such other and further relief requested in this Cross-Action.

Cross-Petitioner prays that Cross-Petitioner's attorney be awarded a judgment against Cross-Respondent for reasonable attorney's fees.

Cross-Petitioner prays for such other and further relief, at law and in equity, to which this Honorable Court may find her justly entitled.

HIRSCH, WESTHEIMER, BLOCK AND WILK

BY: _____
Matthew Hoffman
Texas State Bar No. 09779500
20th Floor Niels Esperson Bldg.
Houston, Texas 77002
(713) 223-5181

ATTORNEYS FOR CROSS-PETITIONER
NORMA E. HARRIS

Certified Document Number: 25900047 - Page 15 of 19

194 397

## CERTIFICATE OF SERVICE

This is to certify that on this the 3rd day of June, 1980, a true and correct copy of the above and foregoing Respondent's Original Answer and Cross-Action was mailed to the attorney of record for the Petitioner/Cross-Respondent, Ms. Kathleen Cooper of the law firm Sullins and Johnson at their office address of 3701 Kirby Drive, Houston, Texas 77098, via U. S. Certified Mail, return receipt requested, with postage prepaid.

Notice was furtehr given that the original of this instrument was mailed to the District Clerk of Harris County, Texas, for filing forthwith.

_Matthew Hoffman_
_____
Matthew Hoffman

Certified Document Number: 25900047 - Page 16 of 19

Certified Document Number: 25_____ — Page 17 of 19



FILED
RAY HARRY, DIST. CLERK
HARRIS COUNTY, TEXAS
JUN 3 1 53 PM '80
BY_____ DEPUTY

DO NOT ISSUE



**SULLINS & JOHNSTON**

ATTORNEYS AT LAW

3701 KIRBY DRIVE, SUITE 1230

HOUSTON, TEXAS 77098

713/521-0221

TO: Ray Hardy
District Clerk
Harris County
Civil Courts Building
Houston, Texas 77002

RE: In the Matter of the Marriage of Roy H. D. Harris and
Norma E. Harris, and in the interest of Sarah Tracy
Harris, A Child

*Cause # 80,10657*
*309th Jud. Dist.*

FILED
RAY HARDY DIST. CLERK
HARRIS COUNTY, TEXAS
MAR 17 3 34 PH '80
BY _____ DEPUTY

Gentlemen:

Please process the enclosed instruments as indicated and acknowledge in your usual manner:

_____ File Plaintiff's Original Petition.
_____ Have Defendant(s) served by the Constable.
_____ Prepare Out-Of-County Citation and return to us.
_____ File Defendant's Original Answer.
_____ File Interrogatories.
_____ File Request for Admissions.
_____ File Trial Setting Request.
__xxx__ Other: Please serve Norma E. Harris at her residence:
2922 Bellaire Blvd., Houston, Texas
_____
_____

Our Check in the amount of $ 10.00 _____ is enclosed to cover your costs.
All Attorneys of Record have been notified as indicated below.
Your assistance is appreciated.

Sincerely yours,

KATHLEEN COOPER

Certified Document Number: 25900047 - Page 18 of 19

# SULLINS, JOHNSTON, ROHRBACH & MAGERS
## ATTORNEYS AT LAW

(1)

3701 KIRBY DRIVE   SUITE 1200

HOUSTON, TEXAS 77098

713/521-0221

—

FAX 713/521-3242

—

FRED SULLINS
MIKE JOHNSTON
BOARD CERTIFIED CIVIL TRIAL LAW*
WILLIAM J. ROHRBACH, JR.
BOARD CERTIFIED COMMERCIAL REAL ESTATE LAW*
GAIL MAGERS
BOARD CERTIFIED FAMILY LAW*
JOHN O. BRENTIN
BOARD CERTIFIED BUSINESS BANKRUPTCY*
TOM AUBRY
MARK DOUGLAS HERBERT

STEPHEN H. TOUCHY
RANDAL L. PAYNE
ROBERT V. McCREARY
BOARD CERTIFIED ESTATE PLANNING AND PROBATE*
MARGUERITE B. BENGE
CHAD BLASINGAME
MASON C. MEYER
H. DAN JOHNSTON
JAMES G. GUMBERT

OF COUNSEL
GOV. BILL DANIEL
611 SAN JACINTO
LIBERTY, TEXAS 77575
409/336-5221

OF COUNSEL
JAMES J. HIPPARD, SR.

January 11, 1991

Katherine Tyra
District Clerk
P. O. Box 4651
Houston, Texas 77210

Re:  No. 80-10657
Family District Court, 309th Judicial District
In the Matter of the Marriage of:  Roy H.D. Harris and
Norma E. Harris, and in the Interest of:  Sarah Tracy
Harris, a Child

Dear Sirs:

Please send the undersigned one (1) certified copy of the Final
Divorce Decree in the above referenced matter.

Our check in the amount of $3.00 is enclosed to cover your
costs.

Thank you.

Sincerely yours,

Fred Sullins

Fred Sullins

FS/pw
Enclosure

v/p

1922/909

Certified Document Number: 25900047 - Page 19 of 19

*Texas Board of Legal Specialization

198 4401



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   March 6, 2014

Certified Document Number:      25900047 Total Pages:  19

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# APPENDIX TAB 7

DEED UNDER EXECUTION

G824117

# THE STATE OF TEXAS,
COUNTY OF HARRIS

*Know all men by these Presents:*

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

THAT WHEREAS, by virtue of a certain ___Writ of___ execution issued out of the 189th Judicial District ___ Court of Harris County, Texas, in Cause No. __1002511__

on the __31__ day of __July__, 1980

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

in favor of

John W. Hankins

against ___Norma Harris M.D.___

on a certain judgment rendered on the __28__ day of __Fenruary__, 1978 and directed and delivered to me as Constable, Precinct No. 1, of Harris County, Texas, commanding that of the Goods and Chattels, Land and Tenements of the said ___Norma Harris M.D.___

defendant___, that I make, or cause to be made certain moneys therein mentioned, I, Walter H. Rankin, Constable, Precinct No. 1, of Harris County, Texas, upon the __5th__ day of __August__, 1980, levy upon and advertise for sale the land and premises hereinafter described, by having a notice of the sale published in the English language once a week for three consecutive weeks preceding the day of sale, in the ___Houstonian___, a newspaper published in Harris County, Texas, the first of said publications appearing not less than twenty days immediately preceding the day of the sale; said notice of sale containing a statement of the authority by virtue of which the sale is to be made, the time of levy, time and place of sale; also a brief description of the property to be sold, the number of acres, original survey, locality in the county, and the name by which the land is most generally known. I also mailed to ___Norma Harris M.D.___

of the above named defendant___ a notice of the sale, directed to each of ✕✕✕✕✕/him at his postoffice.

On the first Tuesday in __September__, same being the __2nd__ day of __September, 1980__, between the hours of ten o'clock a. m. and four o'clock p.m., I sold said hereinafter described land and premises at public vendue in the County of Harris, State of Texas, at the door of the Court House of said Harris County, Texas, and the premises hereinafter described were struck off to ___John W. Hankins___

for the sum of __BID__ ___Two Thousand five hundred and no/100___ ($__2500.00__) Dollars, __He__ being the highest and best bidder therefor.

NOW, THEREFORE, in consideration of the premises aforesaid, and of the payment of the said sum of ___Four Hundred twelve and 51/100___

($__412.51__) Dollars, the receipt of which is hereby acknowledged, I, Walter H. Rankin, Constable, Precinct No. 1, of Harris County, Texas, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said ___John W. Hankins___

all of the estate, right, title and interest which the said ___Norma Harris M.D.___

had of, in and to the following land premises, viz:

EXHIBIT

7

WHC0087

Lot Three (3) in Block Two (2) of West University Place and Addition to the City of West University Place in Harris

1154

To have and to hold the above described land and premises unto the said ___John W. Hankins___

heirs and assigns forever, as fully and as absolutely as I, as Constable, Precinct No. 1, of Harris County, Texas, can convey by virtue of said ___Writ of_____ execution.

In Testimony Whereof, I have hereunto set my hand, this___ ___29th_____day of

___September , 1980___

Constable, Precinct No. 1, of Harris County, Texas
Walter H. Rankin

THE STATE OF TEXAS }
COUNTY OF HARRIS }

Before me,_____F.C. Davis_____ a Notary Public in and for Harris County, Texas, on this day personally appeared Walter H. Rankin, Constable, Precinct No. 1, of Harris County, Texas, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same as Constable, Precinct No. 1, of Harris County, Texas, for the purposes and consideration, and in the capacity therein expressed.

Given under my hand and seal of office, this___ ___29th___ day of ___September , 1980___

Notary Public in and for Harris County, Texas

F.C. Davis
Commission expires February 5, 1984

This instrument has been recorded more than one time.
Anita Rodeheaver
County Clerk, Harris County

STATE OF TEXAS }
COUNTY OF HARRIS }

I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, In the Official Public Records of Real Property of Harris County, Texas on

JAN 21 1981

COUNTY CLERK,
HARRIS COUNTY, TEXAS

STATE OF TEXAS }
COUNTY OF HARRIS }

I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, In the Official Public Records of Real Property of Harris County, Texas on

JAN 12 1981

COUNTY CLERK,
HARRIS COUNTY, TEXAS

JWH000819

1155

# APPENDIX TAB 8

# Constable's Sale

Under and by virtue of an **Writ of** execution and original sale issued on
the 21st day of July, 1980. In cause No. 1,002,511
of the 333th District Court of Harris County, in favor of John M. Hankins,
Plaintiff, recovered a Nunc Pro Tunc Judgment against Norma Harris, M.D., and
Erwin C. Winkel II, M.D., jointly and severally, for the sum of Five Hundred
Thousand ($500,000.00) Dollars, as compensatory damages; AND John W. Hankins,
Plaintiff, recovered a Nunc Pro Tunc Judgment against Norma Harris, M.D.,
individually, Defendant, for the sum of One Hundred Thousand ($100,000.00) Dollars
as exemplary damages; with interest thereon at the rate of 9% per cent per annum
from February 8th, 1979, until paid.

Together with the sum of $ 1,241.56 Cost as taxed on said execution, and the further cost of
executing the same, I have levied on the 6th day of August, 1980 and will offer for sale
and sell on September 2, 1980 , same being the 2nd day of September, 1980
at Courthouse Door of Harris County, in the City of Houston, Texas, between the hours
of ten o'clock a. m. and four o'clock p. m. and any and all right, title, interest and claim which the
said defendant Norma Harris, M.D.

had of, in or to the following described Real Property
situated in Harris County, Texas viz:

Lot Three (3) in Block Two (2) of West
University Place, and Addition to the
City of West University Place in Harris
County, Texas, according to the map
thereof recorded in Volume 446, Page 550
of the Deed Records of Harris County, Texas.

PUBLISHED IN THE HOUSTONIAN

SALE TO BE HELD:
September 2, 1980
At: 10:30 a.m.

WALTER H. RANKIN, Constable,
Precinct No. 1, Harris County, Texas

By _____ Deputy.

HARRIS-000936

223 426426

# APPENDIX TAB 9

NO. 80-39790

| | | |
|---|---|---|
| NORMA HARRIS, M.D. AND ROY HARRIS, M.D. | § § § | IN THE DISTRICT COURT OF |
| VS. | § § § | HARRIS COUNTY, T E X A S |
| WALTER H. RANKIN, CONSTABLE AND JOHN W. HANKINS | § § | 152nd JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER

On this the 28th day of August, 1980 came on to be heard the Application of Plaintiffs, Norma Harris, M.D. and Roy Harris, M.D. for Temporary Restraining Order. Plaintiffs appeared by their attorneys, Hirsch, Westheimer, Block and Wilk. The Court, having examined the pleadings and Affidavit of Gaye Rothman find that immediate and irreparable injury, loss or damages alleged, will result to the rights of NOrma Harris, M.D. and Roy Harris, M.D. with respect to their homestead located at 2922 Bellaire Boulevard, Houston, Texas, unless Constable Walter H. Rankin, John W. Hankins and their agents be forthwith restrained as requested. Plaintiffs Norma Harris, M.D. and Roy Harris, M.D. have no adequate remedy at law. The Court deems the following orders to be necessary and equitable conditioned upon filing Bond in the sum of ___50,000⁰⁰___, condi-tioned as required by law:

IT IS THEREFORE ORDERED that the Clerk of this Court issued a Temporary Restraining Order restraining Walter H. Rankin, Constable, his deputies, agents and assigns and John W. Hankins and his agents and they are hereby immediately restrained from executing a Constable's Sale with respect to the property located at 2922 Bellaire Boulevard, Harris County, Texas, more particularly described as:

> Lot Three (3) in Block Two (2) of West University Place, an addition to the city of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas.

This Restraining Order shall be effective immediately and

Certified Document Number: 25995940 - Page 1 of 3

VOL 1981 PAGE 466

Certified Document Number: 2599959940 - Page 2 of 3

FILED

Aug 29  4 43 PM '00

FILMED POSTED

FEE DOCKET
DOCKET SHEET

shall continue in force and effect until further order of this Court or until it expires by operation of law. This Order shall be binding on Constable Walter H. Rankin, his agents, servants, employees, deputies and on John W. Hankins and his agents until further order of this Court.

IT IS FURTHER ORDERED that the Clerk shall issue notice requiring Constable Walter H. Rankin and John W. Hankins to appear, and they are hereby ordered to appear before this 152nd District Court, 301 Fannin, Houston, Texas on the 5 day of Sept, 1980 at 9:20 o'clock A.M. to show cause why during the pendency of this suit the temporary restraining order should not be made a temporary injunction pending final hearing herein.

SIGNED this the 27 day of August, 1980 at ____ o'clock P.M. in Chambers.

_____
JUDGE RICHARD MILLARD

273

Certified Document Number: 25993940 - Page 3 VOL1981 PAGE467

# APPENDIX TAB 10

G658855

THE STATE OF TEXAS  §
§  KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS  §

THAT NORMA E. HARRIS of the County of Harris, State of Texas, sometimes hereinafter called "Grantor", for the consideration to Grantor in hand paid and secured to be paid by ROY H. D. HARRIS of the County of Harris, State of Texas, sometimes hereinafter call "Grantee", as follows:

(a) Ten and No/100 ($10.00) Dollars and other good and valuable consideration, the receipt and adequacy of which consideration is hereby acknowl- edged and confessed by the Grantor, and

(b) The execution and delivery by the Grantee of his one certain Promissory Note (the "Vendor's Lien Note") of even date herewith, payable to the order of Grantor in the original principal sum of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS, bearing no interest on the unpaid principal amount thereof from the date thereof until maturity, and bearing interest from maturity at nine percent (9%) per annum, the principal of such Note being due and payable as therein provided, the payment of such Note being secured by a vendor's lien hereinafter retained and by Deed of Trust of even date herewith pursuant to which the entirety of Grantor's right, title and interest in and to the property herein- after described is conveyed to Thomas Kirkendall, Trustee;

has GRANTED, SOLD, and CONVEYED, and by these presents does GRANT, SELL, and CONVEY unto the said Grantee, the entirety of Grantor's right, title and interest in and to the following described real property and improvements located in Harris County, Texas, to wit:

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
SONG THI NGAN TRAN



275 47878

Lot Three (3) in Block Two (2) of West University Place, an Addition to the City of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas.

This Deed and conveyance is expressly made and accepted subject to the following matters, and none other, to the extent, and only to the extent, that the same are still valid and subsisting, in effect any filed of record in the Office of the County Clerk of Harris County, Texas:

A. Restrictive covenants of record affecting the above described property.

B. Easements, streets, rights-of-way and building set-back lines affecting the above described property.

C. Outstanding mineral and royalty interests of record affecting the above described property.

D. The liens, security interests, assignments and encumbrances affecting the above described property.

TO HAVE AND TO HOLD the entirety of Grantor's right, title and interest in and to the above described property, together with all and singular the rights and appurtenances thereunto in any wise belonging unto the said Grantee, his successors and assigns forever; and Grantor does hereby bind herself, her successors and assigns, to WARRANT AND FOREVER DEFEND, all and singular, the entirety of Grantor's right, title and interest in and to the above described property unto Grantee, his successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof by, through or under

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
Stan Stanart, County Clerk
Harris County, Texas

SONG THI NGAN TRAN          Deputy



276

479479

Grantor, but not otherwise subject, however, to the matters hereinabove set forth.

EXECUTED this ___1___ day of September, 1980.



NORMA E. HARRIS

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned authority, on this day personally appeared NORMA E. HARRIS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 1st day of September, 1980.

Cheryl L. Kitzmiller
Notary Public in and for
Harris County, TEXAS

My Commission Expires:
10-16-81

Printed Name of Notary Public:
Cheryl L. Kitzmiller

Return to
Hirsch, Westheimer, Block & Wilk
808 Travis
20th Floor
Neils Espersen Building
Houston, Tex. 77002
c/o Gary Rothman

FILED
Sep 2 9 05 AM 1980
COUNTY CLERK
HARRIS COUNTY, TEXAS

SEP 2 1980

COUNTY CLERK,
HARRIS COUNTY, TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
Stan Stanart, County Clerk
Harris County, Texas

Song Thi Ngan Tran
SONG THI NGAN TRAN _____ Deputy



277 48480

# APPENDIX TAB 11

G658854

NOTICE

Prepared by the State Bar of Texas for use by Lawyers only. Revised 1-1-76. To select the proper form, fill in blank spaces, strike out form provisions or insert special terms constitutes the practice of law. No "standard form" can meet all requirements.

SEP--2-00  156671 •   658654 LST A PD

# DEED OF TRUST    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

THE STATE OF TEXAS }
COUNTY OF

KNOW ALL MEN BY THESE PRESENTS:

That        ROY H. D. HARRIS

of ............Harris......... County, Texas, hereinafter called Grantors (whether one or more) for the purpose of securing the indebtedness hereinafter described, and in consideration of the sum of TEN DOLLARS ($10.00) to us in hand paid by the Trustee hereinafter named, the receipt of which is hereby acknowledged, and for the further consideration of the uses, purposes and trusts hereinafter set forth, have granted, sold and conveyed, and by these presents do grant, sell and convey unto ........Thomas Kirkendall................., Trustee, of ......Harris............... County, Texas, and his substitutes or successors, all of the following described property situated in ..............Harris.............. County, Texas, to-wit:

The entirety of the right, title and interest of Norma E. Harris in and to Lot Three (3) in Block Two (2) of West University Place, an Addition to the City of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas.

SEP 2  9 00 AM 1980
COUNTY CLERK
HARRIS COUNTY, TEXAS
FILED

TO HAVE AND TO HOLD the above described property, together with the rights, privileges and appurtenances thereto belonging unto the said Trustee, and to his substitutes or successors forever. And Grantors do hereby bind themselves, their heirs, executors, administrators and assigns to warrant and forever defend the said premises unto the said Trustee, his substitutes or successors and assigns forever, against the claim, or claims, of all persons claiming or to claim the same or any part thereof.

This conveyance, however, is made in TRUST to secure payment of ......One (1)...... promissory note ...... of even date herewith in the principal sum of ......FIFTY THOUSAND AND NO/100 ------------------------ ------------------------------------------------ Dollars ($ 50,000.00 )

executed by Grantors, payable to the order of ......NORMA E. HARRIS........

in the City of ..................Houston, Harris............... County, Texas as follows, to-wit:

as therein provided, said Note being finally due and payable on or before December 15, 1980,

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
SONG THI NGAN TRAN

EXHIBIT D



146

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

until maturity and bearing interest from maturity at nine
percent (9%) per annum,

no
bearing/interest ██████████████████ providing for acceleration of maturity ██████████████████

Should Grantors do and perform all of the covenants and agreements herein contained, and make prompt payment of said indebtedness as the same shall become due and payable, then this conveyance shall become null and void and of no further force and effect, and shall be released at the expense of Grantors, by the holder thereof, hereinafter called Beneficiary (whether one or more).

Grantors covenant and agree as follows:

That they are lawfully seized of said property, and have the right to convey the same; that said property is free from all liens and encumbrances, except as herein provided.

To protect the title and possession of said property and to pay when due all taxes and assessments now existing or hereafter levied or assessed upon said property, or the interest therein created by this Deed of Trust, and to preserve and maintain the lien hereby created as a first and prior lien on said property including any improvements hereafter made a part of the realty.

To keep the improvements on said property in good repair and condition, and not to permit or commit any waste thereof, to keep said buildings occupied so as not to impair the insurance carried thereon.

To insure and keep insured all improvements now or hereafter created upon said property against loss or damage by fire and windstorm, and any other hazard or hazards as may be reasonably required from time to time by Beneficiary during the term of the indebtedness hereby secured, to the extent of the original amount of the indebtedness hereby secured, or to the extent of the full insurable value of said improvements, whichever is the lesser, in such form and with such Insurance Company or Companies as may be approved by Beneficiary, and to deliver to Beneficiary the policies of such insurance having attached to said policies such mortgage indemnity clause as Beneficiary shall direct; to deliver renewals of such policies to Beneficiary at least ten (10) days before any such insurance policies shall expire; any proceeds which Beneficiary may receive under any such policy, or policies, may be applied by Beneficiary, at his option, to reduce the indebtedness hereby secured, whether then matured or to mature in the future, and in such manner as Beneficiary may elect, or Beneficiary may permit Grantors to use said proceeds to repair or replace all improvements damaged or destroyed and covered by said policy.

That in the event Grantors shall fail to keep the improvements on the property hereby conveyed in good repair and condition, or to pay promptly when due all taxes and assessments, as aforesaid, or to preserve the prior lien of this Deed of Trust on said property, or to keep the buildings and improvements insured, as aforesaid, or to deliver the policy or policies, of insurance or the renewal thereof to Beneficiary, as aforesaid, then Beneficiary may, at his option, but without being required to do so, make such repairs, pay such taxes and assessments, purchase any tax title thereon, remove any prior liens, and prosecute or defend any suits in relation to the preservation of the prior lien of this Deed of Trust on said property, or insure and keep insured the improvements thereon in an amount not to exceed that above stipulated; that any sums which may be so paid out by Beneficiary and all sums paid for insurance premiums, as aforesaid, including the costs, expenses and Attorney's fees paid in any suit effecting said property when necessary to protect the lien hereof shall bear interest from the dates of such payments at ten per cent (10%) per annum, and shall be paid by Grantors to Beneficiary upon demand, at the same place at which the above described note is payable, and shall be deemed a part of the debt hereby secured and recoverable as such in all respects.

That in the event of default in the payment of any installment, principal or interest, of the note hereby secured, in accordance with the terms thereof, or of a breach of any of the covenants herein contained to be performed by Grantors, then and in any of such events Beneficiary may elect, Grantors hereby expressly waiving presentment and demand for payment, to declare the entire principal indebtedness hereby secured with all interest accrued thereon and all other sums hereby secured immediately due and payable, and in the event of default in the payment of said indebtedness when due or declared due, it shall thereupon, or at any time thereafter, be the duty of the Trustee, or his successor or substitute as hereinafter provided, at the request of Beneficiary (which request is hereby conclusively presumed), to enforce this trust; and after advertising the time, place and terms of the sale of the above described and conveyed property, then subject to the lien hereof, for at least twenty-one (21) days preceding the date of sale by posting written or printed notice thereof at the Courthouse door of the county where said real property is situated, which notice may be posted by the Trustee acting, or by any person acting for him, and the Beneficiary (the holder of the indebtedness secured hereby) has, at least twenty-one (21) days preceding the date of sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the indebtedness secured by this Deed of Trust according to the records of Beneficiary, by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by the records of Beneficiary, in a post office or official depository under the care and custody of the United States Postal Service, the Trustee shall sell the above described property, then subject to the lien hereof, at public auction in accordance with such notice at the Courthouse door of said county where such real property is situated (provided where said real property is situated in more than one county, the notice to be posted as herein provided shall be posted at the Courthouse door of each of such counties where said real property is situated, and said above described and conveyed property may be sold at the Courthouse door of any one of such counties, and the notices so posted shall designate the county where the property will be sold), on the first Tuesday in any month between the hours of ten o'clock A.M. and four o'clock P.M., to the highest bidder for cash, selling all of the property as an entirety or in such parcels as the Trustee acting may elect, and make due conveyance to the Purchaser or Purchasers, with general warranty binding Grantors, their heirs and assigns; and out of the money arising from such sale, the Trustee acting shall pay first, all the expenses of advertising the sale and making the conveyance, including a commission of five per cent (5%) to himself, which commission shall be due and owing ██████████ ██████████████████████████ and then to Beneficiary the full amount of principal, interest, ██████████████ and other charges due and unpaid on said note and all other indebtedness secured hereby, rendering the balance of the sales price, if any, to Grantors, their heirs or assigns; and the recitals in the conveyance to the Purchaser or Purchasers shall be full and conclusive evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed, and such sale and conveyance shall be conclusive against Grantors, their heirs and assigns.

It is agreed that in the event a foreclosure hereunder should be commenced by the Trustee, or his substitute or successor, Beneficiary may at any time before the sale of said property direct the said Trustee to abandon the sale, and may then institute suit for the collection of said note, and for the foreclosure of this Deed of Trust lien; it is further agreed that if Beneficiary should institute a suit for the collection thereof, and for a foreclosure of this Deed of Trust lien, that he may at any time before the entry of a final judgment in said suit dismiss the same, and require the Trustee, his substitute or successor to sell the property in accordance with the provisions of this Deed of Trust.

Beneficiary shall have the right to purchase at any sale of the property, being the highest bidder and to have the amount for which such property is sold credited on the debt then owing.

Beneficiary in any event is hereby authorized to appoint a substitute trustee, or a successor trustee, to act instead of the Trustee named herein without other formality than the designation in writing of a substitute or successor trustee; and the authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the indebtedness hereby secured has been paid in full, or until said property is sold hereunder, and each substitute and successor trustee shall succeed to all of the rights and powers of the original trustee named herein.

In the event any sale is made of the above described property, or any portion thereof, under the terms of this Deed of Trust, Grantors, their heirs and assigns, shall forthwith upon the making of such sale surrender and deliver possession of the property so sold to the Purchaser at such sale, and in the event of their failure to do so they shall thereupon from and after the making of such sale be and continue as tenants at will of such Purchaser, and in the event of their failure to surrender possession of said

RECORDER'S MEMORANDUM
ALL BLACKOUTS, ADDITIONS AND CHANGES WERE PRESENT AT THE TIME THE INSTRUMENT WAS FILED AND RECORDED.

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
**Stan Stanart, County Clerk**
Harris County, Texas

Song Thi Ngan Tran _____ Deputy
SONG THI NGAN TRAN



property upon demand, the Purchaser, his heirs or assigns, shall be entitled to institute and maintain an action for forcible detainer of said property in the Justice of the Peace Court in the Justice Precinct in which such property, or any part thereof, is situated.

It is agreed that the lien hereby created shall take precedence over and be a prior lien to any other lien of any character whether vendor's, materialmen's or mechanic's lien hereafter created on the above described property, and in the event the proceeds of the indebtedness secured hereby as set forth herein are used to pay off and satisfy any liens heretofore existing on said property, then Beneficiary is, and shall be, subrogated to all of the rights, liens and remedies of the holders of the indebtedness so paid.

It is further agreed that if Grantors, their heirs or assigns, while the owner of the hereinabove described property, should commit an act of bankruptcy, or authorize the filing of a voluntary petition in bankruptcy, or should an act of bankruptcy be committed and involuntary proceedings instituted or threatened, or should the property hereinabove described be taken over by a Receiver for Grantors, their heirs or assigns, the note hereinabove described shall, at the option of Beneficiary, immediately become due and payable, and the acting Trustee may then proceed to sell the same under the provisions of this Deed of Trust.

As further security for the payment of the hereinabove described indebtedness, Grantors hereby transfer, assign, and convey unto Beneficiary all rents issuing or to hereafter issue from said real property, and in the event of any default in the payment of said note or hereunder, Beneficiary, his agent or representative, is hereby authorized, at his option, to collect said rents, or if such property is vacant to rent the same and collect the rents, and apply the same, less the reasonable costs and expenses of collection thereof, to the payment of said indebtedness, whether then matured or to mature in such manner as Beneficiary may elect. The collection of said rents by Beneficiary shall not constitute a waiver of his right to accelerate the maturity of said indebtedness nor of his right to proceed with the enforcement of this Deed of Trust.

It is agreed that an extension, or extensions, may be made of the time of payment of all, or any part, of the indebtedness secured hereby, and that any part of the above described real property may be released from this lien without altering or affecting the priority of the lien created by this Deed of Trust in favor of any junior encumbrancer, mortgagee or purchaser, or any person acquiring an interest in the property hereby conveyed, or any part thereof: it being the intention of the parties hereto to preserve this lien on the property herein described and all improvements thereon, and that may be hereafter constructed thereon, first and superior to any liens that may be placed thereon, or that may be fixed, given or imposed by law thereon after the execution of this instrument notwithstanding any such extension of the time of payment, or the release of a portion of said property from this lien.

In the event any portion of the indebtedness hereinabove described cannot be lawfully secured by this Deed of Trust lien on said real property, it is agreed that the first payments made on said indebtedness shall be applied to the discharge of that portion of said indebtedness.

Beneficiary shall be entitled to receive any and all sums which may become payable to Grantors for the condemnation of the hereinabove described real property, or any part thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof, and any sums which may be awarded or become payable to Grantors for damages caused by public works or construction on or near the said property. All such sums are hereby assigned to Beneficiary, who may, after deducting therefrom all expenses actually incurred, including attorney's fees, release same to Grantors or apply the same to the reduction of the indebtedness hereby secured, whether then matured or to mature in the future, or on any money obligation hereunder, as and in such manner as Beneficiary may elect. Beneficiary shall not be, in any event or circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any such sums.

Nothing herein or in said note contained shall ever entitle Beneficiary, upon the arising of any contingency whatsoever, to receive or collect interest in excess of the highest rate allowed by the laws of the State of Texas on the principal indebtedness hereby secured or on any money obligation hereunder and in no event shall Grantors be obligated to pay interest thereon in excess of such rate.

If this Deed of Trust is executed by only one person or by a corporation the plural reference to Grantors shall be held to include the singular and all of the covenants and agreements herein undertaken to be performed by and the rights conferred upon the respective Grantors named herein, shall be binding upon and inure to the benefit of not only said parties respectively but also their respective heirs, executors, administrators, grantees, successors and assigns.

Grantors expressly represent that this Deed of Trust and the Note hereby secured are given for the following purpose, to-wit:

As part payment of the purchase price of the above described property, and the Note is also secured by a vendor's lien and superior title retained in a Deed of even date herewith covering the entirety of the right, title and interest of Norma B. Harris in and to the above described property to Grantor, and it is agreed that this Deed of Trust is cumulative of and without prejudice to such vendor's lien and superior title and that a foreclosure hereunder will operate as a foreclosure of said vendor's lien. This Deed of Trust is subject to the same title and exceptions set forth in the Deed.

EXECUTED this    1st     day of     September     A.D. 19 80

_____
ROY H. D. HARRIS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_Song Thi Ngan Tran_
SONG THI NGAN TRAN     Deputy



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

(Acknowledgment)

THE STATE OF TEXAS }
COUNTY OF HARRIS

Before me, the undersigned authority, on this day personally appeared ROY H. D. HARRIS

known to me to be the person......... whose name...is...... subscribed to the foregoing instrument, and acknowledged to me that...he...... executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on this the 1st day of September , A.D. 19 80

_Cheryl L. Kitzmiller_
Notary Public in and for                    County, Texas.

My commission expires 10-16- , 19 80

_Cheryl L. Kitzmiller_
(Printed or stamped name of notary)

(Acknowledgment)

THE STATE OF TEXAS }
COUNTY OF

Before me, the undersigned authority, on this day personally appeared

known to me to be the person......... whose name............ subscribed to the foregoing instrument, and acknowledged to me that...... he...... executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on this the          day of          , A.D. 19

Notary Public in and for                    County, Texas.

My commission expires............ , 19......

(Printed or stamped name of notary)

DEED OF TRUST

TO

TRUSTEE FOR

STATE OF TEXAS }
COUNTY OF HARRIS

hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

SEP 2 1980

COUNTY CLERK,
HARRIS COUNTY, TEXAS

PREPARED IN THE LAW OFFICE OF:
HIRSCH, WESTHEIMER, BLOCK & WILK
20th Floor, Niels Esperson Bldg.
Houston, Texas 77002
(713) 223-5181

PLEASE RETURN TO:
Thomas Kirkendall
HIRSCH, WESTHEIMER, BLOCK & WILK
20th Floor, Niels Esperson Bldg.
Houston, Texas 77002
(713) 223-5181

(Corporate Acknowledgment)

THE STATE OF TEXAS }
COUNTY OF

Before me, the undersigned authority, on this day personally appeared
of
a corporation, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of said corporation.

Given under my hand and seal of office on this the          day of          , A.D. 19

Notary Public in and for                    County, Texas.

My commission expires ............ , 19......

(Printed or stamped name of notary)

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
SONG THI NGAN TRAN



149

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

J435508

WARRANTY DEED

03/30/84 00171279 J435508 $ 3.00

THE STATE OF TEXAS    §
                              KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS    §

THAT I, ROY H.D. HARRIS, of the County of Harris and State of Texas for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS and other valuable consideration to the undersigned paid by the grantee herein named, the receipt of which is hereby acknowledged,

have GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CONVEY unto SARAH TRACY HARRIS, Trustee, whose address is 2922 Bellaire, Houston, Texas, 77025, of the County of Harris and State of Texas, the following described real property in Harris County, Texas, to-wit:

Lot Three (3), in Block Two (2) of WEST UNIVERSITY PLACE, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas.

This conveyance is made and accepted subject to the following matters, to the extent the same are in effect at this time, to-wit:

Any and all restrictions, conditions, mineral reservations and easements, if any, relating to the herein above described real property, but only to the extent they are still in effect, shown of record in the herein above mentioned county and state, and to all zoning laws, regulations and ordinances of municipal and/or other government authorities, if any, but only to the extent that they are still in effect, relating to the herein above described real property.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said grantee, her successors and assigns forever; and I do hereby bind myself, my heirs, executors and administrators to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said grantee, her successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

EXECUTED this 16ᵀᴴ day of March, 1984.

Roy H.D. Harris
Roy H.D. Harris

THE STATE OF TEXAS
COUNTY OF HARRIS

Before me, the undersigned authority, on this day personally appeared Roy H.D. Harris known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this the 16ᵀᴴ day of March, 1982. 1984

Notary Public, State of Texas
My Commission Expires Oct 3, 1994

William D. Hartwig

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
**Stan Stanart, County Clerk**
Harris County, Texas

Song Thi Ngan Tran          Deputy
SONG THI NGAN TRAN



EXHIBIT E

150

# APPENDIX TAB 12

| Name of creditor (including last known holder of any negotiable instrument) and complete mailing address including zip code (if unknown, so state) | Specify when claim was incurred and the consideration therefor; when claim is contingent, unliquidated, disputed, subject to setoff, evidenced by a judgment, negotiable instrument, or other writing, or incurred as partner or joint contractor; so indicate; specify name of any partner or joint contractor on any debt | Amount of claim |
|---|---|---|
| John W. Hawkins c/o Paul E. Bollard Krooner, Abraham & Watkins 900 Commerce St. Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a judgment obtained against Norma E. F. Harris, M.D., which arose during marriage between Norma E. F. Harris, M.D. and Debtor. | $350,000.00 plus interest attorneys' fe |
| Norma E. F. Harris, M.D. c/o Harris Medical Associates, P.A. 2922 Bellaire Blvd. Houston, Texas 77025 | Contingent claim based on division of community property in Property Settlement Agreement incorporated in Divorce Decree on June 17, 1980 entered in Harris v. Harris, Cause No. 80,10657 in Family District Court of Harris County, Texas; claim evidenced by Vendor's Lien Note and Deed of Trust on Debtor's property at 2922 Bellaire Blvd. | $50,000.00 |
| Airline Commerce Bank c/o John Nabors Liddell, Sapp, Zively & Brown 500 Gulf Building Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during marriage between Debtor and Norma E. F. Harris, M.D. and as set forth in the lawsuit Airline Commerce Bank v. Dr. Norma Harris, Cause No. 1,331,330 in the 165th District Court of Harris County, Texas (filed 6/23/75). | $15,661.35 |
| First Mortgage Investors c/o Larry Knippa Nauch & Knippa 2460 Two Shell Plaza Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, M.D., and as set forth in the lawsuit First Mortgage Investors v. Norma F. Harris, M.D., Cause No. 1,119,632 in the 190th District Court of Harris County, Texas (filed 3/31/77). | $907,889.51 plus interest attorneys' fe |
| Wentworth Eaton c/o Harold Lloyd 711 Fannin, Suite 424 Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, and as set forth in lawsuit Eaton v. Harris, Cause No. 1,089,101 in the 127th District Court of Harris County, Texas (filed 8/18/76). | $350,000.00 |
| United States Leasing Corp. c/o James N. Hull Lapin, Totz & Mayer 2626 Two Shell Plaza Houston, Texas 77002 | Contingent, unliquidated and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, M.D., and as set forth in lawsuit U.S. Leasing Corp. v. Norma E. F. Harris, M.D., et al, Cause No. 319,204 in County Civil Court at Law No. 3 of Harris County, Texas (filed: 2/8/78). | $ 3,730.00 plus attorneys fees |

(continued on next page)

TOTAL . . . _____

© Fleur, Inc., 11 West Madison Street, P.O. Box 4415, Phoenix, Arizona 85030 / (602) 253-1663 Sum Fred

HARRIS-000935

222 425425

# APPENDIX TAB 13

UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE:

ROY N. D. HARRIS,

DEBTOR

SOCIAL SECURITY NUMBER
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

CASE NO. 80-01464-H5
Chapter 13:

ORDER

On this, 2nd day of September, 1980, came on to be heard the verified Motion for Recognition of Effect of Automatic Stay Under Section 362 ~~as the Temporary Restraining Order~~ and good cause appearing therefor, it is therefore:

ORDERED, ADJUDGED and DECREED that the scheduled Constable Sale of the real property located at 1922 Bellaire Boulevard, Houston, Texas, or any interest therein, _owned by the Debtor_ is prohibited by the automatic stay under Section 362 of the Bankruptcy Code, and that any further attempt to execute on the Debtor's property outside the Bankruptcy Court by Constable Rankin, John W. Hankins or Robert E. Ballard or their agents or employees are stayed pursuant to the provisions of Section 362 during the pendency of this case.

2:26pm _[signature]_
JUDGE PRESIDING

HARRIS-000943

230

# APPENDIX TAB 14

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: Roy H.O. Harris

CASE NO. 30-01464-H8

DEBTOR*

## DISCHARGE OF DEBTOR

It appearing that the person named above has filed a pe-
tition commencing a case under Title 11, United States Code on
1/2/80, that an order for relief was entered under
Chapter 7 and that no complaint objecting to the discharge of the
debtor was filed within the time fixed by the court (or that a
complaint objecting to discharge of the debtor was filed, and
after due notice and hearing, was not sustained), it is ordered
that

1. The above-named debtor is released from all
dischargeable debts.

2. Any judgment heretofore or hereafter obtained
in any court other than this court is null and void as a
determination of the personal liability of the debtor
with respect to any of the following:

(a) debts dischargeable under 11 U.S.C.
§523;

(b) unless heretofore or hereafter deter-
mined by order of this court to be nondis-
chargeable debts alleged to be excepted from
discharge under clauses (2), (4) and (6) of 11
U.S.C. §523(a);

(c) debts determined by this court to be
discharged under 11 U.S.C. §523(d).

3. All creditors whose debts are discharged by
this order and all creditors whose judgments are de-
clared null and void by paragraph 2 above are enjoined
from instituting or continuing any action or employing
any process to collect such debts as personal liabili-
ties of the above-named debtor.

DATED: May 19, 1981

I certify that the foregoing is a
true copy of the original now on
file in Bankruptcy Court
Southern District of Texas

By _____, Clerk

BY THE COURT

UNITED STATES BANKRUPTCY JUDGE

*Include here all names used by Debtor within last 6 years

HARRIS-000946

233 4366

# APPENDIX TAB 15

WD

J435508

WARRANTY DEED

01/30/84 00171279 J435508 $ 3.00

THE STATE OF TEXAS §

COUNTY OF HARRIS §

KNOW ALL MEN BY THESE PRESENTS:

THAT I, ROY H.D. HARRIS, of the County of Harris and State of Texas for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS and other valuable consideration to the undersigned paid by the grantee herein named, the receipt of which is hereby acknowledged,

have GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CON-VEY unto SARAH TRACY HARRIS, Trustee, whose address is 2922 Bellaire, Houston, Texas, 77025, of the County of Harris and State of Texas, the following described real property in Harris County, Texas, to-wit:

Lot Three (3), in Block Two (2) of WEST UNIVERSITY PLACE, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 444, Page 560 of the Deed Records of Harris County, Texas.

This conveyance is made and accepted subject to the following matters, to the extent the same are in effect at this time, to-wit:

Any and all restrictions, conditions, mineral reservations and easements, if any, relating to the herein above described real property, but only to the extent they are still in effect, shown of record in the herein above mentioned county and state, and to all zoning laws, regulations and ordinances of munici-pal and/or other government authorities, if any, but only to the extent that they are still in effect, relating to the herein above described real proper-ty.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said grantee, her successors and assigns forever; and I do hereby bind myself, my heirs, executors and administrators to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said grantee, her successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

EXECUTED this 16th day of March, 1984.

Roy H.D. Harris
Roy H.D. Harris

THE STATE OF TEXAS
COUNTY OF HARRIS

Before me, the undersigned authority, on this day personally appeared Roy H.D. Harris known to me to be the person whose name is subscribed to the fore-going instrument, and acknowledged to me that he executed the same for the purposes, and consideration therein expressed.

Given under my hand and seal of office this the 16th day of March, 1982. 1984

Notary Public, State of Texas
My Commission Expires Dec 3, 1984

William D. Hartwig

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
**Stan Stanart, County Clerk**
Harris County, Texas

Song Thi Ngan Tran _____ Deputy
SONG THI NGAN TRAN

EXHIBIT
HARRIS
10



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

FILED
Mar 30: 9 00 AM 1984
COUNTY CLERK,
HARRIS COUNTY, TEXAS



STATE OF TEXAS
COUNTY OF HARRIS

I hereby certify that this instrument was FILED in the Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

MAR 30 1984

COUNTY CLERK,
HARRIS COUNTY, TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/13/2014
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
SONG THI NGAN TRAN



# APPENDIX TAB 16

LAW OFFICES OF
## HIRSCH & WESTHEIMER, P.C.

MATTHEW HOFFMAN

25TH FLOOR REPUBLICBANK CENTER
HOUSTON, TEXAS 77002

(713) 223-5181

TELEX 790689
TELECOPIER (713) 223-9319

#2280
Norma Harris, M.D., et al
  (John W. Hankins vs.)

July 11, 1984
(Dictated July 3, 1984)

Mr. Charles L. Duke
Mr. Robert Connor
Duke & Connor
4219 Richmond Avenue, Suite 290
Houston, Texas   77027

Re:   John W. Hankins vs. Norma Harris, M.D.,
      et al; Cause No. 1,002,511 in the
      80th Judicial District Court of Harris
      County, Texas

Gentlemen:

This will acknowledge receipt, on June 11, 1984, of a copy of your letter dated May 11, 1984 addressed to our client, Dr. Roy H. D. Harris, relative to the above-captioned litigation. Your letter alleges an interest on the part of your client, Mr. John Walter Hankins, Sr., in certain property located at 2922 Bellaire Boulevard, Houston, Texas, 77025 (hereinafter called the "Homestead Property").

We represented all of the Defendants in the above-captioned litigation. We also represented Dr. Roy Harris in his 1980 Chapter 13 bankruptcy case (later converted to Chapter 7), Case No. 80-01464-HB in the United States Bankruptcy Court for the Southern District of Texas. Our clients have been represented most recently by Ms. Barbara DeGeorgio of the firm, Stark & Prahm, P.C. We are functioning at this time as co-counsel with Ms. DeGeorgio for the Harrises in this matter.

It is our position that Mr. Hankins' alleged purchase of "all of the interests of Norma Harris, M.D." in the Homestead Property at a Constable's sale on September 2,



EXHIBIT
MH-1

1980 and pursuant to a Deed under Writ of Execution dated September 29, 1980, recorded under County Clerk's File No. G-824177 and refiled under County Clerk's File No. G-836122, wherein the Homestead Property was purportedly conveyed to John W. Hankins, is void. Prior to the time of the purported conveyance, State District Judge Richard Millard had issued, on August 29, 1980, a Temporary Restraining Order ("TRO") prohibiting the sale in Cause No. 80-39790 in the 152nd Judicial District Court of Harris County, Texas. Further, the Homestead Property was subject to Dr. Roy Harris' pending bankruptcy case, previously referenced. Former United States Bankruptcy Judge William Schultz also prohibited the sale of the Homestead Property, pursuant to the provisions of the Bankruptcy Code's automatic stay under 11 U.S.C. §362(a), in an express Order entered on September 2, 1980 prior to the purported Constable's sale.

Your letter indicates that the Deed under Writ of Execution was filed with the Harris County Clerk's office on January 12, 1981. We have been advised by Capital Title Company, Inc. of Houston that the Deed under Writ of Execution constitutes a cloud on the title to the Homestead Property.

In your letter to Dr. Roy Harris, you invited him to communicate with you within thirty (30) days if he desired to purchase Mr. Hankins' interest in the Homestead Property. You further stated, in pertinent part, as follows:

> "Regardless of what your feelings toward Mr. Hankins might be, or your assessment of his interest in said property, I am sure that you will agree that his Deed with regard to this real property represents a cloud on the title to the property. Further, it would be a barrier to sale to a third party and to the full realization of the worth of the property to you."

Please be advised that Mr. Hankins has no legitimate interest in the Homestead Property. Moreover, our clients are being damaged to the extent of having to further engage our services and those of Ms. DeGeorgio's firm in order to remove the cloud placed by Mr. Hankins on the title to the Homestead Property.

HARRIS-000918

The undersigned met with Ms. DeGeorgio on June 11, 1984. During our conference on that date, we placed a call to both of you gentlemen for the purpose of discussing your May 11, 1984 letter to Dr. Roy Harris. When we were unable to reach either of you, we left a rather detailed message to the effect that we were preparing this lengthy reply letter to transmit the Notice of Discharge in Dr. Roy Harris' bankruptcy case, the injunctions granted in both the State District Court and the United States Bankruptcy Court, and, further, to set forth the history and key dates surrounding what transpired. Both Mr. Hankins and his attorney at the time, Mr. Robert E. Ballard, of Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, were given notice of the injunctions prior to the purported Constable's sale, but Mr. Hankins apparently decided to go forward with the Constable's sale anyway. In addition to placing Mr. Hankins and Constable Rankin in contempt of the Bankruptcy Court, in which the automatic and express injunctions were issued, and in contempt of the State District Court, in which the TRO was entered, these actions rendered the alleged sale absolutely void. Kalb v. Feuerstein, 308 U.S. 433 (1940); Zestee Foods, Inc. v. Phillips Foods Corp., 536 F.2d 334 (10th Cir. 1976); Meyer v. Rowen, 181 F.2d 715,716 (10th Cir. 1950); In Re Potts, 142 F.2d 883 (6th Cir. 1944), cert. den'd, 324 U.S. 868 U.S. (1945); See generally 2 Collier on Bankruptcy, ¶362.11 (15th Ed. 1979). See also In Re Dennis, 14 BR 125 (Bankr. E.D. Pa. 1981) (post-petition sheriff sale violated stay); In Re Elder, 4 C.B.C.2d 1092 (Bankr. M.D. Ga. 1981) (post-petition garnishment of debtor's wages violated stay).

Moreover, now that you are fully aware of these facts, we trust that you will agree that your May 11, 1984 communication with our client also violated the injunction contained in paragraph 3 of the Discharge of Debtor dated May 19, 1981 and signed by the Honorable John R. Blinn, then United States Bankruptcy Judge, as follows:

> "3. All creditors whose debts are discharged by the Order and all creditors whose judgments are declared null and void by paragraph 2 above, are enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabilities to the above-named Debtor."

It is our understanding from Ms. DeGeorgio that you gentlemen may not have been aware of the existence of the TRO or of the pending bankruptcy case at the time of the purported sale of the Homestead Property. Ms. DeGeorgio has advised us that she received a call from Mr. Connor on June 2, 1984, along these lines:

HARRIS-000919

206 40409

(1) Mr. Connor claimed ignorance of (i) the TRO, (ii) Dr. Roy Harris' bankruptcy case, and (iii) the automatic stay and September 2, 1984 express Injunction Order entered therein.

(2) Mr. Connor advised Ms. DeGeorgio, basically, that Hankins just came in and asked him to collect on the Deed.

(3) Moreover, Mr. Connor claimed bona fide purchaser status for Mr. Hankins with respect to Norma Harris' interests.

We have taken considerable time and effort, at our clients' expense, to review this long-closed file. We shall now set forward the significant details and dates surrounding the Hankins' Deed under Writ of Execution and why that Deed is void, as follows:

(1) June 20, 1980: Divorce Decree entered awarding the Homestead Property to Roy Harris.

(2) On August 28, 1980: This firm filed a petition on behalf of Norma Harris, M.D., et al seeking a TRO and Temporary Injunction to Enjoin Foreclosure of Real Property against Mr. Hankins and Constable Rankin.

(3) August 29, 1980: TRO was entered prohibiting the sale and ordering the Clerk to give Notice to Mr. Hankins and to Constable Rankin of a hearing to show cause why the TRO should not be made a temporary injunction.

(4) September 1, 1980: Norma Harris transferred her undivided fifty percent (50%) interest in the Homestead Property to Roy Harris by Special Warranty Deed, pursuant to the above-mentioned June 20, 1980 Divorce Decree. (Special Warranty Deed recorded at 9:00 a.m. on September 2, 1980).

Mr. Charles L. Duke
Mr. Robert Connor
July 11, 1984
(Dictated July 3, 1984)
Page Five

(5) September 2, 1980 (8:06 o'clock a.m.):
Roy Harris filed voluntary Chapter 13
bankruptcy petition thereby instantly
creating automatic injunction as to the
entire Homestead Property of which he
possessed one hundred percent (100%)
record title.

(6) September 2, 1980:  Separate letters
handdelivered to Constable Rankin and to
Mr. Ballard by this firm notifying each
of them of the filing of the Chapter 13
Petition by Dr. Roy Harris and of the
automatic stay and contempt provisions.

(7) September 2, 1980:  (1:34 p.m.)  Motion
for Recognition of Effective Automatic
Stay Under 11 U.S.C. §362(a) or for TRO
filed by this firm on behalf of Dr. Roy
H. D. Harris, M.D., complaining of and
against Mr. Hankins, Constable Rankin
and attorney Ballard.  They had represented
to us that they intended to proceed with
the scheduled Constable's sale at 2:30
p.m. on September 2, 1980, unless the
bankruptcy court expressly ordered that
such a sale would be prohibited by the
automatic stay under 11 U.S.C. §362(a).

(8) September 2, 1980:  (2:26 p.m.):  United
States Bankruptcy Judge William Schultz
issued Order prohibiting the sale pursuant
to the automatic stay provisions of 11
U.S.C. §362(a).

(9) September 2, 1980:  (2:30 p.m.)  Purported
Constable's sale took place.

(10) September 29, 1980:  Deed under Writ of
Execution signed by Constable Rankin.

(11) January 12, 1981:  Hankins recorded Deed
under Writ of Execution.

HARRIS-000921

208 411 411

(12) March 9, 1981: John W. Hankins signed a complete and general Release of:

"all claims and demands whatsoever, whether known or unknown, liquidated or unliquidated, he ever had, now has, or may have for, upon or by reason of any manner, cause or thing whatsoever from any time in the past to day of the date of this Release."

The Hankins Release was given in consideration of an overall settlement involving payment to Mr. Hankins of One Hundred Fifty Thousand and No/100 Dollars ($150,000.00) in cash and a complete release, as described above, of Drs. Roy and Norma Harris and their companies, pension plan, etc.

(13) March 20, 1981: Final Judgment dismissing Hankins' suit with prejudice signed and entered in John Hankins v. Norma Harris, M.D., et al, captioned above.

(14) May 19, 1981: Final Discharge of Debtor Issued in Dr. Roy Harris' bankruptcy case.

Copies of all the above-referenced relevant documents are enclosed herewith.

In short, Gentlemen, we consider the actions your client has requested that you bring on his behalf to constitute harassment and to be contemptuous of the TRO, the Bankruptcy Court's automatic injunction, the September 2, 1980 express injunction and the discharge injunction.

Moreover, Mr. Hankins has released any claims or demand whatsoever that he may have against our clients. Finally, the alleged Constable's sale is absolutely void for the reasons stated and based upon the authorities cited. Accordingly, any further action on your part or on the part of your client to attempt to extort consideration from our clients will be met by our clients' initiating appropriate litigation to clear title to their property and to recover damages suffered at the hands of your client.

HARRIS-000922

209 412 412

Mr. Charles L. Duke
Mr. Robert Connor
July 11, 1984
(Dictated July 3, 1984)
Page Seven


Finally, we refer you to a letter dated May 14, 1984 to Mr. Ballard, counsel to Mr. Hankins in the above-captioned litigation, wherein Ms. DeGeorgio requests Mr. Ballard to cause Mr. Hankins to sign a Quitclaim Deed releasing any interest he may claim in and to the Homestead Property. Mr. Ballard, incidentally, has confirmed to us in a May, 1984 telephone conference, his agreement with our analysis that Mr. Hankins released any claims he had against our clients or to the Homestead Property. Mr. Ballard also agreed to advise Mr. Hankins that he should sign the Quitclaim Deed, and we are confident that Mr. Ballard did so advise your client.

A copy of Ms. DeGeorgio's May 14, 1984 letter to Mr. Ballard, together with a copy of the proposed Quitclaim Deed is enclosed herewith. We request that you cause Mr. Hankins to execute the copy of the Quitclaim Deed, have it notarized and returned to the undersigned or to Ms. DeGeorgio for filing in order to clear the cloud your client has placed on the title to the Homestead Property. If your client will do as we request, our clients are willing to let this matter drop.

Hopefully, this matter is near an end, but if you should have any particular question concerning the contents of this letter or the enclosed documents submitted to you herewith, please do not hesitate to communicate with the undersigned or with Ms. DeGeorgio. Do not attempt to communicate directly with our clients again or we will file an action in the bankrupcy court to re-open Dr. Roy Harris' case for the purpose of holding you in contempt of court.

Very truly yours,

HIRSCH & WESTHEIMER, P.C.

By: _Matthew Hoffman_
Matthew Hoffman

MH:cj
Enclosures

HARRIS-000923

210 413 413

Mr. Charles L. Duke
Mr. Robert Connor
July 11, 1984
(Dictated July 3, 1984)
Page Eight

cc: Mr. Robert E. Ballard
Kronzer, Abraham, Watkins
Nichols, Ballard & Friend
800 Commerce Street
Houston, Texas  77002

Walter Rankin
Constable
301 San Jacinto
Houston, Texas  77002

Ms. Barbara DeGeorgio
Stark & Frahm, P.C.
1853 Lexington
Houston, Texas  77098-4399

Capital Title Co., Inc.
Eleven Greenway Plaza, Suite 100
Houston, Texas  77046
Attention:  Ms. Renee Dempsey for
Ms. Susan Fischman

Dr. and Mrs. Roy H. D. Harris
P.O. Box 540248
Houston, Texas  77254-0248

HARRIS-000924

APPENDIX TAB 17



# HOFFMAN & ASSOCIATES

FIRST CITY TOWER
1001 FANNIN
SUITE 4650
HOUSTON, TEXAS 77002
(713) 650-8800
FAX (713) 652-9051

September 7, 1990

Mr. Thomas Hayes
Attorney at Law
2020 Southwest Freeway
Suite 324
Houston, Texas 77098

VIA FAX (W/O ENCLOSURES)
AND REGULAR MAIL

Re: John Hankins v. Norma Harris, M.D. et al; In the District
Court of Harris County, Texas, 80th Judicial District
No. 1,002,511

Dear Mr. Hayes:

Further in line with our telephone conference on August 27, 1990, wherein you advised us that you represent Mr. John Hankins, the former Plaintiff in the above captioned litigation, and advised us that Mr. Hankins has come to you with the thought that he may now have some action against our client, Dr. Norma Harris (retired), we have retrieved our files from archives and reviewed them. Enclosed herewith, for your convenience, are copies of the following pertinent documents which we believe should convince you that your client does not have a viable further cause of action.

1. Final Divorce Decree dated June 20, 1980 with relevant pages from the Marriage Settlement Agreement attached showing the disposition of the homestead;

2. Dr. Roy Harris' Bankruptcy Schedules (pertinent pages therefrom) dated December 18, 1980 reflecting:

a. Indebtedness to Dr. Norma Harris in the amount of $50,000.00; and

b. Contingent, Unliquidated and Disputed potential community claim of Mr. John Hankins in the amount of approximately $350,000.00;

3. Proposed September 2, 1980 Constable's Sale pursuant to a writ of execution of Dr. Roy Harris' exempt homestead awarded to him under his Marriage Settlement and Final Decree of Divorce dated July 31, 1980;



EXHIBIT
MA-3

HARRIS-000926

213 41416

4.    Debtor's Motion for Recognition of Effect of Automatic Stay Under Section 362(a) or for Temporary Restraining Order, dated September 2, 1980;

5.    Federal Bankruptcy Court Order dated September 2, 1980 clarifying that the scheduled Constable's Sale of the real property located at 2922 Bellaire Boulevard, Houston, Texas or any interest therein owned by the Debtor (Dr. Roy Harris) was prohibited by the automatic stay under Section 362 of the Bankruptcy Code, and that any further attempt to execute on the Debtor's property outside the Bankruptcy Court by John Hankins, et al. or their agents or employees was stayed pursuant to the automatic stay provisions of Section 362(a) of the Code;

6.    (Full and Final) General Release dated March 3, 1981 executed by your client and witnessed and notarized by the parties reflected thereon, wherein your client released Drs. Norma Harris, Roy Harris, their companies and pension plans from any cause of action, claims . . . which Mr. Hankins now has or may have against those parties . . . by reason . . . of the matters alleged in, or related to, the above captioned cause of action;

7.    Discharge of Debtor entered by order of the Honorable John Blinn, United States Bankruptcy Judge, on May 1981 for Dr. Roy Harris, owner of the Bellaire Property, stating, inter alia, as follows:

   a.    The . . . debtor is released from all dischargeable debts;

   b.    Any judgment heretofore or hereafter obtained in any court, other than this court, is null and void as a determination of personal liability . . . ; and

   c.    all creditors whose debts are discharged by this Order and all creditors whose judgements are declared null and void by paragraph 2 above are ███████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████

In case you do not regularly practice before the Federal Bankruptcy Courts, please be advised that under Section 362 of the Bankruptcy Code (as well as the cases interpreting that section), and Judge Blinn's 1981 Injunctive Discharge Order, your client and you, as his representative, are enjoined after the filing of the petition under the Bankruptcy Code from taking any action to recover a debt, if any, incurred by the debtor prior to the initiation of the bankruptcy case. The Automatic Stay of Section

HARRIS-000927

214

Mr. Thomas Hayes
September 7, 1990
Page 3

362(a) prohibits actions by creditors against the debtor to initiate or continue judicial action. The Bankruptcy Court's injunctions are enforceable by the Bankruptcy Court's contempt powers. Additionally, the 1981 Order of Discharge entered by Judge Blinn forbids any judicial action on any claims Mr. Hankins may have had against Dr. Roy Harris, the Chapter 7 Debtor.

We have discussed this matter with Dr. Norma Harris, who is outraged by your client's attempt, nine years after settling this case for very valuable consideration to your client, to attempt to reopen it. If your client persists with what could only be viewed as misguided and possibly malicious litigation, our client has instructed us to respond appropriately to the full extent of the law. In this connection, we urge you to review and consider Texas Civil Practice and Remedy Code § 9.001 et. seq. and the new Texas Rules of Professional Conduct, Rule 3.01. In any event, it would appear that all applicable statutes of limitation would have long since expired.

Very truly yours,

HOFFMAN & ASSOCIATES

By: _Matthew Hoffman_ _by permission_
Matthew Hoffman

MH:cd
90090501

HARRIS-000928

215 4118

NO. 80,13687

IN THE MATTER OF
THE MARRIAGE OF

ROY H. J. HARRIS AND
NORMA E. HARRIS

AND IN THE INTEREST OF
SARAH TRACY HARRIS, A CHILD

IN THE FAMILY DISTRICT COURT

OF HARRIS COUNTY, TEXAS

309TH JUDICIAL DISTRICT

## FINAL DIVORCE DECREE

BE IT REMEMBERED that on this 17th day of June, 1990, the Petitioner, Roy H. J. Harris, appeared in person and by attorney and announced ready for trial. The Respondent, Norma E. Harris, was served through its attorneys of record and withdrew contest of this action as evidenced by her attorneys' signature on this Decree. The parties waived a jury and waived the making of a record of testimony in this cause, with the consent of the Court. The attorney for Petitioner announced to the Court that the Petitioner and Respondent had agreed between themselves as to the division of their property, the dissolution of their marriage, and the care and custody of their minor child, also subject to the consent and approval of the Court.

The Court, having examined the pleadings and heard the evidence and argument of counsel, is of the opinion and finds that all necessary residuous qualifications and prerequisites of law have been legally and fully satisfied, that this Court has jurisdiction of all parties in this Court, and that the material allegations contained in Petitioner's Petition for Divorce are true and correct and supported by full and satisfactory evidence. The Court further finds that the marriage of Petitioner and Respondent has become insupportable because of discord and conflict of personalities which destroyed the legitimate ends of the marriage relationship and which prevents any reasonable expectation of reconciliation. The Court being of the opinion that such marriage should accordingly be dissolved, it is, therefore

ORDERED, ADJUDGED and DECREED that Roy H. J. Harris, Petitioner, and Norma E. Harris, Respondent, be and they are hereby

HARRIS-000929

divorced, and that the bonds of matrimony heretofore existing
between Petitioner and Respondent be and are hereby dissolved.
The Court finds that the parties are not now expecting another
child of the marriage and that Petitioner and Respondent are
the parents of the following child who was eighteen years of
age at the time of the filing of this action:

NAME: Karen Tracy Harris
SEX: Female
BIRTHPLACE: Jackson, Mississippi
BIRTHDATE: February 11, 1962

The Court finds that Petitioner and Respondent have entered into
a written agreement containing provisions for a conservatorship
and support of the child. The Court finds that the agreement is
in the child's best interest, and it is accordingly,

ORDERED, ADJUDGED and DECREED that Norma E. Harris be
and is hereby appointed Managing Conservator of the child, and
that she shall have all of the rights, privileges, duties and
powers of a parent, to the exclusion of the other parent, subject
to the rights, privileges, duties, and powers granted to any
Possessory Conservator named in this Decree. It is further

ORDERED, ADJUDGED and DECREED that Roy H. O. Harris be
and is hereby appointed Possessory Conservator of the child, with
rights of possession of and access to the child at reasonable times
as agreed upon by the parties. It is further

ORDERED, ADJUDGED and DECREED that Roy H. O. Harris pay
to Norma E. Harris child support in an amount equal to the child's
expenses for books, fees, tuition, room and board, and other reason-
able and necessary expenses for her transportation to and from her
respective schools and for her clothing for the period in which she
is a full-time student at an accredited university or college or as
a full-time student at a licensed vocational or trade school, with
the first payment being due and payable immediately as specified in
the Marriage Settlement Agreement between the parties attached
hereto and incorporated herein.

-2-

HARRIS-000930

The Court further finds that the Petitioner and Respondent have entered into an agreement for the division of their estate and the agreement is just and right, and it is accordingly

ADJUDGED, ORDERED and DECREED by this Court that the Marriage Settlement Agreement between Petitioner and Respondent, which is attached hereto as Exhibit "A" is in all things approved and confirmed and is incorporated into this final judgment as though restated verbatim herein, and that the parties henceforth are ordered to carry out the terms thereof to the extent permitted by law. It is further and finally

ORDERED that all costs incurred herein shall be taxed against the party incurring same.

SIGNED and ENTERED this _____ day of June, 1980 at Houston, Harris County, Texas.

JUDGE PRESIDING

APPROVED AND AGREED TO:

SULLINS & JOHNSTON

By _____
Jack Emmons
3701 Kirby Drive, Suite 1230
Houston, Texas
ATTORNEYS FOR PETITIONER

HIRSCH, WESTHEIMER, BLOCK AND WILK

By _____
Matthew Hoffman
30th Floor Niels Esperson Bldg.
Houston, Texas 77002
ATTORNEYS FOR RESPONDENT

HARRIS-000931

218

Lot ... 3) in block Two 2" ' West
"University" Place and Addition t the
City ... West University Place in Harris
Count" ' ..s, according to the Map
....... ....ded in Volume 444, Page 563
of t... .... Records of Harris County,
"..xE.

1.33. .......... Husband and Wife agree that Wife
shall have sol run of ... parate property, subject to her sole
management, control ... ...position, free and clear from all
claims by Husband ... of the following described property:

1' All household furniture and personal effects
in ..w possession of Wife at the time of entry of the
Fina. Divorce Degree.

(2) All separate property owned by Wife, and all
property acquired by Wife from and after the date of
execution of this Agreement.

.3) Any Social Security account now held in the
name of Norma L. Harris.

.4; The 13** Volkswagen Cameroside, Motor Vehicle
No. .122991101.

.3) Any and all interest in any retirement benefit
account held in the name of Norma L. Harris by Harris
Smith, Associ... ...subject to the outcome of litigation
concerning , '. ret irement account in Harris v. Harris,
Caus. No . ... t the 177th District Court of Harris
...; ...

1.04. ... . ...ect to the House, Husband and Wife
further ... ... ... w the following:

. ...le to the house shall be transferred to the
Verior solely to Husband as his separate property.

'2' In return for the disposition of this asset to
Husband, Husband agrees to pay Wife the sum of Fifty
Thousand Dollars '(850,000.00) on the following terms ...
conditions: Fifty Thousand Dollars ($50,000.00) shall
be paid in cash by Husband to Wife within six (6) "nth"
after the date of execution of this Agreement. As evidence
of this obligation, Husband agrees to execute to Wife a

-7-

HARRIS-000932

219 422422

promissor, the principal sum of Fifty Thousand Dollars ($50,000), payable in full as outlined above and bearing no interest. The parties further stipulate that the distribution of these sums to Wife represents an equitable division of the community property of the parties, shall not be regarded as contractual payment under Section 71 of the Internal Revenue Code as "alimony" and thus shall not constitute either gross income to the Wife or an alimony deduction to the Husband under Section 215 of the Code.

4.21. Equitable Division of Property. By this Agreement, the parties have intended to effect an equitable division of their community property, conforming to the "just and right" standard contained in Section 3.63 of the Texas Family Code, with due regard to the rights of each party and any children of the marriage. The division of existing marital property is not intended by the parties to constitute in any way a sale or exchange of assets, but the division is being effected without the introduction of outside funds or other property not constituting a part of the estate. The consideration set forth above reflects the efforts of the parties to compensate Wife for her equity share in the assets of the community estate, within the "just and right" standard in Section 3.63 of the Family Code.

### Article V
### General Provisions

5.01. Contract of Alimony. As contractual alimony, Husband agrees to pay and be strictly responsible for all medical and dental bills and expenses, doctor's or dentist's fees, pharmaceutical expenses or hospital bills for Wife, to the event any of the same are not covered by a policy of insurance. Husband shall make all payments under this Section directly to the physician, health facility or other person or entity that has rendered health care to the Wife. Husband's obligation to pay medical expenses shall terminate at such time as Wife remarries. These payments and is

HARRIS-000933

220 423423

UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE:

ROY M. D. HARRIS,

      DEBTOR

SOCIAL SECURITY NUMBER
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

CASE NO. 80-01454-HB
(CHAPTER 7)

DEBTOR'S SCHEDULES AND STATEMENT OF AFFAIRS

HARRIS-000934

221 <sup>42424</sup>

| Name of creditor (including last known holder of any negotiable instrument) and complete mailing address including zip code (if unknown, so state) | Specify when claim was incurred and the consideration therefor; when claim is contingent, unliquidated, disputed, subject to setoff, evidenced by a judgment, negotiable instrument, or other writing, or incurred as partner or joint contractor; so indicate; specify name of any partner or joint contractor on any debt | Amount of claim |
|---|---|---|
| John W. Hawkins c/o Paul E. Sollard Kronzer, Abraham & Watkins 900 Commerce St. Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a judgment obtained against Norma E. F. Harris, M.D., which arose during marriage between Norma E. F. Harris, M.D. and Debtor. | $350,000.00 plus interest attorneys' fe |
| Norma E. F. Harris, M.D. c/o Harris Medical Associates, P.A. 2722 Bellaire Blvd. Houston, Texas 77025 | Contingent claim based on division of community property in Property Settlement Agreement incorporated in Divorce Decree on June 17, 1980 entered in Harris v. Harris, Cause No. 80,10657 in Family District Court of Harris County, Texas; claim evidenced by Vendor's Lien Note and Deed of Trust on Debtor's property at 2722 Bellaire Blvd. | $50,000.00 |
| Airline Commerce Bank c/o John Nabors Liddell, Sapp, Zivaly & Brown 500 Gulf Building Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during marriage between Debtor and Norma E. F. Harris, M.D. and as set forth in the lawsuit Airline Commerce Bank v. Dr. Norma Harris, Cause No. 1,351,330 in the 165th District Court of Harris County, Texas (filed 6/23/79). | $15,661.35 |
| First Mortgage Investors c/o Larry Knippa Nasch & Knippa 2460 Two Shell Plaza Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, M.D., and as set forth in the lawsuit First Mortgage Investors v. Norma F. Harris, M.D., Cause No. 1,119,632 in the 190th District Court of Harris County, Texas (filed 3/31/77). | $907,889.51 plus interest attorneys' fe |
| Wentworth Eaton c/o Harold Lloyd 711 Fannin, Suite 424 Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, and as set forth in lawsuit Eaton v. Harris, Cause No. 1,089,101 in the 127th District Court of Harris County, Texas (filed 8/18/76). | $350,000.00 |
| United States Leasing Corp. c/o James N. Hull Lapin, Totz & Mayer 2626 Two Shell Plaza Houston, Texas 77002 | Contingent, unliquidated and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, M.D., and as set forth in lawsuit U.S. Leasing Corp. v. Norma E. F. Harris, M.D., et al, Cause No. 319,204 in County Civil Court at Law No. 3 of Harris County, Texas (filed: 2/8/78). | $ 3,700.00 plus attorneys fees |

(continued on next page)

TOTAL . . .

© Forms, Inc., 11 West Madison Street, P.O. Box 1015, Phoenix, Arizona 85001 / (602) 254-1442

HARRIS-000935

222 425425

# Constable's Sale

Under and by virtue of an    Writ of    execution and original sale issued on the 31st day of July, 1980    in cause No. 1,202,511

of the 333rd District    Court of Harris County, in favor of John M. Hankins, Plaintiff, recovered a Nunc Pro Tunc Judgment against Norma Harris, M.D., and Erwin C. Winkel II, M.D., jointly and severally, for the sum of Five Hundred Thousand ($500,000.00) Dollars, as compensatory damages; AND John W. Hankins, Plaintiff, recovered a Nunc Pro Tunc Judgment against Norma Harris, M.D., individually, Defendant, for the sum of One Hundred Thousand ($100,000.00) Dollars as exemplary damages; with interest thereon at the rate of 9% per cent per annum from February 8th, 1979, until paid.

Together with the sum of $   1241.96    Cost as taxed on said execution, and the further cost of executing the same, I have levied on the 6th day of August, 1980 and will offer for sale and sell on September 2, 1980    , same being the 2nd day of September, 1980 at Courthouse Door of Harris County, in the City of Houston, Texas, between the hours of ten o'clock a. m. and four o'clock p. m. and any and all right, title, interest and claim which the said defendant Norma Harris, M.D.

had of, in or to the following described    Real Property

situated in Harris County, Texas viz:

Lot Three (3) in Block Two (2) of West University Place, and Addition to the City of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 550 of the Deed Records of Harris County, Texas.

PUBLISHED IN THE HOUSTONIAN

SALE TO BE HELD:
September 2, 1980
At: 10:30 a.m.

WALTER H. RANKIN, Constable,
Precinct No. 1, Harris County, Texas

By _____ Deputy.

HARRIS-000936

223 426426

UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE:

ROY N. C. HARRIS,

    DEBTOR

SOCIAL SECURITY NUMBER
'4"-4;--4"'

CASE NO. 30-01464-H8
Chapter 11

MOTION FOR RECOGNITION
OF EFFECT OF AUTOMATIC STAY
UNDER SECTION 362 OR FOR
TEMPORARY RESTRAINING ORDER

TO THE HONORABLE BANKRUPTCY JUDGE:

COMES NOW, Roy N. C. Harris, M.D. hereinafter referred to as Debtor, complaining of and against John W. Hankins ("Hankins"), Constable Walter H. Rankin and Robert I. Ballard ("Ballard"), and for cause of action respectfully shows the Court as follows:

PARTIES AND FACTUAL BACKGROUND

.. The Debtor resides at 2722 Bellaire Boulevard, Houston, Texas ("the Property"), and filed his Petition under Chapter 11 of the Bankruptcy Code on September 3, 1990.

.. During the period January 1, 1934 through June 17, 1912 the Debtor was married to Norma E. Harris, M.D. On January 24, 1978, John W. Hankins obtained a judgement against Norma E. Harris, M.D. At all times during this marriage, the Debtor and Norma E. Harris, M.D. occupied the Property as their personal and business homestead.

.. In June 17, 1987, the Debtor and Norma E. Harris, M.D. obtained a Decree of Divorce from the Family District Court of Harris County, Texas in Cause No. 13,13657. The Marriage Settlement Agreement entered into between the Debtor and Norma E/ Harris, M.D. was incorporated into the final Divorce Decree and stated in pertinent part:

HARRIS-000937

HARRIS-000938

II.

**RELIEF REQUESTED**

1. Under Section 362 of the Bankruptcy Code, the

Petition Under Chapter 11 filed by the Debtor:

operates as a stay, applicable to all
entities, of ...

1. the enforcement, against
the Debtor or against the property
of the estate, of a judgment ob-
tained before the commencement of
the case under this title;

3. any act to obtain possession
of property of the estate or of
property from the estate; or

4. any act to create, perfect,
or enforce any lien against the
property of the estate.

As set forth by the facts above, the Property is wholly owned
by the Debtor as his homestead.

If the threatened Constable's Sale of the Property is
not enjoined, the Debtor will suffer great and immediate injury
in that his interest in the Property will be forever foreclosed
and/or encumbered. The Debtor will sustain irreparable injury
in that he will be prevented from retaining his interest in the
Property on just and equitable terms. The Debtor has no ade-
quate remedy in law for the harm and damages he will sustain
if his property is summarily and wrongfully disposed of at the
Constable's Sale.

Even though Constable Rankin and Ballard were duly
notified by letter and copy of the Petition Under Chapter 11
instituting an Order for relief that the Debtor declares as
his homestead, they have represented that they will proceed
with the scheduled Constable's Sale at 2:00 p.m. on September 1,
1971, unless this Bankruptcy Court orders that such sale is
prohibited by the automatic stay under Section 362. Accord-
ingly, Debtor requests that this Court enter an order recog-
nizing the effect of the automatic stay under Section 362

> Title to the house shall be transferred to
> and vested solely in husband as his separate
> property.

Certified copies of the Decree of Divorce and Marriage Settlement Agreement incorporated therein are attached hereto as Exhibit "A". A copy of the Deed conveying the entirety of the right, title and interest of Norma E. Harris in and to the Property is attached hereto as Exhibit "B".

On July 21, 19__, Rankins caused a Writ of Execution to be issued against the Property in order to satisfy his judgment against Norma E. Harris, M.D. Pursuant to the Notice of Constable's Sale, which is attached hereto as Exhibit "C", Constable Rankin originally scheduled the sale of the Property to take place on September 1, 1980, at 11:00 a.m. Notice of the Constable's Sale was received by the Debtor's counsel on the afternoon of Friday, August 21, 1980.

In the morning of September 1, 1980, counsel for the Debtor met with Captain Davis and Ballard the attorney for Rankins. At that time, both Captain Davis and Ballard were advised that any attempt by Constable Rankin or his office to sell the Property of the Debtor, including, but not limited to, the Property, will result in the initiation of proceedings in Bankruptcy Court to avoid such sale, and to pursue any parties pursuant to such sale in contempt of court for violation of the automatic stay. Attached hereto as Exhibit D are true and correct copies of the letters personally delivered by the Debtor's counsel to Captain Davis and Ballard in this regard.

Captain Davis would not agree to stay the sale, but did agree to postpone the sale until 1:00 a.m. on September 1, 1980 to afford the Debtor the opportunity to obtain an order from this Court recognizing the effect of the automatic stay provisions of Section 362 of the Bankruptcy Court on the Constable's Sale.

HARRIS-000939

226

which prohibits the initiation or continuation of any action by any creditor to execute on property of the Debtor outside the Bankruptcy Court.

2. In the alternative, and only if the Court determines that an order recognizing the effect of the automatic stay in this matter would not provide the relief requested by Debtor, the Debtor, but if in abundance of caution and recognizing that the relief requested is substantially duplicative of the relief requested above, respectfully requests the Court to enter a Temporary Restraining Order enjoining Constable Rankin from carrying out the Constable's Sale involving the Property scheduled for 2:30 p.m. September 2, 1980. Debtor will suffer irreparable damage and injury should Constable Rankin be permitted to go through with the above described Constable's Sale. The Debtor has no adequate remedy at law for the protection and preservation of his ownership in the Property, and is equitably entitled to an injunction restraining and enjoining Constable Rankin, Handling, Ballard, or their employees or others in active concert with them from executing upon or attempting to execute upon the Property outside of Bankruptcy Court during the pendency of this Chapter 11 case.

WHEREFORE, PREMISES CONSIDERED, Debtor prays that this Court enter an order recognizing that the scheduled Constable's Sale of the Property or any interest therein is prohibited by the automatic stay under Section 362 of the Bankruptcy Code, and that any further attempt to execute on the Property outside of Bankruptcy Court by Constable Rankin, Handling, Ballard or their agents and employees are stayed under the provisions of Section 362 during the pendency of this case; and in the alternative, if the Court determines that the above described order is insufficient to provide the relief requested by Debtor, then to enter a Temporary

HARRIS-000940

227

CERTIFICATE OF SERVICE

I, Jaye Rothman, hereby certify that a true and correct copy of the foregoing Motion for Recognition of Automatic Stay Under Section 362 or for Temporary Restraining Order and Verification were hand delivered to counsel for John A. Hawkins, Mr. Robert E. Ballard, 100 Commerce Street, Houston, Texas, on this, the _____ day of September, 1980.

_____
Jaye Rothman

HARRIS-000941

228 43431

Restraining Order enjoining Constable Rankin from conducting the Constable's Sale scheduled for 2:30 p.m. September 2, 1980, and further enjoining the initiation or continuation of any action outside of Bankruptcy Court by Constable Rankin, Hankins, Ballard, or their agents and employees to execute on any property in which the Debtor has an interest, including, but not limited to, the real property and improvements located at 1922 Bellaire Boulevard, Houston, Texas; and such other and further relief, both general and special, at law and in equity, to which the Debtor may show itself justly entitled.

Respectfully submitted,

HIRSCH, WESTHEIMER, BLOCK AND WILK

By _____
Jaye Rothman
Thomas Kirkendall
2300 Niels Esperson Bldg.
Houston, Texas 77002
(713) 223-5121

ATTORNEYS FOR DEBTOR
ROY H. L. HARRIS

HARRIS-000942

UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE:

ROY N. D. HARRIS,

    DEBTOR

SOCIAL SECURITY NUMBER
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

CASE NO. 80-01464-H2
Chapter 13:

O R D E R

On this, 2nd day of September, 1980, came on to be heard the verified Motion for Recognition of Effect of Automatic Stay Under Section 362 ~~as dues Suspensory Restraining Order~~ and good cause appearing therefor, it is therefore:

ORDERED, ADJUDGED and DECREED that the scheduled Constable Sale of the real property located at 1922 Bellaire Boulevard, Houston, Texas, or any interest therein, *owned by the Debtor,* is prohibited by the automatic stay under Section 362 of the Bankruptcy Code, and that any further attempt to execute on the Debtor property outside the Bankruptcy Court by Constable Rankin, John W. Hankins or Robert E. Ballard or their agents or employees are stayed pursuant to the provisions of Section 362 during the pendency of this case.

2:26pm     _____
                     JUDGE PRESIDING

HARRIS-000943

GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS:

That John W. Hankins, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has RELEASED AND FOREVER DISCHARGED and by these presents does for himself and any person or entity claiming under or through him, RELEASE AND FOREVER DISCHARGE Norma Harris, M.D., H.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A. Defined Benefit Investment Fund Pension Plan, Roy Harris, M.D., P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment Fund Pension Plan and their agents, representatives, officers, directors, trustees, beneficiaries, successors or assigns, of and from all causes of action, suits, debts, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever in law or in equity, whether known or unknown, liquidated or unliquidated, he ever had, now has or may have for, upon or by reason of any manner, cause or thing whatsoever from any time in the past to the day of the date of this release. Further, without limiting the foregoing in any way, John W. Hankins releases Norma Harris, M.D., H.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A. Defined Benefit Investment Fund Pension Plan, Roy Harris, H.D., P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment Fund Pension Plan from any cause of action, claims, liabilities, damages, judgments or demands which he now has or may have against Norma Harris, M.D., H.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A.

HARRIS-000944

231 43434

Defined Benefit Investment Fund Pension Plan, Roy Harris, M.D.,
P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment
Fund Pension Plan by reason of the matters alleged in, or
related to, the cause of action styled John W. Hankins vs.
Norma Harris, M.D., et al, in the District Court of Harris
County, Texas, 80th Judicial District, No. 1,002,511.

_____     _____
                                              John W. Hankins

THE STATE OF TEXAS      §
COUNTY OF HARRIS        §

          BEFORE ME, the undersigned authority, in and for
said County and State, on this day personally appeared John
W. Hankins, known to me to be the person whose name is
subscribed in the foregoing instrument, and acknowledged to
me that he executed this instrument for the purposes therein
expressed, in the capacity therein stated, and as his own
act and deed.

          GIVEN UNDER MY HAND AND SEAL OF OFFICE this **3rd**
day of **MARCH**            , 1981.

                              _____
                              Notary Public, in and for
                              Harris County, T E X A S

My Commission Expires:        Printed Name of Notary Public:

June 25, 1981                 _____

                              MATTHEW HOFFMAN
                              MY COMMISSION EXPIRES
                              6/25/81

HARRIS-000945

232

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: Roy H.O. Harris

CASE NO. 30-01454-H5

DEBTOR*

DISCHARGE OF DEBTOR

It appearing that the person named above has filed a petition commencing a case under Title 11, United States Code on 1/2/80, that an order for relief was entered under Chapter 7 and that no complaint objecting to the discharge of the debtor was filed within the time fixed by the court (or that a complaint objecting to discharge of the debtor was filed, and after due notice and hearing, was not sustained), it is ordered that

1. The above-named debtor is released from all dischargeable debts.

2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:

(a) debts dischargeable under 11 U.S.C. §523;

(b) unless heretofore or hereafter determined by order of this court to be nondischargeable debts alleged to be excepted from discharge under clauses (2), (4) and (6) of 11 U.S.C. §523(a);

(c) debts determined by this court to be discharged under 11 U.S.C. §523(d).

3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabilities of the above-named debtor.

DATED: May 19, 1981

I certify that the foregoing is a true copy of the original now on file in Bankruptcy Court
Southern District of Texas

By _____, Clerk

BY THE COURT

_____
UNITED STATES BANKRUPTCY JUDGE

*Include here all names used by Debtor within last 6 years

HARRIS-000946

## GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS:

That John W. Hankins, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has RELEASED AND FOREVER DISCHARGED and by these presents does for himself and any person or entity claiming under or through him, RELEASE AND FOREVER DISCHARGE Norma Harris, M.D., M.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A. Defined Benefit Investment Fund Pension Plan, Roy Harris, M.D., P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment Fund Pension Plan and their agents, representatives, officers, directors, trustees, beneficiaries, successors or assigns, of and from all causes of action, suits, debts, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever in law or in equity, whether known or unknown, liquidated or unliquidated, he ever had, now has or may have for, upon or by reason of any manner, cause or thing whatsoever from any time in the past to the day of the date of this release. Further, without limiting the foregoing in any way, John W. Hankins releases Norma Harris, M.D., M.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A. Defined Benefit Investment Fund Pension Plan, Roy Harris, M.D., P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment Fund Pension Plan from any cause of action, claims, liabilities, damages, judgments or demands which he now has or may have against Norma Harris, M.D., M.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A.


EXHIBIT
MH-4

HARRIS-000947

Defined Benefit Investment Fund Pension Plan, Roy Harris, M.D.,
P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment
Fund Pension Plan by reason of the matters alleged in, or
related to, the cause of action styled John W. Hankins vs.
Norma Harris, M.D., et al, in the District Court of Harris
County, Texas, 80th Judicial District, No. 1,002,511.

Witness

_____          _____
                                                John W. Hankins

THE STATE OF TEXAS          §

COUNTY OF HARRIS            §

        BEFORE ME, the undersigned authority, in and for
said County and State, on this day personally appeared John
W. Hankins, known to me to be the person whose name is
subscribed in the foregoing instrument, and acknowledged to
me that he executed this instrument for the purposes therein
expressed, in the capacity therein stated, and as his own
act and deed.

        GIVEN UNDER MY HAND AND SEAL OF OFFICE this **3rd**
day of _____MARCH_____, 1981.

                        _____
                        Notary Public in and for
                        Harris County, TEXAS

My Commission Expires:          Printed Name of Notary Public:

_June 25, 1981_                 _____

                        MATTHEW HOFFMAN
                        MY COMMISSION EXPIRES
                        6/25/81

HARRIS-000948

235

# APPENDIX TAB 18

# haynes*boone*

March 8, 2005

Direct Phone Number: (713) 547-2107
Direct Fax Number: (713) 236-5661
thomas.mccaffrey@haynesboone.com

Mr. Jerel J. Hill
Attorney at Law
12200 Northwest Freeway, Suite 550
Houston, TX 77092

Re:     LF 04-12-008A; Hankins and Harris

Dear Jerel:

As a follow-up to our conversation, I have been able to obtain several items that are relevant to your client's claim. Enclosed please the following:

1.  Letter dated July 11, 1984 from Mr. Matthew Hoffman of Hirsch & Westheimer, PC, to Mr. Charles Duke and Mr. Robert Connor (who, at one time, appear to have represented Mr. Hankins);

2.  Letter dated October 19, 1984 from Mr. Robert J. Conner to Dr. Roy Harris;

3.  Letter dated September 7, 1990 from Mr. Matthew Hoffman of Hoffman & Associates to Mr. Thomas Hayes (who, at one time, appear to have represented Mr. Hankins), along with the following documents:

    (i)     Final Divorce Decree dated June 20 (?), 1980;

    (ii)    Dr. Roy Harris' Bankruptcy Schedules;

    (iii)   Proposed September 2, 1980 Constable's Sale;

    (iv)    Debtor's Motion for Recognition of Effect of Automatic Stay Under Section 362(a) or for Temporary Restraining Order dated September 2, 1980;

    (v)     Federal Bankruptcy Court order dated September 2, 1980;

Haynes and Boone, LLP
Attorneys and Counselors
One Houston Center
1221 McKinney Street, Suite 2100
Houston, Texas 77010-2007
Phone: 713.547.2000
Fax: 713.547.2600
www.haynesboone.com



EXHIBIT
TM-1

HARRIS-000915

**haynesboone**

(vi)   Final General Release dated March 3, 1981; and

(vii)   Discharge of Debtor entered on May 1981.

Some of the items are difficult to read (my copies are poor), but provide a good background of this matter. If you have any questions, please let me know.

Very truly yours,

HAYNES AND BOONE, LLP

*Tom*

Thomas J. McCaffrey

Encls.

cc:   Sarah Harris (w/o encls.)

H-535766_1

HARRIS-000916

239 4442

LAW OFFICES OF
## HIRSCH & WESTHEIMER, P.C.
25TH FLOOR REPUBLICBANK CENTER
HOUSTON, TEXAS 77002

MATTHEW HOFFMAN

TELEX 790889
TELECOPIER (713) 223-9319

(713) 223-6191

#2280
Norma Harris, M.D., et al
(John W. Hankins vs.)

July 11, 1984
(Dictated July 3, 1984)

Mr. Charles L. Duke
Mr. Robert Connor
Duke & Connor
4219 Richmond Avenue, Suite 290
Houston, Texas 77027

Re: John W. Hankins vs. Norma Harris, M.D.,
et al; Cause No. 1,002,511 in the
80th Judicial District Court of Harris
County, Texas

Gentlemen:

This will acknowledge receipt, on June 11, 1984, of a copy of your letter dated May 11, 1984 addressed to our client, Dr. Roy H. D. Harris, relative to the above-captioned litigation. Your letter alleges an interest on the part of your client, Mr. John Walter Hankins, Sr., in certain property located at 2922 Bellaire Boulevard, Houston, Texas, 77025 (hereinafter called the "Homestead Property").

We represented all of the Defendants in the above-captioned litigation. We also represented Dr. Roy Harris in his 1980 Chapter 13 bankruptcy case (later converted to Chapter 7), Case No. 80-01464-HB in the United States Bankruptcy Court for the Southern District of Texas. Our clients have been represented most recently by Ms. Barbara DeGeorgio of the firm, Stark & Frahm, P.C. We are functioning at this time as co-counsel with Ms. DeGeorgio for the Harrises in this matter.

It is our position that Mr. Hankins' alleged purchase of "all of the interests of Norma Harris, M.D." in the Homestead Property at a Constable's sale on September 2,

HARRIS-000917

Mr. Charles L. Duke
Mr. Robert Connor
July 11, 1984
(Dictated July 3, 1984)
Page Two

1980 and pursuant to a Deed under Writ of Execution dated September 29, 1980, recorded under County Clerk's File No. G-824177 and refiled under County Clerk's File No. G-836122, wherein the Homestead Property was purportedly conveyed to John W. Hankins, is void. Prior to the time of the purported conveyance, State District Judge Richard Millard had issued, on August 29, 1980, a Temporary Restraining Order ("TRO") prohibiting the sale in Cause No. 80-39790 in the 152nd Judicial District Court of Harris County, Texas. Further, the Homestead Property was subject to Dr. Roy Harris' pending bankruptcy case, previously referenced. Former United States Bankruptcy Judge William Schultz also prohibited the sale of the Homestead Property, pursuant to the provisions of the Bankruptcy Code's automatic stay under 11 U.S.C. §362(a), in an express Order entered on September 2, 1980 prior to the purported Constable's sale.

Your letter indicates that the Deed under Writ of Execution was filed with the Harris County Clerk's office on January 12, 1981. We have been advised by Capital Title Company, Inc. of Houston that the Deed under Writ of Execution constitutes a cloud on the title to the Homestead Property.

In your letter to Dr. Roy Harris, you invited him to communicate with you within thirty (30) days if he desired to purchase Mr. Hankins' interest in the Homestead Property. You further stated, in pertinent part, as follows:

> "Regardless of what your feelings toward Mr. Hankins might be, or your assessment of his interest in said property, I am sure that you will agree that his Deed with regard to this real property represents a cloud on the title to the property. Further, it would be a barrier to sale to a third party and to the full realization of the worth of the property to you."

Please be advised that Mr. Hankins has no legitimate interest in the Homestead Property. Moreover, our clients are being damaged to the extent of having to further engage our services and those of Ms. DeGeorgio's firm in order to remove the cloud placed by Mr. Hankins on the title to the Homestead Property.

HARRIS-000918

The undersigned met with Ms. DeGeorgio on June 11, 1984. During our conference on that date, we placed a call to both of you gentlemen for the purpose of discussing your May 11, 1984 letter to Dr. Roy Harris. When we were unable to reach either of you, we left a rather detailed message to the effect that we were preparing this lengthy reply letter to transmit the Notice of Discharge in Dr. Roy Harris' bankruptcy case, the injunctions granted in both the State District Court and the United States Bankruptcy Court, and, further, to set forth the history and key dates surrounding what transpired. Both Mr. Hankins and his attorney at the time, Mr. Robert E. Ballard, of Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, were given notice of the injunctions prior to the purported Constable's sale, but Mr. Hankins apparently decided to go forward with the Constable's sale anyway. In addition to placing Mr. Hankins and Constable Rankin in contempt of the Bankruptcy Court, in which the automatic and express injunctions were issued, and in contempt of the State District Court, in which the TRO was entered, these actions rendered the alleged sale absolutely void. Kalb v. Feuerstein, 308 U.S. 433 (1940); Zestee Foods, Inc. v. Phillips Foods Corp., 536 F.2d 334 (10th Cir. 1976); Meyer v. Rowen, 181 F.2d 715,716 (10th Cir. 1950); In Re Potts, 142 F.2d 883 (6th Cir. 1944), cert. den'd, 324 U.S. 868 U.S. (1945); See generally 2 Collier on Bankruptcy, ¶362.11 (15th Ed. 1979). See also In Re Dennis, 14 BR 125 (Bankr. E.D. Pa. 1981) (post-petition sheriff sale violated stay); In Re Elder, 4 C.B.C.2d 1092 (Bankr. M.D. Ga. 1981) (post-petition garnishment of debtor's wages violated stay).

Moreover, now that you are fully aware of these facts, we trust that you will agree that your May 11, 1984 communication with our client also violated the injunction contained in paragraph 3 of the Discharge of Debtor dated May 19, 1981 and signed by the Honorable John R. Blinn, then United States Bankruptcy Judge, as follows:

> "3. All creditors whose debts are discharged by the Order and all credi-tors whose judgments are declared null and void by paragraph 2 above, are enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabili-ties to the above-named Debtor."

It is our understanding from Ms. DeGeorgio that you gentlemen may not have been aware of the existence of the TRO or of the pending bankruptcy case at the time of the purported sale of the Homestead Property. Ms. DeGeorgio has advised us that she received a call from Mr. Connor on June 2, 1984, along these lines:

HARRIS-000919

242 44545

Mr. Charles L. Duke
Mr. Robert Connor
July 11, 1984
(Dictated July 3, 1984)
Page Four

(1)   Mr. Connor claimed ignorance of (i) the
      TRO, (ii) Dr. Roy Harris' bankruptcy
      case, and (iii) the automatic stay and
      September 2, 1984 express Injunction
      Order entered therein.

(2)   Mr. Connor advised Ms. DeGeorgio, basically,
      that Hankins just came in and asked him
      to collect on the Deed.

(3)   Moreover, Mr. Connor claimed bona fide
      purchaser status for Mr. Hankins with
      respect to Norma Harris' interests.

We have taken considerable time and effort, at our
clients' expense, to review this long-closed file.   We
shall now set forward the significant details and dates
surrounding the Hankins' Deed under Writ of Execution and
why that Deed is void, as follows:

(1)   June 20, 1980:  Divorce Decree entered
      awarding the Homestead Property to Roy
      Harris.

(2)   On August 28, 1980:  This firm filed a
      petition on behalf of Norma Harris,
      M.D., et al seeking a TRO and Temporary
      Injunction to Enjoin Foreclosure of Real
      Property against Mr. Hankins and Constable
      Rankin.

(3)   August 29, 1980:  TRO was entered prohibiting
      the sale and ordering the Clerk to give
      Notice to Mr. Hankins and to Constable
      Rankin of a hearing to show cause why
      the TRO should not be made a temporary
      injunction.

(4)   September 1, 1980:  Norma Harris transferred
      her undivided fifty percent (50%) interest
      in the Homestead Property to Roy Harris
      by Special Warranty Deed, pursuant to
      the above-mentioned June 20, 1980 Divorce
      Decree.  (Special Warranty Deed recorded
      at 9:00 a.m. on September 2, 1980).

HARRIS-000920

(5) September 2, 1980 (8:06 o'clock a.m.):
Roy Harris filed voluntary Chapter 13
bankruptcy petition thereby instantly
creating automatic injunction as to the
entire Homestead Property of which he
possessed one hundred percent (100%)
record title.

(6) September 2, 1980: Separate letters
handdelivered to Constable Rankin and to
Mr. Ballard by this firm notifying each
of them of the filing of the Chapter 13
Petition by Dr. Roy Harris and of the
automatic stay and contempt provisions.

(7) September 2, 1980: (1:34 p.m.) Motion
for Recognition of Effective Automatic
Stay Under 11 U.S.C. §362(a) or for TRO
filed by this firm on behalf of Dr. Roy
H. D. Harris, M.D., complaining of and
against Mr. Hankins, Constable Rankin
and attorney Ballard. They had represented
to us that they intended to proceed with
the scheduled Constable's sale at 2:30
p.m. on September 2, 1980, unless the
bankruptcy court expressly ordered that
such a sale would be prohibited by the
automatic stay under 11 U.S.C. §362(a).

(8) September 2, 1980: (2:26 p.m.): United
States Bankruptcy Judge William Schultz
issued Order prohibiting the sale pursuant
to the automatic stay provisions of 11
U.S.C. §362(a).

(9) September 2, 1980: (2:30 p.m.) Purported
Constable's sale took place.

(10) September 29, 1980: Deed under Writ of
Execution signed by Constable Rankin.

(11) January 12, 1981: Hankins recorded Deed
under Writ of Execution.

HARRIS-000921

(12) March 9, 1981: John W. Hankins signed a
complete and general Release of:

"all claims and demands whatsoever,
whether known or unknown, liquidated
or unliquidated, he ever had, now
has, or may have for, upon or by
reason of any manner, cause or
thing whatsoever from any time in
the past to day of the date of this
Release."

The Hankins Release was given in consideration
of an overall settlement involving payment
to Mr. Hankins of One Hundred Fifty Thousand
and No/100 Dollars ($150,000.00) in cash and
a complete release, as described above,
of Drs. Roy and Norma Harris and their com-
panies, pension plan, etc.

(13) March 20, 1981: Final Judgment dismissing
Hankins' suit with prejudice signed and entered
in John Hankins v. Norma Harris, M.D., et al,
captioned above.

(14) May 19, 1981: Final Discharge of Debtor
Issued in Dr. Roy Harris' bankruptcy case.

Copies of all the above-referenced relevant documents are
enclosed herewith.

In short, Gentlemen, we consider the actions your client
has requested that you bring on his behalf to constitute harass-
ment and to be contemptuous of the TRO, the Bankruptcy Court's
automatic injunction, the September 2, 1980 express injunction
and the discharage injunction.

Moreover, Mr. Hankins has released any claims or demand
whatsoever that he may have against our clients. Finally, the
alleged Constable's sale is absolutely void for the reasons
stated and based upon the authorities cited. Accordingly,
any further action on your part or on the part of your client
to attempt to extort consideration from our clients will be met
by our clients' initiating appropriate litigation to clear title
to their property and to recover damages suffered at the hands
of your client.

HARRIS-000922

245 <sup>448</sup>

Mr. Charles L. Duke
Mr. Robert Connor
July 11, 1984
(Dictated July 3, 1984)
Page Seven

Finally, we refer you to a letter dated May 14, 1984 to Mr. Ballard, counsel to Mr. Hankins in the above-captioned litigation, wherein Ms. DeGeorgio requests Mr. Ballard to cause Mr. Hankins to sign a Quitclaim Deed releasing any interest he may claim in and to the Homestead Property. Mr. Ballard, incidentally, has confirmed to us in a May, 1984 telephone conference, his agreement with our analysis that Mr. Hankins released any claims he had against our clients or to the Homestead Property. Mr. Ballard also agreed to advise Mr. Hankins that he should sign the Quitclaim Deed, and we are confident that Mr. Ballard did so advise your client.

A copy of Ms. DeGeorgio's May 14, 1984 letter to Mr. Ballard, together with a copy of the proposed Quitclaim Deed is enclosed herewith. We request that you cause Mr. Hankins to execute the copy of the Quitclaim Deed, have it notarized and returned to the undersigned or to Ms. DeGeorgio for filing in order to clear the cloud your client has placed on the title to the Homestead Property. If your client will do as we request, our clients are willing to let this matter drop.

Hopefully, this matter is near an end, but if you should have any particular question concerning the contents of this letter or the enclosed documents submitted to you herewith, please do not hesitate to communicate with the undersigned or with Ms. DeGeorgio. Do not attempt to communicate directly with our clients again or we will file an action in the bankrupcy court to re-open Dr. Roy Harris' case for the purpose of holding you in contempt of court.

Very truly yours,

HIRSCH & WESTHEIMER, P.C.

By: _Matthew Hoffman_
Matthew Hoffman

MH:cj
Enclosures

HARRIS-000923

cc:  Mr. Robert E. Ballard
Kronzer, Abraham, Watkins
  Nichols, Ballard & Friend
800 Commerce Street
Houston, Texas 77002

Walter Rankin
Constable
301 San Jacinto
Houston, Texas 77002

Ms. Barbara DeGeorgio
Stark & Frahm, P.C.
1853 Lexington
Houston, Texas 77098-4399

Capital Title Co., Inc.
Eleven Greenway Plaza, Suite 100
Houston, Texas 77046
Attention:  Ms. Renee Dempsey for
           Ms. Susan Fischman

Dr. and Mrs. Roy H. D. Harris
P.O. Box 540248
Houston, Texas 77254-0248

HARRIS-000924

CHARLES L. DUKE
ATTORNEY AT LAW, P.C.
4210 RICHMOND AVENUE, SUITE 290
HOUSTON, TEXAS 77027

(713) 850-8383

RECEIVED

JAN 2 4 2005

HAYNES & BOONE, L.L.P.

October 19, 1984

Roy H.D. Harris, M.D.
2922 Bellaire Blvd.
Houston, Texas   77025

Dear Dr. Harris:

This is to inform you that this firm no longer represents John Walter Hankins, Sr. in any matter related to the real property located at 2922 Bellaire Blvd. Houston, Texas 77025.

Sincerely,

Robert J. Connor,
Attorney-at-Law

HARRIS-000925



# HOFFMAN & ASSOCIATES

FIRST CITY TOWER
1001 FANNIN
SUITE 4660
HOUSTON, TEXAS 77002
(713) 650-8800
FAX (713) 659-9051

September 7, 1990

Mr. Thomas Hayes                    **VIA FAX (W/O ENCLOSURES)**
Attorney at Law                     **AND REGULAR MAIL**
2020 Southwest Freeway
Suite 324
Houston, Texas 77098

Re: John Hankins v. Norma Harris, M.D. et al; In the District
Court of Harris County, Texas, 80th Judicial District
No. 1,002,511

Dear Mr. Hayes:

Further in line with our telephone conference on August 27,
1990, wherein you advised us that you represent Mr. John Hankins,
the former Plaintiff in the above captioned litigation, and advised
us that Mr. Hankins has come to you with the thought that he may
now have some action against our client, Dr. Norma Harris
(retired), we have retrieved our files from archives and reviewed
them. Enclosed herewith, for your convenience, are copies of the
following pertinent documents which we believe should convince you
that your client does not have a viable further cause of action.

1.   Final Divorce Decree dated June 20, 1980 with relevant
pages from the Marriage Settlement Agreement attached showing the
disposition of the homestead;

2.   Dr. Roy Harris' Bankruptcy Schedules (pertinent pages
therefrom) dated December 18, 1980 reflecting:

    a.  Indebtedness to Dr. Norma Harris in the amount of
    $50,000.00; and

    b.  Contingent, Unliquidated and Disputed potential
    community claim of Mr. John Hankins in the amount of
    approximately $350,000.00;

3.   Proposed September 2, 1980 Constable's Sale pursuant to
a writ of execution of Dr. Roy Harris' exempt homestead awarded to
him under his Marriage Settlement and Final Decree of Divorce dated
July 31, 1980;

HARRIS-000926

4.     Debtor's Motion for Recognition of Effect of Automatic Stay Under Section 362(a) or for Temporary Restraining Order, dated September 2, 1980;

5.     Federal Bankruptcy Court Order dated September 2, 1980 clarifying that the scheduled Constable's Sale of the real property located at 2922 Bellaire Boulevard, Houston, Texas or any interest therein owned by the Debtor (Dr. Roy Harris) was prohibited by the automatic stay under Section 362 of the Bankruptcy Code, and that any further attempt to execute on the Debtor's property outside the Bankruptcy Court by John Hankins, et al. or their agents or employees was stayed pursuant to the automatic stay provisions of Section 362(a) of the Code;

6.     (Full and Final) General Release dated March 3, 1981 executed by your client and witnessed and notarized by the parties reflected thereon, wherein your client released Drs. Norma Harris, Roy Harris, their companies and pension plans from any cause of action, claims . . . which Mr. Hankins now has or may have against those parties . . . by reason . . . of the matters alleged in, or related to, the above captioned cause of action;

7.     Discharge of Debtor entered by order of the Honorable John Blinn, United States Bankruptcy Judge, on May 1981 for Dr. Roy Harris, owner of the Bellaire Property, stating, inter alia, as follows:

    a.     The . . . debtor is released from all dischargeable debts;

    b.     Any judgment heretofore or hereafter obtained in any court, other than this court, is null and void as a determination of personal liability . . . ; and

    c.     all creditors whose debts are discharged by this Order and all creditors whose judgements are declared null and void by paragraph 2 above are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In case you do not regularly practice before the Federal Bankruptcy Courts, please be advised that under Section 362 of the Bankruptcy Code (as well as the cases interpreting that section), and Judge Blinn's 1981 Injunctive Discharge Order, your client and you, as his representative, are enjoined after the filing of the petition under the Bankruptcy Code from taking any action to recover a debt, if any, incurred by the debtor prior to the initiation of the bankruptcy case. The Automatic Stay of Section

HARRIS-000927

Mr. Thomas Hayes
September 7, 1990
Page 3

362(a) prohibits actions by creditors against the debtor to initiate or continue judicial action. The Bankruptcy Court's injunctions are enforceable by the Bankruptcy Court's contempt powers. Additionally, the 1981 Order of Discharge entered by Judge Blinn forbids any judicial action on any claims Mr. Hankins may have had against Dr. Roy Harris, the Chapter 7 Debtor.

We have discussed this matter with Dr. Norma Harris, who is outraged by your client's attempt, nine years after settling this case for very valuable consideration to your client, to attempt to reopen it. If your client persists with what could only be viewed as misguided and possibly malicious litigation, our client has instructed us to respond appropriately to the full extent of the law. In this connection, we urge you to review and consider Texas Civil Practice and Remedy Code § 9.001 et. seq. and the new Texas Rules of Professional Conduct, Rule 3.01. In any event, it would appear that all applicable statutes of limitation would have long since expired.

Very truly yours,

HOFFMAN & ASSOCIATES

By: _Matthew Hoffman_ _by permission_
Matthew Hoffman

MH:cd
90090501

HARRIS-000928

251 4554

NO. 80,10657

| IN THE MATTER OF | § | IN THE FAMILY DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROY M. D. HARRIS AND | § | |
| NORMA E. HARRIS | § | OF HARRIS COUNTY, T E X A S |
| | § | |
| AND IN THE INTEREST OF | § | |
| SARAH TRACY HARRIS, A Child | § | 309TH JUDICIAL DISTRICT |

## FINAL DIVORCE DECREE

BE IT REMEMBERED that on this 17th day of June, 1990, the Petitioner, Roy M. D. Harris, appeared in person and by attorney and announced ready for trial. The Respondent, Norma E. Harris, was served through its attorneys of record and withdrew contest of this action as evidenced by her attorneys' signature on this Decree. The parties waived a jury and waived the making of a record of testimony in this cause, with the consent of the Court. The attorney for Petitioner announced to the Court that the Petitioner and Respondent had agreed between themselves as to the division of their property, the dissolution of their marriage, and the care and custody of their minor child, also subject to the consent and approval of the Court.

The Court, having examined the pleadings and heard the evidence and argument of counsel, is of the opinion and finds that all necessary residence qualifications and prerequisites of law have been legally and fully satisfied, that this Court has jurisdiction of all parties and subject matter of this cause, that venue is proper in this Court, and that the material allegations contained in Petitioner's Petition for Divorce are true and correct and supported by full and satisfactory evidence. The Court further finds that the marriage of Petitioner and Respondent has become insupportable because of discord and conflict of personalities which destroyed the legitimate ends of the marriage relationship and which prevents any reasonable expectation of reconciliation. The Court being of the opinion that such marriage should accordingly be dissolved it is, therefore

ORDERED, ADJUDGED and DECREED that Roy M. D. Harris, Petitioner, and Norma E. Harris, Respondent, be and they are hereby

HARRIS-000929

divorced, and that the bonds of matrimony heretofore existing between Petitioner and Respondent be and are hereby dissolved. The Court finds that the parties are not now expecting another child of the marriage and that Petitioner and Respondent are the parents of the following child who was eighteen years of age at the time of the filing of this action:

NAME: Karen Tracy Harris
SEX: Female
BIRTHPLACE: Jackson, Mississippi
BIRTHDATE: February 11, 1962

The Court finds that Petitioner and Respondent have entered into a written agreement containing provisions for a conservatorship and support of the child. The Court finds that the agreement is in the child's best interest, and it is accordingly,

ORDERED, ADJUDGED and DECREED that Norma E. Harris be and is hereby appointed Managing Conservator of the child, and that she shall have all of the rights, privileges, duties and powers of a parent, to the exclusion of the other parent, subject to the rights, privileges, duties, and powers granted to any Possessory Conservator named in this Decree. It is further

ORDERED, ADJUDGED and DECREED that Roy H. O. Harris be and is hereby appointed Possessory Conservator of the child, with rights of possession of and access to the child at reasonable times as agreed upon by the parties. It is further

ORDERED, ADJUDGED and DECREED that Roy H. O. Harris pay to Norma E. Harris child support in an amount equal to the child's expenses for books, fees, tuition, room and board, and other reasonable and necessary expenses for her transportation to and from her respective schools and for her clothing for the period in which she is a full-time student at an accredited university or college or as a full-time student at a licensed vocational or trade school, with the first payment being due and payable immediately as specified in the Marriage Settlement Agreement between the parties attached hereto and incorporated herein.

-2-

HARRIS-000930

253 456

The Court further finds that the Petitioner and Respondent have entered into an agreement for the division of their estate and the agreement is just and right, and it is Accordingly,

ORDERED, ADJUDGED and DECREED by this Court that the Marriage Settlement Agreement between Petitioner and Respondent, which is attached hereto as Exhibit "A" is in all things approved and confirmed and is incorporated into this final judgment as though restated verbatim herein, and that the parties henceforth are ordered to carry out the terms thereof to the extent permitted by law. It is further and finally

ORDERED that all costs incurred herein shall be taxed against the party incurring same.

SIGNED and ENTERED this _____ day of June, 1980 at Houston, Harris County, Texas.

_____
JUDGE PRESIDING

APPROVED AND AGREED TO:

SULLINS & JOHNSTON

By _____
Gale Moore — State Bar #16400
3701 Kirby Drive, Suite 1230
Houston, Texas

ATTORNEYS FOR PETITIONER

HIRSCH, WESTHEIMER, BLOCK AND WILK

By _Matthew Hoffman_
Matthew Hoffman
20th Floor Niels Esperson Bldg.
Houston, Texas 77002

ATTORNEYS FOR RESPONDENT

HARRIS-000931

254 457

Lot No. 31 in block Two (2) of West University Place and Addition to the City of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 560 of the ... Records of Harris County, Texas.

1.03.  Wife's Property.  Husband and Wife agree that Wife shall have and own as her separate property, subject to her sole management, control and disposition, free and clear from all claims by Husband all of the following described property:

(1) All household furniture and personal effects in the possession of Wife at the time of entry of the Final Divorce Decree.

(2) All separate property owned by Wife, and all property acquired by Wife from and after the date of execution of this Agreement.

(3) Any Social Security accounts now held in the name of Norma H. Harris.

(4) The 1977 Volkswagen Convertible, Motor Vehicle No. 172991101.

(5) Any and all interest in any retirement benefit account held in the name of Norma H. Harris by Harris Medical Association, subject to the disposition of litigation concerning the retirement account in Harris v. Harris, Cause No. ..., in the 133th District Court of Harris ...

1.04.  Land.  With respect to the house, Husband and Wife further agree as the following:

(1) Title to the house shall be transferred to and vested solely in Husband as his separate property.

(2) In return for the disposition of this asset to Husband, Husband agrees to pay Wife the sum of Fifty Thousand Dollars ($50,000.00) on the following terms and conditions: Fifty Thousand Dollars ($50,000.00) shall be paid in cash by Husband to Wife within six (6) months after the date of execution of this Agreement. As evidence of this obligation, Husband agrees to execute to Wife a

-2-

HARRIS-000932

promissory  principal sum of Fifty Thousand Dollars ($50,000.00), ayable in full as outlined above and bearing no interest. The parties further stipulate that payment of these sums to Wife represents an equitable and distribution of the community property estate. ... parties, shall not be regarded as contractual alimony under Section 71 of the Internal Revenue Code as "alimony" and thus shall not constitute either gross income to the Wife or an alimony deduction to the Husband under Section 215 of the Code.

4.11. **Equitable Division of Property.** By this Agreement, the parties have intended to effect an equitable division of their community property, conforming to the "just and right" standards contained in Section 3.63 of the Texas Family Code, with due regard to the future of each party and any children of the marriage. The division of existing marital property is not intended by the parties to constitute in any way a sale or exchange of assets, but the division is being effected without the introduction of any separate funds or other property not constituting a part of the estate. The consideration set forth above and the mutual efforts of the parties to compensate Wife for her equitable share in the assets of the community estate, consistent with the "just and right" standard in Section 3.63 of the Texas Family Code.

### Article V
### General Provisions

5.01. **Contractual Alimony.** As contractual alimony, Husband agrees to pay and be solely responsible for all medical and dental bills and expenses, doctor's or dentist's fees, pharmaceutical expenses or hospital bills for Wife. In the event any of the same are not covered by a policy of insurance, Husband shall make all payments under this Section directly to the physician, health facility or other person or entity that has rendered care to the Wife. Husband's obligation to pay medical expenses shall terminate at such time as Wife remarries. These payments and is

HARRIS-000933

UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE:

ROY H. D. HARRIS,                                    CASE NO. 80-01464-HB
                                                     (CHAPTER 7)
        DEBTOR

SOCIAL SECURITY NUMBER
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

DEBTOR'S SCHEDULES AND STATEMENT OF AFFAIRS

HARRIS-000934

| Name of creditor (including last known holder of any negotiable instrument) and complete mailing address including zip code (if unknown, so state) | Specify when claim was incurred and the consideration therefor; when claim is contingent, unliquidated, disputed, subject to setoff, evidenced by a judgment, negotiable instrument, or other writing, or incurred as partner or joint contractor; so indicate; specify name of any partner or joint contractor on any debt | Amount of claim |
|---|---|---|
| John W. Henkins c/o Paul E. Ballard Krohner, Abraham & Watkins 800 Commerce St. Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a judgment obtained against Norma E. F. Harris, M.D., which arose during marriage between Norma E. F. Harris, M.D. and Debtor. | $950,000.00 plus interest attorneys' fe |
| Norma E. F. Harris, M.D. c/o Harris Medical Associates, P.A. 2922 Bellaire Blvd. Houston, Texas 77025 | Contingent claim based on division of community property in Property Settlement Agreement incorporated in Divorce Decree on June 17, 1980 entered in Harris v. Harris, Cause No. 80,10657 in Family District Court of Harris County, Texas; claim evidenced by Vendor's Lien Note and Deed of Trust on Debtor's property at 2922 Bellaire Blvd. | $50,000.00 |
| Airline Commerce Bank c/o John Mabors Liddell, Sapp, Zively & Brown 300 Gulf Building Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during marriage between Debtor and Norma E. F. Harris, M.D. and as set forth in the lawsuit Airline Commerce Bank v. Dr. Norma Harris, Cause No. 1,331,330 in the 165th District Court of Harris County, Texas (filed 6/23/75). | $15,661.25 |
| First Mortgage Investors c/o Larry Knippa Hench & Knippa 2460 Two Shell Plaza Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, M.D., and as set forth in the lawsuit First Mortgage Investors v. Norma F. Harris, M.D., Cause No. 1,119,672 in the 198th District Court of Harris County, Texas (filed 3/31/77). | $907,889.31 plus interest attorneys' fe |
| Wentworth Eaton c/o Harold Lloyd 711 Fannin, Suite 444 Houston, Texas 77002 | Contingent, unliquidated, and disputed potential community claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, and as set forth in lawsuit Eaton v. Harris, Cause No. 1,089,101 in the 127th District Court of Harris County, Texas (filed 8/18/78). | $350,000.00 |
| United States Leasing Corp. c/o James N. Hull Lapin, Tuts & Mayer 3626 Two Shell Plaza Houston, Texas 77002 | Contingent, unliquidated and disputed potential community claim against Debtor based on a contract claim against Norma E. F. Harris, M.D., which claim arose during the marriage between Debtor and Norma E. F. Harris, M.D., and as set forth in lawsuit U.S. Leasing Corp. v. Norma E. F. Harris, M.D., et al, Cause No. 319,204 in County Civil Court at Law No. 2 of Harris County, Texas (filed: 2/9/78). | $ 3,700.00 plus attorneys fees |

(continued on next page)

TOTAL . . . _____

© Pums, Inc., 35 West Madison Street, P.O. Box 3415, Phoenix, Arizona 85030 / (602) 255-6622

HARRIS-000935

# Constable's Sale

Under and by virtue of an ___ Writ of ___ execution authorizing its sale issued on the 21st day of July, 1980 ___ in cause No. 1,202,611 of the ___ 334th District ___ Court of Harris County, in favor of John W. Hankins, Plaintiff, recovered a Nunc Pro Tunc Judgment against Norma Harris, M.D., and Erwin C. Winkel II, M.D., jointly and severally, for the sum of Five Hundred Thousand ($500,000.00) Dollars, as compensatory damages; AND John W. Hankins, Plaintiff, recovered a Nunc Pro Tunc Judgment against Norma Harris, M.D., individually, Defendant, for the sum of One Hundred Thousand ($100,000.00) Dollars as exemplary damages, with interest thereon at the rate of 9% per cent per annum from February 6th, 1979, until paid.

Together with the sum of $ 1293.56 ___ Cost as taxed on said execution, and the further cost of executing the same, I have levied on the 6th ___ day of ___ August, 1980 ___ and will offer for sale and sell on September 2, 1980 ___ same being the 2nd day of September, 1980 at Courthouse Door ___ of Harris County, in the City of Houston, Texas, between the hours of ten o'clock a. m. and four o'clock p. m. and any and all rights, title, interest and claim which the said defendant Norma Harris, M.D.

had of, in or to the following described Real Property situated in Harris County, Texas viz:

Lot Three (3) in Block Two (2) of West University Place, an Addition to the City of West University Place in Harris County, Texas, according to the map thereof recorded in Volume 444, Page 550 of the Deed Records of Harris County, Texas.

PUBLISHED IN THE HOUSTONIAN

SALE TO BE HELD:
September 2, 1980
At: 10:30 a.m.

WALTER H. RANKIN, Constable,
Precinct No. 1, Harris County, Texas

By ___ Deputy.

HARRIS-000936

IN RE:

ROY M. C. HARRIS,

    DEBTOR

SOCIAL SECURITY NUMBER
\*\*\*-\*\*-\*\*\*\*

CASE NO. 50-01464-HB
Chapter 11

MOTION FOR RECOGNITION
OF EFFECT OF AUTOMATIC STAY
UNDER SECTION 362 OR FOR
TEMPORARY RESTRAINING ORDER

TO THE HONORABLE BANKRUPTCY JUDGE:

COMES NOW, Roy M. C. Harris, M.D. hereinafter referred to as Debtor, complaining of and against John W. Hankins ("Hankins"), Constable Walter H. Rankin and Robert S. Ballard ("Ballard"), and for cause of action respectfully shows the Court as follows:

PARTIES AND FACTUAL BACKGROUND

.. The Debtor resides at 3922 Bellaire Boulevard, Houston, Texas "the Property", and filed his Petition under Chapter 11 of the Bankruptcy Code on September 1, 1980.

.. During the period January 1, 1954 through June 17, 1977 the Debtor was married to Norma E. Harris, M.D. On January 24, 1978, John W. Hankins obtained a judgment against Norma E. Harris, M.D. At all times during this marriage, the Debtor and Norma E. Harris, M.D. occupied the Property as their personal and business homestead.

.. In June 17, 1977, the Debtor and Norma E. Harris, M.D. obtained a Decree of Divorce from the Family District Court of Harris County, Texas in Cause No. 11,13657. The Marriage Settlement Agreement entered into between the Debtor and Norma E. Harris, M.D. was incorporated into the final Divorce Decree and stated in pertinent part:

HARRIS-000937

HARRIS-000938

## II.

## RELIEF REQUESTED

Under Section 362 of the Bankruptcy Code, the Petition Under Chapter 11 filed by the Debtor:

operates as a stay, applicable to all entities, of ...

the enforcement, against the Debtor or against the property of the estate, of a judgment obtained before the commencement of the case under this title;

any act to obtain possession of property of the estate or of property from the estate; or

any act to create, perfect, or enforce any lien against the property of the estate.

As set forth by the facts above, the Property is wholly owned by the Debtor as his homestead.

If the threatened Constable's Sale of the Property is not enjoined, the Debtor will suffer great and immediate injury in that his interest in the Property will be forever foreclosed and/or encumbered. The Debtor will sustain irreparable injury in that he will be prevented from retaining his interest in the Property on just and equitable terms. The Debtor has no adequate remedy in law for the harm and damages he will sustain if his property is summarily and wrongfully disposed of at the Constable's Sale.

Even though Constable Rankin and Ballard were duly notified by letter and copy of the Petition Under Chapter 11 constituting an order for relief that the Debtor declares as his homestead, they have represented that they will proceed with the scheduled Constable's Sale at 1:00 p.m. on September 2, 19__, unless this Bankruptcy Court orders that such sale is prohibited by the automatic stay under Section 362. Accordingly, Debtor requests that this Court enter an order recognizing the effect of the automatic stay under Section 362

Title to the house shall be transferred to and vested solely in husband as his separate property.

Certified copies of the Decree of Divorce and Marriage Settlement Agreement incorporated therein are attached hereto as Exhibit "A". A copy of the Deed conveying the entirety of the right, title and interest of Norma E. Harris in and to the Property is attached hereto as Exhibit "B".

On July 21, 19__, Hankins issued a Writ of Execution to be issued against the Property in order to satisfy his judgment against Norma E. Harris, M.D. Pursuant to the Notice of Constable's Sale, which is attached hereto as Exhibit "C", Constable Rankin originally scheduled the sale of the Property to take place on September 1, 1989, at 10:00 a.m. Notice of the Constable's Sale was received by the Debtor's counsel in the afternoon of Friday, August 28, 19__.

In the morning of September 1, 19__, counsel for the Debtor met with Captain Davis and _____, the attorney for Hankins. At that time, both Captain Davis and _____ were advised that any attempt by Constable Rankin or his office to sell the Property of the Debtor, including, but not limited to, the Property, will result in the initiation of proceedings in Bankruptcy Court to avoid such sale, and to pursue any parties pursuant to such sale in contempt of court for violation of the automatic stay. Attached hereto as Exhibit D are true and correct copies of the letters personally delivered by the Debtor's counsel to Captain Davis and _____ in this regard.

Captain Davis would not agree to stay the sale, but did agree to postpone the sale until ____ p.m. on September 1, 19__ to assure the Debtor the opportunity to obtain an order from this Court recognizing the effect of the automatic stay provisions of Section 362 of the Bankruptcy Court on the Constable's Sale.

HARRIS-000939

which prohibits the initiation or continuation of any action by any creditor to execute on property of the Debtor outside the Bankruptcy Court.

2. In the alternative, and only if the Court determines that an order recognizing the effect of the automatic stay in this matter would not provide the relief requested by Debtor, the Debtor, out of an abundance of caution and recognizing that the relief requested is substantially duplicative of the relief requested above, respectfully requests the Court to enter a Temporary Restraining Order enjoining Constable Rankin from carrying out the Constable's Sale involving the Property scheduled for 2:30 p.m. September 2, 1980. Debtor will suffer irreparable damage and injury should Constable Rankin be permitted to go through with the above described Constable's Sale. The Debtor has no adequate remedy at law for the protection and preservation of his ownership in the Property, and is equitably entitled to an injunction restraining and enjoining Constable Rankin, Hankins, Ballard, of their employees or others in active concert with them from executing upon or attempting to execute upon the Property outside of Bankruptcy Court during the pendency of this matter, case.

WHEREFORE, PREMISES CONSIDERED, Debtor prays that this Court enter an order recognizing that the scheduled Constable's Sale of the Property or any interest therein is restrained by the Automatic stay under Section 362 of the Bankruptcy Code, and that any further attempt to execute on the Property outside of Bankruptcy Court or Constable Rankin, Hankins, Ballard or their agents and employees are stayed under the provisions of Section 362 during the pendency of this case; and in the alternative, if the Court determines that the above described order is insufficient to provide the relief requested by Debtor, then to enter a Temporary

HARRIS-000940

CERTIFICATE OF SERVICE

I, Jaye Rothman, hereby certify that a true and correct copy of the foregoing Motion for Recognition of Automatic Stay Under Section 362 or for Temporary Restraining Order and Verification were hand delivered to counsel for John R. Hankins, Mr. Robert E. Ballard, 133 Commerce Street, Houston, Texas, on this, the _____ day of September, 1980.

_____
Jaye Rothman

HARRIS-000941

264 46767

Restraining Order enjoining Constable Rankin from conducting the Constable's Sale scheduled for 2:30 p.m. September 2, 1980, and further enjoining the initiation or continuation of any action outside of Bankruptcy Court by Constable Rankin, Hankins, Ballard, or their agents and employees to execute on any property in which the Debtor has an interest, including, but not limited to, the real property and improvements located at 2322 Bellaire Boulevard, Houston, Texas; and such other and further relief, both general and special, at law and in equity, to which the Debtor may show itself justly entitled.

Respectfully submitted,

HIRSCH, WESTHEIMER, BLOCK AND WILK

By _____
Faye Kushman
Thomas Kirkendall
1300 Niels Esperson Bldg.
Houston, Texas 77002
(713) 223-5181

ATTORNEYS FOR DEBTOR
ROY R. L. HARRIS

HARRIS-000942

UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE:

ROY M. D. HARRIS,

    DEBTOR

SOCIAL SECURITY NUMBER
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

CASE NO. 70-01464-H5
Chapter 13

ORDER

On this, 2nd day of September, 1980, came on to be heard the verified Motion for Recognition of Effect of Automatic Stay Under Section 362 ~~as Non-Dispository Proceeding Order~~ and good cause appearing therefor, it is therefore;

ORDERED, ADJUDGED and DECREED that the scheduled Constable Sale of the real property located at 2922 Bellaire Boulevard, Houston, Texas, or any interest therein, *owned by the Debtor* is prohibited by the automatic stay under Section 362 of the Bankruptcy Code, and that any further attempt to execute on the ~~above~~ property outside the Bankruptcy Court by Constable Rankin, John W. Rankins or Robert E. Ballard or their agents or employees are stayed pursuant to the provisions of Section 362 during the pendency of this case.

2:26pr        JUDGE PRESIDING

HARRIS-000943

GENERAL RELEASE

KNOW ALL MEN BY THESE PRESENTS:

That John W. Hankins, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has RELEASED AND FOREVER DISCHARGED and by these presents does for himself and any person or entity claiming under or through him, RELEASE AND FOREVER DISCHARGE Norma Harris, M.D., H.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A. Defined Benefit Investment Fund Pension Plan, Roy Harris, M.D., P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment Fund Pension Plan and their agents, representatives, officers, directors, trustees, beneficiaries, successors or assigns, of and from all causes of action, suits, debts, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever in law or in equity, whether known or unknown, liquidated or unliquidated, he ever had, now has or may have for, upon or by reason of any manner, cause or thing whatsoever from any time in the past to the day of the date of this release. Further, without limiting the foregoing in any way, John W. Hankins releases Norma Harris, M.D., H.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A. Defined Benefit Investment Fund Pension Plan, Roy Harris, M.D., P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment Fund Pension Plan from any cause of action, claims, liabilities, damages, judgments or demands which he now has or may have against Norma Harris, M.D., H.D. "Roy" Harris, M.D., Harris Medical Associates, P.A., Harris Medical Associates, P.A.

HARRIS-000944

Defined Benefit Investment Fund Pension Plan, Roy Harris, M.D., P.A. and Roy Harris, M.D., P.A. Defined Benefit Investment Fund Pension Plan by reason of the matters alleged in, or related to, the cause of action styled John W. Hankins vs. Norma Harris, M.D., et al, in the District Court of Harris County, Texas, 80th Judicial District, No. 1,002,511.

Witness

John W. Hankins

THE STATE OF TEXAS        §
COUNTY OF HARRIS          §

BEFORE ME, the undersigned authority, in and for said County and State, on this day personally appeared John W. Hankins, known to me to be the person whose name is subscribed in the foregoing instrument, and acknowledged to me that he executed this instrument for the purposes therein expressed, in the capacity therein stated, and as his own act and deed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this **3rd** day of __MARCH__, 1981.

Notary Public, in and for
Harris County, T E X A S

My Commission Expires:                 Printed Name of Notary Public:

June 25, 1981

MATTHEW HOFFMAN
MY COMMISSION EXPIRES
6/25/81

HARRIS-000945

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON   DIVISION

IN RE: Roy H.O. Harris

CASE NO.   30-01484-H8

DEBTOR*

## DISCHARGE OF DEBTOR.

It appearing that the person named above has filed a petition commencing a case under Title 11, United States Code on 1/2/80, that an order for relief was entered under Chapter 7 and that no complaint objecting to the discharge of the debtor was filed within the time fixed by the court (or that a complaint objecting to discharge of the debtor was filed, and after due notice and hearing, was not sustained), it is ordered that

1.   The above-named debtor is released from all dischargeable debts.

2.   Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:

(a)   debts dischargeable under 11 U.S.C. §523;

(b)   unless heretofore or hereafter determined by order of this court to be nondischargeable debts alleged to be excepted from discharge under clauses (2), (4) and (6) of 11 U.S.C. §523(a);

(c)   debts determined by this court to be discharged under 11 U.S.C. §523(d).

3.   All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabilities of the above-named debtor.

DATED:   May 19, 1981

I certify that the foregoing is a true copy of the original now on file in Bankruptcy Court Southern District of Texas

By _____ Clerk

BY THE COURT

_____ UNITED STATES BANKRUPTCY JUDGE

*Include here all names used by Debtor within last 6 years

HARRIS-000946

# APPENDIX TAB 19

4/16/2015 2:43:25 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 4919198
By: GENTRY, EUNIECY M
Filed: 4/16/2015 2:43:25 PM

CAUSE NO 2014-01360

| | | |
|---|---|---|
| SARAH T HARRIS, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff/Counter-Defendant | § | |
| | § | |
| vs | § | HARRIS COUNTY, TEXAS |
| | § | |
| JOHN W HANKINS, | § | |
| | § | |
| Defendant/Counter-Plaintiff | § | 333RD JUDICIAL DISTRICT |

## ORDER

Came on for consideration the Defendant John W Hankins' Motion For Ruling on his Objections and Special Exceptions To Plaintiff's First Motion For Summary Judgment, and Motion for Ruling on his Objections and Special Exceptions To Plaintiff's Second Motion For Summary Judgment Having considered the Motion, and any responses or replies thereto, the Court is of the opinion the Motion should be GRANTED *as follows* :

IT IS, THEREFORE,

**ORDERED**, that Defendant's Objections and Special Exceptions To Plaintiff's First Motion For Summary Judgment are hereby OVERRULED It is further

**ORDERED**, that Defendant's Objections and Special Exceptions to Plaintiff's Second Motion for Summary Judgment are hereby OVERRULED

MAY - 1 2015

SIGNED on this the ____ day of _____, 2015

_____
HON JOSEPH J HALBACH

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

227

# APPENDIX TAB 20

# CHAPTER 24. FRAUDULENT TRANSFERS

Section
24.01. Definition of Transfer.
24.02. Transfer to Defraud is Void.
24.03. Debtor's Transfer not for Value is Void.
24.04. Fraudulent Gift of Tangible Personal Property is Void.
24.05. Pretended Loan of Tangible Personal Property is Ineffective.

## Section 24.01.   Definition of Transfer

In this chapter, unless the context requires a different definition, "transfer" includes conveyance, gift, assignment, and charge. (R.S. Art. 3996 (part), amd. by 40th Legis., Ch. 30, Sec. 1.)

## § 24.02.   Transfer to Defraud Is Void

(a) A transfer of real or personal property, a suit, a decree, judgment, or execution, or a bond or other writing is void with respect to a creditor, purchaser, or other interested person if the transfer, suit, decree, judgment, execution, or bond or other writing was intended to

   (1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become, entitled; or

   (2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled.

(b) The title of a purchaser for value is not void under Subsection (a) of this section unless he purchased with notice of

   (1) the intent of his transferor to delay, hinder, or defraud; or

   (2) the fraud that voided the title of his transferor. (R.S. Art. 3996 (part), amd. by 40th Legis., Ch. 30, Sec. 1.)

## § 24.03.   Debtor's Transfer Not for Value Is Void

(a) A transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for fair consideration, unless, in addition to the property transferred, the debtor has at the time of transfer enough property in this state subject to execution to pay all of his existing debts.

(b) Subsection (a) of this section does not void a transfer with respect to a subsequent creditor of or purchaser from the debtor. (R.S. Art. 3997.)

2598

# APPENDIX TAB 21

PL 95–598, NOVEMBER 6, 1978, 92 Stat 2549

UNITED STATES PUBLIC LAWS
95th Congress - Second Session
Convening January 19, 1978

DATA SUPPLIED BY THE U.S. DEPARTMENT OF JUSTICE. (SEE SCOPE)
Additions and Deletions are not identified in this document.

PL 95–598 (HR 8200)
NOVEMBER 6, 1978

An Act to establish a uniform Law on the Subject of Bankruptcies.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

TITLE I—ENACTMENT OF TITLE 11 OF THE UNITED STATES CODE
Sec. 101. The law relating to bankruptcy // 11 USC prec. 101 // is codified and enacted as title 11 of the United States Code, entitled ” Bankruptcy”, and may be cited as 11 U.S.C. Section, as follows:
TITLE 11—BANKRUPTCY

Chapter Sec.
1. General Provisions 101.
3. Case Administration 301
5. Creditors, the Debtor, and the Estate 501
7. Liquidation 701
9. Adjustment of Debts of a Municipality 901
11. Reorganization 1101
13. Adjustment of Debts of an Individual With Regular Income 1301
15. United States Trustees 1501

CHAPTER 1—GENERAL PROVISIONS

Sec. 101. Definitions 102. Rules of construction. 103. Applicability of chapters. 104. Adjustment of dollar amounts. 105. Power of court. 106. Waiver of sovereign immunity. 107. Public access to papers. 108. Extension of time. 109. Who may be a debtor.

Section 101. // 11 USC 101. // Definitions

In this title—,
(1) “accountant” means accountant authorized under applicable law to practice public accounting, and includes professional accounting association, corporation, or partnership, if so authorized;
(2) “affiliate” means—,
  (A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—,
    (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
    (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
  (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—,
    (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
    (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or

(D) entity that operates the business or all or substantially all of the property of the debtor under a lease or operating agreement;

(3) "attorney" means attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law;

(4) "claim" means—,

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

(5) "commodity broker" means futures commission merchant, foreign futures commission merchant, clearing organization, leverage transaction merchant, or commodity options dealer, as defined in section 761 of this title, with respect to which there is a customer, as defined in section 761(9) of this title;

(6) "community claim" means claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case;

(7) "consumer debt" means debt incurred by an individual primarily for a personal, family, or household purpose;

(8) "corporation"—,

(A) includes—,

(i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;

(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

(iii) joint-stock company;

(iv) unincorporated company or association; or

(v) business trust; but

(B) does not include limited partnership:

(9) "creditor" means—,

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim;

(10) "custodian" means—,

(A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;

(11) "debt" means liability on a claim;

(12) "debtor" means person or municipality concerning which a case under this title has been commenced;

(13) "disinterested person" means person that—,

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

(14) "entity" includes person, estate, trust, governmental unit;

(15) "equity security means—,

  (A) share in a corporation, whether or not transferable or denominated "stock", or similar security;

  (B) interest of a limited partner in a limited partnership; or

  (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph;

(16) "equity security holder" means holder of an equity security of the debtor;

(17) "farmer" means person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person;

(18) "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state;

(19) "foreign proceeding" means proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization;

(20) "foreign representative" means duly selected trustee, administrator, or other representative of an estate in a foreign proceeding;

(21) "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government;

(22) "indenture" means mortgage, deed of trust, or indenture, under which there is outstanding a security, other than a voting-trust certificate, constituting a claim against the debtor, a claim secured by a lien on any of the debtor's property, or an equity security of the debtor;

(23) "indenture trustee" means trustee under an indenture;

(24) "individual with regular income" means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stock broker or a commodity broker;

(25) "insider" includes—,

  (A) if the debtor is an individual—,

    (i) relative of the debtor or of a general partner of the debtor;

    (ii) partnership in which the debtor is a general partner;

    (iii) general partner of the debtor; or

    (iv) corporation of which the debtor is a director, officer, or person in control;

  (B) if the debtor is a corporation—,

    (i) director of the debtor;

    (ii) officer of the debtor;

    (iii) person in control of the debtor;

    (iv) partnership in which the debtor is a general partner;

    (v) general partner of the debtor; or

    (vi) relative of a general partner, director, officer, or person in control of the debtor;

  (C) if the debtor is a partnership—,

    (i) general partner in the debtor;

    (ii) relative of a general partner in, general partner of, or person in control of the debtor;

    (iii) partnership in which the debtor is a general partner;

    (iv) general partner of the debtor; or

    (v) person in control of the debtor;

(D) if the debtor is a municipality, elected official of the debtor or relative of an elected official of the debtor;

(E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and

(F) managing agent of the debtor;

(26) "insolvent" means—,

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—,

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title; and

(B) with reference to a partnership, financial condition such that the sum of such partnership's debts is greater than the aggregate of, at a fair valuation—,

(i) all of such partnership's property, exclusive of property of the kind specified in subparagraph (A)(i) of this paragraph; and

(ii) the sum of the excess of the value of each general partner's separate property, exclusive of property of the kind specified in subparagraph (A)(ii) of this paragraph, over such partner's separate debts;

(27) "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;

(28) "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation;

(29) "municipality" means political subdivision or public agency or instrumentality of a State;

(30) "person" includes individual, partnership, and corporation, but does not include governmental unit;

(31) "petition" means petition filed under section 301, 302, 303, or 304 of this title, as the case may be, commencing a case under this title;

(32) "purchaser" means transferee of a voluntary transfer, and includes immediate or mediate transferee of such a transferee;

(33) "railroad" means common carrier by railroad engaged in the transportation of individuals or property or owner of trackage facilities leased by such a common carrier;

(34) "relative" means individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree;

(35) "security"—,

(A) includes—,

(i) note;

(ii) stock;

(iii) treasury stock;

(iv) bond;

(v) debenture;

(vi) collateral trust certificate;

(vii) pre-organization certificate or subscription;

(viii) transferable share;

(ix) voting-trust certificate;

(x) certificate of deposit;

(xi) certificate of deposit for security;

(xii) investment contract or certificate of interest or participation in a profit-sharing agreement or in an oil, gas, or mineral royalty or lease, if such contract or interest is the subject of a registration statement filed with the Securities and Exchange Commission under the provisions of the Securities Act of 1933 (15 U.S.C. 77a et seq.), or is exempt under section 3(b) of such Act (15 U.S.C. 77c(b)) from the requirement to file such a statement;

(xiii) interest of a limited partner in a limited partnership;

(xiv) other claim or interest commonly known as "security"; and

(xv) certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase or sell, a secuity; but

(B) does not include—,

(i) currency, check, draft, bill of exchange, or bank letter of credit;

(ii) leverage transaction, as defined in section 761(13) of this title;

(iii) commodity futures contract or forward commodity contract;

(iv) option, warrant, or right to subscribe to or purchase or sell a commodity futures contract;

(v) option to purchase or sell a commodity;

(vi) contract or certificate specified in clause (xii) of subparagraph (A) of this paragraph that is not the subject of such a registration statement filed with the Securities and Exchange Commission and is not exempt under section 3(b) of the Securities Act of 1933 (15 U.S.C. 77c(b)) from the requirement to file such a statement; or

(vii) debt or evidence of indebtedness for goods sold and delivered or services rendered;

(36) "security agreement" means agreement that creates or provides for a security interest;

(37) "security interest" means lien created by an agreement;

(38) "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute;

(39) "stockbroker" means person with respect to which there is a customer, as defined in section 741(2) of this title, engaged in the business of effecting transactions in securities—,

(A) for the accounts of others; or

(B) with members of the general public, from or for such person's own account; and

(40) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.

section 1102. // 11 USC 102. // Rules of construction

In this title—,

(1) "after notice and a hearing", or a similar phrase—,

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—,

(i) such hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

(2) "claim against the debtor" includes claim against property of the debtor;

(3) "includes" and "including" are not limiting;

(4) "may not" is prohibitive, and not permissive;

(5) "or" is not exclusive;

(6) "order for relief" means entry of an order for relief;

(7) the singular includes the plural; and

(8) a definition, continued in a section of this title that refers to another section of this title, does not, for the purpose of such reference, affect the meaning of a term used in such other section.

Section 103. // 11 USC 103. // Applicability of chapters

(a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, or 13 of this title.

(b) Subchapters I and II of chapter 7 of this title apply only in a case under such chapter.

(c) Subchapter III of chapter 7 of this title applies only in a case under such chapter concerning a stockholder.

(d) Subchapter IV of chapter 7 of this title applies only in a case under such chapter concerning a commodity broker except with respect to section 746(c) which applies to margin payments made by any debtor to a commodity broker or forward contract merchant.

(e) Except as provided in section 901 of this title, only chapters 1 and 9 of this title apply in a case under such chapter 9.

(f) Except as provided in section 901 of this title, subchapters I, II, and III of chapter 11 of this title apply only in a case under such chapter.

(g) Subchapter IV of chapter 11 of this title applies only in a case under such chapter concerning a railroad.

(h) Chapter 13 of this title applies only in a case under such chapter.

Section 104. // 11 USC 104. // Adjustment of dollar amounts

The Judicial Conference of the United States shall transmit to the Congress and to the President before May 1, 1985, and before May 1 of every sixth year after May 1, 1985, a recommendation for the uniform percentage adjustment of each dollar amount in this title and in section 1930 of title 28.

Section 105. // 11 USC 105. // Power of court

(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

(b) Notwithstanding subsection (a) of this section, a bankruptcy court may not appoint a receiver in a case under this title.

Section 106. // 11 USC 106. // Waiver of sovereign immunity

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—,

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Section 107. // 11 USC 107. // Public access to papers

(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—,

(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

Section 108. // 11 USC 108. // Extension of time

(a) If applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—,

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) two years after the order for relief.

(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—,

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief.

(c) Except as provided in section 524 of this title, if applicable law, an order entered in a proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—,

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, or 1301 of this title, as the case may be, with respect to such claim.

Section 109. // 11 USC 109. // Who may be a debtor

(a) Notwithstanding any other provision of this section, only a person that resides in the United States, or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.

(b) A person may be a debtor under chapter 7 of this title only if such person is not—,

(1) a railroad;

(2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union; or

(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

(c) An entity may be a debtor under chapter 9 of this title if and only if such entity—,

(1) is a municipality;

(2) is generally authorized to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;

(3) is insolvent or unable to meet such entity's debts as such debts mature;

(4) desires to effect a plan to adjust such debts; and

(5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(C) is unable to negotiate with creditors because such negotiation is impracticable; or

(D) reasonably believes that a creditor may attempt to obtain a preference.

(d) Only a person that may be a debtor under chapter 7 of this title, except a stockholder or a commodity broker, and a railroad may be a debtor under chapter 11 of this title.

(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

CHAPTER 3—CASE ADMINISTRATION

SUBCHAPTER I—COMMENCEMENT OF A CASE

Sec. 301. Voluntary cases. 302. Joint cases. 303. Involuntary cases. 304. Cases ancillary to foreign proceedings. 305. Abstention. 306. Limited appearance.

SUBCHAPTER II— OFFICERS

321. Eligibility to serve as trustee. 322. Qualification of trustee. 323. Role and capacity of trustee. 324. Removal of trustee or examiner. 325. Effect of vacancy. 326. Limitation on compensation of trustee. 327. Employment of professional persons. 328. Limitation on compensation of professional persons. 329. Debtor's transactions with attorneys. 330. Compensation of officers. 331. Interim compensation.

SUBCHAPTER III— ADMINISTRATION

341. Meetings of creditors and equity security holders. 342. Notice. 343. Examination of the debtor. 344. Self-incrimination; immunity. 345. Money of estates. 346. Special tax provisions. 347. Unclaimed property. 348. Effect of conversion. 349. Effect of dismissal. 350. Closing and reopening cases.

SUBCHAPTER IV— ADMINISTRATIVE POWERS

361. Adequate protection. 362. Automatic stay. 363. Use, sale, or lease of property. 364. Obtaining credit. 365. Executory contracts and unexpired leases. 366. Utility service.

SUBCHAPTER I—COMMENCEMENT OF A CASE

Section 301. // 11 USC 301. // Voluntary cases

A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

Section 302. // 11 USC 302. // Joint cases

(a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

(b) After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.

Section 303. // 11 USC 303. // Involuntary cases

(a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced.

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—,

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims;

(3) if such person is a partnership—,

(A) by fewer than all of the general partners in such partnership; or

(B) if relief has been ordered under this title with respect to all of the general partners in such partnership, by a general partner in such partnership, the trustee of such a general partner, or a holder of a claim against such partnership; or

(4) by a foreign representative of the estate in a foreign proceeding concerning such person.

(c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

(d) The debtor, or a general partner in a partnership debtor that did not join in the petition, may file an answer to a petition under this section.

(e) After notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section.

(f) Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

(g) At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor. Before an order for relief, the debtor may regain possession of property in the possession of a trustee ordered appointed under this subsection if the debtor files such

bond as the court requires, conditioned on the debtor's accounting for and delivering to the trustee, if there is an order for relief in the case, such property, or the value, as of the date the debtor regains possession, of such property.

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—,

(1) the debtor is generally not paying such debtor's debts as such debts become due; or

(2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—,

(1) against the petitioners and in favor of the debtor for—,

(A) costs;

(B) a reasonable attorney's fee; or

(C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title; or

(2) against any petitioner that filed the petition in bad faith. for—,

(A) any damages proximately caused by such filing; or

(B) punitive damages.

(j) Only after notice to all creditors and a hearing may the court dismiss a petition filed under this section—,

(1) on the motion of a petitioner;

(2) on consent of all petitioners and the debtors; or

(3) for want of prosecution.

(k) Notwithstanding subsection (a) of this section, an involuntary case may be commenced against a foreign bank that is not engaged in such business in the United States only under chapter 7 of this title and only if a foreign proceeding concerning such bank is pending.

Section 304. // 11 USC 304. // Cases ancillary to foreign proceedings

(a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.

(b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may—,

(1) enjoin the commencement or continuation of—,

(A) any action against—,

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

(c) In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—,

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

Section 305. // 11 USC 305. // Abstention

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—,

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or

(2)(A) there is pending a foreign proceeding: and

(B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

(b) A foreign representative may seek dismissal or suspension under subsection (a)(2) of this section.

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.

Section 306. // 11 USC 306. // Limited appearance

An appearance in a bankruptcy court by a foreign representative in connection with a petition or request under section 303, 304, or 305 of this title does not submit such foreign representative to the jurisdiction of any court in the United States for any other purpose, but the bankruptcy court may condition any order under section 303, 304, or 305 of this title on compliance by such foreign representative with the orders of such bankruptcy court.

SUBCHAPTER II— OFFICERS

Section 321. // 11 USC 321. // Eligibility to serve as trustee

(a) A person may serve as trustee in a case under this title only if such person is—,

(1) an individual that is competent to perform the duties of trustee and, in a case under chapter 7 or 13 of this title, resides or has an office in the judicial district within which the case is pending, or in any judicial district adjacent to such district; or

(2) a corporation authorized by such corporation's charter or bylaws to act as trustee, and, in a case under chapter 7 or 13 of this title, having an office in at least one of such districts.

(b) A person that has served as an examiner in a case may not serve as trustee in the case.

Section 322. // 11 USC 322. // Qualification of trustee

(a) A person selected under section 701, 702, 703, 1104, 1163, or 1302 of this title to serve as trustee in a case under this title qualifies if before five days after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties.

(b) The court shall determine—,

(1) the amount of a bond filed under subsection (a) of this section; and

(2) the sufficiency of the surety on such bond.

(c) A trustee is not liable personally or on such trustee's bond in favor of the United States for any penalty or forfeiture incurred by the debtor.

(d) A proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged.

Section 323. // 11 USC 323. // Role and capacity of trustee

(a) The trustee in a case under this title is the representative of the estate.

(b) The trustee in a case under this title has capacity to sue and be sued.

Section 324. // 11 USC 324. // Removal of trustee or examiner

The court, after notice and a hearing, may remove a trustee or an examiner, for cause.

Section 325. // 11 USC 325. // Effect of vacancy

A vacancy in the office of trustee during a case does not abate any pending action or proceeding, and the successor trustee shall be substituted as a party in such action or proceeding.

Section 326. // 11 USC 326. // Limitation on compensation of trustee

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, three percent on any amount in excess of $3,000 but not in excess of $20,000, two percent on any amount in excess of $20,000 but not in excess of $50,000, and one percent on any amount in excess of $50,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

(b) In a case under chapter 13 of this title, the court may not allow compensation for services or reimbursement of expenses of a standing trustee appointed under section 1302(d) of this title, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.

(c) If more than one person serves as trustee in the case, the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be.

(d) The court may deny allowance of compensation for services and reimbursement of expenses of the trustee if the trustee—,

(1) failed to make diligent inquiry into facts that would permit denial of allowance under section 328(c) of this title; or

(2) with knowledge of such facts, employed a professional person under section 327 of this title.

Section 327. // 11 USC 327. // Employment of professional persons

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721 or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

(c) In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

(d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.

Section 328. // 11 USC 328. // Limitation on compensation of professional persons

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions.

(b) If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee

performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Section 329. // 11 USC 329. // Debtor's transactions with attorneys

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of and in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—,

(1) the trustee, if the property transferred—,

 (A) would have been property of the estate; or

 (B) was to be paid by or on behalf of the debtor under a plan under chapter 11 or 13 of this title; or

(2) the entity that made such payment.

Section 330. // 11 USC 330. // Compensation of officers

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—,

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

(b) There shall be paid from the filing fee in a case under chapter 7 of this title $20 to the trustee serving in such case, after such trustee's services are rendered.

Section 331. // 11 USC 331. // Interim compensation

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

SUBCHAPTER III— ADMINISTRATION

Section 341. // 11 USC 341. // Meetings of creditors and equity security holders

(a) Within a reasonable time after the order for relief in a case under this title, there shall be a meeting of creditors.

(b) The court may order a meeting of any equity security holders.

(c) The court may not preside at, and may not attend, any meeting under this section.

Section 342. // 11 USC 342. // Notice

There shall be given such notice as is appropriate of an order for relief in a case under this title.

Section 343. // 11 USC 343. // Examination of the debtor

The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title. Creditors, any indenture trustee, or any trustee or examiner in the case may examiner the debtor.

Section 344. // 11 USC 344. // Self-incrimination; immunity

Immunity for persons required to submit to examination, to testify, or to provide information in a case under this title may be granted under part V of title 18. // 18 USC 6001. //

Section 345. // 11 USC 345. // Money of estates

(a) A trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.

(b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—,

(1) a bond—,

(A) in favor of the United States;

(B) secured by the undertaking of a corporate surety approved by the court for the district in which the case is pending; and

(C) conditioned on—,

(i) a proper accounting for all money so deposited or invested and for any return on such money;

(ii) prompt repayment of such money and return; and

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 15 of title 6.

Section 346. // 11 USC 346. // Special tax provisions

(a) Except to the extent otherwise provided in this section, subsection (b), (c), (d), (e), (g), (h), (i), and (j) of this section apply notwithstanding any State or local law imposing a tax, but subject to the Internal Revenue Code of 1954 (26 U.S.C. 1 et seq.).

(b)(1) In a case under chapter 7 or 11 of this title concerning an individual, any income of the estate may be taxed under a State or local law imposing a tax on or measured by income only to the estate, and may not be taxed to such individual. Except as provided in section 728 of this title, if such individual is a partner in a partnership, any gain or loss resulting from a distribution of property from such partnership, or any distributive share of income, gain, loss, deduction, or credit of such individual that is distributed, or considered distributed, from such partnership, after the commencement of the case is gain, loss, income, deduction, or credit, as the case may be, of the estate.

(2) Except as otherwise provided in this section and in section 728 of this title, any income of the estate in such a case, and any State or local tax on or measured by such income, shall be computed in the same manner as the income and the tax of an estate.

(3) The estate in such a case shall use the same accounting method as the debtor used immediately before the commencement of the case.

(c)(1) The commencement of a case under this title concerning a corporation or a partnership does not effect a change in the status of such corporation or partnership for the purposes of any State or local law imposing a tax on or measured by income. Except as otherwise provided in this section and in section 728 of this title, any income of the estate in such case may be taxed only as though such case had not been commenced.

(2) In such a case, except as provided in section 728 of this title, the trustee shall make any tax return otherwise required by State or local law to be filed by or on behalf of such operation or partnership in the same manner and form as such corporation or partnership, as the case may be, is required to make such return.

(d) In a case under chapter 13 of this title, any income of the estate or the debtor may be taxed under a State or local law imposing a tax on or measured by income only to the debtor, and may not be taxed to the estate.

(e) A claim allowed under section 502(f) or 503 of this title, other than a claim for a tax that is not otherwise deductible or a capital expenditure that is not otherwise deductible, is deductible by the entity to which income of the estate is taxed unless such claim was deducted by another entity, and a deduction for such a claim is deemed to be a deduction attributable to a business.

(f) The trustee shall withhold from any payment of claims for wages, salaries, commissions, dividends, interest, or other payments, or collect, any amount required to be withheld or collected under applicable State or local tax law, and shall pay such withheld or collected amount to the appropriate governmental unit at the time and in the manner required by such tax law, and with the same priority as the claim from which such amount was withheld was paid.

(g)(1) Neither gain nor loss shall be recognized on a transfer—,

(A) by operation of law, of property to the estate;

(B) other than a sale, of property from the estate to the debtor; or

(C) in a case under chapter 11 of this title concerning a corporation, of property from the estate to a corporation that is an affiliate participating in a joint plan with the debtor, or that is a successor to the debtor under the plan, except that gain or loss may be recognized to the same extent that such transfer results in the recognition of gain or loss under section 371 of the Internal Revenue Code of 1954 (26 U.S.C. 371).

(2) The transferee of a transfer of a kind specified in this subsection shall take the property transferred with the same character, and with the transferor's basis, as adjusted under subsection (j)(5) of this section, and holding period.

(h) Notwithstanding sections 728(a) and 1146(a) of this title, for the purpose of determining the number of taxable periods during which the debtor or the estate may use a loss carryover or a loss carryback, the taxable period of the debtor during which the case is commenced is deemed not to have been terminated by such commencement.

(i)(1) In a case under chapter 7 or 11 of this title concerning an individual, the estate shall succeed to the debtor's tax attributes, including—,

(A) any investment credit carryover;

(B) any recovery exclusion;

(C) any loss carryover;

(D) any foreign tax credit carryover;

(E) any capital loss carryover; and

(F) any claim of right.

(2) After such a case is closed or dismissed, the debtor shall succeed to any tax attribute to which the estate succeeded under paragraph (1) of this subsection but that was not utilized by the estate. The debtor may utilize such tax attributes as though any applicable time limitations on such utilization by the debtor were suspended during the time during which the case was pending.

(3) In such a case, the estate may carry back any loss of the estate to a taxable period of the debtor that ended before the order for relief under such chapter the same as the debtor could have carried back such loss had the debtor incurred such loss and the case under this title had not been commenced, but the debtor may not carry back any loss of the debtor from a taxable period that ends after such order to any taxable period of the debtor that ended before such order until after the case is closed.

(j)(1) Except as otherwise provided in this subsection, income is not realized by the estate, the debtor, or a successor to the debtor by reason of forgiveness or discharge of indebtedness in a case under this title.

(2) For the purposes of any State or local law imposing a tax on or measured by income, a deduction with respect to a liability may not be allowed for any taxable period during or after which such liability is forgiven or discharged under this title. In this paragraph, "a deduction with respect to a liability" includes a capital loss incurred on the disposition of a capital asset with respect to a liability that was incurred in connection with the acquisition of such asset.

(3) Except as provided in paragraph (4) of this subsection, for the purpose of any State or local law imposing a tax on or measured by income, any net operating loss of an individual or corporate debtor, including a net operating loss carryover to such debtor, shall be reduced by the amount of indebtedness forgiven or discharged in a case under this title, except to the extent that such forgiveness or discharge resulted in a disallowance under paragraph (2) of this subsection.

(4) A reduction of a net operating loss or a net operating loss carryover under paragraph (3) of this subsection or of basis under paragraph (5) of this subsection is not required to the extent that the indebtedness of an individual or corporate debtor forgiven or discharged—,

(A) consisted of items of a deductible nature that were not deducted by such debtor; or

(B) resulted in an expired net operating loss carryover or other deduction that—,

(i) did not offset income for any taxable period; and

(ii) did not contribute to a net operating loss in or a net operating loss carryover to the taxable period during or after which such indebtedness was discharged.

(5) For the purposes of a State or local law imposing a tax on or measured by income, the basis of the debtor's property or of property transferred to an entity required to use the debtor's basis in whole or in part shall be reduced by the lesser of—,

(A)(i) the amount by which the indebtedness of the debtor has been forgiven or discharged in a case under this title; minus

(ii) the total amount of adjustments made under paragraphs (2) and (3) of this subsection; and

(B) the amount by which the total basis of the debtor's assets that were property of the estate before such forgiveness or discharge exceeds the debtor's total liabilities that were liabilities both before and after such forgiveness or discharge.

(6) Notwithstanding paragraph (5) of this subsection, basis is not required to be reduced to the extent that the debtor elects to treat as taxable income, of the taxable period in which indebtedness is forgiven or discharged, the amount of indebtedness forgiven or discharged that otherwise would be applied in reduction of basis under paragraph (5) of this subsection.

(7) For the purposes of this subsection, indebtedness with respect to which an equity security, other than an interest of a limited partner in a limited partnership, is issued to the creditor to whom such indebtedness was owned, or that is forgiven as a contribution to capital by an equity security holder other than a limited partner in the debtor, is not forgiven or discharged in a case under this title—,

(A) to any extent that such indebtedness did not consist of items of a deductible nature; or

(B) if the issuance of such equity security has the same consequences under a law imposing a tax on or measured by income to such creditor as a payment in cash to such creditor in an amount equal to the fair market value of such equity security, then to the lesser of—,

(i) the extent that such issuance has the same such consequences; and

(ii) the extent of such fair market value.

Section 347. // 11 USC 347. // Unclaimed property

(a) Ninety days after the final distribution under section 726 or 1326 of this title in a case under chapter 7 or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28. // 28 USC 2041. //

(b) Any security, money, or other property remaining unclaimed at the expiration of the time allowed in a case under chapter 9 or 11 of this title for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section 943(b), 1129, or 1173 of this title, as the case may be, becomes the property of the debtor or of the entity acquiring the assets of the debtor under the plan, as the case may be.

Section 348. // 11 USC 348. // Effect of conversion

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

(b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121( c), 1141(d)(4), 1146(a), 1146(b), 1301(a), 1305(a), and 1328(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, or 1307 of this title means the conversion of such case to such chapter.

(c) Sections 342 and 365(d) of this title apply in a case that has been converted under section 706, 1112, or 1307 of this title, as if the conversion order were the order for relief.

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

(e) Conversion of a case under section 706, 1112, or 1307 of this title terminates the service of any trustee or examiner that is serving in the case before such conversion.

Section 349. // 11 USC 349. // Effect of dismissal

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed.

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—,

(1) reinstates—,

 (A) any proceeding or custodianship superseded under section 543 of this title;

 (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

 (C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

Section 350. // 11 USC 350. // Closing and reopening cases

(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

(b) a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

## SUBCHAPTER IV— ADMINISTRATIVE POWERS

Section 361. // 11 USC 361. // Adequate protection

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—,

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Section 362. // 11 USC 362. // Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—,

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—,

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

(2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate;

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title;

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(6) under subsection (a)(7) of this section, of the setoff of any mutual debt and claim that are commodity futures contracts, forward commodity contracts, leverage transactions, options, warrants, rights to purchase or sell commodity futures contracts or securities, or options to purchase or sell commodities or securities;

(7) under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by said Secretary is insured or was formerly insured under the National Housing Act

// 12 USC 1701. // and covers property, or combinations of property, consisting of five or more living units; or

(8) under subsection (a) of this section, of the issuance to the debtor by a governmental unit of a notice of tax deficiency.

(c) Except as provided in subsections (d), (e), and (f) of this section—,

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—,

(A) the time the case is closed;

(B) the time the case is dismissed; and

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, or 13 of this title, the time a discharge is granted or denied.

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—,

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—,

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

(e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. If the hearing under this subsection is a preliminary hearing—,

(1) the court shall order such stay so continued if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the final hearing under subsection (d) of this section; and

(2) such final hearing shall be commenced within thirty days after such preliminary hearing.

(f) The court, without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—,

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

Section 363. // 11 USC 363. // Use, sale, or lease of property

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest.

(b) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—,

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(d), 362(e), or 362(f) of this title.

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—,

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of such interest;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(g) Notwithstanding subsection (f) of this section, the trustee may sell property under subsection (b) or (c) of this section free and clear of any vested or contingent right in the nature of dower or curtesy.

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, immediately before the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—,

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

(i) Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compenation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

(k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

(1) The trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11 or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial conditions of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of a taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interests in such property.

(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

(n) The trustee may void a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in voiding such sale or recovering such amount. The court may grant judgment in favor of the estate and against any such party that entered into such agreement in willful disregard of this subsection for punitive damages in addition to any recovery under the preceding sentence.

Section 364. // 11 USC 364. // Obtaining credit

(a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503 (b)(1) of this title as an administrative expense.

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—,

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—,

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

(e) The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

(f) Except with respect to an entity that is an underwriter as defined in section 1145(b) of this title, section 5 of the Securities Act of 1933 (15 U.S.C. 77e), the Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.), and any State or local law requiring

registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security does not apply to the offer or sale under this section of a security that is not an equity security.

Section 365. // 11 USC 365. // Executory contracts and unexpired leases

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—,

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

(2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—,

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

(3) For the purposes of paragraph (1) of this section, adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—,

(A) of the source of rent and other consideration due under such lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease will not breach substantially any provision, such as a radius, location, use, or exclusivity provision, in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt substantially any tenant mix or balance in such shopping center.

(4) Notwithstanding any other provision of this section, if there has been a default in an unexpired lease of the debtor, other than a default of a kind specified in paragraph (2) of this subsection, the trustee may not require a lessor to provide services or supplies incidental to such lease before assumption of such lease unless the lessor is compensated under the terms of such lease for any services and supplies provided under such lease before assumption of such lease.

(c) The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—,

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; or

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

(2) In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

(e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—,

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

(2) Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—,

(A)(i) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(ii) such party does not consent to such assumption or assignment; or

(B) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—,

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

(3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—,

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition; or

(2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title—,

(A) if before such rejection the case has not been converted under section 1112 or 1307 of this title, at the time of such rejection; or

(B) if before such rejection the case has been converted under section 1112 or 1307 of this title—,

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

(ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

(h)(1) If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, the lessee under such lease may treat the lease as terminated by such rejection, or, in the alternative, may remain in possession for the balance of the term of such lease and any renewal or extension of such term that is enforceable by such lessee under applicable nonbankruptcy law.

(2) If such lessee remains in possession, such lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease, and any such renewal or extension, any damages occurring after such date caused by the non–performance of any obligation of the debtor after such date, but such lessee does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset.

(i)(1) If the trustee rejects an executory contract of the debtor for the sale of real property under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property.

(2) If such purchaser remains in possession—,

(A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and

(B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

(j) A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

(k) Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.

Section 366. // 11 USC 366. // Utility service

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

## CHAPTER 5—CREDITORS, THE DEBTOR, AND THE ESTATE

### SUBCHAPTER I—CREDITORS AND CLAIMS

Sec. 501. Filing of proofs of claims or interests. 502. Allowance of claims or interests. 503. Allowance of administrative expenses. 504. Sharing of compensation. 505. Determination of tax liability. 506. Determination of secured status. 507. Priorities. 508. Effect of distribution other than under this title. 509. Claims of codebtors. 510. Subordination.

### SUBCHAPTER II— DEBTOR'S DUTIES AND BENEFITS

521. Debtor's duties. 522. Exemptions. 523. Exceptions to discharge. 524. Effect of discharge. 525. Protection against discriminatory treatment.

### SUBCHAPTER III— THE ESTATE

541. Property of the estate. 542. Turnover of property to the estate. 543. Turnover of property by a custodian. 544. Trustee as lien creditor and as successor to certain creditors and purchasers. 545. Statutory liens. 546. Limitations on avoiding powers. 547. Preferences. 548. Fraudulent transfers and obligations. 549. Postpetition transactions. 550. Liability of transferee of avoided transfer. 551. Automatic preservation of avoided transfer. 552. Postpetition effect of security interest. 553. Setoff. 554. Abandonment of property of the estate.

### SUBCHAPTER I—CREDITORS AND CLAIMS

Section 501. // 11 USC 501. // Filing of proofs of claims or interests

(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.

(b) If a creditor does not timely file a proof of such creditor's claim. an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.

(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

(d) A claim of a kind specified in section 502(f), 502(g), 502(h) or 502(i) of this title may be filed under subsection (a), (b), or (c) of this section the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition.

Section 502. // 11 USC 502. // Allowance of claims or interests

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—,

(1) such claim is unenforceable against the debtor, and unenforceable against property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) such claim may be offset under section 553 of this title against a debt owing to the debtor;

(4) if such claim is for a tax assessed against property of the estate, such claim exceeds value of the interest of the estate in such property;

(5) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(6) the claim is for a debt that is unmatured on the date of the filing of the petition, and that is excepted from discharge under section 523(a)(5) of this title;

(7) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—,

  (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—,

   (i) the date of the filing of the petition; and

   (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

  (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(8) if such claim is for damages resulting from the termination of an employment contract, such claim exceeds—,

  (A) the compensation provided by such contract, without acceleration, for one year following the earlier of—,

   (i) the date of the filing of the petition; and

   (ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

  (B) the unpaid compensation due under such contract without acceleration, on the earlier of such dates; or

(9) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor.

(c) There shall be estimated for purpose of allowance under this section—,

(1) any contingent or unliquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the closing of the case; or

(2) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment.

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

(e)(1) Notwithstanding subsections (a) and (b) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—,

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance of such claim for reimbursement or contribution; or

(C) such entity requests subrogation under section 509 of this title to the rights of such creditor.

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

(f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(g) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(h) A claim arising from the recovery of property under section 522( i), 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(6) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(j) Before a case is closed, a clim that has been allowed may be reconsidered for cause, and reallowed or disallowed according to the equities of the case.

Section 503. // 11 USC 503. // Allowance of administrative expenses

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—,

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—,

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(6) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit, relating to a tax of a kind specified in subparagraph (B) of this paragraph;

(2) compensation and reimbursement awarded under section 330 of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by—,

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case, or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(6) the fees and mileage payable under chapter 119 of title 28.

// 28 USC 1821 //

Section 504. // 11 USC 504. // Sharing of compensation

(a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503( b)(4) of this title may not share or agree to share—,

(1) any such compensation or reimbursement with another person; or

(2) any compensation or reimbursement received by another person under such sections.

(b)(1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.

(2) An attorney for a creditor that files a petition under section 303 of this title may share compensation and reimbursement received under section 503(b)(4) of this title with any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney.

Section 505. // 11 USC 505. // Determination of tax liability

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—,

(A) the amount or legality of a tax, fine,penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—,

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; and

(ii) a determination by such governmental unit of such request.

(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—,

(1) upon payment of the tax shown on such return, if—,

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits;

(2) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or

(3) upon payment of the tax determined by such governmental unit to be due.

(c) Notwithstanding section 362 of this title, after determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor, as the case may be, subject to any otherwise applicable law.

Section 506. // 11 USC 506. // Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff, is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

(d) To the extent that a lien secures a claim against the debtor that is not allowed secured claim, such lien is void, unless—,

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

Section 507. // 11 USC 507. // Priorities

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503( b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

// 28 USC 1911 //

(2) Second, unsecured claims allowed under section 502(f) of this title.

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance and sick leave pay—,

   (A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

   (B) to the extent of $2,000 for each such individual.

(4) Fourth, allowed unsecured claims for contributions to employee benefit plans—,

   (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

   (B) for each such plan, to the extent of—,

      (i) the number of employees covered by such plan multiplied by $2,000; less

      (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

(5) Fifth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—,

   (A) a tax on or measured by income or gross receipts—,

      (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

      (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

      (iii) other than a tax of a kind specified in section 523 (a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

   (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

   (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

   (D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

   (E) an excise tax on—,

      (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

(F) a customs duty arising out of the importation of merchandise—,

 (i) entered for consumption within one year before the date of the filing of the petition;

 (ii) covered by an entry liquidated or reliquidated within one year before the date of the filing of the petition; or

 (iii) entered for consumption within four years before the date of the filing of the petition but unliquidated on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an investigation pending on such date into assessment of antidumping or countervailing duties or fraud, or if information needed for the proper appraisement or classification of such merchandise was not available to the appropriate customs officer before such date; or

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

 (b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use,sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

 (c) For the purpose of subsection (a) of this section, a claim of a governmental unit arising from an erroneous refund or credit of a tax shall be treated the same as a claim for the tax to which such refund or credit relates.

 (d) An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)( 6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

Section 508. // 11 USC 508. // Effect of distribution other than under this title

 (a) If a creditor receives, in a foreign proceeding, payment of, or a transfer of property on account of, a claim that is allowed under this title, such creditor may not receive any payment under this title on account of such claim until each of the other holders of claims on account of which such holders are entitled to share equally with such creditor under this title has received payment under this title equal in value to the consideration received by such creditor in such foreign proceeding.

 (b) If a creditor of a partnership debtor receives, from a general partner that is not a debtor in a case under chapter 7 of this title, payment of, or a transfer of property on account of, a claim that is allowed under this title and that is not secured by a lien on property of such partner, such creditor may not receive any payment under this title on account of such claim until each of the other holders of claims on account of which such holders are entitled to share equally with such creditor under this title has received payment under this title equal in value to the consideration received by such creditor from such general partner.

Section 509. // 11 USC 509. // Claims of codebtors

 (a) Except as provided in subsections (b) and (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

 (b) Such entity is not subrogated to the rights of such creditor to the extent that—,

(1) a claim of such entity for reimbursement or contribution on account of a payment of such creditor's claim is—,

 (A) allowed under section 502 of this title;

 (B) disallowed other than under section 502(e) of this title; or

 (C) subordinated under section 510 of this title; or

(2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

 (c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under section 509 of this title, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

Section 510. // 11 USC 510. // Subordination

 (a) A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

(b) Any claim for recission of a purchase or sale of a security of the debtor or of an affiliate or for damages arising from the purchase or sale of such a security shall be subordinated for purposes of distribution to all claims and interests that are senior or equal to the claim or interest represented by such security.

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—,

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interrest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

## SUBCHAPTER II— DEBTOR'S DUTIES AND BENEFITS

Section 521. // 11 USC 521. // Debtor's duties

The debtor shall—,

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, and a statement of the debtor's financial affairs;

(2) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(3) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate; and

(4) appear at the hearing required under section 524(d) of this title.

Section 522. // 11 USC 522. // Exemptions

(a) In this section—,

(1) "dependent" includes spouse, whether or not actually dependent; and

(2) "value" means fair market value as of the date of the filing of the petition.

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—,

(1) property that is specified under subsection (d) of this section,

unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, except—,

(1) a debt of a kind specified in section 523(a) (1) or section 523(a)(5) of this title; or

(2) a lien that is—,

(A) not avoided under section 544, 545, 547, 548, 549, or 724(a) of this title;

(B) not voided under section 506(d) of this title; or

(C)(i) a tax lien, notice of which is properly filed; and

(ii) avoided under section 545(2) of this title.

(d) The following property may be exempted under subsection (b)(1) of this section:

(1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

(2) The debtor's interest, not to exceed $1,200 in value, in one motor vehicle.

(3) The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(4) The debtor's aggregate interest, not to exceed $500 in value, in jewelry held primiarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(5) The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property.

(6) The debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value $4,000 less any amount of property of the estate transferred in the manner specified in section 542(d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

(9) Professionally prescribed health aids for the debtor or a dependent of the debtor.

(10) The debtor's right to receive—,

 (A) a social security benefit, unemployment compensation, or a local public assistance benefit;

 (B) a veterans' benefit;

 (C) a disability, illness, or unemployment benefit;

 (D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

 (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—,

 (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

 (ii) such payment is on account of age or length of service; and

 (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).

(11) The debtor's right to receive, or property that is traceable to—,

 (A) an award under a crime victim's reparation law;

 (B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

 (C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

 (D) a payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

 (E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

(e) A waiver of exemptions executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section. A waiver by the debtor of a power under subsection (f) or (h) of this section to avoid a transfer, under subsection (g) or (i) of this section to exempt property, or under subsection (i) of this section to recover property or to preserve a transfer, is unenforceable in a case under this title.

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—,

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—,

  (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

  (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

  (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

 (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—,

 (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

 (B) the debtor did not conceal such property; or

 (2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

 (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—,

 (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

 (2) the trustee does not attempt to avoid such transfer.

 (i)(1) If the debtor avoids a transfer or recovers a setoff under subsection (f) or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.

 (2) Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of his section or paragraph (1) of this subsection.

 (j) Notwithstanding subsections (g) and (i) of this section, the debtor may exempt a particular kind of property under subsections (g) and (i) of this section only to the extent that the debtor has exempted less property in value of such kind than that to which the debtor is entitled under subsection (b) of this section.

 (k) Property that the debtor exempts under this section is not liable for payment of any administrative expense except—,

 (1) the aliquot share of the costs and expenses of avoiding a transfer of property that the debtor exempts under subsection (g) of this section, or of recovery of such property, that is attributable to the value of the portion of such property exempted in relation to the value of the property recovered; and

 (2) any costs and expenses of avoiding a transfer under subsection (f) or (h) of this section, or of recovery of property under subsection (i)(1) of this section, that the debtor has not paid.

 (1) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

 (m) This section shall apply separately with respect to each debtor in a joint case.

Section 523. // 11 USC 523. // Exceptions to discharge

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—,

 (1) for a tax or a customs duty—,

  (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title, whether or not a claim for such tax was filed or allowed;

  (B) with respect to which a return, if required—,

   (i) was not filed; or

   (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

  (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

 (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—,

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—,

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—,

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—,

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—,

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

(8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—,

(A) such loan first became due before five years before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; or

(9) that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act

// 11 USC prec. 1. // in which the debtor waived discharge, or was denied a discharge under section 727(a) (2), (3), (4), (5), (6), or (7) of this title, or under section 14c (1), (2), (3), (4), (6), or (7) of such Act.

// 11 USC 32. //

(b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439 A of the Higher Education Act of 1965 // 11 USC 35. // (20 U.S.C. 1087–3), or under section 733(g) of the Public Health Services Act (42 U.S.C. 294f) in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

(c) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be expected from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.

Section 524. // 11 USC 524. // Effect of discharge

(a) A discharge in a case under this title—,

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523 or 1328(c)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

(b) Subsection (a)(3) of this section does not apply if—,

(1)(A) the debtor's spouse is a debtor in a case under this title,

// 11 USC prec. 1. // or a bankrupt or a debtor in a case under the Bankruptcy Act, commenced within six years of the date of the filing of the petition in the case concerning the debtor; and

(B) the court does not grant the debtor's spouse a discharge in such case concerning the debtor's spouse; or

(2)(A) the court would not grant the debtor's spouse a discharge in a case under chapter 7 of this title concerning such spouse commenced on the date of the filing of the petition in the case concerning the debtor; and

(B) a determination that the court would not so grant such discharge is made by the bankruptcy court within the time and in the manner provided for a determination under section 727 of this title of whether a debtor is granted a discharge.

(c) An agreement between a holder of a claim and the debtor, th consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—,

(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

(2) the debtor has not rescinded such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been complied with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as—,

(A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor; or

(B)(i) entered into in good faith; and

(ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court shall hold a hearing at which the debtor shall appear in person. At such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then at such hearing the court shall—,

(1) inform the debtor—,

(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of—,

(i) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement;

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(4) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

Section 525. // 11 USC 525. // Protection against discriminatory treatment

Except as provided in Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. 181–229), and section 1 of the Act entitled " An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, // 11 USC prec. 1. // or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

SUBCHAPTER III- THE ESTATE

Section 541. // 11 USC 541. // Property of the estate

(a) The commencement of a case under under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—,

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—,

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a benificiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

(b) Property of the estate does not include any power that the debtor may only exercise solely for the benefit of an entity other than the debtor.

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision—,

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

(e) The estate shall have the benefit of any defense available to the debtor as against an entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

Section 542. // 11 USC 542. // Turnover of property to the estate

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

(d) A life insurance company may transfer property of the estate or property of the debtor to such company in good faith, with the same effect with respect to such company as if the case under this title concerning the debtor had not been commenced, if such transfer is to pay a premium or to carry out a nonforfeiture insurance option, and is required to be made automatically, under a life insurance contract with such company that was entered into before the date of the filing of the petition and that is property of the estate.

(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property of financial affairs, to disclose such recorded information to the trustee.

Section 543. // 11 USC 543. // Turnover of property by a custodian

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall—,

(1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds of such property, that, at any time, came into the possession, custody, or control of such custodian.

(c) The court, after notice and a hearing, shall—,

(1) protect all entities to which a custodian has become obligated with respect to such property;

(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

(3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

(d) The bankruptcy court may, after notice and a hearing, excuse compliance with subsection (a), (b), or (c) of this section, if the interests of creditors, and, if the debtor is not insolvent, of equity security holders, would be better served by permitting a custodian to continue in possession, custody, or control of such property.

Section 544. // 11 USC 544. // Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—,

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Section 545. // 11 USC 545. // Statutory liens

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—,

(1) first becomes effective against the debtor—,

 (A) when a case under this title concerning the debtor is is commenced;

 (B) when an insolvency proceeding other than under this title concerning the debtor is commenced;

 (C) when a custodian is appointed or takes possession;

 (D) when the debtor becomes insolvent;

 (E) when the debtor's financial condition fails to meet a specified standard; or

 (F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien;

(2) is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists;

(3) is for rent; or

(4) is a lien of distress for rent.

Section 546. // 11 USC 546. // Limitations on avoiding powers

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—,

(1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and

(2) the time the case is closed or dismissed.

(b) The rights and powers of the trustee under section 544, 545, or 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing

of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

(c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common–law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—,

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—,

(A) grants the claim of such a seller priority as an administrative expense; or

(B) secures such claim by a lien.

Section 547. // 11 USC 547. // Preferences

(a) In this section—,

(1) "inventory" means personal property leased or furnished, held for sale or lease, or to be furnished under a contract for service, raw materials, work in process, or materials used or consumed in a business, including farm products such as crops or livestock, held for sale or lease;

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation;

(3) "receivable" means right to payment, whether or not such right has been earned by performance; and

(4) a debt for a tax is incurred on the day when such tax is last payable, including any extension, without penalty.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—,

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—,

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—,

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—,

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—,

(1) to the extent that such transfer was—,

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—,

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms; (3) of a security interest in property acquired by the debtor—,

(A) to the extent such security interest secures new value that was—,

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected before 10 days after such security interest attaches;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—,

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

(5) of a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interest for such debt on the later of—,

(A)(i) with respect to a transfer to which subsection (b)( 4)(A) of this section applies, 90 days before the date of the filing of the petition; or

(ii) with respect to a transfer to which subsection (b)(4) (B) of this section applies, one year before the date of the filing of the petition; and

(B) the date on which new value was first given under the security agreement creating such security interest; or

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title.

(d) A trustee may avoid a transfer of property of the debtor transferred to secure reimbursement of a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

(e)(1) For the purpose of this section—,

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—,

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—,

(i) the commencement of the case; and

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

Section 548. // 11 USC 548. // Fraudulent transfers and obligations

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—,

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such pbligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or become insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, dbets that woudl be beyond the debtor's ability to pay as such debts matured.

(b) The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on any interest transferred, may retain any lien transferred, or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

(d)(1) For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition.

(2) In this section—,

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor; and

(B) a commodity broker or forward contract merchant that receives a margin payment, as defined in section 761(15) of this title, takes for value.

Section 549. // 11 USC 549. // Postpetition transactions

(a) Except as provided in subsection (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—,

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, a transfer that occurs after the commencement of such case but before the order for relief is valid against the trustee to the extent of any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

(c) The trustee may not avoid under subsection (a) of this section a transfer, to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value or to a purchaser at a judicial sale, of real property located other than in the county in which the case is commenced, unless a copy of the petition was filed in the office where conveyances of real property in such county are recorded before such transfer was so far perfected that a bona fide purchaser of such property against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of such good faith or judicial sale purchaser. A good faith purchaser, without knowledge of the commencement of the case and for less than present fair equivalent value, of real property located other than in the county in which the case is commenced, under a transfer that the trustee may avoid under this section, has a lien on the property transferred to the extent of any present value given, unless a coopy of the petition was so filed before such transfer was so perfected.

(d) An action or proceeding under this section may not be commenced after the earlier of—,

(1) two years after the date of the transfer sought to be avoided; and

(2) the time the case is closed or dismissed.

Section 550. // 11 USC 550. // Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—,

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—,

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(d)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—,

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by such transferee from such property; and

(B) any increase in value as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—,

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property;

(E) discharge of ay lien against such property that is superior or equal to the rights of the trustee; and

(F) preservation of such property.

(e) An action or proceeding under this section may not be commenced after the earlier of—,

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; and

(2) the time the case is closed or dismissed.

Section 551. // 11 USC 551. // Automatic preservation of avoided transfer

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

Section 5529 // 11 USC 552. // Postpetition effect of security interest

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Section 233. // 11 USC 553. // Setoff

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—,

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—,

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—,

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—,

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) in this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

Section 554. // 11 USC 554. // Abandonment of property of the estate

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.

(c) Unless the court orders otherwise, any property that is scheduled under section 521(1) of this title and that is not administered before a case is closed under section 350 of this title is deemed abandoned.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under section (a) or (b) of this section and that is not administered in the case remains property of the estate.

## CHAPTER 7—LIQUIDATION

### SUBCHAPTER I—OFFICERS and administration

Sec. 701. Interim trustee. 702. Election of trustee. 703. Succesor trustee. 704. Duties of trustee. 705. Creditors' committee. 706. Conversion. 707. Dismissal.

### SUBCHAPTER II— COLLECTION, LIQUIDATION, AND DISTRIBUTION OF THE ESTATE

721. Authorization to operate business. 722. Redemption. 723. Rights of partnership trustee against general partners. 724. Treatment of certain liens. 725. Disposition of certain property. 726. Distribution of property of the estate. 727. Discharge. 728. Special tax provisions.

### SUBCHAPTER III— STOCKBROKER LIQUIDATION

741. Definitions for this subchapter. 742. Effect of section 362 of this title in this subchapter. 743. Notice. 744. Executory contracts. 745. Treatment of accounts. 746. Extent of customer claims. 747. Subordination of certain customer claims. 748. Reduction of securities to money. 749. Voidable transfers. 750. Distribution of securities. 751. Customer name securities. 752. Customer property.

### SUBCHAPTER IV— COMMODITY BROKER LIQUIDATION

761. Definitions for this subchapter. 762. Notice to the Commission and right to be heard. 763. Treatment of accounts. 764. Voidable transfers. 765. Customer instructions. 766. Treatment of customer property.

### SUBCHAPTER I—OFFICERS AND ADMINISTRATION

Section 701. // 11 USC 701. // Interim trustee

(a) Promptly after the order for relief under this chapter, the court shall appoint one disinterested person that is a member of the panel of private trustees established under section 604(f) of title 28 or that was serving as trustee in the case immediately before the order for relief under this chapter to serve as interim trustee in the case.

(b) The service of an interim trustee under this section terminates when a trustee elected or designated under section 702 of this title to serve as trustee in the case qualifies under section 322 of this title.

(c) An interim trustee serving under this section is a trustee in a case under this title.

Section 702. // 11 USC 702. // Election of trustee

(a) A creditor may vote for a candidate for trustee only if such creditor—,

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), or 726(a)(4) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

(b) At the meeting of creditors under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

(c) A candidate for trustee is elected trustee if—,

(1) creditors holding at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for trustee.

(d) If a trustee is not elected under subsection (c) of this section, then the interim trustee shall serve as trustee in the case.

Section 703. // 11 USC 703. // Successor trustee

(a) If a trustee dies or resigns during a case, fails to qualify under section 322 of this title, or is removed under section 324 of this title, creditors may elect, in the manner specified in section 702 of this title, a person to fill the vacancy in the office of trustee.

(b) Pending election of a trustee under subsection (a) of this section, if necessary to preserve or prevent loss to the estate, the court may appoint an interim trustee in the manner specified in section 701(a) of this title. Sections 701(b) and 701(c) of this title apply to such interim trustee.

(c) If creditors do not elect a successor trustee under subsection (a) of this section, or if a trustee is needed in a case reopened under section 350 of this title, then the court shall appoint one disinterested person that is a member of the panel of private trustees established under section 604(f) of title 28 to serve as trustee in the case.

Section 704. // 11 USC 704. // Duties of trustee

The trustee shall—,

(1) collect and reduce to money the property of the estate for which such trustee serves, and close up such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) investigate the financial affairs of the debtor;

(4) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(5) if advisable, oppose the discharge of the debtor;

(6) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(7) if the business of the debtor is authorized to be operated, file with the court and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the court requires; and

(8) make a final report and file a final account of the administration of the estate with the court.

Section 705. // 11 USC 705. // Creditors' committee

(a) At the meeting under section 341(a) of this title, creditors that may vote for a trustee under section 702(a) of this title may elect a committee of not fewer than three, and not more than eleven, creditors, each of whom holds an allowable unsecured claim of a kind entitled to distribution under section 726(a)(2) of this title.

(b) A committee elected under subsection (a) of this section may consult with the trustee in connection with the administration of the estate, make recommendations to the trustee respecting the performance of the trustee's duties, and submit to the court any question affecting the administration of the estate.

Section 706. // 11 USC 706. // Conversion

(a) The debtor may convert a case under this chapter to a case under chapter 11 or 13 of this title at any time, if the case has not been converted under section 1112 or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

(b) On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time.

(c) The court may not convert a case under this chapter to a case under chapter 13 of this title unless the debtor requests such conversion.

(d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

Section 707. // 11 USC 707. // Dismissal

The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—,

(1) unreasonable delay by the debtor that is prejudicial to creditors; and

(2) nonpayment of any fees and charges required under chapter 123 of title 28.

// 28 USC 1911 //

SUBCHAPTER II— COLLECTION, LIQUIDATION, AND DISTRIBUTION OF THE ESTATE

Section 721. // 11 USC 721. // Authorization to operate business

The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate.

Section 722. // 11 USC 722. // Redemption

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

Section 723. // 11 USC 723. // Rights of partnership trustee against general partners

(a) If there is a deficiencyof property of the estate to pay in full all claims allowed in a case under this title concerning a partnership, then each general partner in such partnership is liable to the trustee for the full amount of such deficiency.

(b) To the extent practicable, the trustee shall first seek recovery of such deficiency from any general partner in such partnership that is not a debtor in a case under this title. Pending determination of such deficiency, the court may order any such partner to provide the estate with indemnity for, or assurance of payment of, any deficiency recoverable from such partner, or not to dispose of property.

(c) Notwithstanding section 728(c) of this title, the trustee has a claim against the estate of each general partner in such partnership that is a debtor in a case under this title for the full amount of all claims of creditors allowed in the case concerning

such partnership. Notwithstanding section 502 of this title, there shall not be allowed in such case a claim against such partner on which both such partner and such partnership are liable, except to any extent that such claim is secured only by property of such partner and not be property of such partnership. The claim of the trustee under this subsection is entitled to distribution in such case under section 726(a) of this title the same as any other claim of the kind specified in such section.

(d) If the aggregate that the trustee recovers from the estates of general partners under subsection (c) of this section is greater than any deficiency not recovered under subsection (b) of this section, the court, after notice and a hearing, shall determine an equitable distribution of the surplus so recovered, and the trustee shall distribute such surplus to the estates of the general partners in such partnership according to such determination.

Section 724. // 11 USC 724. // Treatment of certain liens

(a) The trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title.

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed—,

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to claims specified in sections 507(a)(1), 507(a) (2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

(c) If more than one creditor is entitled to distribution under a particular paragraph of subsection (b) of this section, distribution to such creditors under such paragraph shall be in the same order as distribution to such creditors would have been other than under this section.

(d) A statutory lien whose priority is determined in the same manner as the priority of a tax lien under section 6323 of the Internal Revenue Code of 1954 (26 U.S.C. 6323) shall be treated under subsection (b) of this section the same as a tax lien.

Section 725. // 11 USC 725. // Disposition of certain property

After the commencement of a case under this chapter, but before final distribution under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

Section 726. // 11 USC 726. // Distribution of property of the estate

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—,

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—,

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—,

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), or (6) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in a particular paragraph, except that in a case that has been converted to this chapter under section 1112 or 1307 of this title, administrative expenses incurred under this chapter after such conversion have priority over administrative expenses incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

(c) Notwithstanding subsections (a) and (b) of this section, if there is property of the kind specified in section 541(a)(2) of this title, or proceeds of such property, in the estate, such property or proceeds shall be segregated from other property of the estate, and such property or proceeds and other property of the estate shall be distributed as follows:

(1) Administrative expenses shall be paid either from property of the kind specified in section 541(a)(2) of this title, or from other property of the estate, as the interest of justice requires.

(2) Claims other than for administrative expenses shall be paid in the order specified in subsection (a) of this section, and, with respect to claims of a kind specified in a particular paragraph of section 507 of this title or subsection (a) of this section, in the following order and manner:

(A) First, community claims against the debtor or the debtor's spouse shall be paid from property of the kind specified in section 541(a)(2) of this title, except to the extent that such property is solely liable for debts of the debtor.

(B) Second, to the extent that community claims against the debtor are not paid under subparagraph (A) of this paragraph, such community claims shall be paid from property of the kind specified in section 541(a)(2) of this title that is solely liable for debts of the debtor.

(C) Third, to the extent that all claims against the debtor including community claims against the debtor are not paid under subparagraph (A) or (B) of this paragraph such claims shall be paid from property of the estate other than property of the kind specified in section 541(a)(2) of this title.

(D) Fourth, to the extent that community claims against the debtor or the debtor's spouse are not paid under subparagraph (A), (B), or (C) of this paragraph, such claims shall be paid from all remaining property of the estate.

Section 727. // 11 USC 727. // Discharge

(a) The court shall grant the debtor a discharge, unless—,

(1) the debtor is not an individual;

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—,

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—,

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case—,

  (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

  (B) on the ground of privilege against self–incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

  (C) on a ground other than the property invoked privilege against self–incrimination, to respond to a material question approved by the court or to testify;

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case concerning an insider;

(8) the debtor has been granted a discharge under this section, under section 1141 of this title, or under section 14, 371 or 476 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition;

(9) the debtor has been granted a discharge under section 1328 of this title,

// 11 USC 1060, // or under section 660 or 661 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition, unless payments under the plan in such case totaled at least—,

  (A) 100 percent of the allowed unsecured claims in such case; or

  (B)(i) 70 percent of such claims; and

  (ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort; or

(10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter.

(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim ahd arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

(c)(1) The trustee or a creditor may object to discharge under subsection (a) of this section.

(2) On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

(d) On request of the trustee or a creditor, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—,

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of, or entitlement to, such property, or to deliver or surrender such property to the trustee; or

(3) the debtor committed an act specified in subsection (a)(6) of this section.

(e) The trustee or a creditor may request a revocation of a discharge—,

(1) under subsection (d)(1) of this section, within one year after such discharge was granted; or

(2) under subsection (d)(2) or (d)(3) of this section, before the later of—,

  (A) one year after the granting of such discharge; and

  (B) the date the case is closed.

Section 728. // 11 USC 728. // Special tax provisions

  (a) For the purposes of any State or local law imposing a tax on or measured by income, the taxable period of a debtor that is an individual shall terminate on the date of the order for relief under this chapter, unless the case was converted under section 1112 of this title.

  (b) Notwithstanding any State or local law imposing a tax on or measured by income, the trustee shall make tax returns of income for the estate of an individual debtor in a case under this chapter or for a debtor that is a corporation in a case under this chapter only if such estate or corporation has net taxable income for the entire period after the order for relief under this chapter

during which the case is pending. If such entity has such income, or if the debtor is a partnership, then the trustee shall make and file a return of income for each taxable period during which the case was pending after the order for relief under this chapter.

(c) If there are pending a case under this chapter concerning a partnership and a case under this chapter concerning a partner in such partnership, a governmental unit's claim for any unpaid liability of such partner for a State or local tax on or measured by income, to the extent that such liability arose from the inclusion in such partner's taxable income, of earnings of such partnership that were not withdrawn by such partner, is a claim only against such partnership.

(d) Notwithstanding section 541 of this title, if there are pending a case under this chapter concerning a partnership and a case under this chapter concerning a partner in such partnership, then any State or local tax refund or reduction of tax of such partner that would have otherwise been property of the estate of such partner under section 541 of this title—,

(1) is property of the estate of such partnership to the extent that such tax refund or reduction of tax is fairly apportionable to losses sustained by such partnership and not reimbursed by such partner; and

(2) is property of the estate of such partner otherwise.

SUBCHAPTER III— STOCKBROKER LIQUIDATION

Section 741. // 11 USC 741. // Definitions for this subchapter

In this subchapter—,

(1) "Commission" means Securities and Exchange Commission;

(2) "customer" includes—,

(A) entity with whom the debtor deals as principal or agent and that holds a claim against the debtor on account of a security received, acquired, or held by the debtor in the ordinary course of business as a stockbroker from or for the securities account or accounts of such entity—,

(i) for safekeeping;

(ii) with a view to sale;

(iii) to cover a consummated sale;

(iv) pursuant to a purchase;

(v) as collateral under a security agreement; or

(vi) for the purpose of effecting registration of transfer; and

(B) entity that holds a claim against the debtor arising out of—,

(i) a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or

(ii) a deposit of cash, a security, or other property with the debtor for the purpose of purchasing or selling a security;

(3) "customer name security" means security—,

(A) held for the account of a customer on the date of the filing of the petition by or on behalf of the debtor;

(B) registered in such customer's name on such date or in the process of being so registered under instructions from the debtor; and

(C) not in a form transferable by delivery on such date;

(4) "customer property" means cash, security, or other property, and proceeds of such cash, security, or property, at any time received, acquired, or held by or for the account of the debtor, from or for the securities account of a customer—,

(A) including—,

(i) property that was unlawfully converted and that is property of the estate;

(ii) a security held as property of the debtor to the extent such security is necessary to meet a net equity claim based on a security of the same class and series of an issuer;

(iii) resources provided through the use of realization of a customer's debit cash balance or a debit item includible in the Formula for Determination of Reserve Requirement for Brokers and Dealers as promulgated by the Commission under the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.); and

(iv) other property of the debtor that any applicable law, rule, or regulation requires to be set aside or held for the benefit of a customer, unless including such property as customer property would not significantly increase customer property; but

(B) not including—,

(i) a customer name security delivered to or reclaimed by a customer under section 751 of this title; or

(ii) property to the extent that a customer does not have a claim against the debtor based on such property;

(5) "net equity" means, with respect to the aggregate of all of a customer's accounts that such customer holds in the same capacity—,

 (A)(i) aggregate dollar balance that would remain in such accounts after the liquidation, by sale or purchase, at the time of the filing of the petition of all securities positions in all such accounts, except customer name securities of such customer; minus

 (ii) any claim of the debtor against such customer that would have been owing immediately after such liquidation; plus

 (B) any payment by such customer to the trustee, within 60 days after notice under section 342 of this title, of any business related claim of the debtor against such customer;

(6) "SIPC" means Security Investor Protection Corporation.

## Sec. 742. // 11 USC 742. //

 Effect of section 362 of this title in this subchapter

 Notwithstanding section 362 of this title, SIPC may file an application for a protective decree under the Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa et seq.). The filing of such application stays all proceedings in the case under this chapter unless and until such application is dismissed. If SIPC completes the liquidation of the debtor, then the court shall dismiss the case.

## Sec. 743. // 11 USC 743. // Notice

 The clerk shall give the notice required by section 342(a) of this title to SIPC and to the Commission. Sec. 744. // 11 USC 744. // Executory contracts

 Notwithsanding section 365(d)(1) of this title, the trustee shall assume or reject, under section 365 of this title, any executory contract of the debtor for the purchase or sale of a security in the ordinary course of the debtor's business, within a reasonable time after the date of the order for relief, not to exceed 30 days. If the trustee does not assume such a contract within such time, such contract is rejected.

## Sec. 745. // 11 USC 745. // Treatment of accounts

 (a) Account held by a particular customer in separate capacities shall be treated as accounts of separate customers.

 (b) If a stockbroker or a bank holds a customer net equity claim against the debtor that arose out of a transaction for a customer of such stockbroker or bank, each such customer of such stockbroker or bank shall be treated as a separate customer of the debtor.

 (c) A trustee's account specified as such on the debtor's books, and supported by a trust deed filed with, and qualified as such by, the Internal Revenue Service, and under the Internal Revenue Code of 1954 (26 U.S.C. 1 et seq.), shall be treated as a separate customer account for each beneficiary under such trustee account.

## Sec. 746. // 11 USC 746. // Extent of customer claim

 (a) If, after the date of the filing of the petition, an entity effects, with respect to cash or a security, a transaction with the debtor, in a manner that would have made such entity a customer with respect to such cash or security had such transaction occurred before such date, and such transaction was effected by such entity in good faith and before the qualification under section 322 of this title of a trustee, such entity shall be deemed a customer, and the date of such transaction shall be deemed to be the date of the filing of the petition for the purpose of determining such entity's net equity with respect to such cash or security.

 (b) An entity does not have a claim as a customer to the extent that such entity has a claim for cash or a security that, by contract, agreement, understanding, or operation of law, is—,

(1) part of the capital of the debtor; or

(2) is subordinated to the claims of any or all creditors.

## Sec. 747. // 11 USC 747. // Subordination of certain customer claims

 Except as provided in section 510 of this title, unless all other customer net equity claims have been paid in fullm the trustee may not pay in full or pay in part, directly or indirectly, any net equity claim of a customer that was, on the date such claim arose—,

(1) an insider;

(2) a beneficial owner of at least five percent of any class of equity securities of the debtor, other than—,

 (A) nonconvertible stock having fixed preferential dividend and liquidation rights; or

 (B) interests of limited partners in a limited partnership;

(3) a limited partner with a participation of at least five percent in the net assets or net profits of the debtor; or

(4) an entity that, directly or indirectly, through agreement or otherwise, exercised or had the power to exercise control over the management or policies of the debtor.

Sec. 748. // 11 USC 748. // Reduction of securities to money

As soon as practicable after the date of the order for relief, the trustee shall reduce to money, reduce to money, consistent with good market practice,, all securities held as property of the estate, except for customer name securities delivered or reclaimed under section 751 of this title.

Sec. 749. // 11 USC 749. // Voidable transfers

Any transfer of property that, except for such transfer, would have been customer property, may be avoided by the trustee, and shall be treated as customer property, if and to the extent that the trustee avoids such transfer under section 544, 545, 547 548, 549, or 724(a) of this title. For the purpose of such sections, the property so transferred shall be deemed to have been proerty of the debtor and, if such transfer was made to a customer or for a customer's benefit, such customer shall be deemed, for the purposes of this section, to have been a creditor.

Sec. 750. // 11 USC 750. // Distribution of securities

The trustee may not distribute a security except under section 751 of this title. Sec. 751. // 11 USC 751. // Customer name securities

The trustee shall deliver any customer name security to or on behalf of the customer entitled to such security, unless such customer has a negative net equity. With the approval of the trustee, a customer may reclaim a customer name security after payment to the trustee, within such period as the trustee allows, of any claim of the debtor against such customer to the extent that such customer will not have a negative net equity after such payment.

Sec. 752. // 11 USC 752. // Customer property

(a) The trustee shall distribute customer property ratably to customers on the basis and to the extent of such customers allowed net equity claims and in priority to all other claims, except claims specified in section 507(a)(1) of this title that are attributable to the administration of customer property.

(b)(1) The trustee shall distribute customer property in excess of that distributed under subsection (a) of this section in accordance with section 726 of this title.

(2) Except as provided in section 510 of this title, if a customer is not paid the full amount of such customer's allowed net equity claim from customer property, the unpaid portion of such claim is a claim entitled to distribution under section 726(a) of this title.

(c) Subject to section 741 (4)(B) of this title, any cash or security remaining after the liquidation of a security interest created under a security agreement made by the debtor shall be apportioned between the general estate and customer property in the proportion that the general property of the debtor and the cash or securities of customers were subject to such security interest.

SUBCHAPTER IV— COMMODITY BROKER LIQUIDATION

Sec. 761. // 11 USC 761. // Definitions for this subchapter

In this subchapter—,

(1) "Act" means Commodity Exchange Act (7 U.S.C. 1 et seq.);

(2) "clearing organization" means organization that clears commodity contracts on, or subject to the rules of, a contract market or board of trade;

(3) "Commission" means Commodity Futures Trading Commission;

(4) "commodity contract" means—,

(A) if the debtor is a futures commission merchant, contract for the purchase or sale of a commodity for future delivery on, or subject to the rules of, a contract market or board of trade;

(B) if the debtor is a foreign futures commission merchant, foreign future;

(C) if the debtor is a leverage transaction merchant, leverage transaction;

(D) if the debtor is a clearing organization, contract for the purchase or sale of a commodity for future delivery on, or subject to the rules of, a contract market or board of trade that is cleared by the debtor; or

(E) if the debtor is a commodity options dealer, commodity option;

(5) "commodity option" means agreement or transaction subject to regulation under section 4c(b) of the Act (7 U.S.C. 6c(b);

(6) "commodity options dealer" means person that extends credit to, or that accepts cash, a security, or other property from, a customer of such person for the purchase or sale of an interest in a commodity option;

(7) "contract market" means board of trade designated as a contract market by the Commission under the Act;

(8) "contract of sale", "commodity", "future delivery", "board of trade", and "futures commission merchant" have the meanings assigned to those terms in the Act;

(9) "customer" means—,

(A) if the debtor is a futures commission merchant—,

(i) entity for or with whom the debtor deals and that holds a claim against the debtor on account of a commodity contract made, received, acquired, or held by or through the debtor in the ordinary course of the debtor's

business as a futures commission merchant from or for the commodity futures account of such entity; or

(ii) entity that holds a claim against the debtor arising out of—,

(I) the making, liquidation, or change in the value of a commodity contract of a kind specified in clause (i) of this subparagraph;

(II) a deposit or payment of cash, a security, or other property with the debtor for the purpose of making or margining such a commodity contract; or

(III) the making or taking of delivery on such a commodity contract;

(B) if the debtor is a foreign futures commission merchant—,

(i) entity for or with whom the debtor deals and that holds a claim against the debtor on account of a commodity contract made, received, acquired, or held by or through the debtor in the ordinary course of the debtor's business as a foreign futures commission merchant from or for the foreign futures account of such entity; or

(ii) entity that holds a claim against the debtor arising out of—,

(I) the making, liquidation, or change in value of a commodity contract of a kind specified in clause (i) of this subparagraph;

(II) a deposit or payment of cash, a security, or other property with the debtor for the purpose of making or margining such a commodity contract; or

(III) the making or taking of delivery on such a commodity contract;

(C) if the debtor is a leverage transaction merchant—,

(i) entity for or with whom the debtor deals and that holds a claim against the debtor on account of a commodity contract engaged in by or with the debtor in the ordinary course of the debtor's business as a leverage transaction merchant from or for the leverage account of such entity;

(ii) entity that hold a claim against the debtor arising out of—,

(I) the making, liquidation, or change in value of a commodity contract of a kind specified in clause (i) of this subparagraph;

(II) a deposit or payment of cash, a security, or other property with the debtor for the purpose of entering into or margining such a commodity contract; or

(III) the making or taking of delivery on such a commodity contract;

(D) if the debtor is a clearing organization, clearing member of the debtor with whom the debtor deals and that holds a claim against the debtor on account of cash, a security, or other property received by the debtor to margin, guarantee, or secure a commodity contract in such clearing member's proprietary account or customers' account; or

(E) if the debtor is a commodity options dealer—,

(i) entity for or with whom the debtor deals and that holds a claim on account of a commodity contract made, received, acquired, or held by or through the debtor in the ordinary course of the debtor's business as a commodity options dealer from or for the commodity options account of such entity; or

(ii) entity that holds a claim against the debtor arising out of—,

(I) the making of, liquidation of, exercise of, or a change in value of, a commodity contract of a kind specified in clause (i) of this subparagraph; or

(II) a deposit or payment of cash, a security, or other property with the debtor for the purpose of making, exercising, or margining such a commodity contract;

(10) "customer property" means cash, a security, or other property, or proceeds of such cash, security, or property, at any time received, acquired, or held by or for the account of the debtor, from or for the account of a customer—,

(A) including—,

(i) property received, acquired, or held to margin, guarantee, secure, purchase, or sell a commodity contract;

(ii) profits or contractual or other rights accruing to a customer as a result of a commodity contract;

(iii) an open commodity contract;

(iv) specifically identifiable customer property;

(v) warehouse receipt or other document held by the debtor evidencing ownership of or title to property to be delivered to fulfill a commodity contract from or for the account of a customer;

(vi) cash, a security, or other property received by the debtor as payment for a commodity to be delivered to fulfill a commodity contract from or for the account of a customer;

(vii) a security held as property of the debtor to the extent such security is necessary to meet a net equity claim based on a security of the same class and series of an issuer;

(viii) property that was unlawfully converted and that is property of the estate; and

(ix) other property of the debtor that any applicable law, rule, or regulation requires to be set aside or held for the benefit of a customer, unless including such property as customer property would not significantly increase customer property; but

(B) not including property to the extent that a customer does not have a claim against the debtor based on such property;

(11) "foreign future" means contract for the purchase or sale of a commodity for future delivery on, or subject to the rules of, a board of trade outside the United States;

(12) "foreign futures commission merchant" means entity engaged in soliciting or accepting orders for the purchase or sale of a foreign future or that, in connection with such a solicitation or acceptance, accepts cash, a security, or other property or extends credit, to margin, guarantee, or secure any trade or contract that results from such a solicitation or acceptance;

(13) "leverage transaction" means agreement that is subject to regulation under section 217 of the Commodity Futures Trading Commission Act of 1974 (7 U.S.C. 15a), and that is commonly known to the commodities trade as a margin account, margin contract, leverage account, or leverage contract;

(14) "leverage transaction merchant" means person that is engaged in the business of engaging in leverage transactions;

(15) "margin payment" means payment or deposit of cash, a security, or other property, that is commonly known to the commodities

trade as original margin, initial margin, maintenance margin, or variation margin, including a daily variation settlement payment;

(16) "member property" means customer property at any time received, acquired, or held by or for the account of a debtor that is a clearing organization, from or for the proprietary account of a customer that is a clearing member of the debtor; and

(17) "net equity" means, subject to such rules and regulations as the Commission promulgates under the Act, with respect to the aggregate of all of a customer's accounts that such customer holds in the same capacity—,

(A) balance remaining in such customer's accounts immediately after—,

(i) all commodity contracts of such customer have been

transferred, liquidated, or become identified for delivery; and

(ii) all obligations of such customer to the debtor have been offset; plus

(B) the value, as of the date of return under section 766 of this title, of any specifically identifiable customer property actually returned to such customer before the date specified in subparagraph (A) of this paragraph; plus

(C) the value, as of the date of transfer, of—,

(i) any commodity contract to which such customer is entitled that is transferred to another person under section 799 of this title; and

(ii) any cash, security, or other property of such customer transferred to such other person under section 766 of this title to margin or secure such transferred commodity contract.

Sec. 762. // 11 USC 762. // Notice to the Commission and right to be heard

(a) The clerk shall give the notice required by section 342 of this title to the Commission.

(b) The Commission may raise and may appear and be heard on any issue in a case under this chapter.

Sec. 763. // 11 USC 763. // Treatment of accounts

(a) Accounts held by a particular customer in separate capacities shall be deemed to be accounts of separate customers.

(b) A member of a clearing organization shall be deemed to hold such member's proprietary account in a separate capacity from such member's customers' account.

(c) The net equity in a customer's account may not be offset against the net equity in the account of any other customer.

Sec. 764. // 11 USC 764. // Voidable transfers

(a) Except as otherwise provided in this section, any transfer of property that, except for such transfer, would have been customer property, may be avoided by the trustee, and shall be treated as customer property, if and to the extent that the trustee avoids such transfer under section 544, 545, 547, 548,549, or 724(a) of this title. For the purpose of such sections, the property so transferred is deemed to have been property of the debtor, and, if such transfer was made to a customer or for a customer's benefit, such customer is deemed, for the purposes of this section, to have been a creditor.

(b) Notwithstanding sections 544, 545, 547, 548, 549, and 724(a) of this title, the trustee may not avoid a transfer made before five days after the dateof the filing of the petition, if such transfer is approved by the Commission by rule or order, either before or after such transfer, and if such transfer is—,

(1) a transfer of a commodity contract entered into or carried by or through the debtor on behalf of a customer, and of any cash, securities, or other property margining or securing such commodity contract; or

(2) the liquidation of a commodity contract entered into or carried by or through the debtor on behalf of a customer.

(c) Notwithstanding sections 544, 545, 547, 548, and 724(a) of this title, the trustee may not avoid a transfer that is a margin payment to or deposit with a commodity broker or forward contract merchant or is a settlement payment made by a clearing organization and that occurs before the commencement of the case, except under section 548 (a)(1) of this title.

Sec. 765. // 11 USC 765. // Customer instructions

(a) The notice under section 342 of this title to customers shall instruct each customer—,

(1) to file a proof of such customer's claim promptly, and to specify in such claim any specifically identifiable security, property, or commodity contract; and

(2) to instruct the trustee of such customer's desired disposition, including transfer under section 766 of this title or liquidation, of

any commodity contract specifically identified to such customer.

(b) The trustee shall comply, to the extent practicable, with any instruction received from a customer regarding such customer's desired disposition of any commodity contract specifically identified to such customer. If the trustee has transferred, under section 766 of this title, such a commitment, the trustee shall transmit any such instruction to the commodity broker to whom such commodity contract was so transferred.

Sec. 766. // 11 USC 766. // Treatment of customer property

(a) The trustee shall answer all margin calls with respect to a specifically identifiable commodity contract of a customer until such time as the trustee returns or transfers such commodity contract, but the trustee may not make a margin payment that has the effect of a distribution of more than that to which such customer is entitled under subsection (h) or (i) of this section.

(b) The trustee shall prevent any open commodity contract that is being actively traded as of the date of the filing of the petition from remaining open after the last day of trading in such commodity contract, or into the first day on which notice of intent to deliver on such commodity contract may be tendered, whichever occurs first. With respect to any commodity contract that has remained open after the last day of trading in such commodity contract or with respect to which delivery must be made or accepted under the rules of contract market on which such commodity contract was made, the trustee may operate the business of the debtor for the purpose of—,

(1) accepting or making tender of notice of intent to deliver the physical commodity underlying such commodity contract;

(2) facilitating delivery of such commodity; or

(3) disposing of such commodity if a party to such commodity contract defaults.

(c) The trustee shall return promptly to a customer any specifically identifiable security, property, or commodity contract to which such customer is entitled, or shall transfer, on such customer's behalf, such security, property, or commodity contract to a commodity broker that is not a debtor under this title, subject to such rules or regulations as the Commission may prescribe, to the extent that the value of such security, property, or commodity contract does not exceed the amount to which such customer would be entitled under subsection (h) or (i) of this section if such security, property, or commodity contract were not returned or transferred under this subsection.

(d) If the value of a specifically identifiable security, property, or commodity contract exceeds such amount, then the customer to whom such security, property, or commodity contract is specifically identified may deposit cash with the trustee equal to the difference between the value of such security, property, or commodity contract and such amount, and the trustee shall—,

(1) return promptly such security, property, or commodity contract to such customer; or

(2) transfer, on such customer's behalf, such security, property, or commodity contract to a commodity broker that is not a debtor under this title, subject to such rules or regulations as the Commission may prescribe.

(e) Subject to subsection (b) of this section, the trustee shall liquidate any commodity contract that—,

(1) is identified to a particular customer and with respect to which such customer has not timely instructed the trustee as to the desired disposition of such commodity contract;

(2) cannot be transferred under subsection (c) of this section; or

(3) cannot be identified to a particular customer.

(f) As soon as practicable after the commencement of the case, the trustee shall reduce to money, consistent with good market practice, all securities and other property, other than commodity contracts, held as property of the estate, except for specifically identifiable securities or property distributable under subsection (h) or (i) of this section.

(g) The trustee may not distribute a security or other property except under subsection (h) or (i) of this section.

(h) Except as provided in subsection (b) of this section, the trustee shall distribute customer property ratably to customers on the basis and to the extent of such customers' allowed net equity claims, and in priority to all other claims, except claims of a kind specified in section 507(a)(1) of this title that are attributable to the administration of customer property. Such distribution shall be in the form of—,

(1) cash;

(2) the return or transfer, under subsection (c) or (d) of this section, of specifically identifiable customer securities, property, or commodity contracts; or

(3) payment of margin calls under subsection (a) of this section.

(i) If the debtor is a clearing organization, the trustee shall distribute—,

(1) customer property, other than member property, ratably to customers on the basis and to the extent of such customers' allowed net equity claims based on such customers' accounts other than proprietary accounts, and in priority to all other claims, except claims of a kind specified in section 507(a)(1) of this title that are attributable to the administration of such customer property; and

(2) member property ratably to customers on the basis and to the extent of such customers' allowed net equity claims based on such customers' proprietary accounts, and in priority to all

other claims, except claims of a kind specified in section 507 (a)(1) of this title that are attributable to the administration of member

property or customer property.

(j)(1) The trustee shall distribute customer property in excess of that distributed under subsection (h) or (i) of this section in accordance with section 726 of this title.

(2) Except as provided in section 510 of this title, if a customer is not paid the full amount of such customer's allowed net equity claim from customer property, the unpaid portion of such claim is a claim entitled to distribution under section 726(a) of this title.

## CHAPTER 9—ADJUSTMENT OF DEBTS OF A MUNICIPALITY

### SUBCHAPTER I—GENERAL PROVISIONS

Sec. 901. Applicability of other sections of this title. 902. Definitions for this chapter. 903. Reservation of State power to control municipalities 904. Limitation on jurisdiction and powers of court.

### SUBCHAPTER II— ADMINISTRATION

921. Petition and proceedings relating to petition. 922. Automatic stay of enforcement of claims against the debtor. 923. Notice. 924. List of creditors. 925. Effect of list of claims. 926. Avoiding powers. 927. Dismassal.

### SUBCHAPTER III— THE PLAN

941. Filing of paln. 942. Modification of plan. 943. Confirmation. 944. Effect of confirmation. 945. Continuing jurisdiction and closing of the case. 946. Effect of exchange of securities before the date of the filing of the petition.

### SUBCHAPTER I—GENERAL PROVISIONS

Section 901. // 11 USC 901. // Applicability of other sections of this title

(a) Sections 301, 344, 347(b), 349, 350(b), 361, 362, 364(c), 364( d), 364(e), 364(f), 365, 366, 501, 502, 503, 504, 506, 507(a)(1), 509, 510, 524(a)(1), 524(a)(2), 544, 545, 546, 547, 548, 549(a), 549(c), 549(d), 550, 551, 552, 553, 1102, 1103, 1109, 1111(b) 1122, 1123(a)(1), 1123(a) (2), 1123(a)(3), 1123(a)(4), 1123(a)(5), 1123(b), 1124, 1125, 1126 (a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g), 1127(d), 1128, 1129 (a) (2), 1129(a)(3), 1129(a)(8), 1129(a)(10), 1129(b)(1), 1129(b) (2) (A), 1129(b)(2)(B), 1142(b), 1143, 1144, and 1145 of this title apply in a case under this chapter.

(b) A term used in a section of this title made applicable in a case under this chapter by subsection (a) of this section or section 103(e) of this title has the meaning difined for such term for the purpose of such applicable section, unless such term is otherwise defined in section 902 of this title.

(c) A section made applicable in a case under this chapter by subsection (a) of this section that is operative if the business of the debtor is authorized to be operated is operative in a case under this chapter.

Section 902. // 11 USC 902. // Definitions for this chapter

In this chapter—,

(1) "property of the estate", when used in a section that is made applicable in a case under this chapter by section 103(e) or 901 of this title, means property of the debtor;

(2) "special tax payer" means record owner or holder of title, legal or equitable, to real property against which has been levied a special assessment or special tax the proceeds of which are the sole source of payment of an obligation issued by the debtor to defray the cost of an improvement relating to such real property;

(3) "special tax payer affected by the plan" means special tax payer with respect to whose real property the plan proposes to increase the proportion of special assessments or special taxes referred to in paragraph (2) of this section assessed against such real property; and

(4) "trustee", when used in a section that is made applicable in a case under this chapter by section 103(e) or 901 of this title, means debtor, except as provided in section 926 of this title.

Section 903. // 11 USC 903. // Reservation of State power to control municipalities

This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but—,

(1) a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and

(2) a judgment entered under such a law may not bind a creditor to that does not consent to such composition.

Section 904. // 11 USC 904. // Limitation on jurisdiction and powers of court

Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—,

(1) any of the political or governmental powers of the debtor;

(2) any of the property or revenues of the debtor; or

(3) the debtor's use or enjoyment of any income-producing property.

SUBCHAPTER II— ADMINISTRATION

Section 921. // 11 USC 921. // Petition and proceedings relating to petition

(a) Notwithstanding sections 109(c) and 301 of this title, a case under this chapter concerning an unincorporated tax or special assessment district that does not have such district's won officials is commenced by the filing under section 301 of this title of a petition under this chapter by such district's governing authority or the board or body having authority to levy taxes or assessments to meet the obligations of such district.

(b) The chief judge of the court of appeals for the circuit embracing the district in which the case is commenced shall designate the bankruptcy judge to conduct the case.

(c) After an objection to the petition, the court, after notice and a hearing, may dismiss the petition, if the debtor did not file the petition in good faith, or if the petition does not meet the requirements of this title.

(e) If the petition is not dismissed under subsection (d) of this section, the court shall order relief under this chapter.

(f) The court may not, on account of an appeal from an order for relief, delay any proceeding under this chapter in the case in which the appeal is being taken; nor shall any court order a stay of such proceeding pending such appeal. The reversal on appeal of a finding of jurisdiction does not affect the validity of any debt incurred that is authorized by the court under section 364(c) or 364(d) of this title.

Sec. 922. // 11 USC 922. // Automatic stay of enforcement of claims against the debtor

(a) A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of—,

(1) the commencement or continuation, including the issuance or employment of process, of judicial, administrative, or other proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and

(2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

(b) Subsections (c), (d), (e), (f), and (g) of section 362 of this title apply to a stay under subsection (a) of this section the same as such subsections apply to a stay under section 362(a) of this title. Sec. 923. // 11 USC 923. // Notice

There shall be given notice of the commencement of a case under this chapter, notice of an order for relief under this chapter, and notice of the dismissal of a case under this chapter. Such notice shall also be published at least once a week for three successive weeks in at least one newspaper of general circulation published within the district in which the case is commenced, and in such other newspaper having a general circulation among bond dealers and bondholders as the court designates.

Sec. 924. // 11 USC 924. // List of creditors

The debtor shall file a list of creditors.

Sec. 925. // 11 USC 925. // Effect of llist of claims

A proof of claim is deemed filed under section 501 of this title for any claim that appears in the list filed under section 924 of this title, except a claim that is listed as disputed, contingent, or unliquidated.

Sec. 926. // 11 USC 926. // Avoiding powers

If the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title, then on request of a creditor, the court may appoint a trustee to pursue such cause of action.

Sec. 927. // 11 USC 927. // Dismissal

(a) After notice and a hearing, the court may dismiss a case under this chapter for cause, including—,

(1) want of prosecution;

(2) unreasonable delay by the debtor that is prejudicial to creditors;

(3) failure to propose a plan within the time fixed under section 941 of this title;

(4) if a plan is not accepted within any time fixed by the court;

(5) denial of confirmation of a plan under section 943(b) of this title and denial of additional time for filing another plan or a modification of a plan; or

(6) if the court has retained jurisdiction after confirmation of a plan—,

  (A) material default by the debtor with respect to a term of such plan; or

  (B) termination of such plan by reason of the occurrence of a condition specified in such plan.

(b) The court shall dismiss a case under this chapter if confirmation is refused.

SUBCHAPTER III— THE PLAN

Sec. 941. // 11 USC 941. // Filing of plan

The debtor shall file a plan for the adjustment of the debtor's debts. If such a plan is not filed with the petition, the debtor shall file such a plan at such later time as the court fixes.

Sec. 942. // 11 USC 942. // Modification of plan

The debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of this chapter. After the debtor files a modification, the plan as modified becomes the plan.

Sec. 943. // 11 USC 943. // Confirmation

  (a) A special tax payer may object to confirmation of a plan.

  (b) The court shall confirm the plan if—,

  (1) the plan complies with the provision of this title made applicable by sections 103(e) and 901 of this title;

  (2) the plan complies with the provisions of this chapter;

  (3) all amounts to be paid by the debtor or by any person for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable;

  (4)the debtor is not prohibited by law from taking any action necessary to be taken to carry out the plan;

  (5) the plan provides that each holder of a claim of the kind specified in section 507(a)(1) of this title will receive, on account of such claim, property of a value, as of the effective date of the plan, equal to the allowed amount of such claim, except to the extent that the holder of a particular claim of such kind has

waived such payment on such claim; and

  (6) the plan is in the best interests of creditors and is feasible.

Sec. 944. // 11 USC 944. // Effect of confirmation

  (a) The provisions of a confirmed plan bind the debtor and any creditor, whether or not—,

  (1) a proof of such creditor's claim is filed or deemed filed under section 501 of this title;

  (2) such claim is allowed under section 502 of this title; or

  (3) such creditor has accepted the plan.

  (b) Except as provided in subsection (c) of this section, the debtor is discharged from all debts as of the time when—,

  (1) the plan is confirmed;

  (2) the debtor deposits any consideration to be distributed under the plan with a disbursing agent appointed by the court; and

  (3) the court has determined—,

  (A) that any security so deposited will constitute, after distribution, a valid legal obligation of the debtor; and

  (B) that any provision made to pay or secure payment of such obligation is valid.

  (c) The debtor is not discharged under subsection (b) of this section from any debt—,

  (1) excepted from discharge by the plan or order confirming the plan; or

  (2) owed to an entity that, before confirmation of the plan, had neither notice nor actual knowledge of the case.

Sec. 945. // 11 USC 945. // Continuing jurisdiction and closing of the case

  (a) The court may retain jurisdiction over the case for such period of time as is necessary for the successful execution of the plan.

(b) Except as provided in subsection (a) of this section, the court shall close the case when administration of the case has been completed.

Sec. 946. // 11 USC 946. // Effect of exchange of securities before the date of the filing of the petition

The exchange of a new security under the plan for a claim covered by the plan, whether such exchange occurred before or after the date of the filing of the petition, does not limit or impair the effectiveness of the plan or of any provision of this chapter. The amount and number specified in section 1126(c) of this title include the amount and number of claims formerly held by a creditor that has participated in any such exchange.

## CHAPTER 11—REORGANIZATION

### SUBCHAPTER I—OFFICERS AND ADMINISTRATION

Sec. 1101. Definitions for this chapter. 1102. Creditors' and equity security holders' committees. 1103. Powers and duties of committees. 1104. Appointment of trustee or examiner. 1105. Termination of trustee's appointment. 1106. Duties of trustee and examiner. 1107. Rights, powers, and duties of debtor in possession. 1108. Authorization to operate business. 1109. Right to be heard. 1110. Aircraft equipment and vessels. 1111. Claims and interests. 1112. Conversion or dismissal.

### SUBCHAPTER II— THE PLAN

1121. Who may file a plan. 1122. Classification of claims or interests. 1123. Contents of plan. 1124. Impairment of claims or interests. 1125. Postpetition disclosure and solicitation. 1126. Acceptance of plan. 1127. Modification of plan. 1128. Confirmation hearing. 1129. Confirmation of plan.

### SUBCHAPTER III— POSTCONFIRMATION MATTERS

1141. Effect of confirmation. 1142. Execution of plan. 1143. Distribution. 1144. Revocation of an order of confirmation. 1145. Exemption from securities laws. 1146. Special tax provisions.

### SUBCHAPTER IV— RAILROAD REORGANIZATION

Sec. 1161. Inapplicability of other sections. 1162. Definition. 1163. Appointment of trustee. 1164. Right to be heard. 1165. Protection of the public interest. 1166. Effect of Interstate Commerce Act and of Federal, State, or local regulations. 1167. Collective bargaining agreements. 1168. Rolling stock equipment. 1169. Effect of rejection of lease of railroad line. 1170. Abandonment of railroad line. 1171. Priority claims. 1172. Contents of plan. 1173. Confirmation of plan. 1174. Liquidation.

### SUBCHAPTER I—OFFICERS AND ADMINISTRATION

Sec. 1101. // 11 USC 1101. // Definitions for this chapter

In this chapter—,

(1) "debtor in possession" means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case;

(2) "substantial consummation" means—,

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

Sec. 1102. // 11 USC 1102. // Creditors' and equity security holders' committees

(a)(1) As soon as practicable after the order for relief under this chapter, the court shall appoint a committee of creditors holding unsecured claims.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The court shall appoint any such committee.

(b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members

of a committee organized by creditors before the order for relief under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

(2) A committee of equity security holders appointed under subsection (a)(2) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee.

(c) On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

Sec. 1103. // 11 USC 1103. // Powers and duties of committees

(a) At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee

are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

(b) A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committe, represent any other entity in connection with the case.

(c) A committee appointed under section 1102 of this title may—,

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other

matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title, if a trustee or examiner, as the case may be, has not previously been appointed under this chapter in the

case; and

(5) perform such other services as are in the interest of those represented. (d) As soon as practicable after the appointment of a committee

under section 1102 of this title, the trustee shall meet with such committee to transact such business as may be necessary and proper.

Sec. 1104. // 11 USC 1104. // Appointment of trustee or examiner

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a

trustee—,

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the

case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(b) If the court does not order the appointment of a trustee under

this section then at any time before the confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—,

(1) such appointment is in the interests of creditors, any equity

security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

(c) If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the court shall appoint one disinterested person to serve as trustee or examiner, as the case may be, in the case.

Sec. 1105. // 11 USC 1105. // Termination of trustee's appointment

At any time before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate, and operation of the debtor's business.

Sec. 1106. // 11 USC 1106. // Duties of trustee and examiner

(a) A trustee shall—,

(1) perform the duties of a trustee specified in section 704(2), 704(4), 704(6), 704(7), and 704(8) of this title;

(2) if the debtor has not done so, file the list, schedule, and statement required under section 521(1) of this title;

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—,

  (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

  (B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates;

(5) as soon as practicable, file a lan under section 1121 of this title, file a report of why the trustee will not file a plan, or recommend conversion of the case to a case under chapter 7 or 13 of this title or dismissal of the case;

(6) for any year for which the debtor has not filed a tax return required by law, furnish, without personal liability, such information as may be required by the governmental unit with which such tax return was to be filed, in light of the condition of the debtor's books and records and the availability of such information; and

(7) after confirmation of a plan, file such reports as are necessary or as the court orders.

(b) An examiner appointed under section 1104(c) of this title shall perform the duties specified in paragraphs (3) and (4) of subsection (a) of this section, and any other duties of the trustee that the court orders the debtor in possession not to perform.

Sec. 1107. // 11 USC 1107. // Rights, powers, and duties of debtor in possession

(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a) (2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

Sec. 1108. // 11 USC 1108. // Authorization to operate business

Unless the court orders otherwise, the trustee may operate the debtor's business.

Sec. 1109. // 11 USC 1109. // Right to be heard

(a) The Securities and Exchange Commission may raise and may appear and be heard on any issue in a case under this chapter, but the Securities and Exchange Commission may not appeal from any judgment, order, or decree entered in the case

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

Sec. 1110. // 11 USC 1110. // Aircraft equipment and vessels

(a) The right of a secured party with a purchase-money equipment security interest in, or of a lessor or conditional vendor of, whether as trustee or otherwise, aircraft, aircraft engines, propellers, appliances, or spare parts, as defined in section 101 of the Federal Aviation Act of 1958 (49 U.S.C. 1301), or vessels of the United States, as defined in subsection B(4) of the Ship Mortgage Act, 1920 (46 U.S.C. 911(4), that are subject to a purchase-money equipment security interest granted by, leased to, or conditionally sold to, a debtor that is an air carrier operating under a certificate of convenience and necessity issued by the Civil Aeronautics Board, or a water carrier that holds a certificate of public convenience and necessity or permit issued by the Interstate Commerce Commission, as the case may be, to take possession of such equipment in compliance with the provisions of a purchase-money equipment security agreement, lease, or conditional sale contract, as the case may be, is not affected by section 362 or 363 of this title or by any power of the court to enjoin such taking of possession, unless—,

(1) before 60 days after the date of the order for relief under this chapter, the trustee, subject to the court's approval, agrees to perform all obligations of the debtor that become due on or after such date under such security agreement, lease, or conditional sale contract, as the case may be; and

(2) any default, other than a default of a kind specified in section 365(b)(2) of this title, under such security agreement, lease, or conditional sale contract, as the case may be—,

(A) that occurred before such date is cured before the expiration of such 60–day period; and

(B) that occurs after such date is cured before the later of—,

(i) 30 days after the date of such default; and

(ii) the expiration of such 60–day period.

(b) The trustee and the secured party, lessor, or conditional vendor, as the case may be, whose right to take possession is protected under subsection (a) of this section may agree, subject to the court's approval, to extend the 60–day period specified in subsection (a)(1) of this section.

Sec. 1111. // 11 USC 1111. // Claims and interests

(a) A proof of claim or interest is deemed fuled under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

(b)(1)(A) A claim secured by a lien on property of the estate shall

be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—,

(i) the class of which such claim is a part elects, by at least two–thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

(ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

(B) A class of claims may not elect application of paragraph (2) of this subsection if—,

(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or

(ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title or is to be sold under the plan.

(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

Sec. 1112. // 11 USC 1112. // Conversion or dismissal

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—,

(1) the debtor is not a debtor in possession;

(2) the case is an involuntary case originally commenced under this chapter; or

(3) the case was converted to a case under this chapter on other than the debtor's request.

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—,

(1) contunuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; and

(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

(c) The court may not convert a case under this chapter to a case under chapter 7 of this title if the debtor is a farmer or a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion.

(d) The court may convert a case under this chapter to a case under chapter 13 of this title only if—,

(1) the debtor requests such conversion; and

(2) the debtor has not been discharged under section 1141(d) of this title.

(e) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

SUBCHAPTER II— THE PLAN

Sec. 1121. // 11 USC 1121. // Who may file a plan

(a) The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case.

(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—,

(1) a trustee has been appointed under this chapter;

(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class the claims or interests of which are impaired under the plan.

(d) On request of a party in interest and after notice and a hearing the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section.

Sec. 1122. // 11 USC 1122. // Classification of claims or interests

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Sec. 1123. // 11 USC 1123. // Contents of plan

(a) A plan shall—,

(1) designate, subject to section 1122 of this title, classes of claims other than claims of a kind specified in section 507( a)(1), 507(a)(2), or 507(a)(6) of this title and classes of interests;

(2) specify any class of claims or interests that is not impaired under the plan;

(3) shall specify the treatment of any class of claims or interests that is impaired under the plan;

(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest;

(5) provide adequate means for the plan's execution, such as—,

(A) retention by the debtor of all or any part of the property of the estate;

(B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;

(C) merger or consolidation of the debtor with one or more persons;

(D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate;

(E) satisfaction or modification of any lien;

(F) cancellation or modification of any indenture or similar instrument;

(G) curing or waiving any default;

(H) extension of a maturity date or a change in an interest rate or other term of outstanding securities;

(I) amendment of the debtor's charter; or

(J) issuance of securities of the debtor, or of any entity referred to in subparagraph (B) or (C) of this paragraph, for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose;

(6) provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of any corporation referred to in paragraph (5)(B) or (5)(C) of this subsection, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes,

including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends; and

(7) contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee.

(b) Subject to subsection (a) of this section, a plan may—,

(1) impair or leave unimpaired any class of claims, secured or unsecured, or of interests;

(2) subject to section 365 of this title, provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title;

(3) provide for—,

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

(4) provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests; and

(5) include any other appropriate provision not inconsistent with the applicable provisions of this title.

(c) In a case concerning an individual, a plan proposed by an entity other than the debtor may not provide for the use, sale, or lease of property exempted under section 522 of this title, unless the debtor consents to such use, sale, or lease.

Sec. 1124. // 11 USC 1124. // Impairment of claims or interests

Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—,

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest ntitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—,

(A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title, that occurred before or after the commencement of the case under this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—,

(A) with respect to a claim, the allowed amount of such claim; or

(B) with respect to an interest, if applicable, the greater of—,

(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; and

(ii) any fixed price at which the debtor, under the terms of such security, amy redeem such security from such holder.

Sec. 1125. // 11 USC 1125. // Postpetition disclosure and solicitation

(a) In this section—,

(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan; and

(2) "investor typical of holders of claims or interests of the relevant class" means investor having—,

(A) a claim or interest of the relevant class;

(B) such a relationship with debtor as the holders of other claims or interests of such class generally have; and

(C) such ability to obtain such information from sources other than the disclosure required by this section as holders claims or interests in such class generally have.

(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

(c) The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes.

(d) Whether a disclosure statement contains adequate information is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation, but an agency or official whose duty is to administer or enforce such a law, rule, or regulation may be heard on the issue of whether a disclosure statement contains adequate information. Such an agency or official may not appeal from an order approving a disclosure statement.

(e) A person that solicits, in good faith and in compliance with the applicable provisions of this title, or that participates, ingood faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale, or purchase of securities.

Sec. 1126. // 11 USC 1126. // Acceptance of plan

(a) The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan. If the United States is a creditor or equity security holder, the Secretary of the Treasury may accept or reject the plan on behalf of the United States.

(b) For the purposes of subsections (c) and (d) of this section, a holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—,

(1) the solicitation of such acceptance or rejection was in

compliance with any applicable nonbankruptcy lae, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or

(2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a)(1) of this title.

(c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

(d) A class of interests has accepted a plan if such plan has been accepted by holders of such interests other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

(e) On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

(f) Notwithstanding any other provision of this section, a class that is not impaired under a plan is deemed to have accepted the plan, and solicititation of acceptances with respect to such class from the holders of claims or interest of such class is not required.

(g) Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to any payment or compensation under the plan on account of such claims or interests.

Sec. 1127. // 11 USC 1127. // Modification of plan

(a) The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent files a modification with the court, the plan as modified becomes the plan.

(b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if the court, after notice and a hearing, confirms such plan, as modified, under section 1129 of this title, and circumstances warrant such modification.

(c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.

(d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

Sec. 1128. // 11 USC 1128. // Confirmation hearing

(a) After notice, the court shall hold a hearing on confirmation of a plan.

(b) A party in interest may object to confirmation of a plan.

Sec. 1129. // 11 USC 1129 // Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this chapter.

(2) The proponent of the plan complies with the applicable provisions of this chapter.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4)(A) Any payment made or promised by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been disclosed to the court; and

(B)(i) any such payment made before confirmation of the plan is reasonable; or

(ii) if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the court as reasonable.

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the

debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy.

(B) The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is

expressly conditioned on such approval.

(7) With respect to each class—,

(A) each holder of a claim or interest of such class—,

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such creditor's interest in the estate's interest in

the property that secures such claims.

(8) With respect to each class—,

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—,

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), or 507(a)(5) of this title, each holder of a claim of such class will receive—,

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(C) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a

period not exceedingt six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

(10) At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—,

(i)(I) that the holders of such claims retain the lien securing such claims, whether the property subject to such lien is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the lien securing such claims, free and clear of such lien, with such lien to attach to the proceeds of such sale, and the treatment of such lien on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims—,

(i) the plan provides that each holder of a claim of such class recieve or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed

amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.

(C) With respect to a class of interests—,

(i) the plan provides that each holder of an interest of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, and the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

(c) Notwithstanding subsections (a) and (b) of this section and except as provided in section 1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title. If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

(d) Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933 (15 U.S.C. 77e).

SUBCHAPTER III— POSTCONFIRMATION MATTERS

Sec. 1141. // 11 USC 1141. // Effect of confirmation

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder of, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) After confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditor, of equity security holders, and of general partners in the debtor, except as otherwise provided in the plan or in the order confirming the plan.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—,

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—,

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

(3) The confirmation of a plan does not discharge a debtor if—,

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727( a) of this title if the case were a case under chapter 7 of this title.

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

Sec. 1142. Execution of plan

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan, and shall comply with any orders of the court.

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Sec. 1143. // 11 USC 1143. //

Distribution

If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken not later than five years after the date of the entry of the order of confirmation. Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan.

Sec. 1144. // 11 USC 1144. // Revocation of an order of confirmation

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if such order was procured by fraud. An order under this section revoking an order of confirmation shall—,

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor.

Sec. 1145. // 11 USC 1145. // Exemption from securities laws

(a) Except with respect to an entity that is an underwriter as defined in subsection (b) of this section, section 5 of the Securities Act of 1933 (15 U.S.C. 77e) and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security does not apply to—,

(1) the offer or sale under a plan of a security of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan—,

(A) in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning, the debtor or such affiliate; or

(B) principally in such exchange and partly for cash or property;

(2) the offer of a security through any warrant, option, right to subscribe, or conversion privilege that was sold in the manner specified in paragraph (1) of this subsection, or the sale of a

security upon the exercise of such a warrant, option, right, or privilege;

(3) the offer or sale, other than under a plan, of a security of an issuer other than the debtor or an affiliate, if—,

(A) such security was owned by the debtor on the date of the filing of the petition;

(B) the issuer of such security is—,

(i) required to file reports under section 13 of the Securities Exchange Act of 1934 (15 U.S.C. 78m); and

(ii) in compliance with all applicable requirements for the continuance of trading in such security on the

date of such offer or sale; and

(C) such offer or sale is of securities that do not exceed—,

(i) during the two-year period immediately following the date of the filing of the petition, four percent of the securities of such class outstanding on such date; and

(ii) during any 180–day period following such two-year period, one percent of the securities outstanding at the beginning of such 180–day period; or

(4) a transaction by a stockholder in a security that is executed after a transaction of a kind specified in paragraph (1) or (2) of this subsection in such security and before the expiration of 40 days after the first date on which such security was bona fide offered to the public by the issuer or by or through an underwriter, if such stockbroker provides, at the time of or before such transaction by such stockholder, a disclosure statement approved under section 1125 of this title, and, if the court orders, information supplementing such disclosure statement.

(b)(1) Except as provided in paragraph (2) of this subsection, an entity is an underwriter under section 2(11) of the Securities Act of 1933 (15 U.S.C. 77b(11), if such entity—,

(A) purchases a claim against, interest in, or claim for an administrative expense in the case concerning, the debtor, if such purchase is with a view to distribution of any security received or to be received in exchange for such a claim or interest;

(B) offers to sell securities offered or sold under the plan for the holders of such securities;

(C) offers to buy securities offered or sold under the plan for the holders of such securities, if such offer to buy is—,

(i) with a view to distribution of such securities; and

ii) under an agreement made in connection with the plan, with the consummation of the plan, or with the offer or sale of securities under the plan; or

(D) is an issuer, as used in such section 2(11), with respect to such securities.

(2) An entity is not an underwriter under section 2(11) of the Securities Act of 1933 or under paragraph (1) of this subsection with respect to an agreement that provides only for—,

(A)(i) the matching combination of fractional interests in securities offered or sold under the plan into whole interests; or

(ii) the purchase or sale of such fractional interests among entities receiving such fractional interests under the plan; or

(B) the purchase or sale for such entities of such fractional or whole interests as are necessary to adjust for any remaining fractional interests after such matching.

(3) An entity other than an entity of the kind specified in paragraph (1) of this subsection is not an underwriter under section 2( 11) of the Securities Act of 1933 with respect to any securities offered or sold to such entity in the manner specified in subsection (a)(1) of this section.

(c) An offer or sale of securities of the kind and in the manner specified under subsection (a)(1) of this section is deemed to be a public offering.

(d) The Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.) does not apply to a commercial note issued under the plan that matures not later than one year after the effective date of the plan.

Sec. 1146. // 11 USC 1146. // Special tax provisions

(a) For the purposes of any State or local law imposing a tax on or measured by income, the taxable period of a debtor that is an individual shall terminate on the date of the order for relief under this chapter, unless the case was converted under section 706 of this title.

(b) The trustee shall make a State or local tax return of income for the estate of an individual debtor in a case under this chapter for each taxable period after the order for relief under this chapter during which the case is pending.

(c) The issuance, transfer, or exchange of a security, or the making or delivery of n instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any State or local law imposing a stamp tax or similar tax.

(d) The court may authorize the proponent of a plan to request a determination, limited to questions of law, by a State or local governmental unit charged with responsibility for collection or determination of a tax on or measured by income, of the tax effects, under section 346 of this title and under the law imposing such tax, of the plan. In the event of an actual controversy, the court may declare such effects after the earlier of—,

(1) the date on which such governmental unit responds to the request under this subsection; and

(2) 270 days after such request.

SUBCHAPTER IV— RAILROAD REORGANIZATION

Sec. 1161. // 11 USC 1161. // Inapplicability of other sections

Sections 341, 343, 1102(a)(1), 1104, 1105, 1107, 1129(a)(7), and 1129(c) of this title do not apply in a case concerning a railroad.

Sec. 1162. // 11 USC 1162. // Definition

In this subchapter, "Commission" means Interstate Commerce Commission.

Sec. 1163. // 11 USC 1163. // Appointment of trustee

As soon as practicable after the order for relief, the Secretary of Transportation shall submit a list of five disinterested persons that are qualified and willing to serve as trustee in the case. The court shall appoint one of such persons to serve as trustee in the case.

Sec. 1164. // 11 USC 1164. // Right to be heard

The Commission, the Department of Transportation, and any State or local commission having regulatory jurisdiction over the debtor may raise and may appear and be heard on any issue in a case under this chapter, but may not appeal from any judgment, order, or decree entered in the case.

Sec. 1165. // 11 USC 1165. // Protection of the public interest

In applying sections 1166, 1167, 1169, 1170, 1171, 1172, 1173, and 1174 of this title, the court and the trustee shall consider the public interest in addition to the interests of the debtor, creditors, and equity security holders.

Sec. 1166. Effect of Interstate Commerce Act and of Federal, State, or local regulations

Except with respect to abandonment under section 1170 of this title, or merger, modification of the financial structure of the debtor, or issuance or sale of securities under a plan, the trustee and the debtor are subject to the provisions of the Interstate Commerce Act (49 U.S.C. 1 et seq.) that are applicable to railroads, and the trustee is subject to orders of any Federal, State, or local regulatory body to the same extent as the debtor would be if a petition commencing the case under this chapter had not been filed, but—,

(1) any such order that would require the expenditure, or the incurring of an obligation for the expenditure, of money from the estate is not effective unless approved by the court; and

(2) the provisions of this chapter are subject to section 601( b) of the Regional Rail Reorganization Act of 1973 (45 U.S.C. 791(b).

Sec. 1167. // 11 USC 1167. // Collective bargaining agreements

Notwithstanding section 365 of this title, neither the court nor the trustee may change the wages or working conditions of employees of the debtor established by a collective bargaining agreement that is subject to the Railway Labor Act (45 U.S.C. 151 et seq.) except in accordance with section 6 of such Act (45 U.S.C. 156).

Sec. 1168. // 11 USC 1168. // Rolling stock equipment

(a) The right of a secured party with a purchase-money equipment security interest in, or of a lessor or conditional vendor of, whether as trustee or otherwise, rolling stock equipment or accessories used on such equipment, including superstructures and racks, that are subject to a purchase-money equipment security interest granted by, leased to, or conditionally sold to, the debtor to take possession of such equipment in compliance with the provisions of a purchase-money equipment security agreement, lease, or conditional sale contract, as the case may be, is not affected by section 362 or 363 of this title or by any power of the court to enjoin such taking of possession, unless—,

(1) before 60 days after the date of the commencement of a case under this chapter, the trustee, subject to the court's approval, agrees to perform all obligations of the debtor under such security agreement, lease, or conditional sale contract, as the case may be; and

(2) any default, other than a default of a kind specified in section 365(b)(2) of this title, under such security agreement, lease, or conditional sale contract, as the case may be—,

(A) that occurred before such date and is an event of default therewith is cured before the expiration of such 60–day period; and

(B) that occurs or becomes an event of default after such date is cured before the later of—,

(i) 30 days after the date of such default or event of default; and

(ii) the expiration of such 60–day period.

(b) The trustee and the secured party, lessor, or conditional vendor, as the case may be, whose right to take possession is protected under subsection (a) of this section, may agree, subject to the court's approval to extend the 60–day period specified in subsection (a)(1) of this section.

Section 1169. // 11 USC 1169. // Effect of rejection of lease railroad line

(a) Except as provided in subsection (b) of this section, if a lease of a line of railroad under which the debtor is the lessee is rejected under section 365 of this title, and if the trustee, within such time as the court fixes, and with the court's approval, elects not to operate the leased line, the lessor under such lease, after such approval, shall operate the line.

(b) If operation of such lessor is impracticable or contrary to the public interest, the court, on request of such lessor, and after notice and hearing, shall order the trustee to continue operation of such line for the account of such lessor until abandonment is ordered under section 1170 of this title, or such operation is otherwise lawfully terminated, whichever occurs first.

(c) During any such operation, such lessor is deemed a carrier subject to the provisions of the Interstate Commerce Act (49 U.S.C.1 et sec.) that are applicable to railroads.

Section 1170. // 11 USC 1170. // Abandonment of railroad line

(a) The court, after notice and a hearing, may authorize the abandonment of a railroad line if such abandoment is—,

(1)(A) in the best interest of the estate; or

(B) essential to the formulation of a plan; and

(2) consistent with the public interest.

(b) If, except for the pendency of the case under this chapter, such abandonment would require approval by the Commission under a law of the United States, the trustee shall initiate an appropriate application for such abandonment with the Commission. The court may fix a time within which the Commission shall report to the court on such application.

(c) After the court receives the report of the Commission, or the expiration of the time fixed under subsection (b) of this section, whichever occurs first, the court may authorize such abandoment after notice to the Commission, the Secretary of Transportation, the trustee, any party in interest that has requested notice, any affected shipper or community, and any other eentity prescribed by the court, and a hearing.

(d)(1) Enforcement of an order authorizing such abandonment shall be stayed until the time for taking an appeal has expired, or, if an appeal is timely taken, until such order has become final.

(2) If an order authorizing the abandonment of a railroad line is appealed, the court, on request of a party in interest, may authorize termination of service on a line or a portion of a line pending the determination of such appeal, after notice to the Commission, the Secretary of Transportation, the trustee, any party in interest that has requested notice, any affected shipper or community, and any other entity prescribed by the court, and a hearing. An appellant may not obtain a stay of the enforcement of an order authorizing such termination by the giving of a supersedeas bond or otherwise, during the pendency of such appeal.

Section 1171. // 11 USC 1171. // Priority claims

(a) There shall be paid as an administrative expense any claim of an individual or of the personal representative of a deceased individual against the debtor or the estate, for personal injury to or death of such individual arising out of the opeation of the debtor or the estate, whether such claim arose before or after the commencement of the case.

(b) Any unsecured claim against the debtor that would have been entitled to priority if a receiver in equity of the property of the debtor had been appointed by a Federal court on the date of the order for relief under this title shall be entitled to such priorty in the case under this chapter.

Section 1172. // 11 USC 1172. // Contents of plan

  (a) Inaddition to the provisions required or permitted under section 1123 of this title, a plan—,

  (1) shall specify the extent tto and the means by which the debtor's rail service is proposed to be continued, and the extent to which any of the debtor's rail service is proposed to be terminated;

and

  (2) may include a provision for—,

   (A) the transfer of any or all of the operating railroad lines of the debtor to another operating railroad; or

   (B) abandonment of any railroad line in accordance with section 1170 of this title.

  (b) If, except for the pendency of the case under this chapter, transfer of, or operation of or over, any of the debtor's rail lines by an entity other than the debtor or a successor to the debtor under the plan would require approval by the Commission under a law of the United States, then a plan may not propose such a transfer or such operation unless the proponent of the plan initiates an appropriate application for such a transfer or such operation with the Commission and, within such time as the court may fix, not exceeding 180 days, the Commission, with or without a hearing, as the Commission may determine, and with or without modification or condition, approves such application, or does not act on such application. Any action or order of the Commission approving, modifying, conditioning, or disapproving such application is subject to review by the court only under sections 706(2)(A), 706(2)( B), and 706(2)(C), and 706(2) (D) of title 5.

Section 1173. // 11 USC 1173. // Confirmation of plan

  (a) The court shall confirm a plan if—,

  (1) the applicable requirements of section 1129 of this title have been met;

  (2) each creditor or equity security holder will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value of property that each such creditor or equity security holder would so receive or retain if all of the operating railroad lines of the debtor were sold, and the proceeds of such sale, and the other property of the estate, were distributed under chapter 7 of this title on such date;

  (3) in light of the debtor's past earnings and the probable prospective earnings of the reorganized debtor, there will be adequate coverage by such prospective earnings of any fixed charges, such as interest on debt, amortization of funded debt, and rent for leaseed railroads, provided for by the plan; and

  (4) the plan is compatible with the public interest.

  (b) If the requirements of subsection (a) of this section are met with respect to more than one plan, the court shall confirm the plan that is most likely to maintain adequate rail service in the public interest.

Section 1174. // 11 USC 1174. // Liquidation

  On request of a party in interest and after notice and a hearing, the court may, or, if a plan has not been confirmed under section 1173 of this title before five years after the date of the order for relief, the court shall, order the trustee to cease the debtor's operation and to collect and reduce to money all of the property of the estate in the same manner as if the case were a case under chapter 7 of this title.

CHAPTER 13—ADJUSTMENT OF DEBTS OF AN INDIVIDUAL WITH REGULAR INCOME

SUBCHAPTER I—OFFICERS, ADMINISTRATION, AND THE ESTATE

Sec. 1301. Stay of action against codebtor. 1302. Trustee. 1303. Rights and powers of debtor. 1304. Debtor engaged in business. 1305. Filling and allowance of postpetition claims. 1306. Property of the estate. 1307. Conversion or dismissal.
SUBCHAPTER II— THE PLAN

1321. Filling of plan. 1322. Contents of plan. 1323. Modification of plan before confirmation. 1324. Confirmation hearing. 1325. Confirmation of plan. 1326. Payments. 1327. Effect of confirmation. 1328. Discharge. 1329. Modification of plan after confirmation. 1330. Revocation of an order of confirmation.
SUBCHAPTER I—OFFICERS, ADMINISTRATION, AND THE ESTATE

Section 1301. // 11 USC 1301. // Stay of action against codebtor

(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—,

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

(b) A creditor may present a negotiable instrument, and may give notice of dishonor of such an instrument.

(c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—,

(1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;

(2) the plan filed by the debtor propses not to pay such

claim; or

(3) such creditor's interest would be irreparably harmed by sucy stay.

Section 1302. // 11 USC 1302. // Trustee

(a) If the court has appointed an individual under subsection (d) of this section to serve as standing trustee in cases under this chapter and if such individual qualifies under section 322 of this title, then such individual shall serve as trustee in the case. Otherwise, the court shall appoint a person to serve as trustee in the case.

(b) The trustee shall—,

(1) perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), and 704(8) of this title;

(2) appear and be heard at any hearing tht concerns—,

(A) the value of property subject to a lien;

(B) confirmation of a plan; or

(C) modification of the plan after confirmation; and

(3) advise, other than on legal matters, and assist the debtor in performance under the plan.

(c) If the debtor is engaged in business, then in addition to the duties specified in subsection (b) of this section, the trustee shall perform the duties specified in sections 1106(a)(3) and 1106(a)(4) of this title.

(d) If the number of cases under this chapter commenced in a particular judicial district so warrant, the court may appoint one or more individuals to serve as standing trustee for such district in cases under this chapter.

(e)(1) A court that has appointed an individual under subsection (d) of this section to serve as standing trustee in cases under this chapter shall fix—,

(A) a maximum annual compensation for such individual, not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the General Schedule prescribed under section 5332 of

title 5; and

(B) a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from all payments under plans in the cases under this chapter for which such individual serves as standing trustee. Such individual shall pay annually to the Treasury—,

(A) any amount by which the actual compensation of such individual exceeds five percent upon all payments under plans in cases under this chapter for which such individual serves as standing trustee; and (B) any amount by which the percentage fee fixed under paragraph (1)(B) of this subsection for all such cases exeeds—,

(i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of this paragraph; plus

(ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases.

Section 1303. // 11 USC 1303. Rights and powers of debtor

Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(1), of this title.

Section 1304. // 11 USC 1304. Debtor engaged in business

(a) A debtor that is self-employed and incurs trade credit in the production of income from such employment is engaged in business.

(b) Unless the court orders otherwise, a debtor engaged in business. may operate the business of the debtor, and, subject to any limitations on a trustee under sections 363(c) and 364 of this title and to such limitations or conditions as the court prescribes, shall have, exclusive of the trustee, the rights and powers of the trustee under such sections.

(c) A debtor engaged in business shall perform the duties of the trustee specified in section 704 (7) of this title.

Section 1305. // 11 USC 1305. // Filing and allowance of postpetition claims

(a) A proof of claim may be filed by any entity that holds a claim against the debtor—,

(1) for taxes that become payable to a governmental unit while the case is pending; or

(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

(b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determinded as of the date such claim arises, and shall be allowed under section 502( a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

(c) A claim filed under subsection (a) (2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.

Section 1306. // 11 USC 1306. // Property of the estate

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—,

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but beforethe case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

Section 1307. // 11 USC 1307. // Conversion or dismissal

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

(b) On request of the debtor at any time if the case has not been converted under section 706 or 1112 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

(c) Except as provided in subsection (e) of this section, on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—,

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

(3) failure to file a plan timely under section 1321 of this title;

(4) denial of confirmation of a plan under section 1325 of this title and denial of additional time for filing another plan or a

modification of a plan;

(5) material default by the debtor with respect to a term of a confirmed plan;

(6) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title; and (7) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan.

(d) Except as provided in subsection (e) of this section, at any time before the confirmation of a plan under section 1325 of this title, on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title.

(e) The court may not convert a case under this chapter to a case under chapter 7 or 11 of this title if the debtor is a farmer, unless the debtor requests such conversion.

(f) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

SUBCHAPTER II- THE PLAN

Section 1321. // 11 USC 1321. // Filing of plan

The debtor shall file a plan.

Section 1322. // 11 USC 1322. // Contents of plan

(a) The plan shall—,
(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
(2) provide for the full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and
(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.
(b) Subject to subsections (a) and (c) of this section, the plan may—,
(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated;
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured

claims;
(3) provide for the curing or waiving of any default;
(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any unsecured claim;
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
(6) provide for the payment of all or any part of any claim alowed under section 1305 of this title;
(7) provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title; (8) provide for the payment of all or any part of a claim against the debtor from property of the estate or property of the debtor;
(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity; and
(10) include any other appropriate provision not inconsistent with this title.
(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Section 1323. // 11 USC 1323. // Modification of plan before confirmation

(a) The debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirments of section 1322 of this title.

(b) After the debtor files a modification under this section, the plan as modified becomes the plan.

(c) Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection.

Section 1324. // 11 USC 1324. // Confirmation hearing

After notice, the court shall hold a hearing on the confirmation of the plan. A party in interest may object to the confirmation of the plan.

Section 1325. // 11 USC 1325. // Confirmation of plan

(a) The court shall confirm a plan if—,

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28,

// 28 USC 1911 // or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any

means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured

claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—,

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

(b) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

Section 1326. // 11 USC 1326. // Payments

(a) Before or at the time of each payment to creditors under the plan, there shall be paid—,

(1) any unpaid claim of the kind specified in section 507(a)( 1) of this title; and

(2) if a standing trustee appointed under section 1302(d) is serving in the case, the percentage fee fixed for such standing trustee under section 1302(e) of this title.

(b) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

Section 1327. // 11 USC 1327. // Effect of confirmation

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Section 1328. // 11 USC 1328. // Discharge

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—,

(1) provided for under section 1322 (b)(5) of this title; or

(2) of the kind specified in section 523 (a)(5) of this title.

(b) At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—,

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

(c) A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt—,

(1) provided for under section 1322(b)(5) of this title; or

(2) of a kind specified in section 523 (a) of this title. (d) Notwithstanding any other provision of this section, a discharge

granted under this section does not discharge the debtor from any debt based on an allowed claim filed under section 1305 (a) (2) of this title if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained.

(e) On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—,

(1) such discharge was obtained through fraud; and

(2) knowledge of such fraud came to the requesting party after such discharge was granted.

Section 1329. // 11 USC 1329. // Modification of plan after confirmation

(a) At any time after confirmation but before the completion of payments under a plan, the plan may be modified to—,

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Section 1330. // 11 USC 1330. // Revocation of an order of confirmation

(a) On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

(b) If the court revokes an order of confirmation under subsection (a) of this section, the court shall dispose of the case under section 1307 of this title, unless, within the time fixed by the court, the debtor proposes and the court confirms a modification of the plan under section 1329 of this title.

## CHAPTER 15–UNITED STATES TRUSTEES

Sec. 1501. Applicability of this chapter.

### SUBCHAPTER I–GENERAL PROVISIONS

15101. Definitions. 15102. Rule of construction. 15103. Applicability of subchapters and sections.

### SUBCHAPTER III- CASE ADMINISTRATION

15303. Involuntary cases. 15321. Eligibility to serve as trustee. 15322. Qualification of trustee. 15324. Removal of trustee. 15326. Limitation on compensation of trustee. 15330. Compensation of officers. 15343. Examination of debtor. 15345. Money of estates.

### SUBCHAPTER vii-LIQUIDATION

Sec. 15701. Interim trustee. 15703. Sucessor trustee. 15704. Duties of trustee. 15727. discharge.

### SUBCHAPTER XI–REORGANIZATION

151102. Creditors' and equity security holders' committees. 151104. Appointment of trustee or examiner. 151105. Termination of trustee's appointment. 151163. Appointment of trustee.

### SUBCHAPTER XIII–ADJUSTMENT OF DEBTS OF AN INDIVIDUAL WITH REGULAR INCOME

151302. Trustee. 151326. Paments.

Section 1501. // 11 USC 1501. // Applicability of chapter

This chapter applies only in cases under this title pending in the following districts:
(1) District of Maine, District of New Hampshire, District of Massachusetts, and District of Rhode Island.
(2) Southern District of New York.
(3) District of Delaware and District of New Jersey.
(4) Eastern District of Virginia and District of District of Columbia.
(5) Northern District of Alabama.
(6) Northern District of Texas.
(7) Northern District of Illinois.
(8) District of Minnesota, District of North Dakota, and District of South Dakota.
(9) Central District of California.
(10) District of Colorado and District of Kansas.

### SUBCHAPTER I–GENERAL PROVISIONS

Section 15101. // 11 USC 150101. // Definitions

In this title—,
(1) "entity" includes United States trustee; and
(2) "governmental unit" does not include United States trustee while serving as a trustee in a case under this title.

Section 15102. // 11 USC 15102. // Rule of construction

In this title, a reference to a section that is made inapplicable under section 15103(f) of this chapter refers to the section of this chapter that replaces such inapplicable section.

Section 15103. // 11 USC 15103. // Applicabbility of subchapters and sections

(a) Subchapters I and III of this chapter apply in a case under chapter 7, 11, or 13 of this title, except that section 15343 of this title does not apply in a case concerning a railroad.

(b) Subchapter VII of this chapter applies only in a case under chapter 7 of this title.

(c) Subchapter XI of this chapter applies only in a case under chapter 11 of this title that does not concern a railroad.

(d) Section 151163 of this title applies only in a case concerning a railroad.

(e) Subchapter XIII of this chapter applies only in a case under chapter 13 of this title.

(f) Sections 303(g), 322(b), 324, 326(b), 343 345(b), 701(a), 703( b), 703(c), 704(8), 727(c), 727(d), 727(e), 1102(a), 1104, 1105, 1163, 1302(a), 1302(d), 1302(e), and 1326(a) of this title do not apply in a case under this title.

SUBCHAPTER III- CASE ADMINISTRATION

Section 15303. // 11 USC 15303. // Involuntary cases

At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 15701 of this title to take possession of the property of the estate and to operate any business of the debtor. Before an order for relief, the debtor may regain possession of property in the possession of a trustee ordered appointed under this subsection if the debtor files such bond as the court requires, conditioned on the debtor's accounting for and delivering to the trustee if there is an order for relief in the case, such property, or the value, as of the date the debtor regains possession, of such property.

Section 15321. // 11 USC 15321. // Eligibility to serve as trustee

The United States trustee for the judicial district in which case is pending is eligible to serve as trustee in the case.

Section 15322. // 11 USC 15322. // Qualification of trustee

(a) A United States trustee qualifies whenever such trustee serves in a case under this title.

(b) The United States trustee shall determine—,

(1) the amount of a bond filed under section 322(a)(2); and

(2) the sufficeency of the surety on such bond.

Section 15324. // 11 USC 15324. // Removal of trustee or examiner

The court, after notice and a hearing, may remove a trustee other than the United States trustee, or an examiner, for cause.

Section 15326. // 11 USC 15326. // Limitation on compensation of trustee

In a case under chapter 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586 (b) of title 28, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.

Section 15330. // 11 USC 15330. // Compensation of officers

In a case in which the United States trustee serves as trustee, the compensation of the trustee under section 330 of this title shall be paid to the clerk of the bankruptcy court, and by the clerk, into the Treasury.

Section 15343. // 11 USC 15343. // Examination of the debtor

The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title. Creditors, any indenture trustee, any trustee or examiner in the case, or the United States trustee may examine the debtor.

Section 15345. // 11 USC 15345. // Money of estates

(a) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit or the United States, the trustee shall require from an entity with which such money is deposited or invested—,

(1) a bond—,

  (A) in favor of the United States;

  (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

  (C) conditioned on—,

    (i) a proper accounting for all money so deposited or invested and for any return on such money;

    (ii) prompt repayment of such money and return; and

    (iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 15 of title 6.

(b) The United States trustee may aggregate money of estates for which such United States trustee serves as trustee for deposit or investment under this section, in order to increase the return on such money, taking into account the safety of such deposit or investment. The United States trustee shall maintain complete records identifying separately the money of each estate included in such an aggregation. Any return on any such deposit or investment shall be paid by the United States trustee into the Treasury.

SUBCHAPTER VII- LIQUIDATION

Section 15701. // 11 USC 15701. // Interim trustee

(a) Promptly after the order for relief under chapter 7 of this title, the United States trustee shall appoint one disinterested person that is a member of the panel of private trustee established under section 586(a)(1) of title 28 or that was serving as trustee in the case immediately before the order for relief under this chapter to serve as interim trustee in the case.

(b) If none of such persons is willing to serve as interim trustee in the case, then the United States trustee shall serve as interim trustee in the case.

Section 15703. // 11 USC 15703. // Sucessor trustee

(a) Pending election of a trustee under section 703(a) of this title, if necessary to preserve or pervent loss to the estate, the United States trustee may appoint an interim trustee in the manner specified in section 15701(a) of this title. Section 701(b) and 701(c) of this title apply to such interim trustee.

(b) If creditors do not elect a successor trustee under section 703( a) of this title, or if a trustee is needed in a case reopened under section 350 of this title, then the United States truste shall serve, or shall appoint one disinterested person that is a member of the panel of private trustees established under section 586(a)(1) of title 28 to serve, as trustee in the case.

Section 15704. // 11 USC 15704. // Duties of trustee

The trustee shall make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

Section 15727. // 11 USC 15727. // Discharge

(a)(1) The trustee, a creditor, or the United States trustee may object to discharge under section 727(a) of this title.

(2) On request of a party in interest, the court may order the United States trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

(b) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under section 727(a) of this title if—,

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of, or entitlement to, such property, or to deliver or surrender such property to the trustee; or

(3) the debtor committed an act specified in section 727(a)(6) of this title.

(c) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—,

(1) under section 727(b)(1) of this title within one year after such discharge was granted; or

(2) under section 727(d)(2) or 727(d)(3) of this title before the later of—,

(A) one year after the granting of such discharge; and

(B) the date the case is closed.

## SUBCHAPTER XI- REORGANIZATION

Section 151102. // 11 USC 151102. // Creditors' and equity security holders' committees

(a) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims.

(b) On request of a party in interest of the court may order the appointment of additional committees of creditors or of equity security—, holders if necessary to assure adequate represenation of creditiors or of equity security holders. The United States trustee shall appoint any such committee.

Section 1511049

// 11 USC 151104. //

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—,

(1) for cause, including fraud, dishonesty, incompetence, or

gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case , or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtors or the amount of assets or liabilities of the debtor.

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including and investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the affairs of the debtor of or by current or former management of the debtor, if—,

(1) such appointment is in the best interest of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than

debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

(c) If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person other than the United States trustee to serve as trustee or examiner, as the case may be in the case.

Section 151105. // 11 USC 151163. //

At any time before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate, and operation of the debtor's business.

Section 151163. // 11 USC 151163. // Appointment of trustee

As soon as practicable after the order for relief the Secretary of Transportation shall submit a list of five disinterested persons that are qualified and willing to serve as trustee in the case. The United States trustee shall appoint one of such persons to serve as trustee in the case.

SUBCHAPTER XIII- ADJUSTMENT OF DEBTS OF AN INDIVIDUAL WITH REGULAR INCOME

Sections 151302. Trustee

(a) If the United States trustee has appointed an individual under section 586(b) of title 28 to serve as standing trustee in cases under chapter 13 of this title and if such individual qualifies under section 322 of this title, then such individual shall serve as trustee in the case. The United States trustee shall serve as trustee in the case otherwise.

(b) The trustee shall—,

(1) performthe duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), and 704(8) of this title;

(2) appear and be heard at any hearing that concerns—,

(A) the value of property subject to a lien;

(B) confirmation of a plan; or

(C) modification of the plan after confirmation; and

(3) advise, other than on legal matters, and assist the debtor in performance under the plan.

sections 151326. // 11 USC 151326. // PAUMENTS

Before or at the time of each payment to creditors under the plan, there shall be paid—,

(1) any unpaid claim of the kind specified in section 507(a)( 1) of this title; and

(2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28.

TITLE II— AMENDMENTS TO TITLE 28 OF THE UNITED
STATES CODE AND TO THE FEDERAL RULES OF EVIDENCE

Sec. 201. (a) Title 28 of the United States Code is amended by inserting immediately after chapter 5 the following:

"CHAPTER 6 — BANKRUPTCY COURTS

" Sec. "151. Creation and composition of bankruptcy courts. "152. Appointment of bankruptcy judges. "153. Tenure and residence of bankruptcy judges. "154. Salaries of bankruptcy judges. "155. Chief judge; precedence of bankruptcy judges. "156. Division of business among bankruptcy judges. "157. Times of holding court. "158. Accomodations at places for holding court. "159. Vacant judgeship as affecting proceedings. "160. Appellate panels.

" Section 151. // 28 Usc 151. // Creation and composition of bankruptcy courts

"(a) There shall be in each judicial district, as an adjunct to the district court for such district, a bankruptcy court which shall be a court of record known as the United States Bankruptcy Court for the district.

"(b) Each bankruptcy court shall consist of the bankruptcy judge or judges for the district in regular active service. Justices or judges designated and assigned shall be competent to sit as judges of the bankruptcy court.

"(c) Except as otherwise provided by law, or rule or order of court, the judicial power of a bankruptcy court with respect to any action, suit or proceeding may be exercised by a single bankruptcy judge, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other bankruptcy judges.

" Section 152. // 28 USC 152. // Appointment of bankruptcy judges

" The President shall appoint, by and with the advice and consent of the Senate, bankruptcy judges for the several judicial districts. In each instance, the President shall give due consideration to the recommended nominee or nominees of the Judicial Council of the Circuit within which an appointment is to be made.

" Section. 153. // 28 USC 153. // Tenure and residence of bankruptcy judges

"(a) Each bankruptcy judge shall hold office for a term of 14 years. but may continue to perform the duties of his office until his successor takes office, unless such office has been eliminated.

"(b) Removal of a bankruptcy judge during the term for which he is appointed shall be only for incompetency, misconduct, neglect of duty, or physical or mental disability. Removal shall be by the judicial council of the circuit or circuits in which

the bankruptcy judge serves, but removal may not occur unless a majority of all the judges of such circuit council or councils concur in the order of removal. Before any order of removal may be entered, a full specification of the charges shall be furnished to the bankruptcy judge, and he shall be accorded an opportunity to be heard on the charges. Any cause for removal of any bankruptcy judge coming to the knowledge of the Director of the Administrative Office of the United States Courts shall be reported by him to the chief judge of the circuit or circuits in which he serves, and a copy of the report shall at the same time be transmitted to the circuit council or councils and to the bankruptcy judge.

"(c) Each bankruptcy judge shall reside in the district or one of the districts for which he is appointed, or within 20 miles of his official station.

"(d) If the public interest and the nature of the business of a bankruptcy court require that a bankruptcy judge should maintain his abode at or near a particular part of the district the judicial council of the circuit may so declare and may make an appropriate order. If the bankruptcy judges of such a district are unable to agree as to which of them shall maintain his abode at or near the place or within the area specified in such an order the judicial council of the circuit may decide which of them shall do so. " Section 154. // 28 USC 154. // Salaries of bankruptcy judges

" Each judge of a bankruptcy court shall receive a salary at an annual rate of $50,000, subject to adjustment under section 225 of the Federal Salary Act of 1967 (2 U.S.C. 351 — 361), and section 461 of this title. // 28 USC 461. //

" Section 155. 28 USC 155. // Chief judge; precedence of bankruptcy judges

"(a) In each district having more than one judge the bankruptcy judge in regular active service who is senior in commission and under seventy years of age shall be the chief judge of the bankruptcy court. If all the bankruptcy judges in regular active service are 70 years of age or older the youngest shall act as chief judge until a judge has been appointed and qualified who is under 70 years of age, but a judge may not act as chief judge until he has served as a bankruptcy judge for one year.

"(b) The chief judge shall have precedence and preside at any session which he attends.

" Other bankruptcy judges shall have precedence and preside according to the seniority of their commissions. Judges whose commissions bear the same date shall have precedence according to seniority in age.

"(c) A judge whose commission extends over more than one district shall be junior to all bankruptcy judges except in the district in which he resided at the time he entered upon the duties of his office.

"(d) If the chief judge desires to be relieved of his duties as chief judge while retaining his active status as a bankruptcy judge, he may so certify to the chief judge of the court of appeals for the circuit in which the bankruptcy judge serves, and thereafter the bankruptcy judge in active service next in precedence and willing to serve shall be designated by the chief judge of the court of appeals as the chief judge of the bankruptcy court.

"(e) If a chief judge is temporarily unable to perform his duties as such, they shall be performed by the bankruptcy judge in active service, present in the district and able and qualified to act, who is next in precedence.

"(f) Service as a referee in bankruptcy or as a bankruptcy judge under the Bankruptcy Act // 11 USC prec. 1. // shall be taken into account in the determination of seniority of commission under this section. " Section 156. // // 28 USC 156. // Division of business among bankruptcy judges

" The business of a bankruptcy court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.

" The chief judge of the bankruptcy court shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases so far as such rules and orders do not otherwise prescribe.

"If the bankruptcy judges in any district are unable to agree upon the adoption of rules or orders for that purpose the judicial council of the circuit shall make the necessary orders. " Section 157. // 28 USC 157. // Times of holding court

"(a) The bankruptcy court at each designated location shall be deemed to be in continuous session on all business days throughout the year.

"(b) Each bankruptcy court may establish by local rule or order schedules of court sessions at designated places of holding court other than the headquarters office of the court. Such schedules may be pretermitted by order of the court.

"(c) Bankruptcy court may be held at any place within the territory served, in any case, on order of the bankruptcy court, for the convenience of the parties, on such notice as the bankruptcy court orders.

Section–158. // 28 USC 158. // Accommodations at places for holding court

" Court shall be held only at places where Federal quarters and accommodations are available, or suitable quarters and accommodations are furnished without cost to the United States. The foregoing restrictions shall not, however, preclude the Adminstrator of General Services, at the request of the Director of the Administrative Office of the United States Courts, from providing such court quarters and accommodations as the Administrator determines can appropriately be made available at places where court is authorized by law to be held, but only if such court quarters and accommodations have been approved as necessary by the judicial council of the appropriate circuit.

Section 159. // 28 USC 159. // Vancant judgeship as affecting proceedings

" When the office of a bankruptcy judge becomes vacant, all pending process, pleadings and proceedings shall, when necessary, be continued by the clerk until a judge is appointed or designated to hold such court.

Section 160. // 28 USC 160. // Appellate panels

"(a) If the circuit council of a circuit orders application of this section to a district within such circuit, the chief judge of each circuit shall designate panels of three bankruptcy judge of each circuit shall designate panels of three bankruptcy judges to hear appeals from judgments, orders, and decrees of the bankruptcy court of the United States for such district. Except as provided in section 293(e) of this title, a panel shall be composed only of bankruptcy judges for districts located in the circuit in which the appeal arises. The chief judge shall designate a sufficient number of such panels so that appeals may be heard and disposed of expeditiously.

"(b) A panel designated under subsection (a) of this section may not hear an appeal from a judgment, order, or decree entered by a member of the panel.

"(c) When hearing an appeal, a panel designated under subsection (a) of this section shall sit at a place convenient to the parties to the appeal.".

(b) The table of chapters of part I of title 28 of the United States Code is amended by inserting immediately after the item relating to chapter 5 of such title the following:

"6. Bankruptcy courts——————————————————————- 151".

Sec. 202. Section 291 (c) of title 28 of the United States Code is amended by inserting "or bankruptcy" immediately after "to hold a district".

Sec. 203. Section 292(b) of title 28 of the United States Code is amended by inserting "or a bankruptcy court"immediately after "to hold a district court".

Sec. 204. Section 292(d) of title 28 of the United States Code is amended—,
   (1) by striking out "either";
   (2) by inserting "bankruptcy court," immediately after "in a"; and
   (3) by inserting a comma immediately after "district court".

Sec. 205. Section 293*of* title 28 of the United States Code is amended by adding at the end thereof the following:
   "(e)(1) The Chief Justice of the United States may designate and assign temporarily a bankruptcy judge of one circuit for service in a bankruptcy court in another circuit upon presentation of a certificate of necessity by the chief judge or circuit justice of the circuit wherein the need arises.
   "(2) The chief judge of a circuit may, in the public interest, designate and assign temporarily a bankruptcy judge of the circuit to hold a bankruptcy court in any district within the cirucuit."

Sec. 206. Section 294 of title 28 of the United States Code is amended—,
   (1) in subsection (c), by deleting "or district" and inserting "district or bankruptcy judge"; and
   (2) in subsection (d), by striking out "or district judge" and inserting in lieu thereof "district judge or bankruptcy judge".

Sec. 207. Section 295 of title 28 of the United States Code is amended by striking out "or district" and inserting in lieu thereof "district, or bankruptcy".

Sec. 208. Section 331 of title 28 of the United States Code is amended—,

(1) by striking out "and a district judge from each judicial circuit" in the first sentence of the first paragraph thereof and inserting "a district judge from each judicial circuit, and two bankruptcy judges" in lieu thereof;

(2) by inserting "circuit and district" in the second paragraph—,

(A) immediately after "amended section the";

(B) immediately after "for one year, the"; and

(C) immediately after "two years and the";

(3) by inserting immediately after the second paragraph the following: " The bankruptcy judges to be summoned shall be chosen at large by all the bankruptcy judges. Each bankruptcy judge chosen shall serve as a member of the conference for three successive years, except that in the year following the effective date of this sentence the bankruptcy judges shall choose one bankruptcy judge to serve for two years.";

(4) by inserting "or a bankruptcy judge chosen by the bankruptcy judges" immediately after "judges of the circuit" in the first sentence in the third paragraph; and

(5) by inserting "or any other bankruptcy judge" immediately before the period in the first sentence in the third paragraph.

Sec. 209. Section 332(d) of title 28 of the United States Code is amended by inserting "and bankruptcy judges" immediately after "The district judges".

Sec. 210. Section 333 of title 28 of the United States Code is amended by striking out "and district" and inserting in lieu thereof ", district, and bankruptcy".

Sec. 211. Section 376(a)(2)(A) of title 28 of the United States Code is amended by inserting ", or (iii) in the case of a bankruptcy judge, after retirement under section 337 of this title" immediately before the semicolon.

Sec. 213. Section 451 of title 28 of the United States Code is amended—,

(1) by inserting a comma and "and bankruptcy courts, the judges of which are entitled to hold office for a term of 14 years" immediately before the period at the end of the paragraph beginning with "The term 'court of the United States'"; and

(2) by inserting a comma and "and judge of the bankruptcy courts, the judges of which are entitled to hold office for a term of 14 years" immediately before the period at the end of the paragraph beginning with "The term 'judge of the United States'".

Sec. 214. (a) Section 455 (a) and 455(e) of title 28 of the United States Code are each amended by striking out "magistrate, or referee in bankruptcy" each place it appears and inserting in lieu thereof "or magistrate".

(b) The heading for section 455 of title 28 of the United States Code is amended by striking out "magistrate, or referee in bankruptcy" and inserting lieu thereof, "or magistrate".

(c) The item relating to section 455 in the table of sections of chapter 21 of title 28 of the United States Code is amended by striking out "magistrate, or referee in bankruptcy" and inserting in lieu thereof "or magistrate".

Sec. 215. Section 456 of title 28 of the United States Code is amended—,

(1) by striking out "and the United States District Court for the District of Columbia," and inserting in lieu thereof "the United States District Court for the District of Columbia, and the United States bankruptcy Court for the District of Columbia,",

(2) by striking out "and district" and inserting in lieu thereof ",district and bankruptcy"; and

(3) by stricking out "and each district judge" and inserting in lieu thereof", each district judge; and each bankruptcy judge".

Sec. 216. Section 457 of title 28 of the United States Code is amended by inserting "of bankruptcy courts," immediately after "The record".

Sec. 217. (a) The heading for section 460 of title 28 of the Untied States Code is amended by striking out "Alaska,".

(b) The item relating to section 460 in the table of sections of chapter 21 of title 28 of the United States Code is amended by striking out "alaska,".

Sec.218. Section 506 of title 28 of the United States Code is amended by striking out "nine" and inserting in lieu thereof "ten".

Sec. 219. (a) Section 526(a)(1) of title 28 of the United States Code is amended by striking out "and marshals" and inserting in lieu thereof ", marshals, and trustees".

(b) The heading for section 526 of title 28 of the United States Code is amended by striking out "and marshals" and inserting in lieu thereof ", marshals, and trustees".

(c) The item relating to section 526 in the table of sections of chapter 31 of title 28 of the United States Code is amended by striking out "and marshals" and inserting in lieu thereof ", marshals, and trustees".

Sec. 220. Section 526(a)(2) of title 28 of the United States Code is amended—,

(1) by striking out "referees,";

(2) by striking out "and receivers in bankruptcy" and inserting

in lieu thereof "in cases under title 11"; and

(3) by striking out "commissioners" and inserting "magistrates" in lieu thereof.

Sec. 221. Section 569(a) of title 28 of the United States Code is amended by striking out "of the district court" and inserting in lieu thereof "of the bankruptcy, of the district court,".

Sec. 222. Section 571(a) of title 28 of the United States Code is amended—,

(1) by striking out "and of the marshals" and inserting in lieu thereof "of the marshals"; and

(2) by inserting ",and of the United States trustees, their assistants, staff and other employees" immediately after "clerical assistance".

Sec.223. Section 571(b) of title 28 of the United States Code is amended by striking out "and district" and inserting in lieu thereof ",district, and bankruptcy".

Sec.224. (a) Title 28 of the United States Code is amended by inserting immediately after chapter 37 the following:

"CHAPTER 39–UNITED STATES TRUSTEES

" Sec. "581. United States trustees. "582. Assistant United States trustees "583. Oath of office. "584. Official stations. "585. Vacancies. "586. Duties; supervision by Attorney General. "587. Salaries. "588. Expenses. "589. Staff and other employees.

" Section 581. // 28 USC 581. // United States trustees

"(a) The Attorney General shall appoint one United States trustee for each of the following districts or groups of districts:

"(1) District of Maine, District of New Hampshire, District of Massachusetts, and District of Rhode Island.

"(2) Southern District of New York.

"(3) District of Delaware and District of New Jersey.

"(4) Eastern District of Virginia and District of District of Columbia.

"(5) Northern District of Alabama.

"(6) Northern District of Texas.

"(7) Northern District of Illinois.

"(8) District of Minnesota, District of North Dakota, District of South Dakota.

"(9) Central District of California.

"(10) District of Colorado and District of Kansas.

"(b) Each United States trustee shall be appointed for a term of seven years. On the expiration of his term, a United States trustee shall continue to perform the duties of his Office until his successor is appointed and qualifies.

"(c) Each United States trustee is subject to removal for cause by the Attorney General.

" Section 582. // 28 USC 582. // Assistant United States trustees

"(a) The Attorney General may appoint one or more assistant United States trustees in any district when the public interest so requires.

"(b) Each assistant United States trustee is subject to removal for cause by the Attorney General.

" Section 583. // 28 USC 583. // Oath of office

" Each United States trustee and assistant United States trustee, before taking office, shall take an oath to execute faithfully his duties.

" Section 584. // 28 USC 584. // Official stations

"The Attorney General may determine the official stations of the United States trustees and assistant United States trustees within the districts for which they were appointed.

" Section 585. // 28 USC 585. // Vacancies

"The Attorney General may appoint an acting United States trustee for a district in which the office of United States trustee is vacant, or may designate a United States trustee for another judicial district to serve as trustee for the district in which such vacancy exists. The individual so appointed or designated may serve until the earlier of 90 days after appointment or designation, as the case may be, or the date on which the vacancy is filled by appointment under section 581 of this title.

" Section 586. // 28 USC 586. // Duties; supervision by Attorney General

"(a) Each United States trustee, within his district, shall—,

"(1) establish, maintain, and supervise a panel of private

trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11;

"(2) serve as and perform the duties of a trustee in a case under title 11 when required under title 11 to serve as trustee in such a case;

"(3) supervise the administration of cases and trustees in cases under chapter 7, 11, or 13 of title 11;

"(4) deposit or invest under section 345 of title 11 money recived as trustee in cases under title 11;

"(5) perform the duties prescribed for the United States trustee under title 11; and

"(6) make such reports as the Attorney General directs.

"(b) If the number of cases under chapter 13 of title 11 commenced in a particular judicial district so warrant, the United States trustee for such district may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee, or designate one or more assistant United States trustee, in cases under such chapter. The United States trustee for such district shall supervise any such individual appointed as standing trustee in the performance of the duties of standing trustee.

"(c) each United States trustee shall be under the general supervision of the Attorney General, who shall provide general coordination and assistance to the United States trustees.

"(d) The Attorney General shall prescribe by rule qualifications for membership on the panels established by United States trustees under subsection (a)(1) of this section, and qualifications for appointment under subsection (b) of this section to serve as standing trustee in cases under chapter 13 of title 11. The Attorney General may not require that an individual be an attorney in order to qualify for appointment under subsection (b) of this section to serve as standing trustee in cases under chapter 13 of title 11.

"(e)(1) The Attorney General, after consulation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 13 of title 11, shall fix—,

"(a) a maximum annual compensation for such individual, not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the General Schedule prescribed under section 5332 of title 5;

// 5 USC 5332 // and

"(b) a precentage fee, not exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

"(2) Such individual shall collect such percentage fee from all payments under plans in the cases under chapter 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall pay to the Treasury—,

"(A) any amount by which the actual compensation of such individual exceeds five percent upon all payments under plans in cases under chapter 13 of title 11 for which such indivivdual serves as standing trustee; and

"(B) any amount by which the percentage for all such cases exceeds—,

"(i) such individual actual compensation for such cases. as adjusted under subparagraph (A) of this paragraph; plus

"(ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases.

" Section 587. // 28 USC 587. // Salaries.

" The Attorney General shall fix the annual salaries of United States trustees and assistant United States trustees at rates of compensation not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the General Schedule prescribed under section 5332 of title 5.

" Section 588. // 28 USC 588. // Expenses

"Necessary office expenses of the United States trustee shall be allowed when authorized by the Attorney General.

" Section 589. // 28 USC 589. // Staff and other employees

"The United States trustee may employ staff and other employees on approval of the Attorney General.".

(b) The table of chapters of part II of title 28 of the United States Code is amended by inserting at the end thereof the following:

"39. United States Trustees——————————581".

Sec. 225.(a) Section 604(a) of title 28 of the United States Code is amended—,

(1) by redesignating paragraph (13) as paragraph (14); and

(2) by inserting immediately after paragraph (12) the following:

"(13) Lay before Congress, annually, statistical tables that will accurately reflect the business transacted by the several bankruptcy courts, and all other pertinent data relating to such courts;".

(b) Section 604 of title 28 of the United States Code, is amended by adding at the end thereof the following:

"(f) For each bankruptcy court, the Director shall name qualified persons to membership on the panel of trustees. The number and qualifications of persons named to membership on the panel of trustees shall be determined by rules and regulations to be adopted by the Director. An individual named to membership on the panel of trustees shall have a residency or office in the State served by the court or in any adjacent State. A corporation named to membership on the panel of trustees shall be authorized by its charter or by law to act as trustee and shall have an office in the State served by the court. The Director on his own initiative may at any time remove for cause a person named to a panel of trustees or remove a trustee appointed from the panel.".

Sec. 226. Section 610 of title 28 of the United States Code is amended by striking out "and district courts" and inserting in lieu thereof ",district courts, and bankruptcy courts".

Sec. 227. Section 620(b)(3) of title 28 of the United States Code is amended—,

(1) by striking out "referees,";and

(2) by striking out "commissioners" and inserting "magistrates" in lieu thereof.

Sec. 228. Section 621(a)(2) of title 28 of the United States Code is amended by striking out "and three active judges of the district courts of the United States" and inserting in lieu thereof ", three active judges of the district courts of the United States, one active judge of the bankruptcy courts of the United States".

Sec. 229. Section 621(b) of title 28 of the United States Code is amended by striking out everything after "years" down through "That a" and inserting in lieu thereof". A".

Sec. 230. Chapter 42 of title 28 of the United States Code // 28 USC 620. // is amended—,

(1) by striking out the item relating to section 629 in the table of sections.

Sec. 231. Section 631(c) of title 28 of the United States Code is amended—,

(1) by striking out "of the conference, a part-time referee in bankruptcy or" and inserting in lieu thereof"of the conference,"; and

(2) by striking out "magistrate and part-time referee in bankruptcy," and inserting in lieu thereof "magistrate and".

Sec. 232. Section 634(a) of title 28 of the United States Code is amended by striking out "for full-time and part-time United States magistrates not to exceed the rates now or hereafter provided for full–time and part-time referees in bankruptcy, respectively, referred to in section 40a of the Bankruptcy Act (11 U.S.C. 68(a)), as amended,",and inserting in lieu thereof "not to exceed $48,500 per annum, subject to adjustment in accordance with section 225 of the Federal Salary Act of 1967 and section 461 of this title,". // 2 USC 351. //

Sec. 233. (a) Title 28 of the United States Code is amended by inserting immediately after chapter 49 the following:

"CHAPTER 50–BANKRUPTCY COURTS

" Sec. "771. Clerks. "772. Other employees. "773. Records of proceedings; reporters. "774. Power to appoint. "775. Salaries of employees.

" Section 771. // 28 USC 771. // Clerks

"(a) Based on need each bandruptcy court may appoint a clerk who shall be subject to removal only by the court.

"(b) The clerk may appoint, with the approval of the court, necessary deputies, clerical assistants, and employees in such number as may be approved by the Director of the Administrative Office of the United States Courts. Such deputies, clerical assistants, and employees shall be subject to removal only by the clerk with the approval of the court. If there is no clerk, the Bankruptcy Judge shall perform the duties of this subsection.

"(c) The clerk of each bankruptcy court shall reside in the district for which he is appointed. The bankruptcy court may designate places within the district for the offices of the clerk and his deputies, and their official stations.

"(d) A clerk of a bankruptcy court or his deputy or assistant shall not receive any compensation or emoluments through any office or position to which he is appointed by the court, other than that received as such clerk, deputy or assistant, whether from the United States or from private litigants.

"(e) The clerk of each bankruptcy court shall pay into the Treasury all fees, costs and other moneys collected by him, except uncollected fees not required by Act of Congress to be prepaid.

" He shall make returns thereof to the Director of the Administrative Office of the United States Courts under regulations prescribed by him. " Section 772. // 28 USC 772. // Other employees

" Bankruptcy judges may appoint necessary other employees, including law clerks and secretaries, subject to any limitation on the aggregate salaries of such employees which may be imposed by law.

"Section 773. // 28 USC 773. // Records of proceedings; reporters

"(a) The bankruptcy court shall require a record to be made, whenever practicable, of all proceedings in cases had in open court. The Judicial Conference shall prescribe that the record be taken by electronic sound recording means, by a court reporter appointed or employed by such bankruptcy court to take a verbatim record by shorthand or mechanical means, or by an employee of such court designated by such court to take such a verbatim record.

"(b) On the request of a party to a proceeding that has been recorded who has agreed to pay the fee for a transcript, or a judge of the bankruptcy court, a transcript of the original record of the requested parts of such proceeding shall be made and delivered promptly to such party or judge. Any such transcript that is certified shall be deemed prima facie a correct statement of the testimony taken and and proceedings had. No transcript of the proceedings of the bankruptcy court shall be considered as official except those made from certified records.

"(c) Fees for transcripts furnished in proceedings to persons permitted to appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question).

" Section 774. // 28 USC 774. // Power to appoint

" Whenever a majority of the bankruptcy judges of any bankruptcy court cannot agree upon the appointment of any officer of such court, the chief judge shall make such appointment.

" Section 775. // 28 USC 775. //

Salaries of employees

"The salary of an individual appointed or employed under section 771(a), 772, or, 773(a) of this title shall be the same as the salary of an individual appointed or employed under section 751(a), 752, or 753(a) of this title, as the case may be. The salaries of individuals appointed under section 771(b) of this title shall be comparable to the salaries of individuals appointed under section 751(b) of this title."

(b) The table of chapters of part III of title 28 of the United States Code is amended by inserting immediately after the item relating to chapter 49 the following:

"50. Bankruptcy Courts——————————————————771".

Sec. 234. Section 957(a) of title 28 of the United States Code is amended by inserting "or bankruptcy court" immediately after after "distric court".

Sec. 235. Section 959(b) of title 28 of the United States Code is amended by striking out "A" and inserting in lieu thereof "Except as provided in section 1166 of title 11, a".

sec. 236. (a) Chapter 83 of title 28 of the United States Code // 28 USC 1291 // is amended by inserting immediately after section 1292 the following:

"Section 1293. // 28 USC 1293. // Bankruputcy appeals

"(a) The courts of appeals shall have jurisdiction of appeals from all final decisions of panels designated under section 160(a) of this title.

"(b) Notwithstanding section 1482 of this title, a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of an appellate panel created under section 160 or a District court of the United States or from a final judgement, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.".

(b) The table of sections of chapter 83 of title 28 of the United States Code is amended by inserting immediately after the item relating to section 1292 the following:

"1293. Bankruptcy appeals.".

Sec. 237. Section 1294 of title 28 of the United States Code is amended—,

(1) by striking out "district and territorial" and inserting in lieu therof "district, bankruptcy, and territorial";

(2) by striking out the period at the end thereof and inserting a semicolon; and

(3) by adding at the end thereof the following:

"(5) From a panel designated under section 160(a) of this title to the court of appeals for the circuit in which the panel was so designated;

"(6) From a bankruptcy court of the United States to the court of appeals for the circuit embracing the district in which the bankruptcy court is located.".

Sec. 238. (a) Section 1334 of title 28 of the United States Code is amended to read as follows:

" Section 1334. // 28 USC 1334. // Bankruptcy appeals

"(a) The district courts for districts for which panels have not been ordered appointed under section 160 of this title shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts.

"(b) The district courts for such districts shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken.

"(c) A district court may not refer an appeal under that section to a magistrate or to a special master.".

(b) The table of sections of chapter 85 of title 28 of the United States Code is amended by striking out the item relating to section 1334 and inserting in lieu thereof the following:

"1334. Bankruptcy appeals.".

Sec. 239. Section 1360(a) of title 28 of the United States Code is amended by striking out "within the Territory" and inserting in lieu thereof "within the State".

Sec. 240. (a) Chapter 87 of title 28 of the United States Code is amended by adding at the end thereof the following:

" Section 1408. // 28 USC 1408. // Bankruptcy appeals

"An appeal under section 1334 of this title from a judgment, order, or decree of a bankruptcy court may be brought only in the judicial district in which such bankruptcy court is located.".

(b) The table of sections of chapter 87 of title 28 of the United States Code // 28 USC 1391 // is amended by adding at the end thereof the following:

"1408. Bankruptcy appeals.".

Sec. 241. (a) Title 28 of the United States Code is amended by inserting immediately after chapter 89 the following:

"CHAPTER 90—DISTRICT COURTS AND bankruptcy COURTS

" Sec. "1471. Jurisdiction. "1472. Venue of cases under title 11. "1473. Venue of proceedings arising under or related to cases under title 11. "1474. Venue of cases ancillary to foreign proceedings. "1475. Change of venue. "1476. Creation or alteration of

district or division. "1477. Cure or waiver of defects. "1478. Removal to the bankruptcy courts. "1479. Provisional remedies; security. "1480. Jury trials. "1481. Powers of bankruptcy court. "1482. Appeals.

" Section 1471. // 28 USC 1471. // Jurisdiction

"(a) Except as provided in susbection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

"(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

"(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

"(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

"(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

Section 1472. // 28 USC 1472. // Venue of cases under title 11

" Except as provided in section 1474 of this title, a case under title 11 may be commenced in the bankruptcy court for a district—,

"(1) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180–day period than the domicile, residence, principal place of business, in the United States, or principle assets, in the United States, of such person were located in any other district; or

"(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

" Section 1473. // 28 USC 1473. // Venue of proceedings arising under or related to cases under title 11

"(a) Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending.

"(b) Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,000 or a consumer debt of less than $5,000 only in the bankruptcy court for the district in which a defendant resides.

"(c) Except as provided in section (b) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case as statutory successor to the debtor or creditors under section 541 or 544(b) of title 11 in the bankruptcy court for the district where the State or Federal court sits in which, under applicable nonbankruptcy venue provisions, the debtor or creditors, as the case may be, may have commenced an action on which such proceeding is based if the case under title 11 had not been commenced.

"(d) A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the bankruptcy court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.

"(e) A proceeding arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the bankruptcy court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim, or in the bankruptcy court in which such case in pending.

" Section 1474. // 28 USC 1474. // Venue of cases ancillary to foreign proceedings

"(a) A case under section 304 of title 11 to enjoin the commencement or continuation of an action or proceeding in a State or Federal court, or the enforcement of a judgment, may be commenced only in the bankruptcy court for the district where the State or Federal court sits in which is pending the action or proceeding against which the injunction is sought.

"(b) A case under section 304 of title 11 to enjoin the enforcement of a lien against property, or to require turnover of property of an estate, may be commenced only in the bankruptcy court for the district in which such property is found.

"(c) A case under section 304 of title 11, other than a case specified in subsection (a) or (b) of this section, may be commenced only in the bankruptcy court for the district in which is located the principal assets in the United States, of the estate that is the subject of such case.

" Section 1475. // 28 USC 1475. // Change of venue

" A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

" Section 1476. // 28 USC 1476. // Creation or alteration of district or division

"Cases or proceedings pending at the time of the creation of a new district or division or transfer of a county or territory from one division or district to another may be tried in the district or division as it existed at the institution of the case or proceeding, or in the district or division so created or to which the county or territory is so transferred as the parties shall agree or the court direct.

" Section 1477. // 28 USC 1477. // Cure or waiver of defects

"(a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice and for the convenience of the parties, retain such case or proceeding, or may transfer, under section 1475 of this title, such case or proceeding to any other district or division.

"(b) Nothing in this chapter shall impair the jurisdiction of a bankruptcy court of any matter involving a party who does not interpose timely and sufficient objection to the venue.

" Section 1478. // 28 USC 1478. // Removal to the bankruptcy courts

"(a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

"(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.

" Section 1479. // 28 USC 1479. // Provisional remedies; security

"(a) Whenever any action is removed to a bankruptcy court under section 1478 of this title, any attachment or sequestration of the goods or estate of the defendant in such action shall hold the goods or estate to answer the final judgment or decree in the same manner as they would have been held to answer final judgment or decree had it been rendered by the court from which the action was removed, unless the attachment or sequestration is invalidated under applicable law.

"(b) Any bond, undertaking, or security given by either party in an action prior to removal under section 1478 of this title shall remain valid and effectual notwithstanding such removal, unless such bond, undertaking, or other security is invalidated under applicable law.

"(c) All injunctions, orders, or other proceedings in an action prior to removal of such action under section 1478 of this title shall remain in full force and effect until dissolved or modified by the bankruptcy court.

" Section 1480. // 28 USC 1480. // Jury trials

"(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

"(b) The bankruptcy court may order the issues arising under section 303 of title 11 to be tried without a jury.

" Section 1481. // 28 USC 1481. // Powers of bankruptcy court

" A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.

" Section 1482. // 28 USC 1482. // Appeals

"(a) Panels designated under section 160(a) of this title shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts.

"(b) Panels designated under section 160(a) of this title shall have jurisdiction of appeals from interlocutory judgments, orders, and decrees of bankruptcy courts, but only by leave of the panel to which the appeal is taken.".

(b) The table of chapters of part IV of title 28 of the United States Code is amended by inserting immediately after the item relating to chapter 89 the following:

"90. District Courts and Bankruptcy Courts——————————————1471".

Sec. 242. Section 1656 of title 28 of the United States Code is amended by inserting "or in a bankruptcy court" immediately after "a district court".

Sec. 243. Section 1869(f) of title 28 of the United States Code is amended by inserting "chapter 6 of title 28, United States Code," immediately after "chapter 5 of title 28, United States Code,".

Sec. 244. Section 1914(a) of title 28 of the United States Code is amended by striking out "$15" and inserting "$60" in lieu thereof.

Sec. 245. Section 1923(b) of title 28 of the United States Code is amended by inserting "and United States trustees" immediately after " United States attorneys".

Sec. 246. (a) Chapter 123 of title 28 of the United States Code is amended by inserting immediately after section 1929 the following:

"Section 1930. // 28 USC 193*o*. // Bankruptcy courts

"(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the bankruptcy court the following filing fees:

"(1) For a case commenced under chapter 7 or 13 of title 11, $60.

"(2) For a case commenced under chapter 9 of title 11, $300.

"(3) For a case commenced under chapter 11 of title 11 that does not concern a railroad, as defined in section 101 of title 11, $200.

"(4) For a case commenced under chapter 11 of title 11 concerning a railroad, as so defined, $500.

An individual commencing a voluntary case or a joint case under title 11 may pay such fee in installments.

"(b) The Judicial Conference of the United States may prescribe additional fees in cases under title 11 of the same kind as the Judicial Conference prescribes under section 1914(b) of this title.

"(c) Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or a writ of certiorari $5 shall be paid to the clerk of the bankruptcy court, by the appellant or petitioner.

"(d) Whenever any case or proceeding is dismissed in any bankruptcy court for want of jurisdiction, such court may order the payment of just costs.

"(e) The clerk of the bankruptcy court may collect only the fees prescribed under this section.".

(b) The table of sections of chapter 123 of title 28 of the United States Code is amended by adding at the end thereof the following:

"1930. Bankruptcy courts.".

Sec. 247. Section 2075 of title 28 of the United States Code is amended by—,

(1) striking out "under the Bankruptcy Act" and inserting in lieu thereof "in cases under title 11"; and

(2) by striking out the last sentence thereof.

Sec. 248. Section 2107 of title 28 of the United States Code is amended—,

(1) by inserting "or the bankruptcy court" immediately after "district court"; and

(2) by striking out the final paragraph.

Sec. 249. Section 2201 of title 28 of the United States Code is amended by inserting "or a proceeding under section 505 or 1146 of title 11" immediately after "the Internal Revenue Code of 1954".

Sec. 250. (a) Chapter 153 of title 28 of the United States Code is amended by adding at the end thereof the following:
" Section 2256. // 28 USC 2256. // Habeas corpus from bankruptcy courts
"A bankruptcy court may issue a writ of habeas corpus—,
"(1) when appropriate to bring a person before the court—,
"(A) for examination;
"(B) to testify; or
"(C) to perform a duty imposed on such person under this title; or
"(2) ordering the release of a debtor in a case under title 11 in custody under the judgment of a Federal or State court if—,
"(A) such debtor was arrested or imprisoned on process in any civil action;
"(B) such process was issued for the collection of a debt—,
"(i) dischargeable under title 11; or
"(ii) that is or will be provided for in a plan under chapter 11 or 13 of title 11; and
"(C) before the issuance of such writ, notice and a hearing have been afforded the adverse party of such debtor in custody to contest the issuance of such writ.".
(b) The table of sections for chapter 153 of title 28 of the United States Code is amended by adding at the end thereof the following:
"2256. Habeas corpus from bankruptcy courts.".
Sec.251.(a) Rule 1101(a) of the Federal Rules of evidence // 28 USC app. // is amended by striking out ", referees in bankruptcy,".
(b) Rule 1101(b) of the Federal Rules of Evidence is amended by striking out "the Bankruptcy Act" and inserting in lieu thereof "title 11, United States Code".

Sec. 252. Rule 1101(a) of the Federal Rules of Evidence is amended by inserting "the United States bankruptcy courts," immediately after "the United States district courts,".

TITLE III- AMENDMENTS TO OTHER ACTS
Sec. 301. Section 225(f)(C) of the Federal Salary Act of 1967 (2 U. S.C. 356(C)) is amended—
(1) by striking out "sections 402(d) and" and inserting "section" in lieu thereof; and
(2) by inserting "and magistrates" immediately before the semicolon.
Sec.302. The Commodity Exchange Act (7 U.S.C. 1 et seq.) is amended by adding at the end thereof the following: ""Sec. 19. (a) Notwithstanding title 11 of the United States Code, // 7 USC 24. // the Commission may provide, with respect to a commodity broker that is a debtor under chapter 7 of title 11 of the United States Code, by rule or regulation—
"(1) that certain cash, securities, other property, or commodity contracts are to be included in or excluded from customer property or member property;
"(2) that certain cash, securities, other property, or commodity contracts are to be specifically identifiable to a particular customer

in a specific capacity; "(3) the method by which the business of such commodity

broker is to be conducted or liquidated after the date of the filing of the petition under such chapter;
"(4) any persons to which customer property and commodity contracts may be transferred under section 766 of title 11 of the United States code; and "(5) how the net equity of a customer is to be determined.
"(b) As used in this section, the terms 'commodity broker', 'commodity contract', 'customer', 'customer property', 'member property', 'net equity', and 'security' have the meanings assigned such terms for the purposes of subchapter IV of chapter 7 of title 11 of the United States Code."
Sec.303. (a) Subsection (a) of section 4 of the Perishable Agricultural Commodities Act, 1930(7 U.S.C. 499d(a)), is amended by inserting ",unless the Secretary finds upon examination of the circumstances of such bankruptcy, which he shall examine if requested to do so by said licensee, that such circumstances do not warrant such termination" immediately after "bankrupt".
(b) Subsection (e) of section 4 of such Act (7 U.S.C. 499d(e)) is amended by inserting "and if he finds that the circumstances of such bankruptcy warrant such a refusal," immediately after "corporation adjudicated or discharged as a bankrupt,".

Sec. 304. Section 21(a) of the Agricultural Adjustment Act (7 U.S.C. 623(a)) is amended—

(1) by striking out "receivership, and bankruptcy" and inserting "and receivership" in lieu thereof; and

(2) by striking out "bankruptcy," in the second sentence.

Sec.305. The first section of the Act entitled " An Act to authorize the Secretary of Agriculture to compromise, adjust, or cancel certain indebtedness, and for other purposes." approved December 20, 1944 (58 Stat. 836; 12 U.S.C. 1150), is amended by striking out "Act entitled ' An Act to establish a uniform system of bankruptcy throughout the United States'" and inserting "Bankruptcy Act or under title 11 of the United States Code" in lieu thereof.

Sec. 306. (a) Section 3(a)(7) of the Securities Act of 1933 (15 U.S. C. 77c(a)(7)) is amended by striking out "in bankruptcy" and inserting "or debtor in possession in a case under title 11 of the United States Code" in lieu thereof.

(b) Paragraphs (9) and (10) of section 3(a) of such Act (15 U.S.C. 77c(a) (9) and (10)) are each amended by striking out "Any" and inserting in lieu thereof the following: "Except with respect to a security exchanged in a case under title 11 of the United States Code, any".

Sec. 307. Section 303(18) of the Trust Indenture Act of 1939 (15 U. S. C. 77ccc(18)) is amended by striking out "Act entitled ' An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, as amended, whether amended prior to or after the enactment of this title" and inserting "Bankruptcy Act or title 11 of the United States Code" in lieu thereof.

Sec. 308.(a) Section 5(b)(1)(A) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(b)(1)) is amended—

(1) by striking out "the Bankruptcy Act" and inserting "section 101 of title 11 of the United States Code" in lieu thereof;

(2) by striking out subparagraph (B) thereof; and

(3) by redesignating subparagraphs (C), (D), and (E) as subparagraphs (B), (C), and (D), respectively.

(b) Section 5(b) (2) (A) (iii) of such Act (15 U.S.C. 78eee(b) (2) (A) (iii)) is amended by striking out "bankruptcy by the Bankruptcy Act" and inserting "the United States having jurisdiction over cases under title 11 of the United States Code" in lieu thereof.

(c) Section 5(b) (2) (B) (iii) of such Act (15 U.S.C. 78eee(b) (2) (B) (iii)) is amended by striking out ", the right of setoff provided in section 68 of the Bankruptcy Act, // 11 USC 108 // and" and inserting in lieu thereof "any right of setoff, except to the extent such right may be affected under section 553 of title 11 of the United States Code, and shall not abrogate".

(d) Section 5(b) (3) of such Act (15 U.S.C. 78eee(b) (3)) is amended by striking out "the applicable provisions of the Bankruptcy Act" and inserting "section 322 of title 11 of the United States Code" in lieu thereof.

(e) Section 5(b) of such Act (15 U.S.C. 78eee(b)) is amended by striking out paragraph (4) thereof and inserting in lieu thereof the following:

"(4) REMOVAL TO BANKRUPTCY COURT.- Upon the issuance of a protective decree and appointment of a trustee, or a trustee and counsel, under this section, the court shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under title 11 of the United States Code. The latter court shall thereupon have all of the jurisdiction, powers, and duties conferred by this Act upon the court to which application for the issuance of the protective decree was made."

(f) Section 5(b) (5) of such Act (15 U.S.C. 78eee(b) (5)) is amended—

(1) by striking out subparagraph (B);

(2) by striking out "the Bankruptcy Act governing applications for allowances under such Act" in subparagraph (C) and inserting "title 11 of the United States Code governing applications for allowances under such title";

(3) by striking out "C" in subparagraph (D) and inserting "(B)" in lieu thereof;

(4) by striking out "the Bankruptcy Act" in subparagraph (E) and inserting "section 504 of title 11 of the United States Code" in lieu thereof; and

(5) by redesignating subparagraphs (C), (D), (E), and (F) as subparagraphs (B), (C), (D), and (E), respectively.

(g) Section 6(b) of such Act (15 U.S.C. 78fff(b)) is amended—,

(1) by striking out ",the Bankruptcy Act." and all that follows through the end of subsection (b), and inserting in lieu thereof "chapters 1,3, and 5 and subchapters I and II of chapter 7 of title 11 of the United States Code. For the purposes of applying such title in carrying out this section, a reference in such title to the date of the filing of the petition shall be deemed to be a reference to the filing date under this Act."; and

(2) by striking out "Application of Bankruptcy Act" and inserting "Application of Title 11 of the United States Code" in lieu thereof.

(h) Section 6(e) of such Act (15 U.S.C. 78fff(e)) is amended—,

(1) by striking out "in the Bankruptcy Act" and inserting "in section 726 of title 11 of the United States Code" in lieu thereof; and

(2) by striking out "as a first priority under the Bankruptcy

Act" and inserting "under section 507(a) (1) of title 11 of the United States Code" in lieu thereof.

(i) Section 7(a) of such Act (15 U.S.C. 78fff–1(a)) is amended by striking out "bankruptcy under the Bankruptcy Act has with respect to a bankruptcy and the property of a bankrupty" and inserting "a case under title 11 of the United States Code" in lieu thereof.

(j) Section 7(b) of such Act (15 U.S.C. 78fff–1(b)) is amended by striking out "in bankruptcy" and inserting "in a case under chapter 7of title 11 of the United States Code, including, if the debtor is a commodity broker, as defined under section 101 of such title, the duties specified in subchapter IV of such chapter 7," in lieu thereof.

(k) Section 7(c) of such Act (15 U.S.C. 78fff–1(c)) is amended by striking out "by the Bankruptcy Act" and inserting "of a trustee in a case under chapter 7 of title 11 of the United States Code" in lieu thereof.

(1) Section 8(a) (1) of such Act (15 U.S.C. 78fff–2(a) (1)) is amended by striking out "the Bankruptcy Act" and inserting "title 11 of the United States Code" in lieu thereof.

(m) Section 8(c) (3) of such Act (15 U.S.C. 78fff–2(c) (3)) is amended by striking out "the Bankruptcy Act" and inserting "title 11 of the United States Code" in lieu thereof.

(n) Section 10(e) of such Act (15 U.S.C. 78fff–4(e)) is amended—

(1) by striking out "Jurisdiction of District Courts" and inserting "Jurisdiction of Bankruptcy Courts" in lieu thereof;

(2) by striking out "district courts of the United States" and inserting "courts of the United States having jurisdiction over

cases under title 11 of the United States Code" in lieu thereof; and

(3) by striking out ", without regard to the citizenship of the parties or the amount in the controversy".

(o) Section 16 of such Act (15 U.S.C. 78*lll*) is amended—

(1) by striking out paragraph (1) thereof;

(2) by striking out paragraph (8) (A) thereof and inserting in lieu thereof the following:

"(A) if a petition under title 11 of the United States Code concerning the debtor was filed before such date, the term 'filing date' means the date on which such petition was filed;" and

(3) by redesignating paragraphs (2) through (15) thereof as paragraphs (1) through (14), respectively.

Sec. 309. Section 11(f) of the Public Utility Holding Company Act of 1935 (15 U.S.C. 79k(f)) is amended by striking out "bankruptcy" and inserting "case under title 11 of the United States Code" in lieu thereof.

Sec. 310. (a) Section 2(a) (8) of the Investment Company Act of 1940 (15 U.S.C. 80a–2(a) (8)) is amended by striking out "bankruptcy" and inserting "a case under title 11 of the United States Code" in lieu thereof.

(b) Section 6(a) (2) of such Act (15 U.S.C. 80a–6(a) (2)) is amended by striking out "bankruptcy" and inserting "a case under title 11 of the United States Code" in lieu thereof.

(c) Section 25(d) of such Act (15 U.S.C. 80a–25(d)) is amended by striking out "the Bankruptcy Act of 1898, as amended" and inserting "title 11 of the United States Code" in lieu thereof.

Sec. 311. Section 202(a) (5) of the Investment Advisers Act of 1940 (15 U.S.C. 80b–2(a) (5)) is amended by striking out "bankruptcy" and inserting "a case under title 11 of the United States Code" in lieu thereof.

Sec. 312. (a) Section 303(b) (1) (B) of the Consumer Credit Protection act (15 U.S.C. 1673(b) (1) (B)) is amended by striking out "court of bankruptcy under chapter XIII of the Bankruptcy Act" and inserting "court of the United States having jurisdiction over cases under chapter 13 of title 11 of the United States Code" in lieu thereof.

(b) Section 605(a) (1) of the Fair Credit Reporting Act (15 U.S.C. 1681c(a) (1)) is amended to read as follows:

"(1) cases under title 11 of the United States Code or under the Bankruptcy Act

// 11 USC prec. 1. // that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years."

Sec.313. Section 201(e) of title 17 of the United States Code is amended by striking out tthe period at the end thereof and inserting ", except as provided under title 11." in lieu thereof.

Sec. 314. (a) Chapter 9 of title 18 of the United States Code // 18 USC 151 // is amended —

(1) by striking out "bankrupt" each place it appears and inserting "debtor" in lieu thereof;

(2) by striking out "bankruptcy proceeding" each place it appears and inserting "case under title 11" in lieu thereof;

(3) by striking out "bankruptcy law" each place it appears and inserting "provisions of title 11" in lieu thereof.

(b) (1) Title 18 of the United States Code is amended by striking out section 151 and inserting in lieu thereof the following: "section 151. // 18 USC 151. // Definition

" As used in this chapter, the term 'debtor' mean a debtor concerning whom a petition has been filed under title 11.".

(2) The item relating to section 151 in the table of sections for chapter 9 of title 18 of the United States Code is amended by striking out "definitions" and inserting "definition" in lieu thereof.

(c) Section 152 of title 18 of the United States Code is amended by—,

(1) striking out "the receiver," each place it appears and inserting "a" in lieu thereof; and

(2) striking out "document affecting or relating to the property or affairs of a" and inserting in lieu thereof "recorded information including books, documents, records, and papers, relating to the property or financial affairs of a".

(d) (1) Section 153 of title 18 of the United States Code is amended by striking out "receiver,".

(2) The heading for section 153 of title 18 of the United States Code is amended by striking out", receiver".

(3) The item relating to section 153 in the table of sections for chapter 9 of title 18 of the United States Code is amended by striking out ", receiver".

(e) (1) Section 154 of title 18 of the United States Code is amended—,

(A) by striking out "Whoever knowingly acts as a referee in a case in which he is directly or indirectly interested; or"; and

(B) by striking out "referee, receiver,".

(2) The heading for section 154 of title 18 of the United States Code is amended by striking out "referees and other".

(3) The item relating to section 154 in the table of contents for chapter 9 of title 18 of the United States Code is amended by striking out "referees and other".

(f) (1) Section 155 of title 18 of the United States Code is amended—

(A) by striking out the semicolon at the end of the first paragraph thereof and all that follows down through "Shall" and inserting in lieu thereof", shall";

(B) by inserting "knowingly and fraudulently" immediately after "supervision,"; and

(C) by striking out", bankruptcy or reorganization proceeding" and inserting "or case under title 11" in lieu thereof.

(2) The heading for section 155 of title 18 of the United States Code is amended by striking out "bankruptcy proceedings" and inserting in lieu thereof "cases under title 11 and receiverships".

(3) The item relating to section 155 in the table of sections for chapter 9 of title 18 of the United States Code is amended by striking out "bankruptcy proceedings" and inserting "cases under title 11 and receiverships" in lieu thereof.

(g) Section 1961(1) (D) of title 18 of the United States Code is amended by striking out "bankruptcy fraud" and inserting "fraud connected with a case under title 11" in lieu thereof.

(h) Section 2516(1) (e) of title 18 of the United States Code is amended by striking out "bankruptcy fraud" and inserting "fraud connected with a case under title 11" in lieu thereof.

(i) Section 3057 of title 18 of the United States Code is amended—

(1) by striking out "referee" each place it appears and inserting "judge" in lieu thereof; and

(2) by striking out "violations of the bankruptcy laws" and inserting "violation under chapter9 of this title" in lieu thereof.

(j)(1) Section 2256 of title 28 of the United States Code is redesignated as section 3244 of title 18 of the United States Code.

(2) The table of sections of chapter 211 of title 18 of the United States Code // 18 USC 3231 // is amended by adding at the end thereof the following:

"3244. Jurisdiction of proceedings relating to transferred offenders.".

(k) Section 3284 of title 18 of the United States Code is amended by striking out "bankrupt or other debtor" and inserting "debtor in a case under title 11" in lieu thereof.

(l) Section 6001(4) of title 18 of the United States Code is amended by inserting "a United States bankruptcy court established under chapter 6, title 28, United States Code," immediately after "title 28, United States Code,".

Sec. 315. Section 485(f) of the Tariff Act of 1930 (19 U.S.C. 1485 (f)) is amended by striking out "receiver or trustee in bankruptcy" and inserting "trustee in a case under title 11 of the United States Code" in lieu thereof.

Sec. 316. Section 302(1) (3) of the Automotive Products Trade Act of 1965 (19 U.S.C. 2022(1) (3)) is amended by striking out "bankruptcy" and inserting "cases under title 11 of the United States Code" in lieu thereof.

Sec. 317. Section 439 A of part B of title IV of the Higher Education Act of 1965 (20 U.S.C. 1087–3) is repealed.

Sec. 318. Section 239(d) of the Foreign Assistance Act of 1961 (22 U.S.C. 2199(d)) is amended by striking out "the priority" and inserting "any priority" in lieu thereof.

Sec. 319. Section 2(1) of the National Labor Relations Act (29 U. S. C. 152(1)) is amended by striking out "bankruptcy" and inserting "cases under title 11 of the United States Code" in lieu thereof.

Sec. 320. Section 3(d) of the Labor–Management Reporting and Disclosure Act of 1959 (29 U.S.C. 402(d)) is amended by striking out "bankruptcy" and inserting "cases under title 11 of the United States Code" in lieu thereof.

Sec.321. (a) Section 4042 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1342) is amended in subsection (f)—,

(1) by striking out "bankruptcy and of a court in a proceeding under chapter X of the Bankruptcy Act" and inserting "the United States having jurisdiction over cases under chapter 11 of title 11 of the United States Code" in lieu thereof; and

(2) by striking out "bankruptcy,".

(b) Section 4062(c) (2) of such Act (29 U.S.C. 1362(c) (2)) is amended—,

(1) by striking out "the Bankruptcy Act" and inserting "title 11 of the United States Code" in lieu thereof; and

(2) by striking out "the subject of a proceeding under that Act" and inserting "a debtor in a case under chapter 7 of such title" in lieu thereof.

(c) Section 4068(c) (2) of such Act (29 U.S.C. 1368(c) (2)) is amended—,

(1) by striking out "the case of bankruptcy or" and inserting "a case under title 11 of the United States Code or in " in lieu thereof; and

(2) by striking out "the Bankruptcy Act" and inserting "title 11*of* the United States Code" in lieu thereof.

Sec. 322. (a) Section 3466 of the Revised Statutes of the United States (31 U.S.C. 191) is amended by adding at the end the following: "The priority established under this section does not apply, however, in case under title 11 of the United States Code."

(b) Section 3467 of the Revised Statutes of the United States (31 U. S.C. 192) is amended by striking out "Every" and inserting in lieu thereof the following: "Except with respect to a trustee acting in accordance with the provisions of title 11 of the United States Code, every".

(c) Section 3469 of the Revised Statutes of the United States (31 U. S. C. 194) is repealed.

(d) Section 3473 of the Revised Statutes of the United States (31 U. S. C. 198) is repealed.

(e) Section 3474 of the Revised Statutes of the United States (31 U. S.C.199) is repealed.

(f) The table of sections for title XXXVI of the Revised Statutes of the United States is amended by striking out the items relating to sections 3469, 3473, and 3474.

(g) Section 5256 of the Revised Statutes of the United States (45 U. S. C. 81) is amended by striking out "The laws of the United States providing for proceedings in bankruptcy shall not be held to apply to said corporation."

Sec. 323. Section 1 of the Act entitled "An Act to provide for the alteration of certain bridges over navigable waters of the United States, for the apportionment of the cost of such alterations between the United States and the owners of such bridges, and for other purposes", approved June 21, 1940 (54 Stat. 497; 33 U.S.C. 511), is amended by striking out "bankruptcy" and inserting "a case under title 11 of the United States Code" in lieu thereof.

Sec 324. Subsection (a) of section 17 of the Act of March 4, 1927 (44 Stat. 1434; 33 U.S.C. 917(a)), is repealed.

Sec. 325. Section 213 of the Transportation Act, 1920 (40 U.S.C. 316), is amended by striking out "bankruptcy" and inserting "case under title 11 of the United States Code" in lieu thereof.

Sec. 326. Section 7 of the Act entitled "An Act to provide conditions for the purchase of supplies and the making of contracts by the United States, and for other purposes", approved June 30, 1936 (49 Stat. 2039; 41 U.S.C. 41), is amended by striking out "bankruptcy" and inserting "cases under title 11 of the United States Code" in lieu thereof.

Sec. 327 Subsection (g) of section 733 of the Public Health Service Act (42 U.S.C. 294f) is repealed.

Sec. 328. Subsection (b) of section 456 of the Social Security Act (42 U.S.C. 656(b)) is repealed.

Sec. 329. Section 503 (42 U.S.C. 1473 of the Housing Act of 1949 is amended by striking out "This" and inserting "Except as provided in title 11 of the United States Code, this" in lieu thereof.

Sec. 330. Section 701(a) of the Civil Rights Act of 1964 (42 U.S.C 2000e(a)) is amended by striking out "bankruptcy" and inserting "cases under title 11, United States Code" in lieu thereof.

Sec. 331. Section 802(d) of the Act entitled "An Act to prescribe penalties for certain acts of violence or intimidation, and for other purposes", approved April 11, 1968 (82 Stat. 81; 42 U.S.C. 3602 (d)), is amended by striking out "bankruptcy" and inserting "cases under title 11 of the United States Code" in lieu thereof.

Sec. 332. Section 17 of the Boulder Canyon Project Act (43 U.S.C. 617p) is amended by striking out "Claims" and inserting "Except as provided in title 11 of the United States Code, claims" in lieu thereof.

Sec. 333. Subsection (c) of section 3 of the Emergency Rail Services Act of 1970 (54 U.S.C. 662) // 45 USC 662. // is repealed.

Sec. 334. Title IX of the Merchant Marine Act, 1936 (46 U.S.C. 1241 et seq.), is amended by adding at the end thereof the following:

"Sec. 908. // 46 USC 1247 // (a) Notwithstanding any other provision of law, in any proceeding in a bankruptcy, equity, or admiralty court of the United States in which a receiver or trustee may be appointed for any corporation engaged in the operation of one or more vessels of United States registry between the United States and any foreign country, upon which the United States holds mortgages, the court, upon finding that it will inure to the advantage of the estate and the parties in interest and that it will tend to further the purposes of this Act, may constitute and appoint the Secretary of Commerce as sole trustee or receiver, subject to the directions and orders of the court, and in any such proceeding the appointment of any person other than the Secretary as trustee or receiver shall become effective upon the ratification thereof by the Secretary without a hearing, unless the Secretary shall deem a hearing necessary. In no such proceeding shall the Secretary be constituted as trustee or receiver without the Secretary's express consent.

"(b) If the court, in any such proceeding, is unwilling to permit the trustee or receiver to operate such vessels in such service pending the termination of such proceeding, without financial aid from the Government, and the Secretary certifies to the court that the continued operation of such vessel is, in the opinion of the Secretary, essential to the foreign commerce of the United States and is reasonably calculated to carry out the purposes and policy of this Act, the court may permit the Secretary to operate the vessels subject to the orders of the court and upon terms decreed by the court sufficient to protect all the parties in interest, for the account of the trustee or receiver, directly or through a managing agent or operator employed by the Secretary, if the Secretary undertakes to pay all operating losses resulting from such operation, and comply with the terms imposed by the court, and such vessel shall be considered to be a vessel of the United States within the meaning of the Suits in Admiralty Act. // 46 USC 741 // The Secretary shall have no claim against the corporation, its estate, or its assets for the amount of such payments, but the Secretary may pay such sums for depreciation as it deems reasonable and such other sums as the court may deem just. The payment of such sums, and compliance with other terms duly imposed by the court, together with the payment of the operating losses, shall be in satisfaction of all claims against the Secretary on account of the operation of such vessels.".

Sec. 335. (a) Section 22(a) of the Organic Act of Guam (48 U.S.C. 1424(a)) is amended by inserting "and a bankruptcy court" immediately after "jurisdiction of a district court".

(b) Section 22(b) of such Act (48 U.S.C. 1424(b)) is amended by striking out "30 of the Bankruptcy Act of July 1, 1898, as amended (title 11, U.S.C., sec. 53), in bankruptcy cases;" and inserting "2075 of title 28. United States Code, in cases under title 11, United States Code," in lieu thereof.

Sec. 336. (a) Section 22 of the Revised Organic Act of the Virgin islands (48 U.S.C. 1612) is amended by inserting "and a bankruptcy court" immediately after "jurisdiction of a district court".

(b) Section 25 of such Act (48 U.S.C. 1615) is amended by striking out "30 of the Bankruptcy Act in bankruptcy cases" and inserting "2075 of title 28. United States Code, in cases under title 11, United States Code" in lieu thereof.

Sec. 337. (a) Section 20c of the Interstate Commerce Act (49 U.S.C. 20c) is amended by striking out "bankruptcy" and inserting "a case under title 11 of the United States Code" in lieu thereof.

(b) Section 213(a)(3) of such Act (49 U.S.C. 313(a)(3)) is amended-

(1) by striking out "bankruptcy from" and inserting "a case under title 11 of the United States Code from" in lieu thereof; and

(2) by striking out "bankruptcy" and inserting "such case" in lieu thereof.

(c) Section 323 of such Act (49 U.S.C. 922a) is amended by striking out "bankruptcy" and inserting "a case under title 11 of the United States Code" in lieu thereof.

Sec. 338. (a) Section 8339 of title 5 of the United States Code is amended-

(1) by inserting in subsection (f), immediately after "subsections (a)—(e)", the following: "and (o)";

(2) by inserting in subsection (i), immediately after "subsections (a)—(h)", the following "and (o)";

(3) by insering in subsections (j) and (k)(1), immediately after "subsections (a) –(i)" each time it appears, the following: "and (o)";

(4) by inserting in subsection (1), immediately after "subsections (a) –(k)," the following: "and (o)";

(5) by inserting in subsection (m), immediately after "subsections (a) –(e)", the following: "and (o)";

(6) by adding at the end thereof the following:

"(o) The annuity of an employee who is a bankruptcy judge is computed with respect to sevice after March 31, 1979 and before April 1, 1984, as a bankruptcy judge and his military service (not exceeding five years) creditable under section 8332 of this title by multiplying 2 percent of his average annual pay by the years of that service.".

(b) The first sentence of section 8334(c) of title 5, United States Code, is amended by adding at the end thereof the following new schedule:

" Bankruptcy judge—–2 ————August 1, 1920, to June 30, 1926.

3 ————July 3, 1926, to June 30, 1942.

5————July 1, 1942, to June 30, 1948.

6————July 1, 1948, to October 31, 1956.

6 ————November 1, 1956, to December 31, 1969.

7————After January 1, 1970.".

(c) Section 8341 of title 5, United States Code is amended-

(1) by inserting in subsection (b)(1), immediately after "section 8339(a)—(i)", the following: "and (o)"; and

(2) by striking out of subsection (d) "section 8339 (a)—(f) and (i)" and insert in lieu thereof the following: "section 8339 (a)—(f), (i), and (o)".

(d) Section 8344(a)(A) of title 5, United States Code, is amended by striking out "and (i)" and inserting in lieu thereof "(i), and (o)".

(e) Section 8331 of title 5, United States Code, is amended-

(1) by striking out "and" at the end of paragraph (20);

(2) by striking out the period at the end of paragraph (21) and inserting in lieu thereof "; and "; and

(3) by adding at the end thereof the following:

"(22) 'bankruptcy judge' means an individual appointed under section 34 of the Bankruptcy Act (11 U.S.C. 62) or under section 404(d) of the Act adding this paragraph-

"(A) who is serving as a United States bankruptcy judge on March 31, 1984, and that has agreed by filing a notice of such agreement with the President, the Senate, and the Director of the Administrative Office of the United States Courts, to accept an appointment as a judge of a United States bankruptcy court established under section 201 of this Act but that is not appointed by the President as a judge of such court; or

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

"(B) whose service as a United States bankruptcy judge during the transition period is terminated by reason of death or disability.".

TITLE IV- TRANSITION

REPEALER

Sec. 401. (a) The Bankruptcy Act // 11 USC prec. 101 // is repealed.

(b) Section 3 of the Act entitled " An Act to amend an Act entitled ' An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, and Acts amendatory thereof and supplementary thereto", approved March 3, 1933 (47 Stat. 1482; 11 U.S. C. 101a), // 11 USC prec. 101 // is repealed.

(c) Sections 3, 6, and 7 of the Act entitled "An Act to amend an Act entitled ' An Act to establish a uniform system of bankruptcy throughout the United States, approved July 1, 1898, and Acts amendatory thereof and supplementary thereto", approved June 7, 1934 (48 Stat. 923, 924; 11 U.S.C. 76a, 203a, 205a), are repealed.

(d) The sentence beginning "Said section 74" in section 2 of the Act entitled "An Act to amend an Act entitled ' An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, and Acts amendatory thereof and supplementary thereto", approved June 7, 1934 (48 Stat. 924; 11 U.S.C. 103a), // 11 USC 202a. // is repealed.

(e) Subsection (b) of section 4 of the Act entitled "an Act to amend an Act entitled ' An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, and Acts amendatory thereof and supplementary thereto", approved June 7, 1934 (48 Stat. 924; 11 U.S.C. 103a), is repealed.

(f) Section 2 of the Act entitled "An Act entitled ' An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, as amended and supplemented", approved June 5, 1936 (49 Stat. 1476; 11 U.S.C. 93a), is repealed.

(g) Section 3 of the Act entitled "An Act to amend the Interstate Commerce Act, as amended, and for other purposes", approved April 9, 1948 (62 Stat. 167; 11 U.S.C. 208), is repealed.

EFFECTIVE DATES

Sec. 402. (a) Except as otherwise provided in this title, // 11 USC prec. 101 // this Act shall take effect on October 1, 1979.

(b) Except as provided in subsections (c) and (d) of this section, the amendments made by title II of this Act shall take effect on April 1, 1984.

(c) The amendments made by sections 210, 214, 219, 220, 222, 224, 225, 228, 229, 235, 244, 245, 246, 249, and 251 of this Act shall take effect on October 1, 1979.

(d) The amendments made by sections 217, 218, 230, 247, 302, 314(j), 317, 327, 328, 338, and 411 of this Act shall take effect on the date of enactment of this Act.

(e) The amendments made by sections 335(a) and 336(a) of this Act shall take effect on April 1, 1984.

Sec. 403. (a) A case commenced under the Bankruptcy Act, // 11 USC prec. 101 // and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act // 11 USC prec. 101 // as if this Act had not been enacted, and the substantive rights of parties in conection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

(b) Notwithstanding subsection (a) of this section, sections 1165, 1167, 1168, 1169, and 1171 of title 11 of the United States Code, as enacted by section 101 of this Act, apply to cases pending under section 77 of the Bankruptcy Act (11 U.S.C. 205) on the date of enactment of this Act in which the trustee has not filed a plan of reorganization.

(c) The repeal made by section 401(a) of this Act does not affect any right of a referee in bankruptcy, United States bankruptcy judge, or survivor of a referee in bankruptcy or United States bankruptcy judge to receive any annuity or other payment under the civil service retirement laws.

(d) The amendments made by section 314 of this Act do not affect the appliciation of chapter 9, chapter 96, section 3057, or section 3284 of title 18 of the United States Code // 18 USC 151 // to any act of any person —-

(1) committed before October 1, 1979; or

(2) committed after October 1, 1979, in connection with a case commenced befor such date.

(e) Notwithstanding subsection (a) of this section, a fee may not be charged under section 40c(2)(b) of the Bankruptcy Act // 11 USC 68. // in a case in which the plan is confirmed after September 30, 1978, to the extent that such fee exceeds $100,000.

COURTS DURING TRANSITION

Sec. 404. (a) The courts of bankruptcy, as defined under section 1( 10) of the Bankruptcy Act, // 28 USC prec. 151 // created under section 2a to the Bankruptcy Act, // 11 USC 1. // and existing on September 30, 1979, shall continue through March 31, 1984, to be the courts of bankruptcy for the purposes of this Act and the amendments made by this Act. Each of the courts of bankruptcy so continued shall constitute a separate department of the district court that is such court of bankruptcy under the Bankruptcy Act.

(b) The term of a referee in bankruptcy who is serving on the date of enactment of this Act is extended to and expires on March 31, 1984 or when his successor takes office. During the period commencing on October 1, 1979, and ending on March 31, 1984 (hereinafter in this title referred to as "the transition period"), unless such referee is found to be not qualified by the Chief Judge of the Circuit Court after consultation with a merit screening committee established as provided in subsection (c) of this section, such a referee in bankruptcy upon the expiration of his appointed term as referee shall have the title of United States bankruptcy judge, and shall serve in the court of bankruptcy continued under subsection (a) of this section that appointed such United States bankruptcy judge, in the manner prescribed by this title. Section 8335(a) of title 5 of the United States Code shall not apply in respect of United States bankruptcy judges during the transition period.

(c) There shall be established for each State a merit screening committee composed of the president or the designee of the president of the State bar association, the dean or the designee of the dean of a law school located within the State, and the president or designee of the president of a local bar association for the area wherein a referee in bankruptcy maintains his official headquarters within the State. Each such merit screening committee shall be organized and summoned to meetings by the circuit executive for the circuit embracing the State, who shall serve as secretary of each such screening committee established within the circuit. Before the expiration of the term of a referee in bankruptcy in office on the date of enactment of this Act, or if his successor has not been appointed before the date of enactment of this Act, a merit screening committee shall be organized by the circuit executive to pass on the qualifications of such referee for the purpose of determining whether the term of such referee shall be extended as provided under subsection (b) of this section.

(d) Except as otherwise provided in this section or in section 407 of this Act, matters relating to the office of United States bankruptcy judges and to United States bankruptcy judges shall continue to be governed during the transition period by the rules set forth in sections 34, 35, 36, 40a, 40b, 40d, 41, and 43 of the Bankruptcy Act as such Act existed on September 30, 1979. A court of bankruptcy may not appoint an individual under such section 34 if the merit screening committee established under subsection (c) of this section for the district of such court finds such individual to be not qualified.

(e) During the transition period, the United States bankruptcy judges of each district may appoint a clerk, necessary other employees, including law clerks and secretaries, and court reporters the same as the judges of a United States bankruptcy court established under section 201 of this Act may appoint such officers and employees under the amendment made by section 233 of this Act. Such clerk, other employees, and reporters shall have the same rights and powers, shall perform the same functions and duties and shall be subject to the same provisions of title 28 of the United States Code, as a clerk, other employee, or reporter, as the case may be, appointed under the amendment made by section 233 of this Act by a United States bankruptcy court established under section 201 of this Act. The United States bankruptcy judges of each district shall have the same rights and powers as a United States bankruptcy court established under section 201 of this Act with respect to such clerk, other employees, and reporters.

(f) During the transition period, the provisions of sections 455, 456, 569(a), 571(b), 620(b)(3), and 957(a) of title 28 of the United States Code shall apply to United States bankruptcy judges and to any court officers or employees appointed or employed under subsection (e) of this section the same as such sections apply to the bankruptcy judges, and to any court officers or employees, of a United States bankruptcy court established under section 201 of this Act. During the transition period, the position of United States bankruptcy judge shall be deemed to be a position within the purview of subparagraph (C) of section 225(f) of the Federal Salary Act of 1967 (2 U.S.C. 356(C)).

(g) During the transition period, the Judicial Conference of the United States may from time to time in the light of the recommendations of the judicial councils of each circuit, made after advising with the district judges and the United States bankruptcy judges of the respective circuit, and of the Director of the Administrative office of the United States Courts, increase the number of full-time United States bankruptcy judges, or provide that a part-time United States bankruptcy judge for a particular district may serve in the capacity and receive the salary of a full-time United States bankruptcy judge, as the expeditious transaction of the business of the several courts of bankruptcy may require.

## JURISDICTION AND PROCEDURE DURING TRANSITION

Sec. 405. // 28 USC prec. 1471 // (a)(1) All cases commenced under title 11 of the United States Code during the transition period shall be referred to the United States bankruptcy judges. The United States bankruptcy judges may exercise inn such cases the jurisdiction and powers conferred by subsection (b) of this section on the courts of bankruptcy continued by section 404(a) of this Act, and all proceedings in such cases shall be before the United States bankruptcy judges, except-

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt-

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment; or

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge.

(2) Except as provided in subsection (c) of this section, any proceeding in a court of bankruptcy in a case under title 11 of the United States Code that is not before the United States bankruptcy judge shall be before the judge of the court of bankruptcy for the district in which such case is pending.

(b) During the transition period, the amendments made by sections 241, 243, 250, and 252 of this Act shall apply to the courts of bankruptcy continued by section 404(a) of this Act the same as such amendments apply to the United States bankruptcy courts established under section 201 of this Act.

(c)(1) During the transition period, an appeal from a judgment, order, or decree of a United States bankruptcy judge shall be-

(A) if the circuit council of the circuit in which the bankruptcy judge sits so orders for the district in which the bankruptcy judge sits, then to a panel of three bankruptcy judges

appointed in the manner prescribed by section 160 of title 28 of the United States Code, as added by section 201 of this Act;

(B) if the parties to the appeal agree to a direct appeal to the court of appeals for such circuit, then to such court of appeals; or

(C) to the district court for the district in which the bankruptcy judge sits.

(2) During the transition period, the jurisdiction of the district courts, the courts of appeals, and panels of bankruptcy judges to hear appeals shall be the same as the jurisdiction of such courts and panels granted under the amendments made by sections 236, 237, 238, and 241 of this Act to hear appeals from the judgments, orders, and decrees of the bankruptcy courts established under section 201 of this Act.

(d) The rules prescribed under section 2075 of title 28 of the United States Code and in effect on September 30, 1979, shall apply to cases under title 11, to the extent not inconsistent with the amendments made by this Act, or with this Act, until such rules are repealed or superseded by rules prescribed and effective under such section, as amended by section 248 of this Act.

## TRANSITION STUDY

Sec. 406. // 28 USC prec. 151 // (a)(1) During the transition period, the Director of the Administrative Office of the United States Courts shall make continuing studies and surveys of conditions in the judicial districts to determine-

(A) the number of bankruptcy judges of the United States bankruptcy courts established under section 201 of this Act that

will be needed after March 31, 1984, to provide for the expeditious and effective administration of justice; and

(B) the regular places at which courts shall be held.

(2) In the course of any survey, the Director shall take into account local conditions in each judicial district, including the areas and the population to be served, the transportation and communications facilities available, the average number and types of bankruptcy cases filed and closed during the transition period, the number of cases pending and judicial matters heard, and any other material factors. The Director shall give consideration to suggestions from any interested parties.

(b) Upon completion of the studies and surveys required by subsection (a) of this section, the Director shall report to the judicial councils of the circuits and the Judicial Conference of the United States his recommendations concerning the number of bankruptcy judges, their principal places of offices, and the places where court shall be held. The judicial councils shall advise the Conference, stating their recommendations and the reasons therefor. The Conference shall recommend to the Congress and to the President, before January 3, 1983, in light of the recommendations of the Director and the judicial councils, the number of bankruptcy judges of the United States bankruptcy courts established under section 201 of this Act that will be needed after March 31, 1984, and the locations at which they shall serve.

## JUDICIAL ADMINISTRATION

Sec. 407. // 28 USC prec.151 // (a) The Director of the Administrative Office of the United States Courts shall appoint a committee of not fewer than seven United States bankruptcy judges to advise the Director with respect to matters that arise during the transition period or that are relevant to the purposes of the transition period.

(b) During the transition period, the Congress strongly recommends at least one-third of the members of any committee of the Judicial Coference of the United States that is concerned with the administration of the bankruptcy system shall be chosen from among the United States bankruptcy judges, and at least one member of any committee of the Judicial Conference that is concerned with court administration, supporting personnel, or bankruptcy court rules shall be chosen from among the United States bankruptcy judges.

(c) During the transition period, the chief judge of each circuit shall summon at least one bankruptcy judge from each judicial district within the circuit to the judicial conference of such circuit called and held under section 332 of title 28 of the United States Code.

### UNITED STATES TRUSTEE PILOT

Sec. 408 // 28 USC prec. 581 // (a) The Attorney General shall conduct such studies and surveys as necessary to evaluate the needs, feasibility, and effectiveness of the United States trustee system, and shall report the result of such studies and surveys to the Congress, the President, and the Judicial Conference of the United States, beginning on or before January 3, 1980, and annually thereafter during the transition period.

(b) Not later than January 3, 1984, the Attorney General shall report to the Congress, to the President, and the Judicial Conference of the United States, as to the feasibility, projected annual cost and effectiveness of the United States trustee system, as determined on the basis of the studies and surveys respecting the operation of the United States trustee system in the districts, together with recommendations as to the desirability and method of proceeding with implementation of the United States trustee system in all judicial districts of the United States.

(c) Chapter 15 of title 11 of the United States Code // 11 USC 331 // and chapter 39 of title 28 of the United States Code are repealed, and all references to the United States trustee contained in title 28 of the United States Code are deleted, as of April 1, 1984. The service of any United States trustee, of any assistant United States trustee, and of any employee employed or appointed under the authority of such chapter 39 is terminated on such date.

### TRANSFER TO NEW COURT SYSTEM

Sec. 409. // 28 USC prec. 1471 // (a) On April 1, 1984, there shall be transferred to the appropriate United States bankruptcy court established under section 201 of this Act-

(1) cases, and matters and proceedings in cases, under the Bankruptcy Act

// 11 usc prec. 1. // that are pending, at the end of September 30, 1983, in the courts of bankruptcy continued under section 404(a) of this Act, other than cases, and matters and proceedings in cases, under-

(A) section 77 or chapter IX of the Bankruptcy Act;

// 11 USC 205, 401 // or

(B) chapter X of the Bankruptcy Act in which a general reference under section 117 of the Bankruptcy Act

// 11 USC 502 // is not in effect; and

(2) cases, and proceedings arising under or related to cases, under title 11 of the United States Code that are pending, at the end of March 31, 1984, in the courts of bankruptcy continued under section 404(a) of this Act.

(b) Civil actions pending on March 31, 1984, over which a United States bankruptcy court established under section 201 of this Act has jurisdiction on April 1, 1984, shall not abate, but continuation of any such action that has not been finally determined before April 1, 1985, may be enjoined, and any claims or causes of actions not resolved may be removed to a bankruptcy court under chapter 90 of title 28 of the United States Code.

(c) All Government publications, law books, recording equipment, and other property furnished to bankruptcy judges' offices as of March 31, 1984, and of particular use to the offices of the judges of the United States bankruptcy courts, shall be transferred to the United States bankruptcy courts under the supervision of the Director of the Administrative Office of the United States Courts.

### ADDITIONAL RULEMAKING POWER

Sec. 410. // 28 USC prec. 1471 // The Supreme Court may issue such additional rules of procedure, consistent with Acts of Congress, as may be necessary for the orderly transfer of functions and records and the orderly transition to the new bankruptcy court system created by this Act.

Sec. 411. Section 40a of the Bankruptcy Act (11 U.S.C. 68(a)) is amended by striking out "$37,800" and inserting "$50,000" in lieu thereof, and by striking out "$18,900" and inserting "$25,000" in lieu thereof.

Approved November 6, 1978.

LEGISLATIVE HISTORY:

HOUSE REPORT No. 95–595 (Comm. on the Judiciary).

SENATE REPORTS: No. 95–989 accompanying S. 2266 (Comm. on the Judiciary) and No. 95–1106 (Comm. on Finance).

CONGRESSIONAL Record:

Vol. 123 (1977): Oct. 27, 28, considered in House.

Vol. 124 (1978: Feb. 1, considered and passed House.

Sept. 7, considered and passed Senate, amended, in lieu of S. 2266.

Sept. 22, passage vitiated; amendment in the nature of a substitute agreed to by Senate.

Sept. 28, House concurred in Senate amendment with an amendment.

Oct. 5, Senate concurred in House amendment with an amendment.

Oct. 6, House concurred in Senate amendment.

PL 95–598, 1978 HR 8200

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX TAB 22

## JUDGMENT LIENS—DISCHARGE AGAINST BANKRUPTS

### CHAPTER 396

### S. B. No. 755

An Act relating to the discharge and cancellation of judgment liens against bankrupts; providing for hearings after notice upon applications of bankrupts or other interested parties for an order of discharge of judgments, judgment liens, and abstracts of judgments; making special provision in regard to certain liens on real property; providing for recordation of certified copies of orders of discharge; amending Title 90, Revised Civil Statutes of Texas, 1925, as amended, by adding a new Article 5449(a); repealing all laws, or parts of laws, in conflict to the extent of conflict; and declaring an emergency.

*Be it enacted by the Legislature of the State of Texas:*

Section 1. Title 90, Revised Civil Statutes of Texas, 1925, as amended, is hereby amended by adding [25] thereto a new section, to be identified as Article 5449(a), which shall read as follows:

"**Art. 5449(a). Discharge of judgments and judgment liens against bankrupts**

"Section 1. At any time after one year has elapsed since a bankrupt or debtor has been discharged from his debts, before or after the effective date of this Act, pursuant to the acts of Congress relating to bankruptcy, the bankrupt or debtor, or his, her, or its receiver, trustee, or any other interested person, including a corporation, may apply, upon proof of the discharge of the bankrupt or debtor, to the court in which a judgment was rendered against the bankrupt or debtor for an order directing the discharge and cancellation of the judgment, any abstract or abstracts of said judgment, and the lien represented thereby.

"Sec. 2. If it appears upon the hearing that the bankrupt or debtor has been discharged from the payment of the obligation or debt represented by the judgment, the court shall enter an order of discharge and cancellation of said judgment and any abstracts of said judgment, which order of discharge shall be entered upon the docket of the court. Said order of discharge shall constitute a release, discharge, and cancellation of said judgment and any unsatisfied judgment liens represented by all abstracts of said judgment then or thereafter of record; provided, however, that a certified copy of said order of discharge must be duly recorded in the judgment lien records of a county in which an abstract of judgment has been or is thereafter recorded in order to discharge and cancel said abstract of judgment in said county.

"Sec. 3. Notice of said application for discharge, accompanied by copies of the papers upon which it is made, shall be served on the judgment creditor or his attorney of record in the action in which said judgment was rendered, in the manner prescribed for service of a notice in an action, if the residence or place of business of the judgment creditor, or of his attorney, is known. Upon proof by affidavit that the address of neither the judgment creditor nor his attorney is known, and that the address of neither can be ascertained after due diligence, or that the judgment creditor is a nonresident of this state, and his attorney is dead, or removed from the state, or cannot be found within the state, a judge or

25. Vernon's Ann.Civ.St. art. 5449(a).

justice of the court may by order direct that the notice of the application be published in a newspaper designated in the order once a week for not more than three consecutive weeks. Such publication, shown by the affidavit of the publisher, shall be sufficient service upon the judgment creditor of the application.

"Sec. 4. Where the judgment was a lien on real property owned by the bankrupt or debtor prior to the time that he, she, or it was adjudged a bankrupt, or that a petition for debtor relief under the federal Bankruptcy Act of July 1, 1898, as amended (Title 11, U.S.C.A.), was filed, and the debt or obligation evidenced by said judgment was not discharged under the provisions of the Bankruptcy Act, the lien thereof upon said real estate shall not be affected by said order and may be enforced, but in all other respects the judgment shall be of no force or validity, nor shall the same be a lien on real property acquired by the bankrupt or debtor subsequent to the discharge in bankruptcy.

"Sec. 5. Where the judgment was a lien on nonexempt real property owned by the bankrupt or debtor prior to the time he, she, or it was adjudged a bankrupt or that a petition for debtor relief under the federal Bankruptcy Act of July 1, 1898, as amended (Title 11, U.S.C.A.), was filed, and said real property is abandoned during the course of the proceeding, the lien thereof upon said real estate shall not be affected by said order and may be enforced, but in all other respects the judgment shall be of no force or validity, nor shall the same be a lien on real property acquired by the bankrupt or debtor subsequent to the discharge in bankruptcy."

Sec. 2.[26] All laws or parts of law in conflict with the provisions of this Act are hereby repealed, to the extent of the conflict only.

Sec. 3.[26] If any provision or provisions of this Act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of this Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

Sec. 4. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended; and that this Act take effect and be in force from and after its passage, and it is so enacted.

Passed the senate on April 24, 1975: Yeas 28, Nays 3; passed the house on May 24, 1975: Yeas 130, Nays 0, 4 present not voting.

Approved June 19, 1975.

Effective June 19, 1975.

26. Vernon's Ann.Civ St. art 5449(a) note